# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRACEY K. KUEHL, et al., | Case No. C14-02034-JSS |
| Plaintiffs, | **DECLARATION OF STEPHEN WELLS** |
| v. | |
| PAMELA SELLNER, et al., | |
| Defendants. | |

**DECLARATION OF STEPHEN WELLS**

I, Stephen Wells, declare that if called as a witness in this action I would competently testify of my own personal knowledge as follows:

1. I am a resident of Guerneville, California and am Executive Director for the Animal Legal Defense Fund (ALDF), a Plaintiff in the above-captioned action. I have worked for ALDF from 1999 to the present. I am responsible for coordinating the activities of ALDF's various departments, including our litigation, outreach and public advocacy efforts to rescue captive wildlife from inhumane and unlawful conditions of captivity.

2. ALDF is a national nonprofit organization headquartered in Cotati, California. ALDF is involved in every aspect of animal law, having worked for more than three decades on countless issues involving animals and the law. ALDF focuses especially on preventing animal cruelty and on protecting the lives and advancing the interests of animals through the legal system. We fulfill our mission through public advocacy, education, litigation, legislative lobbying, developing the academic discipline of animal law, and legal education. ALDF's groundbreaking efforts to end the suffering and unnecessary killing of

animals are supported by hundreds of dedicated attorneys and more than 200,000 members and supporters, including many members and supporters who live and work in Iowa. ALDF is heavily involved in the protection of animals used and sold in commercial enterprises, zoological parks, and aquariums.

3. In the last five years ALDF has become especially active in public advocacy and education regarding captive wildlife. ALDF's website routinely features content educating the public about issues affecting captive wildlife, including zoo animals, circus animals, and research animals, and instructing the public in how to participate as informed citizens and consumers. ALDF's direct advocacy on behalf of captive wildlife is substantial. For example, in 2013, ALDF petitioned the National Institutes of Health to terminate research on captive chimpanzees, three months after which the agency announced its plan to retire most of its research chimps. In 2014, ALDF petitioned the U.S. Department of Agriculture to establish explicit regulations to improve the welfare of captive nonhuman primates, a petition the agency has since published for public comment. ADLF has submitted numerous comments to the U.S. Fish and Wildlife Service opposing applications for captive-bred wildlife permits under the Endangered Species Act. Attorneys for ALDF have spoken at numerous public hearings regarding the use of bullhooks against captive elephants, including for example at two hearings in late 2014 before the Oakland City Council leading to Oakland's decision to prohibit the use of bullhooks to control circus elephants. That prohibition contributed to Ringling Brothers' decision to phase out its use of elephants by 2018. ALDF attorneys speak regularly about issues affecting captive wildlife at numerous conferences and symposia, including multiple conferences in California and in New York in the last several years. Through their leadership on the Animal Law Committee of the American Bar Association (ABA), ALDF attorneys succeeded in getting passed an ABA resolution in early 2015 urging states to improve their regulation of the possession, sale, and breeding of dangerous wild animals.

4. In addition to public advocacy and education, ALDF has invested significant time and resources litigating against owners of roadside zoos, accredited zoological parks, and aquariums who are violating state and federal law. For example, ALDF has been engaged in ongoing litigation since 2010

seeking to rescue a Siberian-Bengal tiger from unlawful treatment at the Tiger Truck Stop in Grosse Tete, Louisiana, which holds him captive in their fume-filled parking lot. Also in 2010 ALDF sued the City of Seattle to enjoin the unlawful use of taxpayer dollars to support the Woodland Park Zoo's reckless and illegally cruel treatment of its elephants, a suit dismissed for lack of standing. In 2012 ALDF successfully sued Jambass Ranch, a substandard roadside attraction in North Carolina, winning a permanent injunction against the facility's cruel confinement of a bear named Ben and securing Ben's release to sanctuary. Also in 2013 ALDF sued the U.S. Department of Agriculture for its unlawfully renewing Miami Seaquarium's license to confine and exhibit their solitary orca Lolita, despite the licensee's ongoing noncompliance with the Animal Welfare Act in housing Lolita alone and in a tank smaller than the law requires. That case is currently on appeal before the Eleventh Circuit. In 2015 ALDF successfully sued Jim Mack's Ice Cream Shop in York County, Pennsylvania, securing the release to sanctuary of a bear named Ricky who had been cruelly confined on a concrete slab beside a miniature golf course for nearly two decades. In 2015 ALDF notified the San Antonio Zoological Society, the nonprofit that operates the San Antonio Zoo, of its intent to sue under the Endangered Species Act for the Zoo's unlawful solitary confinement of Lucky the Elephant. These are just some of the civil actions ALDF has brought on behalf of captive wildlife in state and federal court.

