IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRACEY K. KUEHL, et al.,<br><br>  Plaintiffs,<br>v.<br><br>PAMELA SELLNER, et al.,<br><br>  Defendants. | Case No. C14-02034-JSS<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN RESISTANCE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**Plaintiffs' Reply to Defendants' Memorandum of Law in Resistance to Plaintiffs' Motion for Summary Judgment**

The undisputed facts confirm that the Defendants are violating the Endangered Species Act by harming, harassing, or trafficking in threatened or endangered wildlife at their unaccredited roadside menagerie in Manchester, Iowa known as the Cricket Hollow Zoo (the "Zoo"). Plaintiffs' material facts are supported by Defendants' own admissions and a decade of detailed U.S. Department of Agriculture Animal Plant & Health Inspection Service (APHIS) inspection reports on the Zoo. This evidence simply cannot be refuted. Defendants' Resistance (ECF Nos. 28 through 28-7) contains numerous distractions, but red herrings fail to identify any *genuine* issues of material fact. This Reply addresses the red herring issues raised by Defendants in turn, and, as directed by the Court in Local Rules 56(d) and 7(g), does not re-argue any of the positions Plaintiffs have already set out in their moving papers.

1. **Plaintiffs have standing because they have suffered injury to their aesthetic interests as a result of Defendants' violations of the Endangered Species Act.**

Defendants challenge only the first prong of the standing requirement—injury in fact—by claiming that Plaintiffs' aesthetic interests in viewing Defendants' endangered animals in humane conditions is not cognizable. ECF No. 28-2 at 8. This argument is unsupported by the facts. *See, e.g.,* ECF No. 21-1 at ¶¶1-9. Defendants acknowledge—and cannot refute— Plaintiffs' "cultural and spiritual bonds" with Defendants' endangered animals (ECF No. 28-2 at

1

5; 28-1, ¶¶3-10), injury to which is recognized for the purposes of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-563 (1992); *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 432 (D.C. Cir. 1998). To support their argument, Defendants mistakenly confuse the Supreme Court's denial of relief in *Lujan* with a blanket prohibition on all aesthetic injury claims in federal court. ECF No. 28-2 at 8. But the Supreme Court in *Lujan* precisely reaffirmed aesthetic injury as cognizable under Article III (a proposition secure since at least *Sierra Club v. Morton*, 405 U.S. 702 (1972)) and simply reiterated the threefold standing requirement, finding that the particular plaintiffs in *Lujan* had failed to satisfy the prongs. *Id.* Here, Plaintiffs have sufficiently demonstrated that Defendants have forced Plaintiffs to choose between seeing the zoo animals suffering again or refraining from seeing the animals to avoid witnessing Defendants' inhumane treatment of them. ECF No. 21-1 at ¶¶8-9.

2. **The Endangered Species Act protects captive wildlife, regardless of whether the owner is licensed by the federal government under the Animal Welfare Act.**

All parties agree that Defendants possess the required Class C Exhibitor license (License) under the Animal Welfare Act (AWA). 7 U.S.C. § 2131 *et seq.* All parties likewise agree that the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq.*, does not prohibit the mere possession of wildlife. However, a person possessing endangered or threatened captive wildlife may violate the ESA's "take" prohibition when he or she fails to engage in generally accepted animal husbandry practices that "meet or exceed" the requirements for facilities and care under the Animal Welfare Act.[1] 50 C.F.R. § 17.3. That is to say, contrary to Defendants' mischaracterization of law, mere possession of a License under the AWA is not a shield to liability under the ESA. Moreover, Plaintiffs allege violations of the ESA, as opposed to violations of the terms of any permits issued to Defendants. Such claims are proper under the ESA. *Hill v. Coggins,* 2014 U.S. Dist. LEXIS 8277, *5 (W.D.N.C. May 27, 2014).

