IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRACEY K. KUEHL, et al., | ) |
| | ) Case No. C14-02034-JSS |
| Plaintiffs, | ) |
| | ) **PLAINTIFFS' REPLY TO** |
| v. | ) **DEFENDANTS' ADDITIONAL** |
| | ) **STATEMENT OF MATERIAL** |
| PAMELA SELLNER, et al., | ) **FACTS** |
| | ) |
| Defendants. | ) **(ECF NO. 28-2 at 17-24)** |
| | ) |

**PLAINTIFFS' REPLY TO DEFENDANTS' ADDITIONAL STATEMENT OF MATERIAL FACTS (ECF NO. 28-2 AT 17-24)**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.d., Plaintiffs Tracey K. Kuehl, Lisa K. Kuehl, Kristine A. Bell, Nancy A. Harvey, John T. Braumann, and the Animal Legal Defense Fund, by and through their attorneys Daniel J. Anderson, Jessica L. Blome, and Jeff Pierce, hereby respectfully submit the following Reply to Defendants' Additional Statement of Material Facts In Support Of Their Resistance to Plaintiffs' Motion for Summary Judgment. ECF No. 28-2 at 17-24.

1. Admit in part and deny in part. Plaintiffs deny that the Zoo is a "labor of love" as this statement does not tend to make any fact necessary for Plaintiffs to prove their Endangered Species Act (ESA) claims any more or less probable and is of no consequence in determining whether a genuine issue remains for trial. *See* Fed. R. Evid. 401 [hereinafter FRE]. As to Defendants' statements that the Zoo is not a money-making enterprise, Plaintiffs admit these statements. *See* ECF No. 21-1 (Plaintiffs' Statement of Material Facts at ¶¶ 88-97 [hereinafter PSF]).

2. Admit in part and deny in part. Admit that the Zoo is inspected by the U.S. Department of Agriculture, APHIS Division, and that the Zoo is licensed under the Animal Welfare Act. Deny that veterinarians always inspect the Zoo, as inspection records indicate that at

1

least some inspections were conducted by APHIS Animal Care Inspectors, who are not Doctors of Veterinary Medicine. ECF No. 21-7, Ex. 2 at 0066-0071.

3. Admit.

4. Admit. In further answering, in addition to Defendant Pamela Sellner's admission that large carnivores, including servals, drive the majority of zoo visitors to the Zoo (PSF at ¶ 117), Defendant Tom Sellner also confessed that losing the tigers "would kill a lot of [zoo] traffic" (ECF No. 21-15, Ex. 7 at 0498-0459 (Tr. T. Sellner at 58:18)) and that many children come to see the lions and tigers. *Id.* at 0498 (Tr. T. Sellner at 58:22-59:10). Further answering, the Zoo's purpose does not tend to make any fact necessary for Plaintiffs to prove their claims any more or less probable, and is of no consequence in determining whether a genuine issue remains for trial. FRE 401.

5. Deny. Plaintiffs deny all of the Defendants' characterization of Plaintiffs' visits to the Zoo and contacts with authorities as a "series" of actions "that have been meant to harass the Sellners." Plaintiffs' advocacy work has focused entirely on administrative channels. *See, e.g.,* ECF No. 21-18 through 21-21 (Plaintiffs' complaints and photographs submitted to authorities). Plaintiffs qualify the Defendants' claim of "harassment" by stating that a Delaware County Sheriff's July 22, 2012, report supports a conclusion that the *Plaintiffs* were being harassed, not the Defendants. *See* ECF No. 28-4 at 92-94 (Sheriff called to Zoo at Defendants' request to investigate women taking of "suspicious" photographs and noting that the women had not done anything "unpermitted," yet he ran the women's license plates, advised them not to post lawfully taken photographs if they were going to be "negative," and asked them for consent to search their phones). Furthermore, the facts in Paragraph 5 and the subparagraphs (A) – (E) do not tend to make any fact necessary for Plaintiffs to prove their claims any more or less probable, and are of no consequence in determining whether a genuine issue remains for trial. FRE 401.

  A. Admit.

  B. Admit.

  C. Admit in part and deny in part. Admit that Plaintiffs visited the Zoo. Deny that Plaintiffs traveled into areas that are off limits to the public. Plaintiffs' Supplemental Appendix Ex. 11 at 0728 (Tr. Harvey at 18:7-19:22) [hereinafter P. Supp. App. Ex.]; P. Supp. App. Ex. 11 at 0727 (Tr. Bell at 15:10-16:2). Plaintiffs further qualify their admission by stating they only visited the Zoo at times when the Zoo was open to the public. ECF No. 21-24, 25, 26, 28, 29; ECF No. 28-7.

