# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRACEY K. KUEHL, an individual; <br> LISA K. KUEHL, an individual; <br> KRISS A. BELL, an individual; <br> NANCY A. HARVEY, an individual; <br> JOHN T. BRAUMANN, an individual, <br> and; ANIMAL LEGAL DEFENSE <br> FUND, a non-profit corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> PAMELA SELLNER, an individual; <br> TOM SELLNER, an individual; and <br> CRICKET HOLLOW ZOO, a <br> non-profit corporation, <br><br> Defendants. | Case No. C14-2034-LRR <br><br> DEFENDANTS, PAMELA SELLNER, TOM SELLNER, and CRICKET HOLLOW ZOO'S TRIAL BRIEF |

Larry J. Thorson  #AT0007976
ACKLEY KOPECKY & KINGERY, L.L.P.
4056 Glass Road, NE
Cedar Rapids, IA 52402
Ph: (319) 393-9090  Fax: (319) 393-9012
Email: lthorson@akklaw.com
Attorney for Pamela Sellner, Tom Sellner, and Cricket Hollow Zoo

# TABLE OF CONTENTS

I. FACTUAL INTRODUCTION ........................................................................................... 1

II. THE ENDANGERED SPECIES ACT, 16 U.S.C. § 1531 ET SEQ. AND THE ANIMAL WELFARE ACT, 7 U.S.C. § 2131 ET SEQ. ............................................................ 2

III. ARGUMENT ................................................................................................................... 4

   i. Plaintiffs Lack Standing ............................................................................................ 4

   ii. Plaintiffs Cannot Bring Action for Animals Not Covered by Endangered Species Act ................................................................................................................................. 6

   iii. The Defendants Have Not Violated the Endangered Species Act ......................... 6

      A. The Lemurs Are Not Harassed or Harmed ................................................. 8

      B. The Tigers Are Not Harassed or Harmed .................................................. 8

      C. The Gray Wolf is Not Endangered and Defendants Do Not Have Any Gray Wolves ....................................................................................................................... 9

      D. The Zoo Enclosures Meet or Exceed Animal Welfare Act Requirements ... 10

   iv. The Defendants Are Able to Care for Their Animals ............................................ 11

   v. The Defendants do not Traffic in Endangered Species ............................................ 13

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*ALDF et al. v. United States Department of Agriculture et al.*, Case Number 14-12260, filed
    June 15, 2015..................................................................................................................3
*Babbit v. Sweet Home Chapter, Communities for Greater Ore.*, 515 U.S. 687, 692 (1995)..........7
*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842-43 (1984) 4
*Glickman v. Animal Legal Defense Fund*, 153 F.3d 426, 445 (D.C. Dist. 1998) ..........................5
*In Defense of Animals v. Cleveland Metroparks Zoo*, 200, 785 F. Supp. 100, 103 (N.D. Ohio
    1991) ...............................................................................................................................5
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-563 (1992)................................................ 4, 14
*National Wildlife Federation v. Burlington Northern Railroad, Inc.*, 23 F. 3d 1508 (9th Cir.
    1994) ...............................................................................................................................7
*Stathan v. Linnon*, 967 F.Supp. 581,630 (D. Mass. 1997)..............................................................7
*U.S. v. Kapp*, 2003 U.S. Dist. Lexis 21169 (N.D. Ill Nov. 4, 2003) ............................................9

## STATUTES

16 U.S.C. § 1532(19 .......................................................................................................................3
16 U.S.C. § 1538 (a)(1)(B) ...........................................................................................................13
16 U.S.C. § 1538(a)(1)(A)-(B) .......................................................................................................3
16 U.S.C. § 1538(a)(1)(C)............................................................................................................13
16 U.S.C. § 1538(a)(1)(D) ...........................................................................................................13
16 U.S.C. § 1538(d) .....................................................................................................................13
50 C.F.R. § 17.3................................................................................................................... 4, 7, 13
9 CFR § 3 .......................................................................................................................................3
Animal Welfare Act, 7 U.S.C. § 2131 ....................................................................................... 2, 4
Endangered Species Act, 16 U.S.C. § 1531................................................................................passim
Pub. L. No. 107-171 (1990) AWA (116 Stat.) 134 .......................................................................3
Title 9 of the Code of Federal Regulations §§ 1.1-4.11................................................................3

