1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA


TRACEY K. KUEHL, LISA K. KUEHL, )
KRIS A. BELL, NANCY A. HARVEY, )
JOHN T. BRAUMANN and          )
ANIMAL LEGAL DEFENSE FUND,     )
                               )
      Plaintiffs,              )
                               )    No. CV 14-2034
vs.                            )
                               )
PAMELA SELLNER, TOM SELLNER    )
and CRICKET HOLLOW ZOO,        )
                               )
      Defendants.              )


APPEARANCES:


DANIEL J. ANDERSON, ESQ., Wertz & Dake,
1500 Center Street NE, Suite 101, Cedar Rapids,
Iowa 52402-5500, on behalf of the Plaintiffs.

JEFFREY PIERCE, Animal Legal Defense Fund,
170 E. Cotati Avenue, Cotati, California 94931, on
behalf of the Plaintiffs.

LARRY J. THORSON, ESQ., Ackley Kopecky & Kingery,
LLP, 4056 Glass Road NE, Cedar Rapids,
Iowa 52402-5062, on behalf of the Defendants.


HEARING ON MOTION FOR SUMMARY JUDGMENT HELD
BEFORE THE HONORABLE JON STUART SCOLES,

taken at the Federal Courthouse, 111 Seventh Avenue SE,
Cedar Rapids, Iowa, on the 6th day of August, 2015,
commencing at 10:52 a.m., reported by Kay C. Carr,
Certified Shorthand Reporter in and for the State of
Iowa.

Kay C. Carr
Certified Shorthand Reporter
Registered Professional Reporter
Cedar Rapids, Iowa
(319) 362-1543

Call (319) 362-1543 Kay C. Carr
to purchase a complete copy of the transcript.

**2**

1  THE COURT: The matter now before the Court
2  is the case entitled United -- excuse me. Just got done
3  with three criminal cases in a row.
4  The matter now before the Court is the case
5  entitled Tracey K. Kuehl and others versus Pamela
6  Sellner and others, No. C 14-2034. This matter comes on
7  for hearing at this time on the motion to summary
8  judgment filed by plaintiffs.
9  The plaintiffs are represented by Attorneys
10  Daniel Anderson and Jeffrey Pierce. Mr. Anderson?
11  MR. ANDERSON: Yes, Your Honor.
12  THE COURT: All right. Thank you. And
13  defendants are represented by their attorney, Larry
14  Thorson.
15  MR. THORSON: Yes, Your Honor.
16  THE COURT: Before we get to the legal
17  issues, I want to talk about some factual issues. As I
18  understand it, defendants operate a zoo which has some
19  number of animals, but the only ones that are protected
20  by the Endangered Species Act are lemurs, tigers,
21  potentially gray wolves -- although that's something
22  we're going to talk about -- a serval and potentially
23  lions, and that's something we're going to talk about as
24  well.
25  Am I correct, Mr. Anderson or Mr. Pierce,

**3**

1  that those are the categories of -- of animals that are
2  the subject of this lawsuit?
3  MR. PIERCE: Yes, Your Honor, that's
4  correct. And you'll be aware that the plaintiffs have
5  brought for summary judgment the claims only as to the
6  tigers, the lemurs and the wolves. We've reserved for
7  trial the claims as to the serval and the lions.
8  THE COURT: And incidentally, you don't have
9  to stand unless you're just comfortable doing that.
10  Mr. Thorson, let me just make sure I
11  understand factually here. As I understand it, the zoo
12  has it's either two or three lemurs; is that correct?
13  MR. THORSON: Yes, Your Honor.
14  THE COURT: Which is it; two or three?
15  MR. THORSON: I believe it's three.
16  THE COURT: And does defendant concede that
17  the lemurs are protected under the Endangered Species
18  Act?
19  MR. THORSON: These lemurs are not the type
20  of lemurs that are protected under the Endangered
21  Species Act, Your Honor. I believe it's only a certain
22  type that are protected, so --
23  THE COURT: I didn't see that in any of the
24  -- the papers. Is that something you've argued
25  previously?

**4**

1  MR. THORSON: Well, to tell you the truth, I
2  would have to check my pleadings here to see if that's
3  the case, but I thought that there were certain lemurs
4  that were protected and certain that weren't protected.
5  THE COURT: And, frankly, I haven't -- I
6  looked at this stuff several weeks ago and so it may be
7  in there in that 2,000 pages of material and maybe I
8  just missed it. But I guess I was under the impression
9  that -- that lemurs generally are protected by the
10  Endangered Species Act and the lemurs that are held by
11  the zoo are specifically protected, but you dispute
12  that?
13  MR. THORSON: I -- well, I hate to say for
14  certain I dispute that, Your Honor. I would have to
15  check back and see what I actually wrote as far as the
16  type of lemur that was at the zoo.
17  THE COURT: All right. Well, let's go on.
18  Next is tigers. As I understand it, the zoo has five;
19  is that right?
20  MR. THORSON: Yes, Your Honor.
21  THE COURT: And does the zoo or the
22  defendants concede that they are protected by the
23  Endangered Species Act?
24  MR. THORSON: Yes, Your Honor.
25  THE COURT: Let's skip the gray wolves for

**5**

1  the moment. There's a serval. I hate to acknowledge my
2  ignorance and I haven't bothered to look it up, but what
3  is a serval?
4  MR. THORSON: It's a small animal that
5  basically -- I'm not sure I can describe what it is
6  exactly biologically, but it's a small, furry animal
7  that likes to climb.
8  THE COURT: Kind of a mammal squirrel like
9  sort of --
10  MR. PIERCE: It's a cat.
11  THE COURT: It's a cat?
12  MR. PIERCE: Yeah, it's a cat.
13  THE COURT: Okay.
14  MR. PIERCE: About the size of a bobcat,
15  yeah.
16  THE COURT: Good to know. And there was
17  some question, as I understood it, as to whether or not
18  there was even a serval there. Does the zoo have a
19  serval?
20  MR. THORSON: Yes, it has a serval; one.
21  THE COURT: Has a serval; one. And do the
22  defendants concede that it is protected by the
23  Endangered Species Act?
24  MR. THORSON: It's not a Barbary serval and
25  I don't think it's protected.

to purchase a complete copy of the transcript.

**6**

1 THE COURT: All right. And then there are
2 -- are there -- how many lions are being held by the
3 zoo?
4 MR. THORSON: I think there are three lions,
5 Your Honor.
6 THE COURT: And there's apparently a
7 consensus that Asian lions are protected by the ESA and
8 African lions are not protected, at least as of right
9 now, but there's some dispute as to whether or not the
10 lions are Asian lions or African lions.
11 MR. THORSON: Not to my mind, Your Honor.
12 They're African lions and they've always been noted as
13 African lions every time they've been transferred or the
14 zoo has received paperwork on the lions themselves.
15 THE COURT: Well, let's talk about that
16 issue first. Mr. -- is it Pierce?
17 MR. PIERCE: Pierce, yes.
18 THE COURT: As I understand it, the
19 plaintiffs concede that African lions are not currently
20 protected by the Endangered Species Act.
21 MR. PIERCE: That's correct, Your Honor.
22 THE COURT: Are they claiming that one or
23 more of the lions being held by the zoo are Asian lions?
24 MR. PIERCE: No, Your Honor. At the time
25 the plaintiffs filed their complaint, we were aware that

**7**

1 the Fish and Wildlife Service was considering a final
2 rule that would list African lions as protected under
3 the Endangered Species Act, and we have anticipated that
4 that rule would be finalized any day so we included
5 lions in anticipation that they would be receiving
6 protections.
7 THE COURT: So you concede that these are
8 not protected lions or not protected under the
9 Endangered Species Act?
10 MR. PIERCE: Yeah; we have no evidence --
11 we've obtained no evidence to believe that they are
12 Asian lions.
13 THE COURT: All right. So basically lions
14 are no longer part of this lawsuit.
15 MR. PIERCE: Your Honor, as I suggested, we
16 hope to preserve for trial the issue with respect to the
17 lions.
18 THE COURT: Well, what are you expecting to
19 happen before the time of trial? I mean I -- you know,
20 if there's no evidence that these are Asian lions, I
21 mean what's going to happen between now and then that's
22 going to make some difference?
23 MR. PIERCE: Well, one of two things could
24 happen. We could seek a genetic test that might
25 determine that one or more is an Asian lion or the Fish

**8**

1 and Wildlife Service could finalize the rule affording
2 protections to those lions, even if they were African.
3 THE COURT: Yeah; I've learned a long time
4 ago don't wait on the government to do anything. They
5 move pretty slow. Isn't the discovery time over? I
6 mean I don't know when the discovery deadline was in
7 this case, but to seek some sort of genetic testing;
8 couldn't that have been done and shouldn't that have
9 been done a long time ago? Trial is, what, two months
10 off?
11 MR. PIERCE: Yeah; we would have to seek --
12 we would have to seek leave of Court, Your Honor, that's
13 correct.
14 THE COURT: All right. With respect to the
15 serval, the defendants apparently contend that it is not
16 the type of serval that is protected by the Endangered
17 Species Act. What's the plaintiffs' understanding?
18 MR. PIERCE: Similar, Your Honor. If it's
19 an African serval, it does not receive protections as
20 Mr. Thorson correctly stated. It's only the Barbary
21 serval, which is a subspecies.
22 THE COURT: Do you have any evidence that
23 this is a Barbary serval?
24 MR. PIERCE: We do not.
25 THE COURT: Let's talk about -- well, let's

**9**

1 talk about the lemurs because that is somewhat of a
2 similar subject. Apparently, as I understand it, I
3 guess I was under the understanding that -- that these
4 were protected lemurs, but defendant says that some
5 lemurs are protected and some are not and -- and I guess
6 maybe one or more of these are not. What's the
7 plaintiffs' understanding?
8 MR. PIERCE: All of the lemurs are
9 protected, Your Honor. The protections for lemurs are
10 afforded to the entire family of lemurs; every -- every
11 species that is a member of the family lemur.
12 Defendants never raised that issue in their papers, but
13 as a matter of law they're incorrect about that.
14 THE COURT: Mr. Thorson, do you have any
15 authority to support your view legally that certain
16 lemurs are not protected by the Endangered Species Act?
17 MR. THORSON: No, Your Honor. And I believe
18 I was confused between the lemurs and the servals
19 earlier, so that's -- I take -- I retract the statement
20 that I think the lemurs are in controversy.
21 THE COURT: So you concede that the three
22 lemurs in this case are protected by the Endangered
23 Species Act?
24 MR. THORSON: Right.
25 THE COURT: Okay. And you also concede that

to purchase a complete copy of the transcript.

---

**10**

1 the five tigers that are held at the zoo are protected
2 by the Endangered Species Act?
3     MR. THORSON: Correct.
4     THE COURT: And defendants -- or excuse me
5 -- plaintiffs apparently concede that the serval -- or
6 they don't have any evidence that the serval in this
7 case or the lions in this case are protected.
8     So that leaves us with the gray wolves. As
9 I understand it, defendants say that these are -- are
10 hybrid wolves. I think I read someplace 75 percent wolf
11 and 25 percent dog.
12     MR. THORSON: Right.
13     THE COURT: How many wolves are there, first
14 of all?
15     MR. THORSON: I think there are two wolves.
16     THE COURT: And are they both what
17 defendants say are 75 percent wolf and 25 percent dog?
18     MR. THORSON: They're both hybrids,
19 Your Honor, yes.
20     THE COURT: From a factual standpoint, do
21 the plaintiffs have any evidence to refute that? I mean
22 is there any evidence that these are full bred gray
23 wolves?
24     MR. PIERCE: We have only the evidence,
25 Your Honor, that they have sometimes been referred to as

---

**11**

1 wolves in the transfer papers and that defendants
2 maintain a sign on their enclosure that reads timber
3 wolf Canis lupus endangered. Beyond that, Your Honor,
4 we've not conducted genetic testing. Experts will say
5 that it's impossible to tell visually whether a wolf is
6 purely a wolf or a hybridized wolf, but it's plaintiffs'
7 position that even if it were true that these are
8 75 percent wolves, they are none the less subject to the
9 protections of the act and subject to the jurisdiction
10 of the Court.
11     THE COURT: We'll get to that legal issue in
12 just a second. Factually, do the defendants -- or what
13 evidence do the defendants have that these are hybrids?
14     MR. THORSON: We have the transfer papers --
15 which I think we've included some of them -- that
16 include 75 percent wolf 25 percent dog on the papers
17 themselves. We have the veterinarian who testified and
18 said that he looked at these animals. They look smaller
19 than purebred wolves. We also have the testimony of Pam
20 Sellner, of course, herself who said that they are
21 hybrid wolves.
22     THE COURT: Obviously, I'm not making any
23 rulings today, but the fact that defendants represented
24 these as wolves or even that they represented them as
25 endangered, my sense is that that's not -- certainly is