     5.     ALDF's members enjoy viewing wildlife not only in the wild but also in zoological parks and aquariums. Our members appreciate the opportunity to encounter wildlife closer to home, animals they might not otherwise encounter if they lack the resources or ability to venture into native habitats. ALDF's members are also committed to seeing that those animals receive humane and adequate care that prevents unnecessary suffering and that is compliant with state and federal law. Our members recognize that keeping wildlife in captivity creates a tremendous responsibility on those who would confine such animals, and that it creates a responsibility as well on the agencies that ensure compliance with relevant laws and regulations. Given these interests, ALDF members routinely contact ALDF with concerns about zoos and similar facilities they have visited when they perceive that the animals in those facilities may be receiving inappropriate, inhumane, or unlawful care.

6. As they set forth in their declarations, our members have an aesthetic and recreational interest in viewing wildlife in captivity when such wildlife enjoy appropriate, humane, and lawful conditions and care. The member plaintiffs in this lawsuit have suffered injury to their aesthetic and recreational interests because they perceive from their own experience and from the findings of the U.S. Department of Agriculture that the animals at the Cricket Hollow Zoo are not enjoying appropriate, humane and lawful conditions and care. Our members have developed an emotional attachment to the animals at the Cricket Hollow Zoo, including the endangered animals that are the subject of this lawsuit. The terrible conditions in which those animals live have caused our members to suffer emotionally, and have discouraged our members from advancing their aesthetic and recreational interests in viewing captive wildlife. As they set forth in their declarations, our members likewise feel a sense of responsibility toward the animals with whom they have fostered an emotional attachment at the Cricket Hollow Zoo. As a result, although they can no longer tolerate to visit the animals, neither can they tolerate abandoning those animals to the ongoing cruelty and harassment to which the defendants subject their animals.

7. Our member plaintiffs in this case are Tracey K. Kuehl, Lisa K. Kuehl, Kris A. Bell, Nancy A. Harvey, and John T. Braumann. Their declarations make clear that these members would have standing to sue in their own right. Their declarations also make clear that they are seeking to protect interests related to the humane and lawful care of captive wildlife, interests that are germane to ALDF as I have explained above at some length. ALDF could pursue both the Endangered Species Act claim and the injunctive relief plaintiffs seek without the participation of these individual members.

8. The interests of ALDF and its members described in the foregoing paragraphs are irreparably harmed by the defendants' harassment of the tigers, lions, lemurs, and gray wolves living at the Cricket Hollow Zoo. The inappropriate, inhumane and unlawful conditions at the Zoo require plaintiffs to choose between visiting the animals there, in which case plaintiffs feel terrible in viewing the harassment of the animals, and avoiding to visit the animals there, in which case the plaintiffs feel terrible in abandoning the animals with whom they have developed an emotional connection and whom they cannot stand to see suffer.

9. These harms would be redressed if the Court were to order defendants to comply fully with the Endangered Species Act or if the Court were to remove the endangered animals to a reputable sanctuary that can meet the minimum humane requirements of these animals and provide care free from harassment and harm. In either case plaintiffs could exercise their aesthetic and recreational interests toward these animals, since in either case their commitment to seeing wildlife held in humane and lawful conditions of captivity would be fulfilled.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. I authorize electronic signature of this declaration and provide Plaintiffs' counsel with my original signature page.

DATED: May 31, 2015                    /s/ Stephen Wells
                                       STEPHEN WELLS