---

[1] When Defendants cited this provision of the Code of Federal Register, they used ellipses to omit the following qualifying text with regard to the exemption for the provision of veterinary care: "confining, tranquilizing, or anesthetizing, when such practices, procedures, or provisions are not likely to result in injury to the wildlife." *See* Defendants' Memorandum of Law (ECF No. 28-2 at 7).

Plaintiffs have identified facts that overwhelmingly show that Defendants do not meet, let alone exceed, AWA requirements. Notably, Plaintiffs identified repeated, documented, and detailed AWA violations. *See* ECF No. 21- 7. Indeed, so egregious are Defendants' shortcomings that APHIS took enforcement actions against Defendants, in spite of Defendants' continuous possession of a License. ECF No. 21-1 at ¶ 14. Neither does continuous possession of a License, and the annual renewals that it entails, automatically mean a facility is continuously compliant with the AWA since a facility need not prove AWA compliance to obtain a license *renewal*. *See Animal Legal Defense Fund v. Vilsack,* 2015 U.S. App. LEXIS 10036 at * 13-14, 27 (11th Cir. June 15, 2015) (licensee need prove AWA compliance only at *initial issuance*, not at time of renewal) (emphasis added); P. Supp. App. Ex. 14 at 0787.

Despite a decade of negative APHIS inspection reports, Defendants attempt to raise a dispute of fact by casting a cloud of "inconsistency" over the reports. *See* ECF No. 28-2 at 10. This is another red herring meant to distract the Court from Defendants' history of chronic noncompliance with the AWA. *See* ECF Nos. 21-7; 21-8. Furthermore, Defendants misread two of the four partial inspection reports provided to the Court. ECF No. 28-5 at 16, 19. Those reports were generated after "focused inspections" conducted by APHIS following up on specific previously noncompliant issues. *Id.* at 16 (this is a focused inspection to address the Direct Non-compliant items listed on the May 21, 2014, inspection report); *id.* at 19 (noting that the inspector only viewed the primate enrichment plan). The remaining two reports indicating compliance on specific dates in 2008 and 2009 do not mitigate the myriad violations of the AWA Defendants accrued over the past six years.

Finally, Defendants include several appeal letters from Ms. Sellner to APHIS wherein she attempts to contest citations for AWA violations. ECF No. 28-5 at 9-25. None of these letters raises an issue of material fact. When a court evaluates compliance with the AWA for purposes of analyzing "harassment" or "harm" under the ESA, a Defendant's opinion about the fairness of underlying agency findings matters not at all. *See* 16 U.S.C. §§1538(a)(1)(B) (prohibiting "take"); 1532(19) (defining "take"); 50 C.F.R. § 17.3 (defining "harass" and "harm").

3

Furthermore, Defendants failed to attach APHIS's *responses* to the appeal letters, denying each appeal as meritless and reinforcing the agency's repeated requests to correct the documented violations. P. Supp. App., Ex. 12 at 0733-0739.

   3. **Facts identified by state and county authorities are irrelevant because neither has jurisdiction to enforce the Endangered Species Act or Animal Welfare Act.**

The Iowa Department of Agriculture and Land Stewardship (IDALS) lacks jurisdiction and enforcement authority over the Zoo and has consistently advised Plaintiffs and Defendants that the Zoo is a USDA facility not subject to IDALS' authority. *See* Iowa Code § 717F.7(20)(a) (exempting USDA-licensed facilities from the prohibition on dangerous wild animal ownership and from IDALS jurisdiction); *see* ECF No. 21-29 ¶¶18, 21; ECF No. 21-26 at ¶¶16-17. Upon a complaint, IDALS can inspect a facility. Iowa Code § 717F.7(20)(b). However, IDALS inspectors target criteria different from that of the AWA or the ESA, and IDALS staff are not trained to evaluate any criteria regarding exotic species. For example, on July 24, 2012, IDALS investigated the Zoo and concluded that no "standard of care" issues existed at that time. ECF No. 28-5 at 36; *see also* ECF No. 21-26 ¶¶ 16-17. In the months immediately preceding and following the July 2012 IDALS inspection, however, APHIS inspectors cited the Zoo for more than *twenty* AWA violations and ultimately assessed $6,857 in fines against the Zoo for these violations. ECF No. 21-7, Ex. 2 at 0077-0087. Similarly, county law enforcement has no authority under the ESA or AWA. Thus, any facts from IDALS or county law enforcement that Defendants rely upon to support their Resistance are irrelevant to Plaintiffs' motion.