  D. Admit.

  E. Admit in part and deny in part. Admit that Plaintiff Tracy Kuehl contacted the referenced government authorities, but deny that those authorities "declined" to take any action. Rather, the authorities advised Ms. Kuehl that other government agencies had jurisdiction and directed her to raise her grievances with them. P. Supp. App. Ex. 11 at 0729-0732 (Tr. T. Kuehl at 20:3-32:10).

6. Admit.

7. Deny. The evidence in this matter describing the lions as "African" is only provided by the Defendants' own testimony and records. Defendants' assertion that the lions are African, and Plaintiffs' assertion that the lions, whether African or Asiatic and subject to the ESA, is a contested fact in light of the African lion's imminent listing as threatened. Consequently, Plaintiffs have withdrawn the lions from consideration on summary judgment. *See* Plaintiffs' Reply Brief, § 6.

8. Deny. Whether the serval is an endangered Barbary serval is a disputed fact. Plaintiffs specifically excluded the Defendants' serval from its motion for summary judgment. ECF No. 21-2 at n. 1.

9. Deny. The Defendants' evidence to support their claim that the "dog/wolf hybrids" are not endangered gray wolves consists predominantly of Defendants' own testimony and

records prepared by the Defendants.  ECF No. 28-2 at 20, ¶9.  This evidence does not tend to make a fact of consequence more or less probable, and is therefore inadmissible and does not rebut the evidence set forth by Plaintiffs' in their Statement of Material Facts.  FRE 401; PSF at ¶¶7-8.  Further answering, the individual Plaintiffs are not experts in species identification, and Defendants' statements as to the individual Plaintiffs' observations are irrelevant.  Plaintiffs object to Defendants' statement "almost every domestic dog would be covered under that Act."  Defendants' statement grossly overstates the findings of *U.S. v. Kapp*, 2003 U.S. Dist. Lexis 21169 (N.D. Ill. Nov. 4, 2003).

10. This statement is not an allegation of fact but rather a conclusion of law that cannot be admitted or denied.  Plaintiffs have addressed the failings of Defendants' legal argument in their Reply Brief.  *See* Plaintiffs' Reply Brief, § 5 (ESA protection runs with the species).

11. Admit in part and deny in part.  Admit Defendants' statements in Paragraph 11, except Plaintiffs deny the Defendants' conclusion that the animals have been transferred "pursuant to U.S. Government Regulation."  ECF No. 21-2 at 28-30; PSF at ¶¶110-118.  In further answering, Plaintiffs admit that the Defendants may have complied with the transportation regulations set forth in the Animal Welfare Act (AWA), 7 U.S.C. § 2131 *et seq.*, but state that compliance with the AWA does not satisfy the ESA requirement to obtain an interstate commerce permit where appropriate and necessary.  ECF No. 21-2 at 28-30; PSF at ¶¶110-118.  The allegations set forth in Paragraph 11 do not tend to make any fact necessary for Plaintiffs to prove their claims any more or less probable and are of no consequence in determining whether a genuine issue remains for trial.  FRE 401.  Finally, in Paragraph 11, Defendants make some representations about the location of the sellers of Defendants' tigers.  Plaintiffs note that none of Defendants' AWA paperwork (ECF 21-10, Ex. 4 at 0283-0286) indicates that any of the animals came from Texas

4

"drug houses," as Defendants claim in their Resistance to Plaintiffs' Statement of Material Facts at Paragraph 53. ECF 28-2 at ¶ 53.

12. Deny. Defendants' tiger enclosures do not "all" exceed "U.S.D.A. minimum requirements[.]" PSF at ¶¶ 58, 61-63.[1] Further answering, USDA minimum requirements address more than cage size. *See* ECF No. 21-2 at 23-25. Further answering, the issue of tiger nutrition is not contested by the Plaintiffs and is not relevant because it does not have the tendency to make a fact of consequence more or less probable, and is therefore inadmissible. FRE 401. The Defendants' claim that the tigers' coats "show their health" is irrelevant and not dispositive of the issue of whether the Defendants harm or harass their endangered species through other conduct and whether the animals' overall health (and not just their coat health) is adequately maintained through diet. Moreover, the photographs Defendants cite to in support of this statement are not authenticated and at least one photograph is a decade old. ECF No. 28-5 at Ex. X at 12 (photograph of tiger dated Oct. 21, 2005); *see also* Plaintiffs' Motion to Exclude Paragraph 45 of the Affidavit of Pamela Sellner and Defendants' Exhibits X and AA.