## OTHER AUTHORITIES

*Animal Species of the World*, Wilson & Reeder (2 d.ed., 1993) p. 576 .....................................10
*animaldiversity.org* ......................................................................................................................10
CITES Treaty (the Convention on International Trade in Endangered Species of Wild
    Fauna and Flora) ..........................................................................................................13
U.S. Fish & Wildlife Service: Environmental Conservation Online System.....................10

# I. FACTUAL INTRODUCTION

The Plaintiffs have alleged that under the Endangered Species Act, 16 U.S.C. § 1531 et seq. (hereinafter sometimes referred to as (ESA) the Defendants, Pamela Sellner, Tom Sellner and Cricket Hollow Zoo have violated two provisions of that Act. The individual Defendants, Pamela Sellner and Tom Sellner have run a nonprofit Iowa zoo, Cricket Hollow Zoo (hereinafter "Zoo"), located near Manchester, Iowa since 2005. Prior to that time, the Zoo was unincorporated. Defs. Exh. D, pp. 1-2. The Sellners have run this Zoo for the community and educational reasons to allow the public in Eastern Iowa to see animals they normally wouldn't be able to see. The Plaintiffs have taken a series of actions including contacting the United States Department of Agriculture (APHIS Division), contacting the local Sheriff's Department numerous times, contacting Senators, Congressman, the Delaware County Board of Supervisors, the Iowa Department of Agriculture, the Mayor of Manchester, and numerous other authorities about alleged violations at the Zoo.

The Defendants have had to call the Delaware County Sheriff because of the actions by some of the Plaintiffs that caused the Defendants concern about the intentions of the Plaintiffs when they were at the Zoo. The Plaintiffs have visited the Zoo in various combinations and with various other individuals during 2012 and 2013

1

during which time they have violated the Zoo's policies by taking hundreds (if not thousands) of photographs and videotaped various animals. The Plaintiffs have descended upon this Zoo and the Sellners in a well-orchestrated effort to distort what is going on at the Zoo and paint a picture that is not representative of the Zoo or the Sellners. This includes campaigns to give bad reviews to the Zoo in any media where those reviews can be printed (certainly allowable under Iowa law).

## II. THE ENDANGERED SPECIES ACT, 16 U.S.C. § 1531 ET SEQ. AND THE ANIMAL WELFARE ACT, 7 U.S.C. § 2131 ET SEQ.

Prior to passing the Endangered Species Act (passed in 1973), Congress passed (in 1970) the Animal Welfare Act (hereinafter referred to as the AWA), 7 U.S.C. § 2131 et seq. The AWA gives the Secretary of Agriculture the authority to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals...." 7 U.S.C. § 2131. The AWA is the only Federal law that regulates the treatment of animals in exhibition and transport. There may be other laws for certain species but all refer to the AWA as the acceptable minimum standard.

The regulations as set forth by the USDA for exhibitors are entitled to deference and the "expert" testimony offered by the Plaintiffs does not override the standards set forth by the AWA and the accompanying regulations. APHIS officers, almost always veterinarians, have rarely remarked about any conditions affecting any animal that is an

2

endangered species – and the only endangered species are lemurs and tigers at the Sellners facility.

The regulations promulgated by the Secretary of Agriculture can be found in Title 9 of the Code of Federal Regulations §§ 1.1-4.11. Part 3 contains the specifications for the handling, treatment, and transportation of animals covered by the AWA. The term "animal" only refers to warm-blooded animals and does not cover, among other things, birds, livestock or poultry. Pub. L. No. 107-171 (1990) AWA (116 Stat.) 134.