---

**12**

1 not dispositive of -- of -- of what they are. The
2 animals are what they are regardless of how they are
3 represented and their protection under the Endangered
4 Species Act rises or falls based on what, in fact, they
5 are, as opposed to what they're represented to be.
6     I mean they -- theoretically, I guess, you
7 could claim someone for false advertising or something
8 of that sort, but -- but, you know, at time of trial I'm
9 going to be interested in knowing what these animals
10 are; if they're full bred gray wolves or if they are
11 hybrid gray wolves. Incidentally, the defendants
12 concede, as I understand it, the gray wolves are, in
13 fact, protected by the Endangered Species Act.
14     MR. THORSON: Yes, Your Honor. They're
15 protected in certain areas though and that's kind of the
16 interesting thing --
17     THE COURT: Well, I read that in your
18 papers; that there's some allegations that gray wolves
19 are not protected north of Interstate 80.
20     MR. THORSON: Correct.
21     THE COURT: Mr. Pierce, is that the fact?
22     MR. PIERCE: That's a misrepresentation of
23 the law, Your Honor. The protections under Section 9 of
24 the Endangered Species Act that prohibit the take of
25 endangered animals as the service says run with the

---

**13**

1 species. It's not limited to geographic areas. There
2 are other instances, other requirements under the
3 Endangered Species Act that may be triggered only in
4 this particular geographic areas, like a requirement to
5 consult with the Secretary of the Interior on a
6 particular issue, but the idea that a captive wolf might
7 be protected on one side of the street and not on the
8 other side of the street is both incorrect and -- and
9 absurd.
10     THE COURT: Does it make a difference as to
11 where the animal was acquired? In other words, if --
12 and again, I haven't read these -- this statute or other
13 authority on this north of Interstate 80 thing, but if
14 you capture a gray wolf someplace and transport it to
15 the Northern District of Iowa or north of Interstate 80,
16 then presumably it doesn't lose the protection it
17 otherwise had, but if it was either born in captivity or
18 captured north of Interstate 80, does that make any
19 difference?
20     MR. PIERCE: No, Your Honor, precisely as I
21 explained because the protections from Section 9 run
22 with the species, so the origin of the animal doesn't
23 matter. It's the -- the -- the fact that the animal
24 belongs to the species.
25     THE COURT: So what is this -- is there some

Contact www.JeffSmith.com 319-362-1612 or JeffSmithReporting.com
to purchase a complete copy of the transcript.

---

**14**

1  reference in the regulations or the code or something
2  that talks about north of Interstate 80? I mean where
3  is -- where -- do you know where the defendants are
4  coming up with this allegation?
5          MR. PIERCE: I presume he's referring to
6  something about the listing of distinct populations,
7  which the service can undertake, but again, that's with
8  respect to wild populations and only respecting certain
9  of the requirements of the Endangered Species Act, but
10  that doesn't affect the application of Section 9 to
11  every member of the species.
12          THE COURT: All right. Mr. Thorson, if --
13  if it's in the papers, I may have missed it, but what --
14  do you have the authority or the citation that you're
15  relying on in your claim that the gray wolf north of
16  Interstate 80 is not protected by the Endangered Species
17  Act?
18          MR. THORSON: Yes, Your Honor. I can find
19  it here in maybe a couple minutes. It basically is part
20  of the listing of endangered species and in this
21  instance, it's kind of an unusual one, but it lists
22  certain geographical areas that the species is protected
23  in and that was part of that actual language from the
24  statute.
25          THE COURT: Where were these wolves

---

**15**

1  acquired?
2          MR. THORSON: I believe these wolves came
3  from Missouri.
4          THE COURT: South of Interstate 80?
5          MR. THORSON: Yes.
6          THE COURT: So if they were -- stayed in
7  Missouri, they would be protected by the Endangered
8  Species Act?
9          MR. THORSON: Well, they're hybrids, for one
10  thing.
11          THE COURT: Well, we'll get to that.
12          MR. THORSON: But other than that, yes, they
13  probably would; just like if they were wild in Iowa and
14  they wandered north of Interstate 80, they would not be
15  protected and if they wandered south of it, they would
16  be.
17          THE COURT: Of course, in this case they
18  didn't wander north of Interstate 80. They were brought
19  --
20          MR. THORSON: Right. They were brought --
21  they were sold.
22          THE COURT: So if you have an endangered
23  gray wolf south of Interstate 80 and then transport it
24  north of Interstate 80, it loses its protection under
25  the Endangered Species Act?

---

**16**

1          MR. THORSON: Well, that's a question I
2  don't know the answer to, Your Honor. I believe that
3  the statute itself talks about that, but I'm not sure
4  that it resolves that issue. And I haven't seen a court
5  case that resolves the issue either.
6          THE COURT: Let's talk about the issue of
7  fact these are allegedly hybrid gray wolves; apparently
8  75 percent wolf and 25 percent dog. The plaintiffs
9  claim that they fall within the Endangered Species Act.
10  Defendant claims they do not.
11          Mr. Pierce, is there any case law or
12  regulation or statute or other authority that sets forth
13  what percentage of an animal has to be an endangered
14  species in order for the animal to be protected under
15  the ESA? In other words, in this case, these wolves or
16  these animals are mostly wolf, but theoretically, if --
17  and let's assume for the moment that they are protected.
18  If they were bred -- they are three-fourths wolf. If
19  they were bred with a -- a full bred dog, then I guess
20  their offspring would be sort of three-eighths wolf and
21  then if the offspring were bred with a full bred dog,
22  its offspring would be, I guess, three-16ths wolf.
23          You claim that 75 percent wolf hybrid is
24  protected by the Endangered Species Act. Is there -- is
25  any drop of endangered species blood enough or where do

---

**17**

1  you believe the line is drawn?
2          MR. PIERCE: No, Your Honor. As we
3  understand it, the -- the rule that's articulated in
4  United States against Kapp, the case that we cite in our
5  brief that stands for this proposition --
6          THE COURT: What was the case again?
7          MR. PIERCE: United States against Kapp.
8  It's a -- it was a criminal case brought against a
9  defendant for trafficking in endangered species. The
10  cite is 2003 U.S. District Lexus 21116. And --
11          THE COURT: What --
12          MR. PIERCE: -- it's in the papers.
13          THE COURT: Which jurisdiction?
14          MR. PIERCE: Let me see. I think I have it.
15  I want to say Missouri -- nope. Eastern -- Northern
16  District of Illinois.
17          THE COURT: And what does it say?
18          MR. PIERCE: So Kapp -- Kapp tried to defend
19  against his -- the trafficking claim on the basis that
20  he believed that hybridized animals didn't receive the
21  protection of the act. The Court -- the Court
22  disallowed the defense on the basis that that's a
23  misstatement of the law. The -- it is sometimes true
24  that a hybridized animal will not receive protections,
25  but only in these kinds of cases: An interspecies

Contact BROWN & ASSOCIATES at 319-362-0603 to purchase a complete copy of the transcript.

**18**

1 hybridization does not receive protection. Take a lion
2 and a tiger together. The tiger is protected; the lion
3 is not. No protection because it's not a species. A
4 liger is not a species.
5     THE COURT: Is a wolf and a dog a species?
6     MR. PIERCE: A wolf and a dog is a species,
7 Your Honor. It's Canis lupus. So what Kapp tells us is
8 that the protections are -- when the protections are
9 afforded at the species level, a hybridized animal where
10 you are to take the -- the animal at the species level,
11 hybridize it with a subspecies member.
12     THE COURT: Who is also protected?
13     MR. PIERCE: By virtue of the protections
14 being afforded to the species, correct, the offspring of
15 that hybridization would be protected.
16     THE COURT: What were the two animals that
17 were at issue in Kapp?
18     MR. PIERCE: Tigers and leopards.
19     THE COURT: So a mix of a tiger and a
20 leopard is protected?
21     MR. PIERCE: No, Your Honor. I think -- I
22 think the defense that Kapp sought was that the tigers
23 -- that subspecies of tigers had been hybridized across
24 together, whereas since tigers are protected at the
25 species level, all -- all of the subspecies also receive

**19**

1 protections.
2     THE COURT: Well, let me ask you this. As I
3 understand it, all lemurs are protected and in this case
4 there are at least two subspecies -- I've forgotten what
5 they're called now.
6     MR. PIERCE: Two species.
7     THE COURT: Two species of lemurs and I
8 don't know my biology very well so I don't know exactly
9 how one defines species and subspecies, but you have a
10 lemur and you have two different kinds of lemurs.
11 They're both protected. If they interbreed, I assume
12 their offspring is also protected?
13     MR. PIERCE: In theory, Your Honor, they --
14 they would not be protected -- the offspring of that
15 interbreeding -- because when you --
16     THE COURT: There's something really weird
17 about that then; that you have two protected animals
18 that breed and their offspring is not protected and yet
19 here, you're claiming with a wolf and a dog you have one
20 protected animal and one that's not and yet its
21 offspring is protected.
22     MR. PIERCE: I think -- so the rule is that,
23 you know, this is the Endangered Species Act, so it
24 concerns species. When you hybridize one species with
25 another, you get something that is a nonspecies, so

**20**

1 that's why if you were to -- if you were to breed two
2 lemurs together -- and biologically, the one meaning of
3 species is that the offspring are fertile and could
4 reproduce. So in theory, if you were to take two lemurs
5 of different species and breed them, it is precisely a
6 nonspecies because that would be the end of the lineage.
7 When you take a wolf -- Canis lupus -- and you breed the
8 wolf with the subspecies Canis lupus familiarus, the
9 offspring remains fertile.
10     THE COURT: Which is a dog.
11     MR. PIERCE: Which is a dog. Now, you asked
12 whether -- how far down the line we could go. The
13 Plaintiffs submit that a hybridized animal is entitled
14 to the protections of the act any time one of the
15 parents was a full wolf because that's the rule in Kapp.
16 When you take an animal that is a protected member of
17 the species -- the wolf in this case -- and that wolf
18 participates in the hybridization, the result is
19 protected by virtue of that rule.
20     THE COURT: So the offspring of these
21 hybrids would not be protected?
22     MR. PIERCE: Correct, Your Honor, unless one
23 of the parents were a wolf.
24     THE COURT: Was a wolf.
25     MR. PIERCE: Right.

**21**

1     THE COURT: If you bred -- your position is
2 if you bred one of these hybrids with a wolf, offspring
3 protected. If you breed the hybrid with a dog,
4 offspring not protected.
5     MR. PIERCE: Yeah. And it -- it would be --
6 it would be difficult to rely on percentages.
7 Your Honor, you asked about percentages precisely
8 because in this case we have 75 percent. Clearly one of
9 the parents had to be a wolf to make that happen. You
10 could have a 50 percent animal. Clearly one of the
11 parents had to be a wolf unless both of the parents had
12 been themselves 50 percent, so it matters less what the
13 percentages are and more that one of the parents was a
14 protected member.
15     THE COURT: All right. Incidentally, before
16 I forget, does the -- do the defendants concede that all
17 procedural requirements have been met? I noticed
18 there's a -- the notice was given and things of that
19 sort. Is there any claim here that there's some I that
20 wasn't dotted or T that wasn't crossed that prohibits
21 the plaintiffs from recovering?
22     MR. THORSON: No, Your Honor.
23     THE COURT: All right. Let's go to then the
24 -- so just sort of to summarize here, it's -- it's clear
25 that we have eight animals who are protected under the

to purchase a complete copy of the transcript.

22

1  Endangered Species Act; three lemurs and five tigers.
2  It's also agreed, as I understand it, that the serval
3  and the lions are not protected under the Endangered
4  Species Act and there's a dispute as to whether or not
5  these two hybrid gray wolves would be protected.
6         MR. PIERCE:  Potentially as many as four
7  gray wolves.  I mean plaintiffs' count it was four
8  wolves, but that remains to be seen, I suppose.
9         THE COURT:  Okay.  Anyway, now my
10  understanding is from the papers that the -- that the --
11  the zoo has a fairly large number of animals, depending
12  on how you count them and whether or not you include the
13  birds and the allegations are that the zoo is not caring
14  for these animals properly.  Even if I find that's true,
15  as I understand it, the fact that they may be not
16  properly caring for an animal other than a lemur, a
17  tiger or a gray wolf hybrid is not something that's
18  anything I can do anything about in this -- in this
19  lawsuit --
20         MR. PIERCE:  Correct.
21         THE COURT:  -- am I correct?
22         MR. PIERCE:  Yes.
23         THE COURT:  So at the time of trial,
24  assuming I don't grant summary judgment, is the evidence
25  going to be limited to the care and other details

23

1  regarding lemurs, tigers and gray wolves?
2         MR. PIERCE:  The evidence will be limited
3  primarily to the care of the species over which the
4  Court has jurisdiction, but plaintiffs would maintain
5  that the care of the animals collectively at the
6  facility is germane to the question of the ability of
7  defendants to care for any of their animals
8  individually.
9         THE COURT:  Okay.  All right.  Let's talk
10  then a little bit about the legal issues.  As I
11  understand it -- and, you know, I -- I acknowledge that
12  this is the first Endangered Species Act I've had in
13  29 years as a judge, but as I understand it, the claims
14  are that there was a taking -- and that word is used as a
15  term of art in the Endangered Species Act -- and there's
16  also an unlawful possession and unlawful trafficking of
17  these endangered species; the lemurs, the tigers and the
18  hybrid wolves.
19         Plaintiffs claim that the defendants failed
20  to properly care for them.  I mean that's sort of the
21  gist of the argument is that the taking results from
22  poor care and not meeting the animals' needs and so
23  forth, and they submit bunches of documents which they
24  believe support that position.
25         Defendants deny it and say we're -- we're