   4. **The Gray Wolves are endangered species subject to ESA jurisdiction.**

Plaintiffs agree that portions of Iowa are not included in the U.S. Fish and Wildlife Service's (FWS) geographic habitat designation for gray wolves, but habitat designation as a function of the ESA for wild animals not at issue in this case. To the contrary, the ESA Section 9 prohibition on the "take" of a listed species runs with the species. The ESA specifies that it is unlawful for any person "subject to the jurisdiction of the United States" to "take any [listed] species *within the United States* or the territorial sea of the United States" or "deliver, receive,

carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity, *any species*." 16 U.S.C. § 1538(a)(1)(B), (D) (emphases added); *see also* FWS Final Policy on Interpretation of the Phrase "Significant Portion of Its Range" in the Endangered Species Act's Definitions of "Endangered Species" and "Threatened Species," Fed. Reg. Vol. 79, No. 126 at 37583 (July 1, 2014) (P. Supp. App. Ex. 14 at 0744-0779) ("the protections of the Act are applied to the species itself, and not the 'range' in which it is found"). To maintain otherwise would create the absurd result that persons could avoid liability under the ESA merely by confining an endangered species on one side of the highway as opposed to the other. Furthermore, to speak of "range" with respect to *captive* wildlife is nonsensical, since to confine a gray wolf in northern Iowa does not automatically render such an individual a member of the regional protected gray wolf population.

Moreover, extending ESA protections to hybridized gray wolves[2] would not bring the "common dog" within the scope of the ESA precisely because the common dog is not hybridized with the gray wolf. Rather the common dog is a subspecies, not protected under the ESA nor hybridized with any protected species. Defendants' attempt to escape liability under the ESA by insisting that their wolves are hybridized is precisely the scenario that at least one federal court has sought to foreclose. *See U.S. v. Kapp*, 2003 U.S. Dist. Lexis 21169 (N.D. Ill. Nov. 4, 2003).

5. **Plaintiffs respectfully withdraw their motion for summary judgment against Defendants regarding the "African" lions.**

Plaintiffs agree that the African lion is not yet formally listed as threatened or endangered. Plaintiffs cannot assure the Court that African lions will be listed by the time this Court renders an opinion on summary judgment and ask that the Court hold over the issue of whether the Defendants' lions are "African" or "Asiatic" for trial.

---

[2] Defendants did give Plaintiffs permission to obtain DNA testing of the wolves at the Zoo, but in Spring 2015 Plaintiffs could not obtain any assurances from testing laboratories that Plaintiffs could obtain the results by this Court's October 2015 trial date. In any event, as Plaintiffs have argued, the genetic composition of Defendants' alleged "75% wolves" is immaterial because the wolves are part of the protected species *Canis lupus*.

Dated: June 29, 2015                     Respectfully submitted,

<u>*/s Daniel J. Anderson*</u>
Daniel J. Anderson (IA Bar No. 20215)

danderson@wertzlaw.com
WERTZ & DAKE
1500 Center St. NE #101
Cedar Rapids, IA 52402-5500
319.861.3001

<u>*/s Jessica L. Blome*</u>
Jessica L. Blome (*pro hac vice*)
Missouri Bar No. 59710
jblome@aldf.org

Jeff Pierce (*pro hac vice*)
California Bar No. 293085
jpierce@aldf.org
ANIMAL LEGAL DEFENSE FUND
170 E. Cotati Avenue
Cotati, CA 94931
707.795.2533

ATTORNEYS FOR PLAINTIFFS