13. Deny. The lemur cages fail to meet *all* of the standards set forth in the AWA, which encompass qualitative criteria in addition to size criteria. ECF No. 21-2 at 23-25; PSF at ¶¶34-39, 42-47; ECF No. 21-32 at ¶7. Further answering, the statements set forth by Defendant Pamela Sellner in her Affidavit (ECF No. 28-7 at ¶¶ 16-24) are the only evidence Defendants have produced to rebut the testimony of Plaintiffs, Plaintiffs' experts, and the USDA inspection records proffered by Plaintiffs regarding the lemurs' living conditions. *See* Plaintiffs' Reply Brief § 4. In further answering, Defendants'

---

[1] Defendants state that Plaintiffs included an incorrect citation in their Statement of Material Facts; that this statement is "attempting to mislead the Court;" and that the cited APHIS inspection report says "nothing" relating to excessive flies on the Big Cats, their bedding and food, and large amounts of animal waste. *See* ECF No. 28-1 at ¶58. Plaintiffs mistakenly cited to page 0258 of the August 5, 2014, report instead of page 0260 of the same report. Page 0260 states "There are an excessive number of flies present throughout the entire facility[]"; that the flies are present in the tiger and lion enclosures; and that "Flies can be seen landing on the animals, bedding, food and animal waste." ECF No. 218 at Ex. 2 at 0260. Plaintiffs' typographical error in page numbering was not to "mislead" the Court.

attempt to raise an issue of fact in their Resistance to Plaintiffs' Statement of Material Facts by creating confusion over how many lemurs reside at Defendants' Zoo. Plaintiffs accept Defendants' admission that five lemurs have died at the Zoo, and three lemurs currently reside at the Zoo. ECF No. 28-1 at ¶¶23, 32. Plaintiffs state that five lemurs' deaths at the Zoo is more than sufficient to show there is no genuine issue of material fact that Defendants' actions have harassed and harmed the lemurs.

14. Deny. The overall conditions at the Zoo and the animal husbandry practices towards other animals are directly related to the health and well-being of the Zoo's endangered species. *See* ECF No. 21-2 at 25-31; PSF at ¶¶83-99. Further answering, the effects of the lack of sanitation noted by APHIS inspectors throughout the entire facility do not simply "stop" at the threshold of an endangered species' enclosure. The evidence indicates every category of animal, reptile, bird, or equine at the Defendants' Zoo has, at one time or another, been cited by APHIS for violations of the minimum animal husbandry practices. PSF at ¶¶98-99. The demands on Defendants' time and financial and human resources to care for their other animals necessarily decrease the time and resources available for the care of endangered species. PSF at ¶¶ 83-85.

15. This statement is not an allegation of fact but rather a conclusion of law that cannot be admitted or denied. Notwithstanding, Plaintiffs deny as to the statement that "Plaintiffs can point to no instances that show any harm to any animal that is endangered." *See* PSF at ¶21 (approximately 14 animals Plaintiffs contend are "endangered" have died at the Zoo since 2010); ¶32 (lemurs have died at the Zoo since 2005); ¶¶50-51 (several big cats have died "suddenly" at the Zoo); ¶64 (wolves have died at the Zoo); ¶¶35-37, 63, 74 (enrichment for endangered species is lacking and natural behaviors interrupted); ¶¶37, 42-46, 58-59, 62, 69, 72 (sanitation conditions in endangered species' enclosures is contrary to animal husbandry practices); ¶¶40-41, 51-55, 60, 65-68 (veterinary, preventative, and diagnostic care for endangered species limited); ¶¶15-20 (USDA

inspections at Zoo identified "chronic" problems); ¶¶98-99 (general sanitation and cleanliness problems at the Zoo); ¶¶100-109 (attending veterinarian care's at Zoo does not rise to level necessary to properly care for 300 animals). Plaintiffs have addressed Defendants' legal arguments in their Brief in Support of the Motion for Summary Judgment. *See* ECF No. 21-2 at 13-31.

16. Deny. Defendants are without factual support to confirm whether any APHIS inspector has or has not reported ESA violations. Further answering, Plaintiffs note that the ESA defines the U.S. Department of the Interior and the Secretary of Commerce as the "Secretary," and the USDA's enforcement authority under the ESA is statutory limited to the importation or exportation of terrestrial plants. 16 U.S.C. § 1532(15). Thus, USDA and its APHIS inspectors do not have jurisdiction or authority to enforce the ESA and therefore do not evaluate licensed exhibitors for compliance with the ESA. Plaintiffs further answer that APHIS has cited the Defendant for numerous AWA violations, which the Defendants unsuccessfully appealed. *See* P. Supp. App. Ex. 12 (denying Ms. Sellner's administrative appeals of AWA violations in August 27, 2014, June 23, 2014, July 11, 2013, August 29, 2013, and December 26, 2012).

17. Deny. In approximately 2011, during the feeding process, the tiger Sherekhan escaped an enclosure and attacked Defendant Tom Sellner. ECF No. 21-15, Ex. 7 at 0491-0492 (Tr. T. Sellner at 31:22-33:7). APHIS inspectors have cited the Zoo for inadequate enclosures for several animals, including the tigers and lions. PSF at ¶¶58, 61-63. Ms. Sellner herself reported to APHIS that at least one animal, a baboon, escaped its cage and was "at large". ECF No. 21-7, Ex. 2 at 0062-0064. On another occasion and during an APHIS inspection, a baboon escaped its enclosure. ECF No. 21-6, Ex. 1 at 0024-0029.