Most zoo animals are regulated under 9 CFR § 3, Subpart F which lists the specifications for handling, care, treatment, and transportation of "animals" as that term is defined under the AWA. The Zoo is a class C exhibitor licensed by the Department of Agriculture under this Act. See Defs. Exh. R. The AWA defines the term "exhibitor" under 7 U.S.C. § 2132(h). In a recent decision by the 11th Circuit Court of Appeals (*ALDF et al. v. United States Department of Agriculture et al.*, Case Number 14-12260, filed June 15, 2015), the Court stated that "...the AWA licensing scheme is entitled to deference by this court." (Page 3 of the decision, to be published).

The Endangered Species Act, 16 U.S.C. § 1531 et seq., passed in 1973 by Congress does not regulate possession of endangered or threatened species, nor the welfare of those species that are possessed. 16 U.S.C. § 1538(a)(1)(A)-(B). It regulates the movement of those species only when interstate commerce or a "take" is involved. 16 U.S.C. § 1532(19). The word "harass" in the term "take" is defined in § 3 of the ESA as

3

"an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns, which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3. The same regulation goes on to exempt other practices including "(1) animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act, (2) breeding procedures, or (3) provisions of veterinary care..." 50 C.F.R. § 17.3. This means that only sale, transport, and husbandry acts by those not licensed under the Animal Welfare Act will be regulated under the Endangered Species Act.

Zoos can usually move animals between facilities without permits under the ESA because there is very little buying and selling of listed zoo animals and normal animal husbandry is exempt from the "take" provisions of the ESA (as set forth above). "If the intent of Congress is clear, that is the end of the matter, for the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842-43 (1984).

## III. ARGUMENT

### i. Plaintiffs Lack Standing

It is questionable that the Plaintiffs have standing to bring this cause of action. The quotation from the case of *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562-563 (1992)

4

used by the Plaintiffs that seems to indicate standing is conferred simply by viewing the animals is a misrepresentation of the Supreme Court's reference to standing. The Court went on to state that standing was not conferred in the case before it and stated that the fact that the women who claimed standing had "visited" the areas in question proved nothing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-563 (1992). The Court denied injunctive relief. *Lugan* stands for the proposition that one must suffer a concrete or discernible injury not a "conjectural or hypothetical" one to bring an action in federal court. The Plaintiffs' declarations submitted herewith do not contain any concrete or discernible injury – just anthropomorphic statements about cultural and spiritual bonds with animals that they saw for moments once or twice years ago. No injury is described with any meaningful detail with regard to the tigers and lemurs (the only animals related to this cause of action). See Plaintiffs' Statement of Material Facts paragraphs three through five for such allegations. The Plaintiffs have not presented sufficient evidence of standing to proceed in this matter.

The Plaintiffs have not plead or attempted to bring an action under the AWA (*See Glickman v. Animal Legal Defense Fund*, 153 F.3d 426, 445 (D.C. Dist. 1998)). They now appear to be attempting to try this case as if the AWA were at issue with each and every allegation in any inspection report at issue. *See also In Defense of Animals v. Cleveland Metroparks Zoo*, 200, 785 F. Supp. 100, 103 (N.D. Ohio 1991) (even if Plaintiffs have standing, there are numerous obstacles under the ESA and AWA to private suits).

5

## ii. Plaintiffs Cannot Bring Action for Animals Not Covered by Endangered Species Act

The Plaintiffs cannot bring an action for animals that are not endangered or threatened under the aegis of the Endangered Species Act 16 U.S.C. § 5131 et seq. The "gray wolves" that the Plaintiffs keep referring incorrectly to are wolf-dog hybrids. The USDA in their inspection reports consistently refer to them as wolf hybrids. The veterinarian for the Zoo, Dr. Pries, will testify that they are wolf hybrids. See J. Pries Dep. 134:23-25. The paperwork at the Zoo indicates they are wolf hybrids. The Defendants will testify that they are wolf hybrids. When asked by the Plaintiffs' counsel if she would allow them to be subject to genetic testing to see if they were wolf-dog hybrids, Pam Sellner stated yes—but the offer was not followed up on by the Plaintiffs – who apparently would rather rely on speculation and conjecture. The other thing the Plaintiffs ignore is that the gray wolf is not an endangered species in Iowa north of the centerline of Interstate 80. 50 C.F.R. § 17.11.