24

1  taking proper care of these animals and we provide them
2  with medical care and -- and meet the requirements
3  needed to satisfy the Endangered Species Act.  Isn't
4  that sort of the definition of a material fact in
5  dispute which would preclude the entry of summary
6  judgment?
7         MR. PIERCE:  That would be a material fact
8  in dispute, Your Honor, if the defendants had submitted
9  into the record any facts in support of that position,
10  but plaintiffs maintain that when you view the record,
11  the -- the findings of the Department of Agriculture are
12  not in dispute, and plaintiffs would maintain as well
13  that the analysis that plaintiffs' experts provide has
14  gone undisputed precisely because defendants have not
15  submitted expert reports of their own.  They have not
16  placed before the Court any qualified experts and the
17  record doesn't contain anything whereby the defendants
18  have successfully rebutted any of the claims the
19  plaintiffs have made.  So there is displeasure and
20  disagreement on the part of the defendants, but that's
21  irrelevant for the purposes of summary judgment.
22         THE COURT:  But for purposes of summary
23  judgment, I'm required to view the evidence in the light
24  most favorable to the party resisting summary judgment,
25  so in this case that means I have to view the evidence

25

1  in the light most favorable to the defendants at this
2  stage of the proceeding.
3         And the defendants have submitted -- first
4  of all, they have denied a fair portion of the statement
5  of material facts the plaintiffs submitted.  In
6  addition, they've submitted their own statement of
7  material facts and it is supported by various affidavits
8  and documents and testimony and other papers and so
9  forth.  And it just seems like if I'm going to assume
10  the truth of those allegations and view the evidence in
11  the light most favorable to the defendants at this
12  stage, that it generates a genuine issue as to whether
13  or not they have properly cared for these endangered
14  animals or, in fact, whether they've violated the
15  Endangered Species Act.
16         MR. PIERCE:  A couple of things, Your Honor.
17  First of all, take is a legal term of art that arises
18  from the statute, the Endangered Species Act.  The
19  claims that defendants make respecting their, for
20  example, compliance with the Animal Welfare Act,
21  concerns an entirely different statutory scheme.
22         In the Endangered Species Act, plaintiffs
23  have alleged that we have a take here on the basis of
24  two terms.  One is harm.  The other is harass.  There is
25  admittedly an exception to harassment respecting captive

Contact eScribers, LLC at 9-973-406-2250 or eScribers.com
to purchase a complete copy of the transcript.

**26**

1 wildlife, but only for a facility that practices
2 generally accepted animal husbandry practices that meet
3 or exceed the minimum requirements of the Animal Welfare
4 Act. Clearly what we have in this instance is a
5 facility that doesn't meet the minimum requirements of
6 the Animal Welfare Act. That respects only harassment.
7 There is no such exception built into the definition of
8 harm. In other words, a person could meet the minimum
9 requirements of the Animal Welfare Act and still harm
10 their animals.
11     THE COURT: Harm them by failing to care for
12 them properly?
13     MR. PIERCE: Harm them by failing to care
14 for them properly; by actually injuring or killing them,
15 yes, Your Honor.
16     THE COURT: So what is the difference
17 between -- as I understand it, harass under these
18 circumstances is basically failure to care for them
19 properly. The -- and I'm looking at page -- or at
20 paragraph 51 of your complaint where you set forth a
21 definition of take. It says to harass, harm, pursue,
22 hunt, shoot, wound, kill, trap, capture or collect or
23 attempt to engage in any such conduct, and you've
24 indicated that the allegation here is harass and harm.
25     MR. PIERCE: Correct, Your Honor.

**27**

1     THE COURT: Now under the circumstances
2 where the allegation is that they're not being properly
3 cared for, is there a distinction between harass and
4 harm?
5     MR. PIERCE: There is a distinction between
6 harass and harm in a -- in a couple of significant ways.
7 One is that harm requires an act, though it needn't be
8 intended. It need only be an act, direct or indirect,
9 that results in actual or injury to -- actual injury or
10 death to wildlife. Harassment requires not --
11 harassment can be satisfied not merely by an act, but
12 also by an omission, whether intentional or negligent,
13 that annoys wildlife and creates a likelihood of injury.
14     Getting to the facts -- getting to the
15 record, the facts that the -- that the defendants claim
16 to be providing proper care for their animals is
17 entirely rebutted by the record supplied by the
18 Department of Agriculture. The defendants have already
19 sought on appeal before the Department of Agriculture to
20 insist that they have provided proper care for those
21 animals. In each instance, Your Honor, the Department
22 of Agriculture considered those appeals and denied them,
23 so on the basis of the agricultural records alone, there
24 are undisputed facts here going to harm and harass.
25     THE COURT: And again, in this case, the

**28**

1 allegation is that they failed to properly care for
2 their animals. Is there anything that you're claiming
3 the defendants did or failed to do which would
4 constitute harm but not harass or harass but not harm?
5 I'm just trying to figure out whether or not basically
6 we're just talking about proper care for animals, which
7 again under these circumstances would be both harm and
8 harass or if you think there's something specific that
9 they either did or failed to do that would constitute
10 the harm but not harass or harass but not harm.
11     MR. PIERCE: So when Congress passed the
12 act, they intended to provide as broad of protections as
13 possible to endangered species. It's the -- it's the
14 most far-reaching act of any nation that would protect
15 endangered animals. In defining take, they provided the
16 list that Your Honor read moments ago, such that there
17 are a variety of ways that a person could violate
18 Section 9. Harm and harass overlap and that's to be
19 expected because Congress intends the protections to be
20 as broad as possible.
21     I can point you to cases, Your Honor, in
22 which on the same set of facts courts have found both
23 harm and harassment; however, as a general rule, courts
24 appear to have construed harm in terms of physical
25 injury, even though the definition doesn't say physical.

**29**

1 It could in theory include psychological harm, and
2 courts generally have interpreted harass to be more
3 psychological, specifically because it concerns
4 behavioral modifications.
5     So plaintiffs would submit that on these
6 facts, any time an animal in the defendants' care has
7 died of a preventable or a treatable cause, that animal
8 has specifically been harmed because the meaning of harm
9 includes actual injury or killing of wildlife. So in
10 those instances, plaintiffs maintain that there is harm
11 to the animals but not harassment, although there likely
12 was harassment leading up to harm.
13     As to the other allegations that are ably
14 enumerated in the record and that plaintiffs' experts as
15 a -- almost as a courtesy because plaintiffs' expert
16 reports are merely additive to the record that the
17 Department of Agriculture has supplied in this case,
18 plaintiffs' experts methodically explain for the Court
19 in what ways defendants' shortcomings amount to actual
20 injury, actual death and annoyance leading to the
21 likelihood of injury.
22     THE COURT: Okay. And I think you've done a
23 good job of distinguishing between the two. Switching
24 gears a little bit, you indicated that there have been
25 some findings by the Department of Agriculture. What

30

1 evidentiary value or preclusive effect do you think
2 those have here?
3     MR. PIERCE:  I think they have enormous
4 evidentiary value.  For one thing, they've been
5 authenticated.  For another thing, as I've suggested
6 because defendants have already sought to appeal them
7 and those appeals were denied, the facts enumerated in
8 the agricultural records are essentially undisputed in
9 the record.
10     Having said that, the facts enumerated there
11 enable plaintiffs' experts to make the kinds of
12 evaluations that I described; in what ways those
13 particular problems identified by the Department of
14 Agriculture amount to injury, death or annoyance of the
15 endangered animals at defendants' facility.
16     THE COURT:  Anything else you want to add in
17 support of your motion for summary judgment?
18     MR. PIERCE:  Well, we haven't reached the
19 trafficking claim, Your Honor, if you might be
20 interested to discuss that.
21     THE COURT:  If -- certainly you can argue it
22 if you would like.
23     MR. PIERCE:  Well, I would say then,
24 Your Honor, only that the trafficking claim matters to
25 the degree that the animals in the defendants' facility,

31

1 as plaintiffs have maintained, are subject to ongoing
2 harm and harassment.  And each time the defendants breed
3 their animals, they expand that population of animals
4 who are now subject to ongoing harm and harassment.
5 Each time they receive by donation animals in interstate
6 commerce in the course of commercial activity, those
7 animals are now subject to ongoing harm and harassment.
8 Each time one of their baby animals grows beyond its
9 ability to serve as a zoo ambassador for the public and
10 the defendants donate those animals across state lines
11 in the course of commercial activity, all of that feeds
12 into sort of the overall problem that the animals in
13 this particular roadside zoo are subject to ongoing harm
14 and harassment.
15     THE COURT:  And just so we don't forget,
16 when you're talking about animals, we're talking about
17 ten animals.  We're not talking about the 150 animals or
18 whatever that live at the zoo.
19     MR. PIERCE:  Correct.  The trafficking claim
20 respects only the endangered animals.
21     THE COURT:  What relief specifically is the
22 -- or are the plaintiffs seeking in this case?
23     MR. PIERCE:  Well, the plaintiffs' experts
24 maintain on the basis not only of the agricultural
25 reports and the photographs, but also on the basis of

32

1 all the materials that defendants themselves supplied in
2 discovery -- including veterinary records, financial
3 records, those kinds of materials -- that in light of
4 all of that undisputed evidence, and surely the Court
5 will agree that the defendants own admissions in
6 discovery are undisputed, the defendants are essentially
7 incapable of meeting the requirements of the Endangered
8 Species Act.  So plaintiffs would submit that they would
9 prefer for relief that the animals be re-homed to a
10 facility that can meet the requirements of the
11 Endangered Species Act; preferably a reputable sanctuary
12 that will provide species-appropriate habitats.
13     THE COURT:  So basically you're asking that
14 the Court order that the defendants get out of the
15 endangered species business?
16     MR. PIERCE:  Until such time as defendants
17 can prove an ability to comply, yes, Your Honor.  But
18 plaintiffs submit that if Your Honor wishes to consider
19 briefing on the remedy, we're happy to do so.  We had
20 sought here only ruling as to liability and we've --
21 we've held over questions of remedy til a future time.
22     THE COURT:  Yeah, and I understand that, but
23 that future time is coming --
24     MR. PIERCE:  Okay.
25     THE COURT:  -- before very long and so I

33

1 wanted to get some understanding as to what it is you're
2 seeking.
3     Mr. Thorson, what's your response to the
4 motion for summary judgment?
5     MR. THORSON:  Our response, Your Honor, is
6 we presented evidence that indicates that the zoo, first
7 of all, is a zoo under the AWA -- Animal Welfare Act --
8 and as such is exempt from some of the provisions of the
9 ESA, Endangered Species Act.  They have a license.
10 They've received a license each year.
11     As far as the violations that are cited, the
12 plaintiff has not brought up the fact that there are
13 direct and indirect violations under the Animal Welfare
14 Act.  Indirect violations are ones that won't harm the
15 animal or result in harm immediately to the animal and I
16 think we provided at least one page from the AWA booklet
17 that indicates that that's the situation.
18     We are currently going to appeal from the
19 decision of the AWA as far as the earlier appeals.
20 There's going to be a case involving those violations
21 that they've alleged.  We have not entered an appearance
22 yet in that, but we will shortly and so those will be
23 disputed, Your Honor.
24     THE COURT:  Where's the venue for that?
25     MR. THORSON:  Well, the venue for that is

Contact Merrill Corp 319-362-3633 www.merrillcorp.com
to purchase a complete copy of the transcript.

---

**34**

1 Washington DC right now.

2     THE COURT: In an administrative agency --

3     MR. THORSON: Yes, Your Honor.

4     THE COURT: -- or federal district court?

5     MR. THORSON: In an administrative agency,

6 administrative hearing, so -- and that will be in

7 dispute. Most of the violations you see are indirect

8 violations; not direct violations. Very few of them, if

9 any, involve direct violations with regard to endangered

10 species we're talking about here.

11     As far as your earlier question about the

12 gray wolf, I wanted to get back to that finally and the

13 cite that I've got is 50 CFR Section 17.11.

14     THE COURT: All right. That's that

15 Interstate 80 business?

16     MR. THORSON: That's the Interstate 80

17 business, yes. And as far as whether or not a hybrid --

18 again, we offered to let them genetically test the wolf

19 hybrids here, which they declined to do, which would

20 have shown the percentage of wolf versus dog in these

21 animals.

22     THE COURT: So you're claiming if there's

23 any dog in the animal, then it's not protected. It has

24 to be full bred endangered species.

25     MR. THORSON: Yes.

---

**35**

1     THE COURT: What's your response to Kapp? I

2 haven't read Kapp, but that was the case where the

3 Northern District of Illinois apparently concluded that

4 -- that it was protected, I guess.

5     MR. THORSON: Well, I think it's a bad

6 decision, for one thing, because if you have -- most

7 dogs are partly wolf anyway, so if we get to the

8 percentages again, we get to a situation where we're

9 going to ask the question over and over again what

10 percentage of wolf in a dog creates a protection for

11 each dog, for instance, that's out there that has a

12 portion of wolf in it. It doesn't make any sense.