18. Admit.

19. Admit in part and deny in part. Admit that the Defendants' tigers have been raised in captivity. Deny that captive tigers "do not have the behaviors of wild tigers." ECF No.

21-31, Affidavit of Dr. Jennifer Conrad at ¶¶27-29. Admit that the Defendants' tigers would not be able to exist in a wild environment. Deny the statement that Defendants' tigers "have lived much longer than they would have if they had been living in the wild." Some of Defendants' tigers have died at very young ages. *Id.* at ¶7. Denied also to the extent this statement implies Defendants' tigers live as long as captive tigers can live under conditions compliant with the minimum requirement of AWA standards. *See id.* The facts show that the tigers' care at the Zoo can harm or harass them. *See* PSF¶¶ 49-63.

20. Deny. Further answering, on numerous occasions, USDA inspectors have cited Defendants for employing too few zookeepers or other staff or volunteers to care for the animals in their inventory. PSF at ¶84. On at least two occasions, USDA recommended that the Zoo reduce its animal inventory as an appropriate method of addressing staffing shortages. *Id.*

21. Admit in part and deny in part. Admit that Dr. Pries is the veterinarian for the Zoo, he has practiced for close to 20 years, and that he apparently volunteered his time to help the Defendants in this lawsuit. Deny in part and admit in part that Dr. Pries has "treated and/or examined most of the animals at the Zoo," as Dr. Pries' three pages of veterinary records over nine years "speak for themselves." ECF No. 21-10, Ex. 4 at 0290-0292.

22. Admit in part and deny in part. Plaintiffs admit Paragraph 22 except Plaintiffs object to the allegations contained in the last sentence. Dr. Pusillo's reasons for taking photographs are irrelevant. In further answering, Dr. Pusillo's deposition testimony, on which Defendants purport to rely directly, contradicts Defendants' claim. While Defendants claim that Dr. Pusillo "has often taken photos of the animals at the Zoo because of their superior condition," Dr. Pusillo himself testified that "[t]he way I took notes is I take photographs," and stated further that "[t]here's a number of things that are indicated by photographs, and notes sometimes don't always describe the situations as

well as the photograph." ECF No. 28-6 at 72 (Plaintiffs note that Dr. Pusillo only brought one of the photographs Defendants have included Exhibit X to his deposition). Plaintiffs have contemporaneously with their Reply filed a Motion to Exclude the photographs contained at the referenced "Exhibit X" because they were not authenticated and should not be considered on summary judgment. *See* Plaintiffs' Motion to Exclude Paragraph 45 of the Affidavit of Pamela Sellner and Defendants' Exhibits X and AA.

23. Admit in part and deny in part. Admit that the Zoo animals receive meat from landfill contract arrangements, DNR-donated carcasses, or food that is past the sell-by date but may still be fit for animal consumption. Deny that the animals are "well-fed" and receive nutritious food. The record demonstrates that some of the animals are at times skinny with bones showing, that the food given to them may be contaminated, and has been fly-ridden or rotting because it has been left out in the enclosure for too long. PSF at ¶¶60, 62; ECF No. 21-24 at ¶9. The record also demonstrates, on Defendants' own admission, that at least one animal died of a foodborne illness. ECF No. 21-9 at 6 (Luna, a tiger, reportedly died of *E. coli*).

24. This statement is not an allegation of fact but rather a conclusion of law that cannot be admitted or denied. Notwithstanding, Plaintiffs deny that no animals covered by the ESA has been injured or killed by the actions of the Defendants. Plaintiffs have demonstrated that no genuine issue of material fact exists regarding their claims against Defendants for violating the Endangered Species Act.

Dated: June 29, 2015                    Respectfully submitted,

*/s Daniel J. Anderson*
Daniel J. Anderson (IA Bar No. 20215)
danderson@wertzlaw.com
WERTZ & DAKE
1500 Center St. NE #101
Cedar Rapids, IA 52402-5500
319.861.3001

*/s Jessica L. Blome*
Jessica L. Blome (*pro hac vice*)
Missouri Bar No. 59710
jblome@aldf.org
ANIMAL LEGAL DEFENSE FUND
170 E. Cotati Avenue
Cotati, CA 94931
707.795.2533

*/s Jeff Pierce*
Jeff Pierce (*pro hac vice*)
California Bar No. 293085
jpierce@aldf.org
ANIMAL LEGAL DEFENSE FUND
170 E. Cotati Avenue
Cotati, CA 94931
707.795.2533

ATTORNEYS FOR PLAINTIFFS