## iii. The Defendants Have Not Violated the Endangered Species Act

The Defendants do a lot for their animals and not only they but also Dr. Pusillo, a renowned nutritionist, has commented on how good the animals at the Zoo look. See CV of Dr. Pusillo, Defs. Exh. T, pp. 1-6, photos taken by Dr. Pusillo Defs. Exh. X, pp. 1-12 and G. Pusillo Dep. 111:1-112:20. The Zoo has had violations over time with regard to the AWA and this is evidenced by the inspection reports. It has also received

6

inspection reports with no violations. Defs. Exh. U, pp. 1-4. The IDALS reports where the Iowa inspector went along on these inspections however speaks to the general good condition of the animals at the Zoo. See IDALs reports, Defs. Exh. Y, pp. 1-10.

The Defendants cannot violate the ESA by simply possessing endangered wildlife and cannot be subject to any liability under the ESA because it is a class C exhibitor under the AWA and therefore under the ESA regulations is exempt. 50 C.F.R. § 17.3.

The Plaintiffs are right that no court has made any determination as to whether "harassing" a captive endangered species constitutes a "take" under the ESA and no court is likely to hold that a licensed USDA facility under the AWA can be found to have committed a "take." The cases cited by the Plaintiffs as instructive all involve potential damage to animals (or plants) in the wild by non-licensed defendants. *See Babbit v. Sweet Home Chapter, Communities for Greater Ore.*, 515 U.S. 687, 692 (1995) (respondents were small landowners, logging companies, and families dependent on the forest product industries); *Stathan v. Linnon*, 967 F.Supp. 581,630 (D. Mass. 1997)(U.S. Coast Guard on duty); *National Wildlife Federation v. Burlington Northern Railroad, Inc.*, 23 F. 3d 1508 (9th Cir. 1994). (A railroad spilling grain along its tracks killed grizzly bears).

"Harm" is also defined in 50 C.F.R. § 17.3 to refer to actual injury or death in a "Take" but once again is exempted in this instance because the Zoo is a Class C exhibitor

7

under the AWA. The Plaintiffs have not and cannot confront the plain language of the regulations and the ESA to have it apply to the Defendants in this action.

## A. The Lemurs Are Not Harassed or Harmed

The Plaintiffs' claim that the lemurs are harassed and harmed fails for the reasons set forth above and also because it is not factually accurate. The Plaintiffs go to great lengths to refer to regulations under the AWA. The standards that the Defendants need to comply with are not those expounded by the Plaintiffs' witness, Klopfer, they are the standards contained in the AWA regulations. No inspector from the AWA has told the Defendants that they must remove the lemurs from their facility. When the AWA inspectors have pointed out problems to the Defendants they have corrected those problems by installing lights and other remedial measures. Once again the Plaintiffs rely on rank speculation. They claim that a lemur has died recently. This is not the case. Zaboo is still alive and well and Mrs. Sellner will testify to this.

## B. The Tigers Are Not Harassed or Harmed

The Plaintiffs lump all the Big Cats together in this Section. The African Lions are not endangered or threatened. The tigers, many of them have lived a long time at the Zoo. See Defs. Exh. H. One died recently because it was euthanized by Dr. Pries. (Defs' Exh. J, pp. 20-21, 7/1/2015). Again the only standards that matter in this instance are the standards that the United States Department of Agriculture has promulgated under its rule making capacity under the AWA and those standards have been

8

complied with most of the time. The USDA APHIS inspectors have never told the Defendants that they must remove the tigers from the Zoo. Tom Sellner will testify as to how the Big Cats come up to greet him in the early morning when he goes out to make his rounds at the Zoo. Dr. Pusillo has taken photos of the Big Cats because of the great condition of their coats. Defs. Exh. X, pp. 4-12. Again the standard is not what the Plaintiffs' expert, Conrad (an animal acupuncturist apparently) says it is – the only standard that counts is that set forth by the USDA in its regulations. Title 9 C.F.R. §§ 1.1-4.11 in particular Part 3.