13 There's got to be a line somewhere.

14     THE COURT: Well, Mr. Pierce says that there

15 is a clear line and that is basically if one of its

16 parents was full bred, then it would be covered, but if

17 one of its parents is not, then it would not, as I

18 understood what he said.

19     MR. THORSON: Well, again, that would be

20 speculation about whether one of its parents was full

21 bred or not. I believe nobody has shown that one of the

22 parents of this hybrid was full bred.

23     THE COURT: So it could be less than

24 three-quarters; is that what you're saying?

25     MR. THORSON: Could be. And that's --

---

**36**

1     THE COURT: Is that going to make the zoo

2 change their sign to instead of endangered gray wolves,

3 it's three-quarters gray wolf probably not endangered

4 or --

5     MR. THORSON: Well, we could consider that,

6 Your Honor, but the sign itself is more of an

7 informational sign than it is anything about the animal

8 necessarily in there. It's talking about the general

9 range of the wolf and what the wolf does, and again, you

10 know, there are other informational things at the zoo

11 that don't necessarily apply to every animal at the zoo,

12 Your Honor.

13     THE COURT: Anything else you want to add?

14     MR. THORSON: Just that we have presented, I

15 think, factual arguments on -- and responded to the

16 factual arguments of the plaintiff in each instance as

17 far as whether or not care was good for the animals at

18 the zoo, and I believe we presented the veterinarian's

19 deposition.

20     We presented Dr. Pacillo (phonetic), who is

21 an expert in animal nutritions information, and I also

22 believe we've tried to present certain photographs that

23 Dr. Pacillo took that are possibly part of the argument

24 today on whether those should come into the record or

25 not. Dr. Pacillo took those not as a preparation for

---

**37**

1 this case, but merely because he liked the animals,

2 their coats, what they looked like at the time he saw

3 them at the zoo. He thought they were in good

4 condition. We think that should be part of the record

5 if we're talking about the condition of the animals

6 themselves.

7     THE COURT: Mr. Pierce, do you want the last

8 word?

9     MR. PIERCE: Thank you, Your Honor. With --

10 with respect to the photographs that Mr. Thorson has

11 just mentioned, our motion to strike stands on its

12 merits. We think the law support the -- the -- both the

13 need and the -- and the opportunity to exclude those

14 from the record. Plaintiffs consider those photographs

15 immaterial. Even if authenticated, it's not clear in

16 what year the photographs were taken, so a photograph

17 allegedly taken of one of the facility's animals a

18 decade ago speaks very little to the condition or

19 welfare of that -- of that animal today.

20     The -- the record plainly shows that

21 defendants' veterinarian is unqualified to care for

22 exotic animals like the endangered animals who are the

23 subject of this hearing today.

24     We would -- we would add only, Your Honor,

25 that if you find that there are issues today that you

---

**38**

1  feel unable to resolve on summary judgment, that given
2  defendants' failure to -- to cross-motion for summary
3  judgment, you would not -- you would not rule on those
4  issues in defendants' favor, but that you would just
5  hold them over for trial.
6  　　　　THE COURT: Yeah. There are some difficult,
7  I think, legal issues -- at least difficult for me being
8  unfamiliar with the Endangered Species Act -- that I'm
9  going to have to resolve at some point. The -- and this
10  is a complicated case with a lot of moving parts, but to
11  some extent, it boils down to the issue of whether or
12  not the defendants' care for these animals -- or more
13  specifically their lack of care for these animals --
14  rises to the level of harm and harass within the meaning
15  of a taking for the Endangered Species Act, and I can't
16  find on this record when viewing the evidence in the
17  light most favorable to the defendants that the lack of
18  care rises to the level of harm or harass within the
19  meaning of the statute.
20  　　　　In other words, I believe that there are
21  genuine issues of material fact in dispute as to how
22  these ten endangered animals were cared for over various
23  periods of time and so I am not going to be granting the
24  defendants' (sic) motion for summary judgment. I think
25  this case is going to require evidence from both sides

---

**39**

1  and then I'll have an opportunity to view the
2  credibility of the witnesses and look at all of the
3  evidence and -- and make some determinations as to
4  whether or not these animals were cared for in
5  compliance with the act or if their lack of care was
6  such that it constituted harm or harassment.
7  　　　　Because that's all going to require trial,
8  it's not my intention to make any decisions now about,
9  for example, whether or not these hybrid gray wolves are
10  or are not, in fact, protected under the Endangered
11  Species Act. I'm going to have to make that
12  determination at some point, but as Mr. Pierce says, the
13  defendants have not asked for summary judgment on that
14  issue and so I don't think I need to make that
15  determination as part of my ruling on the defendants' --
16  or on the plaintiffs' motion for summary judgment.
17  　　　　So basically, the bottom line here is that
18  both sides need to prepare for trial and prepare not
19  only to provide whatever evidence you think may be
20  relevant to the care or lack of care for these
21  endangered animals, and, in addition, be prepared to
22  provide me with whatever additional authority or
23  argument you have on the legal issues involved; the
24  questions of -- of whether or not hybrid gray wolves
25  fall within the Endangered Species Act and whether or

---

**40**

1  not there is some -- you know, whether or not the gray
2  wolves aren't protected because -- if they were
3  otherwise protected as hybrid wolves but they're not
4  protected because they're found north of Interstate 80
5  and some of those kinds of issues I'm not going to try
6  to resolve now.
7  　　　　I think it's easier for me to hear the
8  evidence, make findings of fact following the trial and
9  then based on those findings of fact, figure out what
10  the law is. And, frankly, I -- I -- because this is a
11  nonjury trial, I would anticipate that after the trial
12  is over, I would probably give the parties an
13  opportunity to submit further brief -- briefing on -- on
14  how you believe the law applies to the facts that were
15  established during the course of the trial.
16  　　　　Anything else we need to talk about today,
17  Mr. Anderson? Or excuse me -- yeah, Mr. Anderson.
18  　　　　MR. ANDERSON: Not that I'm aware of,
19  Your Honor.
20  　　　　THE COURT: Mr. Pierce?
21  　　　　MR. PIERCE: No, Your Honor.
22  　　　　THE COURT: Mr. Thorson?
23  　　　　MR. THORSON: No, Your Honor.
24  　　　　THE COURT: That will conclude the hearing.
25  　　　　(Proceedings concluded at 11:45 a.m.)

---

**41**

1
2
3

4

　　　　　　　C E R T I F I C A T E

5

6  　　I, Kay C. Carr, a Certified Shorthand Reporter of
the State of Iowa, do hereby certify that I acted as the
7  official court reporter at the proceedings in the
above-entitled matter at the time and place indicated.
8
　　That I reported in shorthand all of the proceedings
9  had at the said time and place and that said shorthand
notes were reduced to print by means of a computer-aided
10  transcription device under my direction and supervision,
and that the foregoing typewritten pages are a full and
11  complete transcript of the shorthand notes so taken.

12  　　I further certify that I am not related to or
employed by any of the parties to this proceeding, and
13  further that I am not a relative or employee of any
attorney of counsel employed by the parties hereto or
14  financially interested in the action.

15  　　IN WITNESS WHEREOF, I have set my hand this 25th
day of August, 2015.
16

17

18  　　　　　/s/ Kay C. Carr
Kay C. Carr
19  Certified Shorthand Reporter
Registered Professional Reporter
20  Cedar Rapids, Iowa
(319) 362-1543
21
22
23
24
25

**1**

**11:45** [1] - 40:25
**14-2034** [1] - 2:6
**150** [1] - 31:17
**17.11** [1] - 34:13

**2**

**2,000** [1] - 4:7
**2003** [1] - 17:10
**21116** [1] - 17:10
**25** [4] - 10:11, 10:17, 11:16, 16:8
**29** [1] - 23:13

**5**

**50** [3] - 21:10, 21:12, 34:13
**51** [1] - 26:20

**7**

**75** [7] - 10:10, 10:17, 11:8, 11:16, 16:8, 16:23, 21:8

**8**

**80** [14] - 12:19, 13:13, 13:15, 13:18, 14:2, 14:16, 15:4, 15:14, 15:18, 15:23, 15:24, 34:15, 34:16, 40:4

**9**

**9** [4] - 12:23, 13:21, 14:10, 28:18

**A**

**a.m** [1] - 40:25
**ability** [3] - 23:6, 31:9, 32:17
**ably** [1] - 29:13
**absurd** [1] - 13:9
**accepted** [1] - 26:2
**acknowledge** [2] - 5:1, 23:11
**acquired** [2] - 13:11, 15:1
**act** [9] - 11:9, 17:21, 20:14, 27:7, 27:8, 27:11, 28:12, 28:14, 39:5
**Act** [45] - 2:20, 3:18, 3:21, 4:10, 4:23, 5:23, 6:20, 7:3, 7:9, 8:17, 9:16, 9:23, 10:2, 12:4, 12:13, 12:24, 13:3, 14:9, 14:17, 15:8, 15:25, 16:9, 16:24, 19:23, 22:1,

22:4, 23:12, 23:15, 24:3, 25:15, 25:18, 25:20, 25:22, 26:4, 26:6, 26:9, 32:8, 32:11, 33:7, 33:9, 33:14, 38:8, 38:15, 39:11, 39:25
**activity** [2] - 31:6, 31:11
**actual** [6] - 14:23, 27:9, 29:9, 29:19, 29:20
**add** [3] - 30:16, 36:13, 37:24
**addition** [2] - 25:6, 39:21
**additional** [1] - 39:22
**additive** [1] - 29:16
**administrative** [3] - 34:2, 34:5, 34:6
**admissions** [1] - 32:5
**admittedly** [1] - 25:25
**advertising** [1] - 12:7
**affect** [1] - 14:10
**affidavits** [1] - 25:7
**afforded** [3] - 9:10, 18:9, 18:14
**affording** [1] - 8:1
**African** [8] - 6:8, 6:10, 6:12, 6:13, 6:19, 7:2, 8:2, 8:19
**agency** [2] - 34:2, 34:5
**ago** [5] - 4:6, 8:4, 8:9, 28:16, 37:18
**agree** [1] - 32:5
**agreed** [1] - 22:2
**agricultural** [3] - 27:23, 30:8, 31:24
**Agriculture** [7] - 24:11, 27:18, 27:19, 27:22, 29:17, 29:25, 30:14
**allegation** [4] - 14:4, 26:24, 27:2, 28:1
**allegations** [4] - 12:18, 22:13, 25:10, 29:13
**alleged** [2] - 25:23, 33:21
**allegedly** [2] - 16:7, 37:17
**almost** [1] - 29:15
**alone** [1] - 27:23
**ambassador** [1] - 31:9
**amount** [2] - 29:19, 30:14
**analysis** [1] - 24:13
**Anderson** [5] - 2:10, 2:25, 40:17
**ANDERSON** [2] - 2:11, 40:18
**animal** [25] - 5:4, 5:6, 13:11, 13:22, 13:23, 16:13, 16:14, 17:24, 18:9, 18:10, 19:20, 20:13, 20:16, 21:10, 22:16, 26:2, 29:6, 29:7, 33:15, 34:23, 36:7, 36:11, 36:21, 37:19
**Animal** [6] - 25:20, 26:3, 26:6, 26:9, 33:7, 33:13
**animals** [50] - 2:19, 3:1, 11:18, 12:2, 12:9, 12:25, 16:16, 17:20, 18:16, 19:17, 21:25, 22:11, 22:14, 23:5,

23:7, 24:1, 25:14, 26:10, 27:16, 27:21, 28:2, 28:6, 28:15, 29:11, 30:15, 30:25, 31:3, 31:5, 31:7, 31:8, 31:10, 31:12, 31:16, 31:17, 31:20, 32:9, 34:21, 36:17, 37:1, 37:5, 37:17, 37:22, 38:12, 38:13, 38:22, 39:4, 39:21
**animals'** [1] - 23:22
**annoyance** [2] - 29:20, 30:14
**annoys** [1] - 27:13
**answer** [1] - 16:2
**anticipate** [1] - 40:11
**anticipated** [1] - 7:3
**anticipation** [1] - 7:5
**anyway** [2] - 22:9, 35:7
**appeal** [3] - 27:19, 30:6, 33:18
**appeals** [3] - 27:22, 30:7, 33:19
**appear** [1] - 28:24
**appearance** [1] - 33:21
**application** [1] - 14:10
**applies** [1] - 40:14
**apply** [1] - 36:11
**appropriate** [1] - 32:12
**areas** [4] - 12:15, 13:1, 13:4, 14:22
**argue** [1] - 30:21
**argued** [1] - 3:24
**argument** [3] - 23:21, 36:23, 39:23
**arguments** [2] - 36:15, 36:16
**arises** [1] - 25:17
**art** [2] - 23:15, 25:17
**articulated** [1] - 7:19
**Asian** [6] - 6:7, 6:10, 6:23, 7:12, 7:20, 7:25
**assume** [3] - 16:17, 19:11, 25:9
**assuming** [1] - 22:24
**attempt** [1] - 26:23
**attorney** [1] - 2:13
**Attorneys** [1] - 2:9
**authenticated** [2] - 30:5, 37:15
**authority** [5] - 9:15, 13:13, 14:14, 16:12, 39:22
**AWA** [3] - 33:7, 33:16, 33:19
**aware** [3] - 3:4, 6:25, 40:18