## C. The Gray Wolf is Not Endangered and Defendants Do Not Have Any Gray Wolves

The Plaintiffs cannot use the ESA to complain about species that are not covered under the ESA. First the gray wolf is not endangered at the Zoo's location in Iowa. Manchester is north of the center line of Interstate 80. The gray wolf is not endangered in that portion of Iowa. 50 C.F.R. § 17.11. More importantly, these animals are dog/wolf hybrids. The Plaintiffs seem to be saying that every dog in America should be covered under the Endangered Species Act which will be news to a lot of dog owners. Wolf hybrids owned by the Zoo have lived long lives at the Zoo. The USDA has never told the Defendants that they cannot exhibit wolf hybrids at the Zoo. The case of *U.S. v. Kapp*, 2003 U.S. Dist. Lexis 21169 (N.D. Ill Nov. 4, 2003) does not stand for the proposition that the gray wolf is protected even if it is a hybridized with a dog. This

9

would be a ludicrous position and would lead to ESA protection for almost all dogs in the United States, including dogs that were specifically bred from wolves.

The classification for the species *canis lupus familiaris* or the common or familiar dog was reclassified in 1993 as an extremely close relative of the gray wolf. *See Animal Species of the World, Wilson & Reeder* (2 d.ed., 1993) p. 576. *animaldiversity.org* (University of Michigan, Museum of Zoology). As genetics has advanced so has classifications of species. This advance in genetics did not change the listing in the ESA which was still listed as the gray wolf (*canis lupus*) (first listed in 1978). (See U.S. Fish & Wildlife Service: Environmental Conservation Online System). Furthermore, the gray wolf has been delisted as endangered in certain areas by the U.S. Fish and Wildlife Service and the Service is proposing to delist nearly all the remaining wolves from protection under the ESA. (See U.S. Fish & Wildlife Service: Environmental Conservation Online System).

### D.  The Zoo Enclosures Meet or Exceed Animal Welfare Act Requirements

The enclosure sizes at the Zoo meet or exceed the size requirements of the AWA and there is no indication that they are inadequate because of size in the inspection reports. The standards that matter are those set forth by the USDA not what some expert considers a proper size or area. The enclosures at the Zoo have always met and most often exceeded the size requirements set forth by the USDA under the AWA and the Defendants will testify to this. The animals always have areas in their enclosures

that don't have feces. The behaviors supposedly witnessed by the Plaintiffs have all been explained by the Sellners as being natural and sometimes playful behaviors and are not an indication of any "psychological distress" in the animals mentioned. Two of the animals mentioned are not covered by the ESA in any event (the baboon and the wolf hybrid).

### iv. The Defendants Are Able to Care for Their Animals

The Plaintiffs go further out on the same limb when they claim that the Zoo commits harassment of animals because it fails to comply with minimum standards because of its "financial status" among other allegations. Mrs. Sellner will testify that this has never been an issue with the Sellners. See also inspection reports contained in Defs. Exh. U, pp. 1-4.

The Plaintiffs keep referring to the 300 animals in the Zoo and do not bother to mention to the Court that among that 300 count over 80 are birds, some are herd animals, and the endangered animals that are in question in this case number less than ten.

The allegation by the Plaintiffs that the Sellners only consider the children when they decide what animals they would like to bring to the Zoo tends to destroy the argument that they are somehow in this business for a profit. The Sellners also consider the practicality of having animals at their Zoo and take that into consideration.