**B**

**baby** [1] - 31:8
**bad** [1] - 35:5
**Barbary** [3] - 5:24, 8:20, 8:23
**based** [2] - 12:4, 40:9

**basis** [6] - 17:19, 17:22, 25:23, 27:23, 31:24, 31:25
**behavioral** [1] - 29:4
**belongs** [1] - 13:24
**between** [6] - 7:21, 9:18, 26:17, 27:3, 27:5, 29:23
**beyond** [2] - 11:3, 31:8
**biologically** [2] - 5:6, 20:2
**biology** [1] - 19:8
**birds** [1] - 22:13
**bit** [2] - 23:10, 29:24
**blood** [1] - 16:25
**bobcat** [1] - 5:14
**boils** [1] - 38:11
**booklet** [1] - 33:16
**born** [1] - 13:17
**bothered** [1] - 5:2
**bottom** [1] - 39:17
**bred** [13] - 10:22, 12:10, 16:18, 16:19, 16:21, 21:1, 21:2, 34:24, 35:16, 35:21, 35:22
**breed** [6] - 19:18, 20:1, 20:5, 20:7, 21:3, 31:2
**brief** [2] - 17:5, 40:13
**briefing** [2] - 32:19, 40:13
**broad** [2] - 28:12, 28:20
**brought** [5] - 3:5, 15:18, 15:20, 17:8, 33:12
**built** [1] - 26:7
**bunches** [1] - 23:23
**business** [3] - 32:15, 34:15, 34:17

**C**

**Canis** [4] - 11:3, 18:7, 20:7, 20:8
**captive** [2] - 13:6, 25:25
**captivity** [1] - 13:17
**capture** [2] - 13:14, 26:22
**captured** [1] - 13:18
**care** [24] - 22:25, 23:3, 23:5, 23:7, 23:20, 23:22, 24:1, 24:2, 26:11, 26:13, 26:18, 27:16, 27:20, 28:1, 28:6, 29:6, 36:17, 37:21, 38:12, 38:13, 38:18, 39:5, 39:20
**cared** [4] - 25:13, 27:3, 38:22, 39:4
**caring** [2] - 22:13, 22:16
**case** [26] - 2:2, 2:4, 4:3, 8:7, 9:22, 10:7, 15:17, 16:5, 16:11, 16:15, 17:4, 17:6, 17:8, 19:3, 20:17, 21:8, 24:25, 27:25, 29:17, 31:22, 33:20, 35:2, 37:1, 38:10, 38:25
**cases** [3] - 2:3, 17:25, 28:21
**cat** [3] - 5:10, 5:11, 5:12
**categories** [1] - 3:1

to purchase a complete copy of the transcript.

**certain** [9] - 3:21, 4:3, 4:4, 4:14, 9:15, 12:15, 14:8, 14:22, 36:22
**certainly** [2] - 11:25, 30:21
**CFR** [1] - 34:13
**change** [1] - 36:2
**check** [2] - 4:2, 4:15
**circumstances** [3] - 26:18, 27:1, 28:7
**citation** [1] - 14:14
**cite** [3] - 17:4, 17:10, 34:13
**cited** [1] - 33:11
**claim** [11] - 12:7, 14:15, 16:9, 16:23, 17:19, 21:19, 23:19, 27:15, 30:19, 30:24, 31:19
**claiming** [4] - 6:22, 19:19, 28:2, 34:22
**claims** [6] - 3:5, 3:7, 16:10, 23:13, 24:18, 25:19
**clear** [3] - 21:24, 35:15, 37:15
**clearly** [3] - 21:8, 21:10, 26:4
**climb** [1] - 5:7
**coats** [1] - 37:2
**code** [1] - 14:1
**collect** [1] - 26:22
**collectively** [1] - 23:5
**comfortable** [1] - 3:9
**coming** [2] - 14:4, 32:23
**commerce** [1] - 31:6
**commercial** [2] - 31:6, 31:11
**complaint** [2] - 6:25, 26:20
**compliance** [2] - 25:20, 39:5
**complicated** [1] - 38:10
**comply** [1] - 32:17
**concede** [10] - 3:16, 4:22, 5:22, 6:19, 7:7, 9:21, 9:25, 10:5, 12:12, 21:16
**concerns** [3] - 19:24, 25:21, 29:3
**conclude** [1] - 40:24
**concluded** [2] - 35:3, 40:25
**condition** [3] - 37:4, 37:5, 37:18
**conduct** [1] - 26:23
**conducted** [1] - 11:4
**confused** [1] - 9:18
**Congress** [2] - 28:11, 28:19
**consensus** [1] - 6:7
**consider** [3] - 32:18, 36:5, 37:14
**considered** [1] - 27:22
**considering** [1] - 7:1
**constitute** [2] - 28:4, 28:9
**constituted** [1] - 39:6

**construed** [1] - 28:24
**consult** [1] - 13:5
**contain** [1] - 24:17
**contend** [1] - 8:15
**controversy** [1] - 9:20
**correct** [13] - 2:25, 3:4, 3:12, 6:21, 8:13, 10:3, 12:20, 18:14, 20:22, 22:20, 22:21, 26:25, 31:19
**correctly** [1] - 8:20
**count** [2] - 22:7, 22:12
**couple** [3] - 14:19, 25:16, 27:6
**course** [5] - 11:20, 15:17, 31:6, 31:11, 40:15
**COURT** [98] - 2:1, 2:12, 2:16, 3:8, 3:14, 3:16, 3:23, 4:5, 4:17, 4:21, 4:25, 5:8, 5:11, 5:13, 5:16, 5:21, 6:1, 6:6, 6:15, 6:18, 6:22, 7:7, 7:13, 7:18, 8:3, 8:14, 8:22, 8:25, 9:14, 9:21, 9:25, 10:4, 10:13, 10:16, 10:20, 10:11, 11:22, 12:17, 12:21, 13:10, 13:25, 14:12, 14:25, 15:4, 15:6, 15:11, 15:17, 15:22, 16:6, 17:6, 17:11, 17:13, 17:17, 18:5, 18:12, 18:16, 18:19, 19:2, 19:7, 19:16, 20:10, 20:20, 20:24, 21:1, 21:15, 21:23, 22:9, 22:21, 22:23, 23:9, 24:22, 26:11, 26:16, 27:1, 27:25, 29:22, 30:16, 30:21, 31:15, 31:21, 32:13, 32:22, 32:25, 33:24, 34:2, 34:4, 34:14, 34:22, 35:1, 35:14, 35:23, 36:1, 36:13, 37:7, 38:6, 40:20, 40:22, 40:24
**court** [2] - 16:4, 34:4
**Court** [11] - 2:1, 2:4, 8:12, 11:10, 17:21, 23:4, 24:16, 29:18, 32:4, 32:14
**courtesy** [1] - 29:15
**courts** [3] - 28:22, 28:23, 29:2
**covered** [1] - 35:16
**creates** [2] - 27:13, 35:10
**credibility** [1] - 39:2
**criminal** [2] - 2:3, 17:8
**cross** [1] - 38:2
**cross-motion** [1] - 38:2
**crossed** [1] - 21:20

**D**

**Daniel** [1] - 2:10
**DC** [1] - 34:1
**deadline** [1] - 8:6
**death** [3] - 27:10, 29:20, 30:14
**decade** [1] - 37:18
**decision** [2] - 33:19, 35:6

**decisions** [1] - 39:8
**declined** [1] - 34:19
**defend** [1] - 17:18
**defendant** [4] - 3:16, 9:4, 16:10, 17:9
**defendants** [40] - 2:13, 2:18, 4:22, 5:22, 8:15, 9:12, 10:4, 10:9, 10:17, 11:1, 11:12, 11:13, 11:23, 12:11, 14:3, 21:16, 23:7, 23:19, 23:25, 24:8, 24:14, 24:17, 24:20, 25:1, 25:3, 25:11, 25:19, 27:15, 27:18, 28:3, 30:6, 31:2, 31:10, 32:1, 32:5, 32:6, 32:14, 32:16, 38:17, 39:13
**defendants'** [10] - 29:6, 29:19, 30:15, 30:25, 37:21, 38:2, 38:4, 38:12, 38:24, 39:15
**defense** [2] - 17:22, 18:22
**defines** [1] - 19:9
**defining** [1] - 28:15
**definition** [4] - 24:4, 26:7, 26:21, 28:25
**degree** [1] - 30:25
**denied** [3] - 25:4, 27:22, 30:7
**deny** [1] - 23:25
**Department** [7] - 24:11, 27:18, 27:19, 27:21, 29:17, 29:25, 30:13
**deposition** [1] - 36:19
**describe** [1] - 5:5
**described** [1] - 30:12
**details** [1] - 22:25
**determination** [2] - 39:12, 39:15
**determinations** [1] - 39:3
**determine** [1] - 7:25
**died** [1] - 29:7
**difference** [4] - 7:22, 13:10, 13:19, 26:16
**different** [3] - 19:10, 20:5, 25:21
**difficult** [3] - 21:6, 38:6, 38:7
**direct** [4] - 27:8, 33:13, 34:8, 34:9
**disagreement** [1] - 24:20
**disallowed** [1] - 17:22
**discovery** [4] - 8:5, 8:6, 32:2, 32:6
**discuss** [1] - 30:20
**displeasure** [1] - 24:19
**dispositive** [1] - 12:1
**dispute** [9] - 4:11, 4:14, 6:9, 22:4, 24:5, 24:8, 24:12, 34:7, 38:21
**disputed** [1] - 33:23
**distinct** [1] - 14:6
**distinction** [2] - 27:3, 27:5
**distinguishing** [1] - 29:23
**district** [1] - 34:4

**District** [4] - 13:15, 17:10, 17:16, 35:3
**documents** [2] - 23:23, 25:8
**dog** [16] - 10:11, 10:17, 11:16, 16:8, 16:19, 16:21, 18:5, 18:6, 19:19, 20:10, 20:11, 21:3, 34:20, 34:23, 35:10, 35:11
**dogs** [1] - 35:7
**donate** [1] - 31:10
**donation** [1] - 31:5
**done** [4] - 2:2, 8:8, 8:9, 29:22
**dotted** [1] - 21:20
**down** [2] - 20:12, 38:11
**Dr** [3] - 36:20, 36:23, 36:25
**drawn** [1] - 17:1
**drop** [1] - 16:25
**during** [1] - 40:15

**E**

**easier** [1] - 40:7
**eastern** [1] - 17:15
**effect** [1] - 30:1
**eight** [1] - 21:25
**eighths** [1] - 16:20
**either** [4] - 3:12, 13:17, 16:5, 28:9
**enable** [1] - 30:11
**enclosure** [1] - 11:2
**end** [1] - 20:6
**endangered** [22] - 11:3, 11:25, 12:25, 14:20, 15:22, 16:13, 16:25, 17:9, 23:17, 25:13, 28:13, 28:15, 30:15, 31:20, 32:15, 34:9, 34:24, 36:2, 36:3, 37:22, 38:22, 39:21
**Endangered** [39] - 2:20, 3:17, 3:20, 4:10, 4:23, 5:23, 6:20, 7:3, 7:9, 8:16, 9:16, 9:22, 10:2, 12:3, 12:13, 12:24, 13:3, 14:9, 14:16, 15:7, 15:25, 16:9, 16:24, 19:23, 22:1, 22:3, 23:12, 23:15, 24:3, 25:15, 25:18, 25:22, 32:7, 32:11, 33:9, 38:8, 38:15, 39:10, 39:25
**engage** [1] - 26:23
**enormous** [1] - 30:3
**entered** [1] - 33:21
**entire** [1] - 9:10
**entirely** [2] - 25:21, 27:17
**entitled** [3] - 2:2, 2:5, 20:13
**entry** [1] - 24:5
**enumerated** [3] - 29:14, 30:7, 30:10
**ESA** [3] - 6:7, 16:15, 33:9

to purchase a complete copy of the transcript.