11

The Plaintiffs also denigrate Mrs. Sellner's "self-taught" skills in dealing with animals – even though she has been in animal husbandry for 50 years. The Plaintiffs make the same financial arguments they made in their Statement of Undisputed Material Facts that does not take into account that the Sellners are obtaining over one ton of food per week on a contract that basically benefits both the Sellners and the stores she obtains the meat and produce from who don't have to send perfectly good product to the landfill. The financial calculations of Plaintiffs' expert do not take into account that the animal count of 300 includes over 80 birds. The financial calculations do not take into account the fact that the Sellners could go to their bank and obtain credit at any time. The Plaintiffs' calculations do not take into account the fact that Mr. and Mrs. Sellner and a large group of volunteers spend thousands of hours each year at the Zoo gratis.

The Plaintiffs complain that Dr. Pries is not able to provide adequate veterinary care. The USDA has never stated this. Dr. Pries will testify that he has consulted with the Henry Doorly Omaha Zoo on issues he may not be that familiar with. Certainly the Plaintiffs are not arguing the Omaha Zoo is not a good resource or is unable to answer any questions he may have. Dr. Pries is not a veterinarian in name only. His office has performed operations on some of the animals at the Zoo. J. Pries Dep. 37:23-39:19. He also has signed off on enrichment plans and does an annual walk through of the Zoo with Mrs. Sellner. See Defs. Exhs. E, F, G, and M.

### v. The Defendants do not Traffic in Endangered Species

The Plaintiffs allege that Mrs. Sellner somehow violated the ESA by trafficking in endangered species. Mrs. Sellner always documented any transfer and always obtained the necessary permit. Mrs. Sellner will testify that when an animal was donated, that is exactly what was done and it was so noted on any necessary permit or form. This argument is rank speculation without a shred of evidence and bald assertions of wrongdoing. The Plaintiffs claim that 16 U.S.C. § 1538(a)(1)(D) somehow applies to the Sellners and Cricket Hollow Zoo presumably because the endangered animals at the Zoo were taken within the United States or upon the high seas and possessed by the Defendants. (See 16 U.S.C. § 1538 (a)(1)(B) and 16 U.S.C. § 1538(a)(1)(C). This, once again, ignores the exemption language that exempts the Defendants contained in 50 C.F.R. § 17.3 and also 16 U.S.C. § 1538(d). It is anticipated that the Plaintiffs will attempt to claim that the endangered animals (only the tigers) are big draws and therefore were transferred for consideration. There is a total lack of proof of this claim.

The CITES Treaty (the Convention on International Trade in Endangered Species of Wild Fauna and Flora) is an international Treaty to protect endangered animals and plants and went into effect on July 1, 1975. United States Fish & Wildlife Service, International Affairs. Each protected species under the Treaty is included in one of three lists known as Appendices. (Convention on International Trade in Endangered Species of Wild Fauna and Flora). Tigers are considered Appendix I species. Article VII

13

of CITES states that specimens of animals listed in Appendix I that are bred in captivity for commercial purposes are treated as Appendix II species. Most captive-bred animals (which all the animals at the Zoo are) are considered as Appendix II specimens. Mrs. Sellner will testify that she always complies with CITES whenever a transfer of any animal covered by CITES and applicable to the Zoo is made.

## CONCLUSION

Neither the Zoo nor Mr. or Mrs. Sellner have engaged in any actions in violation of the Endangered Species Act. The Zoo is subject to the jurisdiction of the USDA (APHIS) under the Animal Welfare Act – not the private cause of action brought by the Plaintiffs in this case. It also appears that the Plaintiffs lack standing to bring this action because they do not meet the litmus test set forth in the case of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63 (1992). The animals that the Plaintiffs mention in their Petition do not all come within the protection of the Endangered Species Act 16 U.S.C. § 1531 et seq. The Defendants pray that the Court dismiss the Plaintiffs' cause of action against and enter judgment in their favor herein, grant them attorney's fees and award them costs and such other relief as the Court deems just and equitable.

Dated this ____ day of September, 2015.

Respectfully submitted,

_____
Larry J. Thorson                    #AT0007976
ACKLEY KOPECKY & KINGERY, L.L.P.
4056 Glass Road, NE
Cedar Rapids, IA  52402
Ph: (319) 393-9090  Fax: (319) 393-9012
Email: lthorson@akklaw.com

Attorney for Defendants