**essentially** [2] - 30:8, 32:6
**established** [1] - 40:15
**evaluations** [1] - 30:12
**evidence** [21] - 7:10, 7:11, 7:20, 8:22, 10:6, 10:21, 10:22, 10:24, 11:13, 22:24, 23:2, 24:23, 24:25, 25:10, 32:4, 33:6, 38:16, 38:25, 39:3, 39:19, 40:8
**evidentiary** [2] - 30:1, 30:4
**exactly** [2] - 5:6, 19:8
**example** [2] - 25:20, 39:9
**exceed** [1] - 26:3
**exception** [2] - 25:25, 26:7
**exclude** [1] - 37:13
**excuse** [3] - 2:2, 10:4, 40:17
**exempt** [1] - 33:8
**exotic** [1] - 37:22
**expand** [1] - 31:3
**expected** [1] - 28:19
**expecting** [1] - 7:18
**expert** [3] - 24:15, 29:15, 36:21
**experts** [7] - 11:4, 24:13, 24:16, 29:14, 29:18, 30:11, 31:23
**explain** [1] - 29:18
**explained** [1] - 13:21
**extent** [1] - 38:11

## F

**facility** [6] - 23:6, 26:1, 26:5, 30:15, 30:25, 32:10
**facility's** [1] - 37:17
**fact** [15] - 11:23, 12:4, 12:13, 12:21, 13:23, 16:7, 22:15, 24:4, 24:7, 25:14, 33:12, 38:21, 39:10, 40:8, 40:9
**facts** [11] - 24:9, 25:5, 25:7, 27:14, 27:15, 27:24, 28:22, 29:6, 30:7, 30:10, 40:14
**factual** [4] - 2:17, 10:20, 36:15, 36:16
**factually** [2] - 3:11, 11:12
**failed** [4] - 23:19, 28:1, 28:3, 28:9
**failing** [2] - 26:11, 26:13
**failure** [2] - 26:18, 38:2
**fair** [1] - 25:4
**fairly** [1] - 22:11
**fall** [2] - 16:9, 39:25
**falls** [1] - 12:4
**false** [1] - 12:7
**familiarus** [1] - 20:8
**family** [2] - 9:10, 9:11
**far** [8] - 4:15, 20:12, 28:14, 33:11, 33:19, 34:11, 34:17, 36:17

**far-reaching** [1] - 28:14
**favor** [1] - 38:4
**favorable** [4] - 24:24, 25:1, 25:11, 38:17
**federal** [1] - 34:4
**feeds** [1] - 31:11
**fertile** [2] - 20:3, 20:9
**few** [1] - 34:8
**figure** [2] - 28:5, 40:9
**filed** [2] - 2:8, 6:25
**final** [1] - 7:1
**finalize** [1] - 8:1
**finalized** [1] - 7:4
**finally** [1] - 34:12
**financial** [1] - 32:2
**findings** [4] - 24:11, 29:25, 40:8, 40:9
**first** [6] - 6:16, 10:13, 23:12, 25:3, 25:17, 33:6
**Fish** [2] - 7:1, 7:25
**five** [3] - 4:18, 10:1, 22:1
**following** [1] - 40:8
**forget** [2] - 21:16, 31:15
**forgotten** [1] - 19:4
**forth** [4] - 16:12, 23:23, 25:9, 26:20
**four** [2] - 22:6, 22:7
**fourths** [1] - 16:18
**frankly** [2] - 4:5, 40:10
**full** [9] - 10:22, 12:10, 16:19, 16:21, 20:15, 34:24, 35:16, 35:20, 35:22
**furry** [1] - 5:6
**future** [2] - 32:21, 32:23

## G

**gears** [1] - 29:24
**general** [2] - 28:23, 36:8
**generally** [3] - 4:9, 26:2, 29:2
**generates** [1] - 25:12
**genetic** [3] - 7:24, 8:7, 11:4
**genetically** [1] - 34:18
**genuine** [2] - 25:12, 38:21
**geographic** [2] - 13:1, 13:4
**geographical** [1] - 14:22
**germane** [1] - 23:6
**gist** [1] - 23:21
**given** [2] - 21:18, 38:1
**government** [1] - 8:4
**grant** [1] - 22:24
**granting** [1] - 38:23
**gray** [22] - 2:21, 4:25, 10:8, 10:22, 12:10, 12:11, 12:12, 12:18, 13:14, 14:15, 15:23, 16:7, 22:5, 22:7, 22:17, 23:1, 34:12, 36:2, 36:3, 39:9, 39:24, 40:1
**grows** [1] - 31:8
**guess** [7] - 4:8, 9:3, 9:5,

12:6, 16:19, 16:22, 35:4

## H

**habitats** [1] - 32:12
**happy** [1] - 32:19
**harass** [16] - 25:24, 26:17, 26:21, 26:24, 27:3, 27:6, 27:24, 28:4, 28:8, 28:10, 28:18, 29:2, 38:14, 38:18
**harassment** [12] - 25:25, 26:6, 27:10, 27:11, 28:23, 29:11, 29:12, 31:2, 31:4, 31:7, 31:14, 39:6
**harm** [32] - 25:24, 26:8, 26:9, 26:11, 26:13, 26:21, 26:24, 27:4, 27:6, 27:7, 27:24, 28:4, 28:7, 28:10, 28:18, 28:23, 28:24, 29:1, 29:8, 29:10, 29:12, 31:2, 31:4, 31:7, 31:13, 33:14, 33:15, 38:14, 38:18, 39:6
**harmed** [1] - 29:8
**hate** [2] - 4:13, 5:1
**hear** [1] - 40:7
**hearing** [4] - 2:7, 34:6, 37:23, 40:24
**held** [5] - 4:10, 6:2, 6:23, 10:1, 32:21
**herself** [1] - 11:20
**hold** [1] - 38:5
**homed** [1] - 32:9
**Honor** [53] - 2:11, 2:15, 3:3, 3:13, 3:21, 4:14, 4:20, 4:24, 6:5, 6:11, 6:21, 6:24, 7:15, 8:12, 8:18, 9:9, 9:17, 10:19, 10:25, 11:3, 12:14, 12:23, 13:20, 14:18, 16:2, 17:2, 18:7, 18:21, 19:13, 20:22, 21:7, 21:22, 24:8, 25:16, 26:15, 26:25, 27:21, 28:16, 28:21, 30:19, 30:24, 32:17, 32:18, 33:5, 33:23, 34:3, 36:6, 36:12, 37:9, 37:24, 40:19, 40:21, 40:23
**hope** [1] - 7:16
**hunt** [1] - 26:22
**husbandry** [1] - 26:2
**hybrid** [14] - 10:10, 11:21, 12:11, 16:7, 16:23, 21:3, 22:5, 22:17, 23:18, 34:17, 35:22, 39:9, 39:24, 40:3
**hybridization** [3] - 18:1, 18:15, 20:18
**hybridize** [2] - 18:11, 19:24
**hybridized** [6] - 11:6, 17:20, 17:24, 18:9, 18:23, 20:13
**hybrids** [6] - 10:18, 11:13, 15:9, 20:21, 21:2, 34:19

## I

**idea** [1] - 13:6
**identified** [1] - 30:13
**ignorance** [1] - 5:2
**Illinois** [2] - 17:16, 35:3
**immaterial** [1] - 37:15
**immediately** [1] - 33:15
**impossible** [1] - 11:5
**impression** [1] - 4:8
**incapable** [1] - 32:7
**incidentally** [3] - 3:8, 12:11, 21:15
**include** [3] - 11:16, 22:12, 29:1
**included** [2] - 7:4, 11:15
**includes** [1] - 29:9
**including** [1] - 32:2
**incorrect** [2] - 9:13, 13:8
**indicated** [2] - 26:24, 29:24
**indicates** [2] - 33:6, 33:17
**indirect** [4] - 27:8, 33:13, 33:14, 34:7
**individually** [1] - 23:8
**information** [1] - 36:21
**informational** [2] - 36:7, 36:10
**injuring** [1] - 26:14
**injury** [8] - 27:9, 27:13, 28:25, 29:9, 29:20, 29:21, 30:14
**insist** [1] - 27:20
**instance** [5] - 14:21, 26:4, 27:21, 35:11, 36:16
**instances** [2] - 13:2, 29:10
**instead** [1] - 36:2
**intended** [2] - 27:8, 28:12
**intends** [1] - 28:19
**intention** [1] - 39:8
**intentional** [1] - 27:12
**interbreed** [1] - 19:11
**interbreeding** [1] - 19:15
**interested** [2] - 12:9, 30:20
**interesting** [1] - 12:16
**Interior** [1] - 13:5
**interpreted** [1] - 29:2
**interspecies** [1] - 17:25
**Interstate** [14] - 12:19, 13:13, 13:15, 13:18, 14:2, 14:16, 15:4, 15:14, 15:18, 15:23, 15:24, 34:15, 34:16, 40:4
**interstate** [1] - 31:5
**involve** [1] - 34:9
**involved** [1] - 39:23
**involving** [1] - 33:20
**Iowa** [2] - 13:15, 15:13
**irrelevant** [1] - 24:21
**issue** [12] - 6:16, 7:16, 9:12, 11:11, 13:6, 16:4, 16:5, 16:6, 18:17, 25:12,

Document 50319-1aae7b5960c7a.com
to purchase a complete copy of the transcript.

38:11, 39:14
  **issues** [9] - 2:17, 23:10, 37:25, 38:4, 38:7, 38:21, 39:23, 40:5
  **itself** [2] - 16:3, 36:6

**J**

  **Jeffrey** [1] - 2:10
  **job** [1] - 29:23
  **judge** [1] - 23:13
  **judgment** [14] - 2:8, 3:5, 22:24, 24:6, 24:21, 24:23, 24:24, 30:17, 33:4, 38:1, 38:3, 38:24, 39:13, 39:16
  **jurisdiction** [3] - 11:9, 17:13, 23:4

**K**

  **Kapp** [10] - 17:4, 17:7, 17:18, 18:7, 18:17, 18:22, 20:15, 35:1, 35:2
  **kill** [1] - 26:22
  **killing** [2] - 26:14, 29:9
  **kind** [3] - 5:8, 12:15, 14:21
  **kinds** [5] - 17:25, 19:10, 30:11, 32:3, 40:5
  **knowing** [1] - 12:9
  **Kuehl** [1] - 2:5

**L**

  **lack** [4] - 38:13, 38:17, 39:5, 39:20
  **language** [1] - 14:23
  **large** [1] - 22:11
  **Larry** [1] - 2:13
  **last** [1] - 37:7
  **law** [7] - 9:13, 12:23, 16:11, 17:23, 37:12, 40:10, 40:14
  **lawsuit** [3] - 3:2, 7:14, 22:19
  **leading** [2] - 29:12, 29:20
  **learned** [1] - 8:3
  **least** [4] - 6:8, 19:4, 33:16, 38:7
  **leave** [1] - 8:12
  **leaves** [1] - 10:8
  **legal** [6] - 2:16, 11:11, 23:10, 25:17, 38:7, 39:23
  **legally** [1] - 9:15
  **lemur** [4] - 4:16, 9:11, 19:10, 22:16
  **lemurs** [27] - 2:20, 3:6, 3:12, 3:17, 3:19, 3:20, 4:3, 4:9, 4:10, 9:1, 9:4, 9:5, 9:8, 9:9, 9:10, 9:16, 9:18, 9:20, 9:22, 19:3, 19:7, 19:10, 20:2, 20:4, 22:1, 23:1, 23:17

  **leopard** [1] - 18:20
  **leopards** [1] - 18:18
  **less** [3] - 11:8, 21:12, 35:23
  **level** [5] - 18:9, 18:10, 18:25, 38:14, 38:18
  **Lexus** [1] - 17:10
  **liability** [1] - 32:20
  **license** [2] - 33:9, 33:10
  **liger** [1] - 18:4
  **light** [5] - 24:23, 25:1, 25:11, 32:3, 38:17
  **likelihood** [2] - 27:13, 29:21
  **likely** [1] - 29:11
  **limited** [3] - 13:1, 22:25, 23:2
  **line** [5] - 17:1, 20:12, 35:13, 35:15, 39:17
  **lineage** [1] - 20:6
  **lines** [1] - 31:10
  **lion** [3] - 7:25, 18:1, 18:2
  **lions** [25] - 2:23, 3:7, 6:2, 6:4, 6:7, 6:8, 6:10, 6:12, 6:13, 6:14, 6:19, 6:23, 7:2, 7:5, 7:8, 7:12, 7:13, 7:17, 7:20, 8:2, 10:7, 22:3
  **list** [2] - 7:2, 28:16
  **listing** [2] - 14:6, 14:20
  **lists** [1] - 14:21
  **live** [1] - 31:18
  **look** [5] - 5:2, 11:18, 39:2
  **looked** [3] - 4:6, 11:18, 37:2
  **looking** [1] - 26:19
  **lose** [1] - 13:16
  **loses** [1] - 15:24
  **lupus** [4] - 11:3, 18:7, 20:7, 20:8

**M**

  **maintain** [6] - 11:2, 23:4, 24:10, 24:12, 29:10, 31:24
  **maintained** [1] - 31:1
  **mammal** [1] - 5:8
  **material** [6] - 4:7, 24:4, 24:7, 25:5, 25:7, 38:21
  **materials** [2] - 32:1, 32:3
  **matter** [5] - 2:1, 2:4, 2:6, 9:13, 13:23
  **matters** [2] - 21:12, 30:24
  **mean** [8] - 7:19, 7:21, 8:6, 10:21, 12:6, 14:2, 22:7, 23:20
  **meaning** [4] - 20:2, 29:8, 38:14, 38:19
  **means** [1] - 24:25
  **medical** [1] - 24:2
  **meet** [5] - 24:2, 26:2, 26:5, 26:8, 32:10
  **meeting** [2] - 23:22, 32:7
  **member** [5] - 14:11, 14:11,

18:11, 20:16, 21:14
  **mentioned** [1] - 37:11
  **merely** [3] - 27:11, 29:16, 37:1
  **merits** [1] - 37:12
  **met** [1] - 21:17
  **methodically** [1] - 29:18
  **might** [3] - 7:24, 13:6, 30:19
  **mind** [1] - 6:11
  **minimum** [3] - 26:3, 26:5, 26:8
  **minutes** [1] - 14:19
  **misrepresentation** [1] - 12:22
  **missed** [2] - 4:8, 14:13
  **Missouri** [3] - 15:3, 15:7, 17:15
  **misstatement** [1] - 17:23
  **mix** [1] - 18:19
  **modifications** [1] - 29:4
  **moment** [2] - 5:1, 16:17
  **moments** [1] - 28:16
  **months** [1] - 8:9
  **most** [7] - 24:24, 25:1, 25:11, 28:14, 34:7, 35:6, 38:17
  **mostly** [1] - 16:16
  **motion** [7] - 2:7, 30:17, 33:4, 37:11, 38:2, 38:24, 39:16
  **move** [1] - 8:5
  **moving** [1] - 38:10
  **MR** [97] - 2:11, 2:15, 3:3, 3:13, 3:15, 3:19, 4:1, 4:13, 4:20, 4:24, 5:4, 5:10, 5:12, 5:14, 5:20, 5:24, 6:4, 6:11, 6:17, 6:21, 6:24, 7:10, 7:15, 7:23, 8:11, 8:18, 8:24, 9:8, 9:17, 9:24, 10:3, 10:12, 10:15, 10:18, 10:24, 11:14, 12:14, 12:20, 12:22, 13:20, 14:5, 14:18, 15:2, 15:5, 15:9, 15:12, 15:20, 16:1, 17:2, 17:7, 17:12, 17:14, 17:18, 18:6, 18:13, 18:18, 18:21, 19:6, 19:13, 19:22, 20:11, 20:22, 20:25, 21:5, 21:22, 22:6, 22:20, 22:22, 23:2, 24:7, 25:16, 26:13, 26:25, 27:5, 28:11, 30:3, 30:18, 30:23, 31:19, 31:23, 32:16, 32:24, 33:5, 33:25, 34:3, 34:5, 34:16, 34:25, 35:5, 35:19, 35:25, 36:5, 36:14, 37:9, 40:18, 40:21, 40:23

**N**

  **nation** [1] - 28:14
  **necessarily** [2] - 36:8, 36:11

18:11, 20:16, 21:14
  **need** [5] - 27:8, 37:13, 39:14, 39:18, 40:16
  **needed** [1] - 24:3
  **needn't** [1] - 27:7
  **needs** [1] - 23:22
  **negligent** [1] - 27:12
  **never** [1] - 9:12
  **next** [1] - 4:18
  **nobody** [1] - 35:21
  **none** [1] - 11:8
  **nonjury** [1] - 40:11
  **nonspecies** [2] - 19:25, 20:6
  **north** [10] - 12:19, 13:13, 13:15, 13:18, 14:2, 14:15, 15:14, 15:18, 15:24, 40:4
  **Northern** [3] - 13:15, 17:15, 35:3
  **noted** [1] - 6:12
  **notice** [1] - 21:18
  **noticed** [1] - 21:17
  **number** [2] - 2:19, 22:11
  **nutritions** [1] - 36:21

**O**

  **obtained** [1] - 7:11
  **obviously** [1] - 11:22
  **offered** [1] - 34:18
  **offspring** [13] - 16:20, 16:21, 16:22, 18:14, 19:12, 19:14, 19:18, 19:21, 20:3, 20:9, 20:20, 21:2, 21:4
  **omission** [1] - 27:12
  **one** [31] - 5:20, 5:21, 6:22, 7:23, 7:25, 9:6, 13:7, 14:21, 15:9, 19:9, 19:19, 19:20, 19:24, 20:2, 20:14, 20:22, 21:2, 21:8, 21:10, 21:13, 25:24, 27:7, 30:4, 31:8, 33:16, 35:6, 35:15, 35:17, 35:20, 35:21, 37:17
  **ones** - 2:19, 33:14
  **ongoing** [4] - 31:1, 31:4, 31:7, 31:13
  **operate** [1] - 2:18
  **opportunity** [3] - 37:13, 39:1, 40:13
  **opposed** [1] - 12:5
  **order** [2] - 16:14, 32:14
  **origin** [1] - 13:22
  **otherwise** [2] - 13:17, 40:3
  **overall** [1] - 31:12
  **overlap** [1] - 28:18
  **own** [3] - 24:15, 25:6, 32:5

**P**

  **Pacillo** [3] - 36:20, 36:23, 36:25
  **page** [2] - 26:19, 33:16

to purchase a complete copy of the transcript.

**pages** [1] - 4:7
**Pam** [1] - 11:19
**Pamela** [1] - 2:5
**papers** [10] - 3:24, 9:12, 11:1, 11:14, 11:16, 12:18, 14:13, 17:12, 22:10, 25:8
**paperwork** [1] - 6:14
**paragraph** [1] - 26:20
**parents** [10] - 20:15, 20:23, 21:9, 21:11, 21:13, 35:16, 35:17, 35:20, 35:22
**part** [7] - 7:14, 14:19, 14:23, 24:20, 36:23, 37:4, 39:15
**participates** [1] - 20:18
**particular** [4] - 13:4, 13:6, 30:13, 31:13
**parties** [1] - 40:12
**partly** [1] - 35:7
**parts** [1] - 38:10
**party** [1] - 24:24
**passed** [1] - 28:11
**percent** [13] - 10:10, 10:11, 10:17, 11:8, 11:16, 16:8, 16:23, 21:8, 21:10, 21:12
**percentage** [3] - 16:13, 34:20, 35:10
**percentages** [4] - 21:6, 21:7, 21:13, 35:8
**periods** [1] - 38:23
**person** [2] - 26:8, 28:17
**phonetic** [1] - 36:20
**photograph** [1] - 37:16
**photographs** [5] - 31:25, 36:22, 37:10, 37:14, 37:16
**physical** [2] - 28:24, 28:25
**Pierce** [10] - 2:10, 2:25, 6:16, 6:17, 12:21, 16:11, 35:14, 37:7, 39:12, 40:20
**PIERCE** [53] - 3:3, 5:10, 5:12, 5:14, 6:17, 6:21, 6:24, 7:10, 7:15, 7:23, 8:11, 8:18, 8:24, 9:8, 10:24, 12:22, 13:20, 14:5, 17:2, 17:7, 17:12, 17:14, 17:18, 18:6, 18:13, 18:18, 18:21, 19:6, 19:13, 19:22, 20:11, 20:22, 20:25, 21:5, 22:6, 22:20, 22:22, 23:2, 24:7, 25:16, 26:13, 26:25, 27:5, 28:11, 30:3, 30:18, 30:23, 31:19, 31:23, 32:16, 32:24, 37:9, 40:21
**placed** [1] - 24:16
**plainly** [1] - 37:20
**plaintiff** [2] - 33:12, 36:16
**plaintiffs** [24] - 2:8, 2:9, 3:4, 6:19, 6:25, 10:5, 10:21, 16:8, 20:13, 21:21, 23:4, 23:19, 24:10, 24:12, 24:19, 25:5, 25:22, 29:5, 29:10, 31:1, 31:22, 32:8, 32:18, 37:14

**plaintiffs'** [15] - 8:17, 9:7, 11:6, 22:7, 24:13, 29:14, 29:15, 29:18, 30:11, 31:23, 39:16
**pleadings** [1] - 4:2
**point** [3] - 28:21, 38:9, 39:12
**poor** [1] - 23:22
**population** [1] - 31:3
**populations** [2] - 14:6, 14:8
**portion** [2] - 25:4, 35:12
**position** [4] - 11:7, 21:1, 23:24, 24:9
**possession** [1] - 23:16
**possible** [2] - 28:13, 28:20
**possibly** [1] - 36:23
**potentially** [3] - 2:21, 2:22, 22:6
**practices** [2] - 26:1, 26:2
**precisely** [4] - 13:20, 20:5, 21:7, 24:14
**preclude** [1] - 24:5
**preclusive** [1] - 30:1
**prefer** [1] - 32:9
**preferably** [1] - 32:11
**preparation** [1] - 36:25
**prepare** [2] - 39:18
**prepared** [1] - 39:21
**present** [1] - 36:22
**presented** [4] - 33:6, 36:14, 36:18, 36:20
**preserve** [1] - 7:16
**presumably** [1] - 13:16
**presume** [1] - 14:5
**pretty** [1] - 8:5
**preventable** [1] - 29:7
**previously** [1] - 3:25
**primarily** [1] - 23:3
**problem** [1] - 31:12
**problems** [1] - 30:13
**procedural** [1] - 21:17
**proceeding** [1] - 25:2
**Proceedings** [1] - 40:25
**prohibit** [1] - 12:24
**prohibits** [1] - 21:20
**proper** [4] - 24:1, 27:16, 27:20, 28:6
**properly** [9] - 22:14, 22:16, 23:20, 25:13, 26:12, 26:14, 26:19, 27:2, 28:1
**proposition** [1] - 17:5
**protect** [1] - 28:14
**protected** [64] - 2:19, 3:17, 3:20, 3:22, 4:4, 4:9, 4:11, 4:22, 5:22, 5:25, 6:7, 6:8, 6:20, 7:2, 7:8, 8:16, 9:4, 9:5, 9:9, 9:16, 9:22, 10:1, 10:7, 12:13, 12:15, 12:19, 13:7, 14:16, 14:22, 15:7, 15:15, 16:14, 16:17, 16:24, 18:2, 18:12, 18:15, 18:20, 18:24, 19:3, 19:11, 19:12, 19:14, 19:17, 19:18,

19:20, 19:21, 20:16, 20:19, 20:21, 21:3, 21:4, 21:14, 21:25, 22:3, 22:5, 34:23, 35:4, 39:10, 40:2, 40:3, 40:4
**protection** [7] - 12:3, 13:16, 15:24, 17:21, 18:1, 18:3, 35:10
**protections** [15] - 7:6, 8:2, 8:19, 9:9, 11:9, 12:23, 13:21, 17:24, 18:8, 18:13, 19:1, 20:14, 28:12, 28:19
**prove** [1] - 32:17
**provide** [6] - 24:1, 24:13, 28:12, 32:12, 39:19, 39:22
**provided** [3] - 27:20, 28:15, 33:16
**providing** [1] - 27:16
**provisions** [1] - 33:8
**psychological** [2] - 29:1, 29:3
**public** [1] - 31:9
**purebred** [1] - 11:19
**purely** [1] - 11:6
**purposes** [2] - 24:21, 24:22
**pursue** [1] - 26:21

**Q**

**qualified** [1] - 24:16
**quarters** [2] - 35:24, 36:3
**questions** [2] - 32:21, 39:24

**R**

**raised** [1] - 9:12
**range** [1] - 36:9
**re** [1] - 32:9
**re-homed** [1] - 32:9
**reached** [1] - 30:18
**reaching** [1] - 28:14
**read** [5] - 10:10, 12:17, 13:12, 28:16, 35:2
**reads** [1] - 11:2
**really** [1] - 19:16
**rebutted** [2] - 24:18, 27:17
**receive** [6] - 8:19, 17:20, 17:24, 18:1, 18:25, 31:5
**received** [2] - 6:14, 33:10
**receiving** [1] - 7:5
**record** [13] - 24:9, 24:10, 24:17, 27:15, 27:17, 29:14, 29:16, 30:9, 36:24, 37:4, 37:14, 37:20, 38:16
**records** [4] - 27:23, 30:8, 32:2, 32:3
**recovering** [1] - 21:21
**reference** [1] - 14:1
**referred** [1] - 10:25
**referring** [1] - 14:5

**refute** [1] - 10:21
**regard** [1] - 34:9
**regarding** [1] - 23:1
**regardless** [1] - 12:2
**regulation** [1] - 16:12
**regulations** [1] - 14:1
**relevant** [1] - 39:20
**relief** [2] - 31:21, 32:9
**rely** [1] - 21:6
**relying** [1] - 14:15
**remains** [2] - 20:9, 22:8
**remedy** [2] - 32:19, 32:21
**reports** [3] - 24:15, 29:16, 31:25
**represented** [6] - 2:9, 2:13, 11:23, 11:24, 12:3, 12:5
**reproduce** [1] - 20:4
**reputable** [1] - 32:11
**require** [2] - 38:25, 39:7
**required** [1] - 24:23
**requirement** [1] - 13:4
**requirements** [9] - 13:2, 14:9, 21:17, 24:2, 26:3, 26:5, 26:9, 32:7, 32:10
**requires** [2] - 27:7, 27:10
**reserved** [1] - 3:6
**resisting** [1] - 24:24
**resolve** [3] - 38:1, 38:9, 40:6
**resolves** [2] - 16:4, 16:5
**respect** [4] - 7:16, 8:14, 14:8, 37:10
**respecting** [1] - 14:8, 25:19, 25:25
**respects** [2] - 26:6, 31:20
**responded** [1] - 36:15
**response** [2] - 33:3, 33:5, 35:1
**result** [2] - 20:18, 33:15
**results** [2] - 23:21, 27:9
**retract** [1] - 9:19
**rises** [3] - 12:4, 38:14, 38:18
**roadside** [1] - 31:13
**row** [1] - 2:3
**rule** [9] - 7:2, 7:4, 8:1, 17:3, 19:22, 20:15, 20:19, 28:23, 38:3
**ruling** [2] - 32:20, 39:15
**rulings** [1] - 11:23
**run** [2] - 12:25, 13:21

**S**

**sanctuary** [1] - 32:11
**satisfied** [1] - 27:11
**satisfy** [1] - 24:3
**saw** [1] - 37:2
**scheme** [1] - 25:21
**second** [1] - 11:12
**Secretary** [1] - 13:5
**Section** [5] - 12:23, 13:21,

to purchase a complete copy of the transcript.

14:10, 28:18, 34:13
**see** [5] - 3:23, 4:2, 4:15, 17:14, 34:7
**seek** [4] - 7:24, 8:7, 8:11, 8:12
**seeking** [2] - 31:22, 33:2
**Sellner** [2] - 2:6, 11:20
**sense** [2] - 11:25, 35:12
**serval** [17] - 2:22, 3:7, 5:1, 5:3, 5:18, 5:19, 5:20, 5:21, 5:24, 8:15, 8:16, 8:19, 8:21, 8:23, 10:5, 10:6, 22:2
**servals** [1] - 9:18
**serve** [1] - 31:9
**service** [2] - 12:25, 14:7
**Service** [2] - 7:1, 8:1
**set** [2] - 26:20, 28:22
**sets** [1] - 16:12
**several** [1] - 4:6
**shoot** [1] - 26:22
**shortcomings** [1] - 29:19
**shortly** [1] - 33:22
**shown** [2] - 34:20, 35:21
**shows** [1] - 37:20
**sic** [1] - 38:24
**side** [2] - 13:7, 13:8
**sides** [2] - 38:25, 39:18
**sign** [4] - 11:2, 36:2, 36:6, 36:7
**significant** [1] - 27:6
**similar** [2] - 8:18, 9:2
**situation** [2] - 33:17, 35:8
**size** [1] - 5:14
**skip** [1] - 4:25
**slow** [1] - 8:5
**small** [2] - 5:4, 5:6
**smaller** [1] - 11:18
**sold** [1] - 15:21
**someone** [1] - 12:7
**someplace** [2] - 10:10, 13:14
**sometimes** [2] - 10:25, 17:23
**somewhat** [1] - 9:1
**somewhere** [1] - 35:13
**sort** [9] - 5:9, 8:7, 12:8, 16:20, 21:19, 21:24, 23:20, 24:4, 31:12
**sought** [4] - 18:22, 27:19, 30:6, 32:20
**south** [3] - 15:4, 15:15, 15:23
**speaks** [1] - 37:18
**species** [33] - 9:11, 13:1, 13:22, 13:24, 14:11, 14:20, 14:22, 16:14, 16:25, 17:9, 18:3, 18:4, 18:5, 18:6, 18:9, 18:10, 18:14, 18:25, 19:6, 19:7, 19:9, 19:24, 20:3, 20:5, 20:17, 23:3, 23:17, 28:13, 32:12, 32:15, 34:10, 34:24
**Species** [39] - 2:20, 3:17, 3:21, 4:10, 4:23, 5:23,

6:20, 7:3, 7:9, 8:17, 9:16, 9:23, 10:2, 12:4, 12:13, 12:24, 13:3, 14:9, 14:16, 15:8, 15:25, 16:9, 16:24, 19:23, 22:1, 22:4, 23:12, 23:15, 24:3, 25:15, 25:18, 25:22, 32:8, 32:11, 33:9, 38:8, 38:15, 39:11, 39:25
**species-appropriate** [1] - 32:12
**specific** [1] - 28:8
**specifically** [5] - 4:11, 29:3, 29:8, 31:21, 38:13
**speculation** [1] - 35:20
**squirrel** [1] - 5:8
**stage** [2] - 25:2, 25:12
**stand** [1] - 3:9
**standpoint** [1] - 10:20
**stands** [2] - 17:5, 37:11
**state** [1] - 31:10
**statement** [3] - 9:19, 25:4, 25:6
**States** [2] - 17:4, 17:7
**statute** [6] - 13:12, 14:24, 16:3, 16:12, 25:18, 38:19
**statutory** [1] - 25:21
**stayed** [1] - 15:6
**still** [1] - 26:9
**street** [2] - 13:7, 13:8
**strike** [1] - 37:11
**stuff** [1] - 4:6
**subject** [9] - 3:2, 9:2, 11:8, 11:9, 31:1, 31:4, 31:7, 31:13, 37:23
**submit** [6] - 20:13, 23:23, 29:5, 32:8, 32:18, 40:13
**submitted** [5] - 24:8, 24:15, 25:3, 25:5, 25:6
**subspecies** [7] - 8:21, 18:11, 18:23, 18:25, 19:4, 19:9, 20:8
**successfully** [1] - 24:18
**suggested** [2] - 7:15, 30:5
**summarize** [1] - 21:24
**summary** [14] - 2:7, 3:5, 22:24, 24:5, 24:21, 24:22, 24:24, 30:17, 33:4, 38:1, 38:2, 38:24, 39:13, 39:16
**supplied** [1] - 27:17, 29:17, 32:1
**support** [5] - 9:15, 23:24, 24:9, 30:17, 37:12
**supported** [1] - 25:7
**suppose** [1] - 22:8
**surely** [1] - 32:4
**switching** [1] - 29:23

## T

**talks** [2] - 14:2, 16:3
**ten** [2] - 31:17, 38:22
**term** [2] - 23:15, 25:17
**terms** [2] - 25:24, 28:24

**test** [2] - 7:24, 34:18
**testified** [1] - 11:17
**testimony** [2] - 11:19, 25:8
**testing** [2] - 8:7, 11:4
**THE** [98] - 2:1, 2:12, 2:16, 3:8, 3:14, 3:16, 3:23, 4:5, 4:17, 4:21, 4:25, 5:8, 5:11, 5:13, 5:16, 5:21, 6:1, 6:6, 6:15, 6:18, 6:22, 7:7, 7:13, 7:18, 8:3, 8:14, 8:22, 8:25, 9:14, 9:21, 9:25, 10:4, 10:13, 10:16, 10:20, 11:11, 11:22, 12:17, 12:21, 13:10, 13:25, 14:12, 14:25, 15:4, 15:6, 15:11, 15:17, 15:22, 16:6, 17:6, 17:11, 17:13, 17:17, 18:5, 18:12, 18:16, 18:19, 19:2, 19:7, 19:16, 20:10, 20:20, 20:24, 21:1, 21:15, 21:23, 22:9, 22:21, 22:23, 23:9, 24:22, 26:11, 26:16, 27:1, 27:25, 29:22, 30:16, 30:21, 31:15, 31:21, 32:13, 32:22, 32:25, 33:24, 34:2, 34:4, 34:14, 34:22, 35:1, 35:14, 35:23, 36:1, 36:13, 37:7, 38:6, 40:20, 40:22, 40:24
**themselves** [5] - 6:14, 11:17, 21:12, 32:1, 37:6
**theoretically** [2] - 12:6, 16:16
**theory** [3] - 19:13, 20:4, 29:1
**they've** [7] - 6:12, 6:13, 25:6, 25:14, 30:4, 33:10, 33:21
**Thorson** [8] - 2:14, 3:10, 8:20, 9:14, 14:12, 33:3, 37:10, 40:22
**THORSON** [42] - 2:15, 3:13, 3:15, 3:19, 4:1, 4:13, 4:20, 4:24, 5:4, 5:20, 5:24, 6:4, 6:11, 9:17, 9:24, 10:3, 10:12, 10:15, 10:18, 11:14, 12:14, 12:20, 14:18, 15:2, 15:5, 15:9, 15:12, 15:20, 16:1, 21:22, 33:5, 33:25, 34:3, 34:5, 34:16, 34:25, 35:5, 35:19, 35:25, 36:5, 36:14, 40:23
**three** [11] - 2:3, 3:12, 3:14, 3:15, 6:4, 9:21, 16:18, 16:20, 22:1, 35:24, 36:3
**three-16ths** [1] - 16:22
**three-eighths** [1] - 16:20
**three-fourths** [1] - 16:18
**three-quarters** [2] - 35:24, 36:3
**tiger** [4] - 18:2, 18:19, 22:17
**tigers** [11] - 2:20, 3:6, 4:18, 10:1, 18:18, 18:22,

18:23, 18:24, 22:1, 23:1, 23:17
**til** [1] - 32:21
**timber** [1] - 11:2
**today** [6] - 11:23, 36:24, 37:19, 37:23, 37:25, 40:16
**together** [3] - 18:2, 18:24, 20:2
**took** [2] - 36:23, 36:25
**Tracey** [1] - 2:5
**trafficking** [6] - 17:9, 17:19, 23:16, 30:19, 30:24, 31:19
**transfer** [2] - 11:1, 11:14
**transferred** [1] - 6:13
**transport** [2] - 13:14, 15:23
**trap** [1] - 26:22
**treatable** [1] - 29:7
**trial** [13] - 3:7, 7:16, 7:19, 8:9, 12:8, 22:23, 38:5, 39:7, 39:18, 40:8, 40:11, 40:15
**tried** [2] - 17:18, 36:22
**triggered** [1] - 13:3
**true** [3] - 11:7, 17:23, 22:14
**truth** [2] - 4:1, 25:10
**try** [1] - 40:5
**trying** [1] - 28:5
**two** [16] - 3:12, 3:14, 7:23, 8:9, 10:15, 18:16, 19:4, 19:6, 19:7, 19:10, 19:17, 20:1, 20:4, 22:5, 25:24, 29:23
**type** [4] - 3:19, 3:22, 4:16, 8:16

## U

**U.S** [1] - 17:10
**unable** [1] - 38:1
**under** [19] - 3:17, 3:20, 4:8, 7:2, 7:8, 9:3, 12:3, 12:23, 13:2, 15:24, 16:14, 21:25, 22:3, 26:17, 27:1, 28:7, 33:7, 33:13, 39:10
**understood** [2] - 5:17, 35:18
**undertake** [1] - 14:7
**undisputed** [5] - 24:14, 27:24, 30:8, 32:4, 32:6
**unfamiliar** [1] - 38:8
**United** [3] - 2:2, 17:4, 17:7
**unlawful** [2] - 23:16
**unless** [3] - 3:9, 20:22, 21:11
**unqualified** [1] - 37:21
**unusual** [1] - 14:21
**up** [4] - 5:2, 14:4, 29:12, 33:12

to purchase a complete copy of the transcript.

## V

**value** [2] - 30:1, 30:4
**variety** [1] - 28:17
**various** [2] - 25:7, 38:22
**venue** [2] - 33:24, 33:25
**versus** [2] - 2:5, 34:20
**veterinarian** [2] - 11:17, 37:21
**veterinarian's** [1] - 36:18
**veterinary** [1] - 32:2
**view** [6] - 9:15, 24:10, 24:23, 24:25, 25:10, 39:1
**viewing** [1] - 38:16
**violate** [1] - 28:17
**violated** [1] - 25:14
**violations** [8] - 33:11, 33:13, 33:14, 33:20, 34:7, 34:8, 34:9
**virtue** [2] - 18:13, 20:19
**visually** [1] - 11:5

## W

**wait** [1] - 8:4
**wander** [1] - 15:18
**wandered** [2] - 15:14, 15:15
**Washington** [1] - 34:1
**ways** [4] - 27:6, 28:17, 29:19, 30:12
**weeks** [1] - 4:6
**weird** [1] - 19:16
**Welfare** [6] - 25:20, 26:3, 26:6, 26:9, 33:7, 33:13
**welfare** [1] - 37:19
**whereas** [1] - 18:24
**whereby** [1] - 24:17
**wild** [2] - 14:8, 15:13
**Wildlife** [2] - 7:1, 8:1
**wildlife** [4] - 26:1, 27:10, 27:13, 29:9
**wishes** [1] - 32:18
**witnesses** [1] - 39:2
**wolf** [40] - 10:10, 10:17, 11:3, 11:5, 11:6, 11:16, 13:6, 13:14, 14:15, 15:23, 16:8, 16:16, 16:18, 16:20, 16:22, 16:23, 18:5, 18:6, 19:19, 20:7, 20:8, 20:15, 20:17, 20:23, 20:24, 21:2, 21:9, 21:11, 22:17, 34:12, 34:18, 34:20, 35:7, 35:10, 35:12, 36:3, 36:9
**wolves** [31] - 2:21, 3:6, 4:25, 10:8, 10:10, 10:13, 10:15, 10:23, 11:1, 11:8, 11:19, 11:21, 11:24, 12:10, 12:11, 12:12, 12:18, 14:25, 15:2, 16:7, 16:15, 22:5, 22:7, 22:8, 23:1, 23:18, 36:2, 39:9, 39:24, 40:2,

40:3
**word** [2] - 23:14, 37:8
**words** [4] - 13:11, 16:15, 26:8, 38:20
**wound** [1] - 26:22
**wrote** [1] - 4:15

## Y

**year** [2] - 33:10, 37:16
**years** [1] - 23:13

## Z

**zoo** [23] - 2:18, 3:11, 4:11, 4:16, 4:18, 4:21, 5:18, 6:3, 6:14, 6:23, 10:1, 22:11, 22:13, 31:9, 31:13, 31:18, 33:6, 33:7, 36:1, 36:10, 36:11, 36:18, 37:3

Document 50319-5 deposition.com
to purchase a complete copy of the transcript.