**PLAINTIFFS' FED. R. CIV. P. 59(e)**
**MOTION FOR LEAVE TO FILE**
**MOTION FOR ATTORNEYS FEES AND COSTS**


**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| TRACEY K. KUEHL, et al. ) | Case No. C14-02034-JSS |
| ) | |
| Plaintiffs, ) | **[PROPOSED]** |
| ) | **PLAINTIFFS' MOTION** |
| ) | **FOR ATTORNEYS FEES AND** |
| v. ) | **AND COSTS UNDER THE** |
| ) | **ENDANGERED SPECIES ACT** |
| PAMELA SELLNER, et al., ) | |
| ) | **Judge:  Hon. Jon Stuart Scoles** |
| Defendants ) | |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 54(d), L.R. 54.1(a), the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), individual Plaintiffs Tracey K. Kuehl, Lisa K. Kuehl, Kris A. Bell, Nancy A. Harvey, and John T. Braumann, and organizational Plaintiff Animal Legal Defense Fund (collectively "Plaintiffs") respectfully move the Court for an award of attorney fees, costs, and other expenses on this matter of first impression in a significantly discounted amount against the Defendants Pamela Sellner, Tom Sellner, and the Cricket Hollow Zoo (collectively "Defendants") for Plaintiffs' successful prosecution of this case.[1]  The details of the requested award, and Plaintiffs' argument for the award, are set out in the accompanying Memorandum, and in the Declarations of Attorneys Jessica Blome, Elisabeth Holmes, and Jeffrey Pierce, and Vermont Law School Professor and Attorney Patrick Parenteau filed herewith as Exhibits 1 through 4.

Wherefore, Plaintiffs respectfully request that this Court grant Plaintiffs their attorneys fees and costs, and grant Plaintiffs such other relief as is equitable and just.

---

[1] Plaintiffs file this motion to preserve their rights under 16 U.S.C. § 1540(g)(4) to seek Plaintiffs' costs and attorneys' fees.  Plaintiffs may amend and/or supplement this motion pending further conferences with Defendants.

DATED this 25th day of February 2016.

Respectfully Submitted,

s/ Jessica Blome
Jessica Blome, *Pro Hac Vice*
Senior Staff Attorney
Jeffrey Pierce, *Pro Hac Vice*
Legal Fellow
Animal Legal Defense Fund

s/ Elisabeth A. Holmes
Elisabeth A. Holmes, *Pro Hac Vice*
Attorney
Blue River Law, P.C.

/s/ *Daniel J. Anderson*
Daniel J. Anderson (IA Bar No. 20215)
danderson@wertzlaw.com
WERTZ & DAKE
1500 Center St. NE #101
Cedar Rapids, IA 52402-5500
Telephone: 319.861.3001
Facsimile: 319.861.3007

Attorneys for Plaintiffs Tracey K. Kuehl,
Lisa Kuehl, Nancy Harvey, Kris Bell, and
John Braumann, and for Plaintiff Animal
Legal Defense Fund

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| TRACEY K. KUEHL, et al. ) | Case No. C14-02034-JSS |
| ) | |
| Plaintiffs, ) | **[PROPOSED]** |
| ) | **PLAINTIFFS' MEMORANDUM** |
| ) | **FOR ATTORNEYS FEES AND** |
| v. ) | **AND COSTS UNDER THE** |
| ) | **ENDANGERED SPECIES ACT** |
| PAMELA SELLNER, et al., ) | |
| ) | **Judge: Hon. Jon Stuart Scoles** |
| Defendants ) | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION………………………………………………………………………...4

LEGAL FRAMEWORK AND ARGUMENT……………………………………………5

   I.   The Endangered Species Act is Designed to Compensate Plaintiffs Who
      Enforce Compliance with the Law………………………………..……………5
         A. Fees Are "Appropriate" Because Plaintiffs Prevailed……………………6
         B. Fees Are "Appropriate" Because Case Serves the Public Interest………..7

   II.  Plaintiffs Are Entitled to Reasonable Attorney Fees under the Endangered
      Species Act………………………………………………………………………9
         A. Plaintiffs Seek Reasonable
            Fees………………………………………………………………………10
              i.  Reasonable Hours Incurred……………………………………10
              ii.  Hourly rates…………………………………………………14

   III. Plaintiffs Are Entitled to Case Costs and Expert
       Costs………………………………………………………………………....17

   IV. Plaintiffs are Entitled to Fees in Preparation of a Fee
       Application………………………………………………………………………19

CONCLUSION………………………………………………………………………..19

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879 (9th Cir. 2004) ............................... 5

*Cabrales v. Co. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) ......................................... 9

*Cabrales v. Co. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991) ......................................... 7

*CARE et al. v. Cow Palace et al*, No. 13-cv-3016-TOR, ECF No. 453 at 44 (E.D. Wash. Jan. 12, 2016) ................................................................................................................. 10, 14

*Casey v. City of Cabool, Mo.*, 12 F.3d 799 (8th Cir. 1993) ............................................... 13

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ...................................................... 8, 13

*City of Riverside v. Rivera*, 477 U.S. 561 (1985) ........................................................ 6, 7

*Davis v. City and Co. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ........................... 13

*Dorr v. Weber*, 741 F.Supp. 2d 1022 (N.D. Iowa 2010) ...................................................... 5

*Emery v. Hunt*, 272 F.3d 1042 (8th Cir. 2001) ......................................................... 8, 13

*Envt'l Protection Info. Ctr. Inc. v. Pacific Lumber Co.*, 229 F.Supp. 2d 993 (N.D. Cal. 2002) ......................................................................................................................... 6

*Farrar v. Hobby*, 506 U.S. 103 (1992) ............................................................................. 6

*Fed'n of Fly Fishers v. Daley*, 200 F. Supp. 2d 1181 (N.D. Cal. 2002) ........................... 13

*Gilbert v. City of Little Rock*, 867 F.2d 1063 (8th Cir. 1989) ............................................ 9

*Griffin v. Jim Jamison, Inc.*, 188 F.3d 996 (8th Cir. 1999) ............................................... 9

*Hanig v Lee*, 415 F.3d 822 (8th Cir. 2005) ....................................................................... 8

*Henderson v. Crimmins*, 2015 WL7755987 (N.D. Iowa Dec. 1, 2015) .............................. 8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................ 7, 8, 10

*Jenkins v. State of Missouri*, 127 F.3d 709 (8th Cir. 1997) .............................................. 9

*Jensen v Clarke*, 94 F.3d 1191 (8th Cir. 1996) ................................................................. 9

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............................. 8, 9

*Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.236 (8th Cir. 1982) .......................... 18

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) ............................................................ 5

*Marbled Murrelet v. Babbitt*, 182 F.3d 1091 (9th Cir. 1999) ............................................ 6

*McDonald v. Armontrout* , 860 F. 2d 1456 (8th Cir. 1988) ............................................... 8

*McDonald v. Armontrout*, 860 F.2d 1456 (8th Cir. 1988) ................................................ 13

*Metropolitan Wash. Coalition for Clean Air v. Dst. of Columbia*, 639 F.2d 802 (D.C. Cir. 1981) ........................................................................................................................... 6

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ........................................ 12

*Murray v. City of Onawa, Iowa*, 323 F.3d 616 (8th Cir. 2003) .......................................... 6

*Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ....... 5, 8, 13, 14

*Perkins v. Mobile Housing Board*, 847 F.2d 735 (11th Cir. 1988) ................................... 12

*Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996) ..................................................... 16

*Resurrection Bay Conservation Alliance v. RPD of Seward*, 640 F.3d 1087 (9th Cir. 2011) ........................................................................................................................... 8

*Ruckelhaus v. Sierra Club*, 463 U.S. 680 (1983) ............................................................. 5

*Sierra Club v. Khanjee Holding (US) Inc.*, 655 F.3d 699 (7th Cir. 2011) .......................... 6

*Simpson v. Merchants & Planters Bank*, 441 F.3d 572 (8th Cir. 2006) ............................. 9

*South Yuba River Citizens League v. NMFS*, No. S-06-2845 LKK, 2012 WL 1038131 (E.D. Cal. Mar. 27, 2012) ............................................................................................. 10

*Stoddard v. Western Carolina Regional Sewer Auth.*, 784 F.2d 1200 (4th Cir. 1986) ....... 6

*TVA v. Hill*, 437 U.S. 153 (1978) ...................................................................................... 4

| | |
|---|---|
| *Uniroyal v. Mutual Trading Corp.*, 63 F.3d 516 (7th Cir. 1995) | 16 |

**Statutes**

| | |
|---|---|
| Clean Air Act, 42 U.S.C. § 1988 | 6 |
| Endangered Species Act, 16 U.S.C. § 1540(g)(4) | passim |

**Other Authorities**

| | |
|---|---|
| H.R. Rep. No. 94-1558, p. 1 (1976) | 5 |
| Sen. John V. Tunney in 122 Cong. Rec. 33313 (1976) | 7 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 54 | passim |
| L.R. 54.1(a) | 3, 10, 13 |

**<u>INTRODUCTION</u>**

Pursuant to Fed. R. Civ. P. 54(d), L.R. 54.1(a), the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), individual Plaintiffs Tracey K. Kuehl, Lisa K. Kuehl, Kris A. Bell, Nancy A. Harvey, and John T. Braumann, and organizational Plaintiff Animal Legal Defense Fund (collectively "Plaintiffs") respectfully move the Court for an award of attorney fees, costs, and other expenses on this matter of first impression in the significantly discounted amount of $239,979.25 against the Defendants Pamela Sellner, Tom Sellner, and the Cricket Hollow Zoo (collectively "Defendants") for Plaintiffs' successful prosecution of this case.[1]  The details of the requested award are set out herein and in the Declarations of Attorneys Jessica Blome, Elisabeth Holmes, and Jeffrey Pierce, and Vermont Law School Professor and Attorney Patrick Parenteau filed herewith.

Plaintiffs believe this is a case of first impression in the United States, the first time any court has ruled on the merits of whether Section 9 of the ESA applies to federally-listed species held in captivity, and the first time citizens have brought this issue to the attention of the Court using the ESA's citizen suit provision.  Plaintiffs are individual residents of Iowa, and a non-profit 501(c)(3) organization.  As the matter was before the Court for four days of trial, Plaintiffs assume the Court's familiarity with the facts and history of the case.  On February 11, 2016, this Court issued its Order and Judgment.  ECF Nos. 83, 84.  The Order denied Plaintiffs' attorney fees and costs.  ECF No. 83 at 72, 73.  Under Fed. R. Civ. P. 54(d)(2)(B)(ii) and L.R. 54.1 motions for attorney fees and costs are due within 14 days of judgment.  Thus, Plaintiffs' Motion is timely.

For years, individual Plaintiffs tried to resolve their concerns with the Defendants' animals without litigation.  *See* ECF 83 at 10 (Tracey Kuehl), 11-12 (Lisa Kuehl).  In

---

[1] Plaintiffs file this motion to preserve their rights under 16 U.S.C. § 1540(g)(4) to see Plaintiffs' costs and attorneys' fees.  Plaintiffs may amend and/or supplement this motion pending further conferences with Defendants.

2014, individual Plaintiffs and Plaintiff ALDF sent Defendants a 60-day notice letter as required by the ESA, 16 U.S.C. § 1540(g)(2), requesting that the Defendants resolve their ongoing violations. Plaintiffs' Complaint, filed more than three weeks after the 60-day notice period ran, detailed violations that Plaintiffs proved at trial. Declaration Jessica Blome ("Decl. Blome") ¶ 10. Over the course of the 18 months of litigation including written discovery, depositions, summary judgment, a four-day trial, and through post-trial briefing, Defendants continued to violate the ESA.

Even with the litigation, Defendants' listed species continued to die, continued to live in unsanitary arrangements, and continued to receive little or no veterinary care, or little enrichment. The years of repeated violations, as documented by APHIS and as indicated by the Court in its Order (ECF No. 83 at 30-41), show that the Defendants steadfastly refused to change their practices in a meaningful way. It is only as a direct result of this suit that Defendants' listed animals will receive the basic care they are entitled to under the ESA and FWS regulations, and that is by removing them from Defendants' custody. The requirements of this lawsuit will concretely affect how the nearly 2,400 USDA licensed zoos and exhibitors across the United States manage their endangered species care. In light of the critical role citizen Plaintiffs have played in bringing about protection for these animals of "paramount importance", *TVA v. Hill*, 437 U.S. 153, 184 (1978), enhancing protections for listed species in captivity across the United States, and the reasonableness of the attorneys' fees and costs requested, this is a case in which it would be "appropriate" within the meaning of the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(4), to award reasonable attorney fees and costs.

## LEGAL FRAMEWORK AND ARGUMENT

### I. The Endangered Species Act is Designed to Compensate Plaintiffs Who Enforce Compliance with the Law

Citizens brought their ESA claims pursuant to the citizen suit provision of the federal statute. Congress has viewed the filing of legitimate citizen suits as a public service,

encouraging citizens to perform this service through statutes that allow for fee shifting for successful plaintiffs. *See* Decl. Parenteau at ¶¶ 4-5 (discussing Congressional intent); *see also Dorr v. Weber*, 741 F.Supp. 2d 1022, 1027 (N.D. Iowa 2010) (shifting "the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement[]" is required for Congress's policy to be effective); "'The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens,' and unless reasonable attorney's fees could be awarded for bringing these actions, Congress found that many legitimate claims would not be redressed." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559-60 (1986) (citing H.R. Rep. No. 94-1558, p. 1 (1976)). The ESA citizen suit provision, 16 U.S.C. § 1540(g)(4) provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). "Appropriate" fees relate to a party's success, and to the interest served by the litigation.

## A. Fees Are "Appropriate" Because Plaintiffs Prevailed

Attorney fees are "appropriate" when a party achieves "some degree of success." *Ruckelhaus v. Sierra Club*, 463 U.S. 680, 694 (1983). The ESA fee provision "was meant to expand the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties – parties achieving *some success*, even if not major success." *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 884 (9th Cir. 2004) (emphasis in original) (quoting *Ruckelhaus*, 463 U.S. at 688). If a party "succeed[ed] on any significant issue in litigation which achieves some of the benefit it sought in bringing suit[]" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160 (9th Cir. 2000), it has achieved some success on the merits. Here, the outcome of the case in Plaintiffs' favor clearly and undeniably provides the relief Plaintiffs sought. ECF No. 83 at 56, 62-63 (finding Defendants harassed and harmed their lemurs) and 67, 69, 71 (finding Defendants harassed and harmed their tigers).

**B.** **Fees Are "Appropriate" Because Case Serves the Public Interest**

Success is not the only criteria to determine whether a fee award is "appropriate." The D.C. Circuit has stated that a court may award attorneys' fees "whenever such an award [is] deemed to be 'in the public interest,'" reasoning that an award of attorney's fees to a citizen plaintiff is "considered . . . consonant with the public interest whenever the underlying suit was a prudent and desirable effort." *Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 639 F.2d 802, 804 (D.C. Cir. 1981); *Stoddard v. Western Carolina Regional Sewer Auth.*, 784 F.2d 1200, 1209 (4th Cir. 1986) (attorney's fees awarded where agency did little to enforce permit despite repeated violations and citizen suit was plaintiffs' only recourse); *Sierra Club v. Khanjee Holding (US) Inc.,* 655 F.3d 699, 708-709 (7th Cir. 2011) (attorney fee awards to "any party" are consonant with the public interest).  Plaintiffs have also "substantially contributed to the goals of the [ESA]." *Envt'l Protection Info. Ctr. Inc. v. Pacific Lumber Co.*, 229 F.Supp. 2d 993, 998 (N.D. Cal. 2002), *aff'd*, 103 Fed. Appx. 627 (9th Cir. 2004) (quotation omitted).  This public interest requirement is echoed in *Murray v. City of Onawa, Iowa*, 323 F.3d 616, 619-620 (8th Cir. 2003) (looking to Justice O'Connor's concurrence in *Farrar v. Hobby,* 506 U.S. 103, 121-22 (1992), the court considers "the significance of the legal issue on which the plaintiff prevailed" and the public purpose the litigation might have served)  In cases involving the vindication of the public interest, such as this case, reasonable requested fees should be awarded.  *City of Riverside v. Rivera*, 477 U.S. 561, 572 (1985)[2] (all requested fees should be awarded even though plaintiff was not successful on every claim).  "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes

---

[2] ESA, Clean Air Act, and Clean Water Act caselaw frequently looks to civil rights law for discussions of the principles and applications of fee-shifting provisions.  *See, e.g.,* discussion of "nearly identical" provisions of the Clean Air Act and 42 U.S.C. § 1988 fee-shifting provisions.  *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1094-95 (9th Cir. 1999).

1  unvindicated; and the entire Nation, not just the individual citizen, suffers." *Id.* at 575

2  (quoting Sen. John V. Tunney in 122 Cong. Rec. 33313 (1976)).

3     Plaintiffs in this case made significant efforts to encourage local, state, and federal

4  authorities to use their authority to change conditions at the Cricket Hollow Zoo.  *See,*

5  *e.g.,* Trial Tr. Tracey Kuehl Direct Examination at 234:3-9 (articulated concerns in a

6  letter to IDALS and USDA APHIS); 247:15-249:25 (contacted IDALS, the Sheriff, the

7  Mayor, County Board of Supervisors, and filed complaints with IDALS and made FOIA

8  requests), Plaintiffs also advocated to support stronger state legislation that would address

9  the situation at facilities like the Cricket Hollow Zoo.  Plaintiffs were concerned for what

10  the conditions at the Zoo – an exhibitor with a stated goal of educating children – was

11  teaching society about the public's responsibility towards animals, and towards protected

12  species.  After years with no change in the conditions at the Zoo, either through

13  Plaintiffs' advocacy or through USDA APHIS citations and penalties, Plaintiffs' only

14  recourse was litigation via citizen suit provisions.  *See, e.g.,* Trial Tr. Tracey Kuehl Direct

15  Examination at 212:22-213:5 ("I feel as though I've exhausted just about every possible

16  venue to bring this situation to the attention of the authorities and I believe this is

17  basically my last recourse."); 238:20-23 (received "nothing substantive" in response to

18  her letters).  Tracey Kuehl trial transcript excerpts are attached hereto as Attachment 1.

19     As such, because Plaintiffs' claims arose under the ESA's citizen suit provision,

20  Plaintiffs have achieved "some degree of success on the merits,"[3] and the case was in the

---

[3] Plaintiffs' trafficking claim, Count III was not clearly addressed by this Court's Order
and Plaintiffs may elect to address this with the Court separately.  At this juncture,
regardless of the outcome of Count III, not prevailing on every claim, argument, or
motion is not grounds for reducing a fee award.  "[T]he fee award should not be reduced
simply because the plaintiff failed to prevail on every contention raised in the lawsuit.
Litigants in good faith may raise alternative legal grounds for a desired outcome, and the
court's rejection of or failure to reach certain grounds is not a sufficient reason for
reducing a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (citation omitted); *see
also Cabrales v. Co. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991); *Pennsylvania v.
Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (attorneys' fees

1   public interest, an award of attorneys' fees, costs, and other expenses is "appropriate"

2   here and required pursuant to 16 U.S.C. § 1540(g)(4).

3   **II.      Plaintiffs Are Entitled to Reasonable Attorney Fees under the**
4              **Endangered Species Act**

5           Having established that fees and costs are appropriate under the statute, the next

6   step is to calculate the amount of an appropriate award.  In doing so, the Court must

7   consider the reasonable hourly rates of the attorneys in the market, and the

8   reasonableness of time expended, and the complexity of the case, the experience of the

9   attorneys, and the results obtained.  *See, e.g., Resurrection Bay Conservation Alliance v.*

10  *RPD of Seward*, 640 F.3d 1087, 1095 and n. 5 (9th Cir. 2011); *Jensen v Clarke*, 94 F.3d

11  1191, 1203 (8th Cir. 1996) ("Under the lodestar method, the district court multiplies the

12  number of hours reasonably expended by the relevant market rate for legal services, then

13  reduces the amount for partial success, if necessary.").  Plaintiffs have calculated a

14  "lodestar" amount, which is the number of hours reasonably expended times a reasonable

15  hourly rate.  *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992); *Hanig v Lee*,

16  415 F.3d 822, 825 (8th Cir. 2005) ("The starting point in determining attorney fees is the

17  lodestar, which is calculated by multiplying the number of hours reasonably expended by

18  the reasonable hourly rates.") (quotation omitted).

19          While most of the relevant factors in determining the reasonableness of a fee are

20  subsumed in the lodestar, Northern District of Iowa Courts may also evaluate the twelve

21  factors enunciated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th

22  Cir. 1974); *see, e.g., McDonald v. Armontrout*, 860 F. 2d 1456, 1459 (8th Cir. 1988);

23  *Henderson v. Crimmins*, 2015 WL7755987, 7 (N.D. Iowa Dec. 1, 2015) (citing *Hensley*,

24  461 U.S. at 434 n. 9); *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("A district

25  court need not address exhaustively every *Johnson* factor."); *Griffin v. Jim Jamison, Inc.*,

---

may be awarded for work that is useful and of a type ordinarily necessary to secure the
final result obtained from the litigation).

188 F.3d 996, 997 (8th Cir. 1999) ("The court should consider what factors, 'in the context of the present case, deserve explicit consideration.'") and *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066-1067 (8th Cir. 1989) "The district court should use its own knowledge, experience and expertise in determining the amount of the fee to be awarded.")). The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F. 2d at 717-719.

The District Court must use its own knowledge, experience, and expertise in determining the amount of the fee to be awarded. *See Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066-1067 (8th Cir. 1989). While the most critical factor in the exercise of discretion is "the degree of success obtained," a party need not win every battle to be entitled to a full fee award. *See, e.g., Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006). If a party has obtained excellent results, it is entitled to a full compensatory award, which will normally include time spent on related matters on which it did not win. *See Jenkins v. State of Missouri*, 127 F.3d 709, 716 (8th Cir. 1997); *see also Cabrales v. Co. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("rare indeed is the litigant who doesn't lose some skirmishes on the way to winning the war.").

**A.** **Plaintiffs Seek Reasonable Fees**

Both the number of hours incurred and the rates requested are very reasonable in this case.

**i. Reasonable Hours Incurred**

In determining the appropriate hours to include in a fee award, the Court

considers "the significance of the overall relief obtained by the plaintiff in relations to the hours reasonably expended on the litigation." *South Yuba River Citizens League v. NMFS*, No. S-06-2845 LKK, 2012 WL 1038131, at *4 (E.D. Cal. Mar. 27, 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . encompass[ing] all hours reasonably expended on the litigation," and "[i]n these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit." *Hensley*, 461 U.S. at 435. In this case, the amount requested is reasonable in light of the results obtained, and is especially true in this case involving vindication of the public interest.

In order to determine whether the number of hours expended on an issue is reasonable, under *Hensley* and L.R. 54.1 Plaintiffs identified "the general subject matter" of time expenditures in their timesheets. *Hensley*, 461 U.S. at 437, n. 12; Decl. Blome Exhibit A, Decl. Holmes Exhibit A, Decl. Pierce Exhibit A. The hours Plaintiffs' counsel incurred were directly related to necessary time to successfully prosecute Plaintiffs' case, and to respond to issues generated by Defendants' refusal to provide basic veterinary, sanitation, and socialization needs to its listed species, which Plaintiffs were successful in winning at trial. *See* Decl. Blome ¶¶ 9-10, 13, 15. For a plaintiff to "gather and assemble the blocks to build a case" it "can often reasonably spend more time than a defendant who need only knock down a few blocks to defeat its opponent." *CARE et al. v. Cow Palace et al*, No. 13-cv-3016-TOR, ECF No. 453 at 44 (E.D. Wash. Jan. 12, 2016).

Plaintiffs are entitled to recover *all* hours reasonably expended by their attorneys in furtherance of their litigation goals in this case. *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 561 (fees awarded for work that was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation.").

Plaintiffs' counsel has been conservative in exercising billing discretion to reduce the hours they are seeking. *See* Decl. Blome ¶¶ 9, 14; Decl. Pierce ¶¶ 10-11; Decl.

Holmes ¶¶ 13-16, 18-19.  Although Plaintiffs' counsel is entitled to all of its hours, each Plaintiffs' counsel has voluntarily reduced their time in their billing discretion by approximately 16% to 19%, a very generous voluntary drop in total fees incurred. Plaintiffs' counsel also obtained approximately 160 hours of *pro bono* legal assistance from the Chicago-based law firm Katten Muchin Rosenman LLP, Plaintiff ALDF's Litigation Director Carter Dillard, and numerous law clerks and paralegals available to Plaintiffs through ALDF's networks.  Decl. Blome ¶ 13 and Exhibit B.  Furthermore, Plaintiffs' local counsel Daniel Anderson of Wertz & Dake elected to provide all his time on a *pro bono* basis.  Even though this work is related to legal work on the case, is normally compensable, and would routinely be charged to paying clients, Plaintiffs waive seeking *all* of these compensable legal fees for the *pro bono* assistance received. Plaintiffs' counsel Attorneys Blome, Pierce, and Holmes incurred approximately 1,106.80 hours in bringing this case through trial, and are seeking payment of 914.60 of these hours.  *See* Decl. Blome ¶ 14, 20 , Exhibit B.

Throughout the case and through trial, Plaintiffs' lead counsel, Jessica Blome, identified ways to streamline and expedite the amount of hours worked on the case, yet still gathered the necessary evidence to successfully present Plaintiffs' case.  Decl. Blome ¶ 9; Decl. Holmes ¶ 19 (regarding allocation of responsibilities); Decl. Pierce ¶ 10.  For example, Attorney Blome outsourced and allocated tasks amongst Plaintiffs' attorneys, law clerks, and *pro bono* counsel.  Plaintiffs' counsel held weekly strategy calls to manage the case, minimize unnecessary duplication or redundancy, target the team's efforts, and to allocate responsibilities amongst team members.  Decl. Blome ¶ 9. Attorney Blome is an experienced civil litigation attorney and has managed or been co-counsel in at least nine cases in state and federal court in the nine years she has practiced law.  Decl. Blome ¶ 4.  In Attorney Blome's professional judgment, the time spent on the case by counsel was necessary.  Decl. Blome ¶¶ 7-9.

Plaintiffs seek fees here on a contingency basis.  In contingency fee cases, courts

1  have deferred to the winning lawyer's professional judgment on time management for the

2  case. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("It must

3  also be kept in mind that lawyers are not likely to spend unnecessary time on contingency

4  fee cases in hope of inflating their fees. The payoff is too uncertain, as to both the result

5  and the amount of the fee. It would therefore be the highly atypical civil rights case

6  where plaintiff's lawyer engages in churning."). The contingency fee factor is also one of

7  the *Johnson* factors (Factor (6)).

8       Counsel's "[s]worn testimony that, in fact, it took the time claimed is evidence of

9  considerable weight on the issue of the time required." *Perkins v. Mobile Housing

10  Board*, 847 F.2d 735, 738 (11th Cir. 1988). Here, the case was an issue of first

11  impression requiring careful legal research, factual evaluation, and execution of

12  Plaintiffs' legal strategy. Decl. Blome ¶ 8. Attorney Blome engaged Attorney Holmes as

13  co-counsel for the dispositive stages of the case to share the tasks of synthesizing facts,

14  summary judgment briefing, trial preparation, and trial. Attorney Holmes has experience

15  with federal court litigation, and in a recent large case her time was only given a 1%

16  haircut. Decl. Holmes ¶ 5. Attorney Blome engaged Attorney Pierce as co-counsel on

17  this case for his familiarity and experience with the Endangered Species Act. Decl.

18  Blome ¶ 6.

19       This case is the first time individual Plaintiffs and organizational Plaintiff, ALDF,

20  and Blue River Law, P.C. have worked together and they had no prior professional

21  relationship. During the week(s) before summary judgment briefs were due, and during

22  the weeks before trial, Plaintiffs' counsel had limited or no availability to work on other

23  matters as they dedicated their resources to this case. *See, e.g.,* Decl. Blome ¶ 11; Decl.

24  Holmes ¶¶ 9, 6.

25       As such, the hours requested by Plaintiffs' counsel were reasonable, necessary for

26  the prosecution of the case, and should be fully awarded at the requested hourly rates by

27  this Court. Plaintiffs' Local Rule 54.1(a) statement is below, and provided as Exhibit C

to the Declaration of Jessica Blome.

| | Category | Approximate Hours |
|---|---|---|
| 1 | Drafting pleadings, motions, and briefs | 291.20 |
| 2 | Legal research | 49.40 |
| 3 | Investigation | 121.40 |
| 4 | Interviewing | 40.70 |
| 5 | Trial preparation | 147.60 |
| 6 | Trial | 264.30 |
| | **Total** | **914.60** |

### ii. Hourly rates

The number of ESA cases in the Eighth Circuit, and in the Northern District of Iowa, are limited. Other circuits have held that in an ESA case, appropriate hourly rates are determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Fed'n of Fly Fishers v. Daley*, 200 F. Supp. 2d 1181, 1193 (N.D. Cal. 2002) (quoting *Davis v. City and Co. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992)). In the Eighth Circuit, a "reasonable hourly rate" means generally the prevailing market rate in the locale where the case has been litigated. *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001). There is a "strong presumption" that the "lodestar" amount represents a "reasonable fee" and the amount to which counsel is entitled. *City of Burlington*, 505 U.S. at 561; *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988) (quoting *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 564 (internal quotation and emphasis omitted). A reasonable hourly rate also accounts for the lawyers' experience, average rate of lawyers in the area, and the complexity of the case. *Ass'n of California Water Agencies*, 386 F.3d at 887. Under *Johnson*, the Court may look to whether the case has a "customary fee" (Factor 5) or awards in similar cases (Factor 12). As this is a case of first impression, there is no customary or similar fee other than applying a lodestar,

Laffey Matrix, or enhanced fee. Plaintiffs thus request the Cedar Rapids, Iowa lodestar rates, and have conducted their due diligence in assessing those rates. Decl. Holmes ¶ 10; Decl. Blome ¶ 16. As discussed below, all of Plaintiffs' counsel's rates are in line with the Cedar Rapids, Iowa rates and are comparable for attorneys of comparable skill and reputation in the community.[4]

Attorney Blome and has nearly a decade of civil litigation experience in federal and state courts. Attorney Blome is one of the animal law community's recognized experts on animal law litigation in the United States. Decl. Blome ¶¶ 3-4. Attorney Blome graduated from the University of Iowa College of Law in 2007 and litigated for the Missouri Attorney General prior to becoming a Senior Staff Attorney with ALDF. Attorney Blome has experience managing cases, attorneys, and she provides training to young lawyers. *Id*. Attorney Blome is requesting compensation at the rate of $250 per hour in this matter.

Attorney Holmes is an attorney with the law firm Blue River Law, P.C. Attorney Holmes graduated law school in 2001 and clerked with a state court upon graduation from the Boston University School of Law. Decl. Holmes ¶ 2. After her clerkship, Attorney Holmes worked on civil litigation matters in private practice, progressing to complex litigation by 2008. *Id*. By 2010, Attorney Holmes' hourly rate in the Boston, Massachusetts market was $305 per hour. *Id*. Attorney Holmes obtained an LLM in environmental law in 2011, served as a Staff Attorney for a national non-profit organization, Center for Food Safety, through the *Cow Palace* litigation. Decl. Holmes ¶¶ 3-5. Since 2011, Attorney Holmes has focused predominantly on environmental and public health impacts of large-scale animal confinement. Decl. Holmes ¶¶ 4-7. In 2016, the *Cow Palace* litigation, the Eastern District of Washington (Yakima) awarded

[4] Plaintiffs note that the Cedar Rapids, Iowa legal community does not appear to have any attorneys who specialize in animal law, environmental law, or the Endangered Species Act. Plaintiffs do not seek an enhanced rate here. *Cf. Livers v. Kofoed*, (D. Neb. Mar. 31, 2014).

PLAINTIFFS' [PROPOSED] MOTION FOR ATTORNEYS FEES & COSTS          15
UNDER THE ENDANGERED SPECIES ACT

Attorney Holmes $275 per hour.  Decl. Holmes ¶ 5.  Attorney Holmes is a sole practitioner, and this case has precluded other employment due to acceptance of the case. Decl. Holmes ¶¶ 6, 9.  Attorney Holmes is requesting compensation at the rate of $275 per hour in this matter.

Attorney Pierce graduated from Stanford Law School in 2013 and joined ALDF's litigation team as a Litigation Fellow.  Decl. Pierce ¶ 2.  Attorney Pierce is co-counsel in two other ESA cases, and is also working on other federal and state law litigation.  Decl. Pierce ¶ 3.  Attorney Pierce is requesting compensation at the rate of $200 per hour in this matter.

A basis for these hourly rates is further explained by Professor Parenteau, a nationally-known scholar and practitioner of ESA law.  Professor Parenteau is very familiar with attorney fee awards on ESA cases throughout the nation both through his own litigation and discussions with other attorneys, and has reviewed ESA rate awards by other courts.  Professor Parenteau is also familiar, through his extensive experience in ESA cases, with the complexity of new legal issues and the skill required to successfully litigate cases such as this one.  Decl. Parenteau ¶ 11.

Thus, the Plaintiffs request the following lodestar calculations (hours x rates) as reasonable and compensable fees for their work on this case:

| Attorney | Hours Billed | Hours Claimed | Lodestar Rate | Lodestar Fee |
|---|---|---|---|---|
| Jessica Blome, Senior Staff Attorney ALDF | 431.90 | 345.70 | $250 | $86,425 |
| Elisabeth Holmes, Attorney, Blue River Law, P.C. | 335.00 | 270.00 | $275 | $77,000 |
| Jeffrey Pierce, Litigation Fellow, ALDF | 357.89 | 288.90 | $200 | $57,780 |

### III.    **Plaintiffs Are Entitled to Case Costs and Expert Costs**

The ESA authorizes an "award [of the] costs of litigation (including reasonable attorney and expert witness fees)," without qualification.  16 U.S.C. § 1540(g)(4). "Reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys," but not recoverable as taxable costs, may still be "included as part of the reasonable attorney's fees awarded."  *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-295 (8th Cir. 1996).  Plaintiffs seek $18,774.25 in recoverable costs and expenses, including filing fees, *pro hac vice* fees, photocopying, legal research costs, and travel expenses for experts and for Plaintiffs' counsel.  These costs are enumerated in the cost sheets attached to the Declaration of Jessica Blome, Exhibit D and are broken down as follows:

- Contract attorney $169.25
- Shipping costs $99.40
- Litigation Costs $13,219.80
- Attorney Meals $413.43
- Attorney Travel $1,998.39
- Plaintiffs' Experts' Travel $2,873.98

This case required the testimony of expert witnesses, which is normally recoverable as part of a Fed. R. Civ. P. 54 fee application.  *See Uniroyal v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995).  Plaintiffs achieved significant cost-savings in pursing this case.  All three of Plaintiffs' experts provided services *pro bono* due to the importance of this case.  Decl. Blome ¶ 18.  Plaintiffs' experts provided significant assistance to counsel in understanding the behavioral and animal husbandry needs of the Defendants' listed species, and the adverse effects that improper care has on these animals, and their services were an important part of the Court's decision in favor of the Plaintiffs.  *See, e.g.,* ECF No. 83 at 56 ("The Court found Dr. Klopfer's testimony to be highly credible.").  In this case, Plaintiffs only seek their experts' travel costs in the amount of $2,873.98.  Plaintiffs' experts donated their time:

- World-reknowned lemur expert Peter Klopfer, Ph.D. spent approximately 10 hours in preparing his Declaration submitted with the Plaintiffs' Notice of Intent to Sue Letter (ECF No. 21-6), Plaintiffs' Motion for Summary Judgment (ECF No. 21-32 at 7-10), 7 hours preparing for and attending trial, plus 23 hours' travel time. Dr. Klopfer normally would charge $100 per hour for these services, and $1,000 per 24-hour period or portion thereof, plus actual travel costs.

- Big cat specialist veterinarian Jennifer Conrad, D.V.M., spent approximately 60 hours in preparing her Declaration in support of Plaintiffs' Motion for Summary Judgment (ECF No. 21-31) and preparing for trial. Dr. Conrad's travel time to and from trial took approximately 1.5 days. Dr. Conrad would normally charge $125 to $150 per hour for these services.

- Retired Blank Park Zoo Administrator David Allen spent approximately 57 hours preparing his Declaration in support of Plaintiffs' Motion for Summary Judgment (ECF No. 21-30) and preparing for and attending trial. Mr. Allen normally would charge $50 per hour for his services at a *pro bono* rate. Mr. Allen incurred $69.51 of costs, but does not seek reimbursement.

While these experts' time charges are fully eligible for the Court's consideration as part of Plaintiffs' fee petition, Plaintiffs only seek the experts' costs as part of this motion.

Additionally, Plaintiffs do not seek costs incurred by the *pro bono* firm of Katten Muchin Rosenman LLP in the amount of $2,690.

In sum, Plaintiffs only seek $18,774.25 in costs, and due to the public interest in this case, were able to obtain significant donated costs. In light of the true costs to litigate

1  this action through four days of trial, and the successful result Plaintiffs obtained, their

2  cost request is eminently reasonable.

3  **IV.    Plaintiffs are Entitled to Fees in Preparation of a Fee Application**

4      It is well established that a prevailing party is entitled to compensation for fees

5  incurred in preparing and litigating the fee petition.  *See, e.g., Jones v. MacMillan*

6  *Bloedel Containers, Inc.*, 685 F.236, 239 (8th Cir. 1982) ("[i]t would be inconsistent with

7  the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney

8  for the time reasonably spent in establishing and negotiating his rightful claim to the

9  fee.").  Under *Jones* and other foregoing authority, Plaintiffs are entitled to recover

10  compensation for fees incurred with counsel's preparation of this fee application.  Once

11  briefing is concluded, Plaintiffs may submit a supplemental filing detailing total fees and

12  costs incurred in preparing this petition.

13  **CONCLUSION**

14      For the foregoing reasons and as detailed in the declarations and materials filed in

15  support of this motion, Plaintiffs respectfully asks the Court to grant their motion for

16  attorney fees in the amount of $221,205.00 and costs in the amount of $18,774.25, and

17  grant Plaintiffs such other and further relief as is necessary and just.

18  DATED this 25th day of February 2016.

19
20                                      Respectfully Submitted,
21
22                                      s/ Jessica Blome
23                                      Jessica Blome, *Pro Hac Vice*
24                                      Senior Staff Attorney
25                                      Jeffrey Pierce, *Pro Hac Vice*
26                                      Legal Fellow
27                                      Animal Legal Defense Fund
28
29                                      s/ Elisabeth A. Holmes

| | |
|---|---|
| 1 | Elisabeth A. Holmes, *Pro Hac Vice* |
| 2 | Attorney |
| 3 | Blue River Law, P.C. |
| 4 | |
| 5 | /s/ *Daniel J. Anderson* |
| 6 | Daniel J. Anderson (IA Bar No. 20215) |
| 7 | danderson@wertzlaw.com |
| 8 | WERTZ & DAKE |
| 9 | 1500 Center St. NE #101 |
| 10 | Cedar Rapids, IA 52402-5500 |
| 11 | Telephone: 319.861.3001 |
| 12 | Facsimile: 319.861.3007 |
| 13 | |
| 14 | Attorneys for Plaintiffs Tracey K. Kuehl, |
| 15 | Lisa Kuehl, Nancy Harvey, Kris Bell, and |
| 16 | John Braumann, and for Plaintiff Animal |
| 17 | Legal Defense Fund |
| 18 | |
| 19 | |
| 20 | |

**ATTACHMENT 1**

**To Plaintiffs' Memorandum in
support of Plaintiffs'
Request for Attorneys'
Fees and Costs**

**EXCERPTS FROM TRIAL TRANSCRIPT,
TRACEY KUEHL TESTIMONY ,
Oct. 6, 2015**

**210**

1  to Brookfield in Chicago, Lincoln Park Zoo in Chicago as
2  a kid and also the Zoo Atlanta in Atlanta, Georgia.
3  Q.  And some of these zoos that you've just mentioned
4  you've been to as an adult?
5  A.  Oh, yes.
6  Q.  And what do you enjoy about -- about going to
7  these zoos?
8  A.  Well, I really have an interest in animals and I
9  enjoy seeing all types of animals; whether they're
10  domestic or wild.  I enjoy seeing them in the --
11  particularly the wild ones in their natural settings.  I
12  probably will never get to see them where they're living
13  in Africa or Asia or South America so I really
14  appreciate the fact that I can go to these facilities
15  and see them in a relatively natural setting so I can
16  see how they act as animals.
17  Q.  Is there anything else that you like about seeing
18  them in their environment?
19  A.  Well, I like seeing them in their environment
20  because I can see how they would behave naturally, but
21  the other thing I really enjoy is seeing how people
22  interact with the animals; particularly adults and small
23  children when families take their kids to the zoos and
24  the kids get to see the animals and there's that aha
25  moment; that oh, that kid understands what he's seeing

**211**

1  or he's making a connection with that animal or she's
2  making a connection.
3  Q.  And what exactly is that aha moment?
4  A.  Well, having worked in a children's museum for
5  many, many years, there's the spark where the
6  conversation starts between the child and the adult and
7  they start to communicate and there's that
8  intergenerational learning that goes on.  The adult is
9  being reminded of something he or she may have learned
10  while visiting a zoo as a child.  He's sharing that;
11  she's sharing that with the child and it was all sparked
12  by what they saw the animals doing.
13  Q.  Is it fair to call that an educational moment?
14  A.  A very big educational moment.
15  Q.  Also it sounds like it's a bonding moment between
16  people as well as between the people and the animals?
17  A.  Absolutely.
18  Q.  Have you ever heard of the Cricket Hollow Zoo?
19  A.  I have heard of Cricket Hollow Zoo, yes.
20  Q.  How did you first hear about it?  Or excuse me;
21  how did you hear about it?
22  A.  How did I hear about it?  My first recollection
23  of learning about Cricket Hollow Zoo was while I was
24  traveling through northeast Iowa after I retired and I
25  had picked up a flier of a -- a local tourist newspaper

**212**

1  and there was an ad for the Cricket Hollow Zoo in there.
2  About the same time, I learned about Cricket Hollow Zoo
3  from my sister, Lisa Kuehl.
4  Q.  And approximately when was this?
5  A.  That would have been early 2012, oh, maybe March,
6  April; somewhere in that time frame.
7  Q.  And have you ever visited the Cricket Hollow Zoo?
8  A.  I had not visited Cricket Hollow Zoo.  In fact,
9  that is the first time I had learned about Cricket
10  Hollow Zoo.  I was not aware that it even existed.
11  Q.  Since you learned about it, did you subsequently
12  visit Cricket Hollow Zoo?
13  A.  Yes, I did.  I've been there three times.
14  Q.  Do you recall the dates of those visits?
15  A.  I think the first date was June 23rd of 2012.  My
16  second visit was July 6th of 2012 and then I came back
17  about a year later; June 24th I think 2013.
18  Q.  And did you get the same enjoyment when you
19  visited Cricket Hollow Zoo as you have had at the other
20  zoos that you've described?
21  A.  Unfortunately, I did not.
22  Q.  Can you tell the Court why you're here today?
23  A.  I am here today because I feel there is
24  significant -- there are significant issues at the
25  Cricket Hollow Zoo with regard to the care of the

**213**

1  animals, the care for the public that visits the zoo and
2  I feel as though I've exhausted just about every
3  possible venue to bring this situation to the attention
4  of the authorities and I believe this is basically my
5  last recourse.
6  Q.  Thank you.  Have you ever heard of the Freedom of
7  Information Act?
8  A.  Yes, I have.
9  Q.  And how did you -- how did you first hear about
10  it?
11  A.  I learned about the Freedom of Information Act
12  while I was working for the city of Bettendorf as the
13  director of the children's museum.  Freedom of
14  information came about as a result of needing more
15  transparency and providing the public with access to
16  information, and as a municipality we were sensitive to
17  that and needed to follow up with any freedom of
18  information acts that we would get.
19  Q.  So you were responding to Freedom of Information
20  Act requests at that time?
21  A.  Yes.
22  Q.  Okay.  Did you ever make a Freedom of Information
23  Act request regarding the Cricket Hollow Zoo?
24  A.  Yes, I have.
25  Q.  And was that before or after you visited the zoo

Visit TCA at: www.TCATranscription.com
to purchase a complete copy of the transcript.

234

1  to the other zoos you had been to previously?

2  A.    Oh, by far; by far.

3  Q.    And after the visit to the zoo, did you take any

4  action?

5  A.    I did.  I -- I articulated my concerns in quite a

6  bit of detail and sent a letter of complaint to the Iowa

7  Department of Agriculture and Land Stewardship and I

8  also sent the same letter of complaint to the

9  United States Department of Agriculture APHIS.

10  Q.    Can I call your attention to what's been

11  premarked as Exhibit 62, please?

12  A.    Okay.

13  Q.    And would you take a look through Exhibit 62

14  briefly.  There's around 19 pages and it includes the

15  correspondence that you just mentioned, in addition to

16  other correspondence that you have sent to other state

17  and federal entities about Cricket Hollow Zoo.

18  A.    Uh-huh.  Okay.

19  Q.    Do you recognize those documents?

20  A.    Yes, I do.

21  Q.    And are they fair and accurate representations of

22  correspondence that you sent to the Iowa Department of

23  Agriculture and Land Stewardship and APHIS and other

24  federal and state entities?

25  A.    Yes, they are.

235

1           MS. HOLMES:  Your Honor, I would like to ask

2  that Exhibit No. 62 be offered into evidence.

3           (Plaintiffs' Exhibit 62 was offered in

4  evidence.)

5           THE COURT:  Any objection?

6           MR. THORSON:  Yes, Your Honor.  We object

7  they're not relevant.  They're self-serving statements.

8           THE COURT:  At this point I'm not sure what

9  I'm going to find to be relevant, so I'm going to

10  receive Exhibit 62 and I'll give it such weight as I

11  think is appropriate.

12           (Plaintiffs' Exhibit 62 was received in

13  evidence.)

14           MS. HOLMES:  Thank you, Your Honor.  And if

15  I could, just for the record, we believe this goes to

16  plaintiffs' standing in particular.

17  Q.    If you could, Tracey, please look at Exhibit 62,

18  page 1.

19  A.    Okay.

20  Q.    And it is the letter dated June 25, 2012.  That's

21  only two days after your visit; correct?

22  A.    That's correct.

23  Q.    Why did you write a letter so quickly?

24  A.    Well, I wanted to write a letter while my

25  experience was fresh in my mind and I didn't think that

236

1  writing a letter months after the fact or weeks after

2  the fact really would have as much bearing as my

3  immediate reactions and my immediate desire to let the

4  officials know that there was a problem.

5  Q.    So you felt that the problem was strong enough

6  that it merited you --

7  A.    Yes, I did.

8  Q.    -- writing your reaction?

9  A.    Absolutely.

10  Q.    Would you please look at pages 3 and 4 of this

11  letter.

12  A.    Okay.

13  Q.    At the bottom of page 3, it begins all and all?

14  A.    Yes.

15  Q.    And there's a litany of items that you identify

16  down halfway through page 4.  Would you briefly skim

17  those?

18  A.    Okay.

19  Q.    And are those paragraphs accurate representations

20  of how you felt after your visit to the Cricket Hollow

21  Zoo in June 2012?

22  A.    Yes, they are.

23  Q.    And now in October of 2015, do you still stand by

24  those statements that that's what you experienced at

25  that time?

237

1  A.    Absolutely, I did.

2  Q.    And do you stand by them now?  Do you still think

3  that those -- you still have those feelings?

4  A.    Yes, I do.

5  Q.    Would you please look at Exhibit 62, page 5.

6  A.    Okay.

7  Q.    And what's the date on this letter?

8  A.    June 26, 2012.

9  Q.    And is it from you to APHIS?

10  A.    Yes, it is.

11  Q.    And if you look at the second paragraph of this

12  letter, how did you describe the experience at the zoo?

13  A.    As I look at the second paragraph --

14  Q.    Yes.

15  A.    -- of the letter?  Well, I -- I described this --

16  my experience at the zoo in the same way.  I included a

17  copy of my letter to IDALS with this particular

18  complaint rather than restate the entire thing to USDA

19  APHIS.

20  Q.    Did you qualify it as a miserable experience?

21  A.    It was a miserable experience, absolutely.

22  Q.    And is that an accurate representation of how you

23  felt at that time?

24  A.    Yes.

25  Q.    And still?

Visit www.uscourts.gov... to purchase a complete copy of the transcript.

238

1   **A.**   Yes.

2   **Q.**   So what happened after you wrote these letters?

3   **A.**   Well, after I wrote the letters, I contemplated

4   about my experience, my visit.  I wondered about if

5   anybody would take the complaints that I had shared, my

6   experiences that I had shared and if anybody would do

7   anything with them.  I was hopeful that they would maybe

8   look into the case.

9   **Q.**   Did you get a call from Cynthia Neis at APHIS --

10  and just for the record, APHIS is the Animal Plant

11  Health Safety -- Health Inspection Service?

12  **A.**   Yes.  You know, I thought it was Cynthia Neis

13  when she called.  Who it was was one of the staff

14  members contacting me because I had not -- I had not

15  sent in the formal complaint form that I had sent to

16  IDALS that I referenced in this letter and they were

17  calling me back to see if I could send that in.

18  **Q.**   So did you send that in?

19  **A.**   Yes, I did.

20  **Q.**   And did you receive any substantive response to

21  your complaints after you provided the information to

22  them?

23  **A.**   No; nothing substantive.

24  **Q.**   Okay.  Did the process of filing the complaint

25  with IDALS or APHIS alleviate your concerns in any way

239

1   about the Cricket Hollow Zoo?

2   **A.**   Well, it -- I'm not sure it would alleviate, but

3   it relieved them a little bit.  I guess I was under the

4   assumption that it's important to let the officials know

5   if you see something that you think is wrong; something

6   that needs to be addressed or perhaps fixed and I

7   thought I had done my due diligence and I had outlined

8   my concerns; sent them off to the people who I thought

9   could handle the situation and so I was a little bit

10  relieved that I had done that, yes.

11  **Q.**   Okay.  And did you still harbor concerns for the

12  animals?

13  **A.**   Well, I still did, yeah.

14  **Q.**   And what happened next?  Did you -- did you

15  decide to return to the zoo?

16  **A.**   I did decide to return to the zoo.  I was

17  curious.  I was hopeful that my letter would spur some

18  action on behalf of the officials; that they would talk

19  with the zoo owners; that maybe they would get together

20  and figure out a plan of some improvements or ways to

21  address the concerns and the experience that I had had.

22  **Q.**   Okay.  So when did you go to the zoo next?

23  **A.**   I went back on July 6th.  That was about two

24  weeks from my first visit.

25  **Q.**   And why did you decide to go back?

240

1   **A.**   Well, again, I was curious.  I was hopeful that

2   something would have changed.  You know, after my first

3   visit, I thought well, maybe -- maybe it's just a bad

4   day for the zoo.  Maybe volunteers didn't come in or

5   something happened for it to be in the condition that I

6   found it and the condition that I found the animals.

7   Maybe things had improved; I want to go back and see,

8   plus I had written the first letters of complaint.

9   **Q.**   And what were the conditions like on July 6,

10  2012, when you went back?

11  **A.**   Well, unfortunately, I have to say that they were

12  exactly the same as I found them two weeks before.

13  **Q.**   Was it a hot day that day?

14  **A.**   It was a very hot day.  Hot and humid.

15  **Q.**   Would you say it was over a hundred degrees?

16  **A.**   It was very close to 100 degrees.  I think in

17  Davenport that day we touched 100, so my guess is

18  Manchester was very close to that.

19  **Q.**   Do you recall if there had been rain in the

20  preceding days or week or two before the visit?

21  **A.**   It seemed to me we were in a bit of a dry period

22  about that time; dry and hot as opposed to wet and hot

23  when I had been there the first time.

24  **Q.**   So it had been a while since it had rained?

25  **A.**   Yeah.

241

1   **Q.**   Would you please turn to Exhibit 61-8; 61 page 8.

2   **A.**   Yes.

3   **Q.**   Would you please describe for the Court what this

4   is a photograph of.

5   **A.**   Well, this is a photograph of a very large

6   container of water.  The container is -- it looks to be

7   a metal side.  It's not your -- it's not a stock tank.

8   It's not a baby pool, but some kind of other large

9   container of water.  The water is very stagnant looking.

10  It's kind of scummy looking.  It looks like it has all

11  kinds of feathers in it and it appears that there is a

12  floating dead rat, dead bird; some kind of a small dead

13  animal floating in that water.

14  **Q.**   And is this picture representative of the general

15  conditions that you witnessed on this visit to the zoo?

16  **A.**   Yes, it is.

17  **Q.**   Did you also see the tiger that visit or any

18  tigers?

19  **A.**   Yes, I did.

20  **Q.**   And did you see the wolf?

21  **A.**   I believe I saw the wolf again on that visit,

22  yes.

23  **Q.**   And what did you notice about their enclosures?

24  **A.**   Well, the thing that struck me most is that the

25  enclosures had not changed.  There had been no semblance

to purchase a complete copy of the transcript.

246

1 Iowa." Is that a fair representation of your feelings
2 at the time?
3 A. Yes, it is.
4 Q. And now in 2015, do you still feel that way?
5 A. Yes, I do.
6 Q. And by sending this letter, did that make you
7 feel any kind of relief in terms of what was being done
8 to help the animals?
9 A. A little bit, but I wasn't necessarily going to
10 hold my breath on some kind of response given the first
11 letter and no response.
12 Q. So what happened -- when was your next visit to
13 the zoo?
14 A. I didn't decide to return to the zoo until June
15 of the following year.
16 Q. And why not?
17 A. Well, I was a little drained from these first two
18 exhibits -- first two visits to the zoo. I was a little
19 fearful for my own safety and my own health going back
20 to the zoo.
21 Q. Why is that?
22 A. Given -- given the situation with the lion on my
23 first visit ramming itself into the side of the cage.
24 That was unnerving. The garbage, the filth in the
25 cages. You know, dirty water in waters that I saw. The

247

1 fact that there were -- handwashing stations were
2 nonexistent. There was one, but the day that I was
3 there, there wasn't any soap or anything to wash your
4 hands with, so -- and the fact that there wasn't any
5 staff available in the event that there was a problem.
6 All of those things to me kind of cried out maybe you
7 don't want to go back. Maybe it's not the safest place
8 in the world for you to go. Why don't -- let's not go
9 back.
10 Q. But were you still concerned about the animals?
11 A. Absolutely, I was concerned about them. My
12 concern for the -- because I didn't go to the zoo is not
13 a reflection on the fact that I lost concern or didn't
14 care anymore about the animals in the situation.
15 Q. In fact, in the interim did you take other
16 actions?
17 A. I took many actions, yes.
18 Q. Can you describe to the Court briefly some of the
19 things that you did in the meantime?
20 A. Yes. In the meantime I continued to make myself
21 familiar with the USDA APHIS reading room, familiarizing
22 myself with the inspection reports that were there; what
23 had happened in the past at the zoo; the conditions. I
24 reached out to Secretary Northey, who's the Secretary of
25 the Iowa Department of Agriculture; requested a chance

248

1 to visit with him about the situation.
2 Q. Did you have a visit with him?
3 A. I did have a visit, yes, in his office.
4 Q. And did anything substantive come of that visit?
5 A. No. No.
6 Q. Did you contact other officials or authorities?
7 A. I did. I contacted -- I contacted local
8 officials in Delaware County. Sheriff. I wanted him to
9 be aware that I thought there were concerns -- or
10 there were issues with animals having enough water,
11 being able to get out of the elements -- the weather --
12 so I contacted the sheriff's department. I did visit
13 with the supervisors in Delaware County. Again, trying
14 to think who -- who might have some oversight at a
15 public facility like this; health department, DNR.
16 Maybe the DNR have some involvement in exotic animals,
17 large animals, carnivores. The fact that the zoo had so
18 many carnivores was very unnerving to me.
19 Q. Why is that?
20 A. It was unnerving to me based on the condition of
21 the zoo itself and the enclosures that the animals were
22 in.
23 Q. And did you contact the mayor of Manchester and
24 the Delaware County Board of Supervisors?
25 A. Yes. I contacted the supervisors a couple times.

249

1 I visited with Mayor Milt Kramer once. Probably it was
2 more like wintertime after my first two visits; was part
3 of my continuing advocacy reaching out to people who I
4 thought should be aware of what was going on.
5 Q. And you said that you were continuing to read the
6 inspection reports. Was there any inspection report in
7 particular that caught your attention?
8 A. There was one that caught my attention. I cannot
9 tell you exactly when it showed up on the reading room
10 site, but it -- I believe it was conducted after my
11 second visit. And one of the things that really struck
12 me was conversation about a fence for a tiger that was
13 too short. It needed to be -- I think it was -- I think
14 they -- it was indicated that it was six feet tall. It
15 needed to be 16 feet tall -- something of that nature --
16 and this was noted after I had been at the zoo, so that
17 only ramped up my anxiety about the fact that this
18 problem apparently was going on while I was visiting
19 there, other public was visiting there and that really
20 angered me because it was an indication to me that the
21 zoo owners were putting the public at risk.
22 Q. Did you file a complaint with IDALS at any point?
23 A. Yes.
24 Q. And did you make FOIA requests regarding the zoo?
25 A. Yes, I did.

Visit ASAP at 319-558-0030 or www.asapreporting.com
to purchase a complete copy of the transcript.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

_____

TRACEY K. KUEHL, et al.    )    Case No. C14-02034-JSS

                      )

      Plaintiffs,    )    **[PROPOSED] ORDER ON**

                      )    **PLAINTIFFS' MOTION**

                      )    **FOR ATTORNEYS FEES AND**

v.                   )    **AND COSTS UNDER THE**

                      )    **ENDANGERED SPECIES ACT**

PAMELA SELLNER, et al.,    )

                      )

      Defendants    )

_____ )

BEFORE THE COURT is Plaintiffs' Motion for Award of Attorneys Fees and Costs. Having considered the materials submitted by the Parties, and for good cause shown, the Court hereby GRANTS Plaintiffs' Motion. Defendants shall pay a total of $239,979.25, an amount representing the sum of Plaintiffs' reasonable attorneys fees ($221,205.00), and Plaintiffs' costs ($18,774.25) including expert witness costs, incurred in these actions. The total amount shall be paid to Plaintiff Animal Legal Defense Fund, c/o Senior Staff Attorney Jessica Blome, within 21 days of the date this Order is entered by the District Court Clerk into the Docket. Pursuant to the Court's Order and Judgment (ECF No. 83 and 84), Defendants are jointly and severally liable for the aforementioned amount.

**IT IS SO ORDERED.**

1   The District Court is directed to enter this Order into the docket and

2   provide copies to counsel

3

4

5   DATED this _____ day of _____, 2016.

6

7                                              _____

8                                              Hon. Jon Stuart Scoles

9                                              Chief Magistrate Judge

10                                             Northern District of Iowa

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

**EXHIBIT 1**

**DECLARATION OF JESSICA BLOME**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

<table>
<tr><td>TRACEY K. KUEHL, et al.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Case No. C14-02034-JSS</td></tr>
<tr><td>PAMELA SELLNER, et al.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**<u>Declaration of Jessica Lynn Blome</u>**

1.    My name is Jessica Lynn Blome. I am licensed to practice law and am in good standing in the state of Missouri, where my Bar Number is 59710. I am currently a senior staff attorney with the non-profit law firm Animal Legal Defense Fund (ALDF). I am the lead counsel for individual Plaintiffs Tracy Kuehl, Lisa Kuehl, John Braumann, Nancy Harvey, and Kristine Bell and for organizational Plaintiff ALDF (collectively "Plaintiffs") in this case under the Endangered Species Act (ESA). I am submitting this declaration in support of Plaintiffs' application for an award of attorneys' fees and costs pursuant to the ESA, 16 U.S.C. § 1540(g)(4), Federal Rule of Civil Procedure 54(d)(1) and (2) and Local Rule 54.1.

2.    ALDF is a relatively small national nonprofit organization based in Cotati, California. We have a staff of approximately forty employees, only about twelve of whom are lawyers. Seven lawyers work in civil litigation. ALDF routinely represents individual citizens and other nonprofit organizations in public-interest litigation under the ESA, Freedom of Information Act, state open government laws, environmental statutes, animal law, public health law, and other public interest matters. ALDF never charges its clients a fee or a retainer, and outside counsel working with ALDF always charge their clients well below market rates or even

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

1

on a pro bono basis for their work, as in this case, so that nonprofit organizations can pursue litigation that they otherwise would not be able to afford to undertake. In doing so, ALDF relies on the possibility of fee and cost recovery under statutes, including the ESA, that allow for such recovery. Without statutory fee recovery, ALDF does not have the ability to represent individual Plaintiffs as it did in this case.

3. I received my J.D. in 2007 from the University of Iowa College of Law in Iowa City, Iowa. Prior to joining ALDF, I worked for the Missouri Attorney General in the Agriculture and Environment Division, where I litigated civil enforcement cases on behalf of the Missouri Departments of Natural Resources and Agriculture. At the Attorney General's Office, I specialized in complex litigation and developed expertise in the fields of safe drinking water, clean (surface and ground) water, solid waste (open dumping and landfills), hazardous waste remediation and restoration, and natural resource damage recovery (heavy metals, petro-chemicals). Moreover, in Missouri, I am regarded as an expert in certain aspects of trial practice, including witness preparation, deposition examination, and trial tactics. I routinely gave continuing legal education seminars on these topics. I have also guest taught several lectures at the University of Missouri School Of Law on agricultural law, energy law, animal law, and environmental law. For ALDF, I give presentations on current projects and litigation undertaken by the organization, am responsible for training young lawyers in-house on witness examination and deposition practice, and am called upon frequently to give talks on my successes in animal law from my time in Missouri.

4. I have civil litigation experience in Missouri state courts as well as federal courts in Missouri, California, and now Iowa. I have been lead counsel in many civil environmental and animal welfare related enforcement cases and open government cases, and I have been co-

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

counsel in many more such cases. *See, e.g. Keith v. Common. Penn. Dept. of Ag.,* PICS Case No. 15-0775 (Pa. Commw. May 13, 2015) Leadbetter; *Animal Legal Defense Fund v. Vilsack,* 110 F.Supp.3d 157 (2015); *Humane Soc'y of the United States v. Missouri,* 405 S.W.3d 532 (Mo. 2013); *In the Matter of Kansas City Power & Light Comp. Request for Auth. to Implement General Rate Increase,* 2013 WL 299322 (Mo. PSC 2013); *State ex rel. Koster v. Morningland of the Ozarks, LLC,* 384 S.W.3d 346 (2012); *Missouri ex rel. Koster v. U.S. Army Corps of Engineers,* 2011 WL 1630339 (E.D. Mo. 2011); *State ex rel. Koster v. Black Oak Organics, LLC, et al.* Case NO. 10LW-CC00068 (Lawrence County, 2011); *State v. Rousselo,* 386 S.W.3d 919 (Mo. S.D. 2012); *Bell v. Director of Revenue,* 244 S.W.3d 231 (Mo. S.D. 2008). I am accustomed to managing case strategy, administration, and staffing litigation matters through most stages of the legal process, including through trial.

5. I was the lead counsel throughout this case, including the initial investigation of the Cricket Hollow Zoo, plaintiff intake, the drafting and finalizing of ALDF's 60-day notice letter, all aspects of case development and complaint drafting, in the preparation and propounding of discovery, through summary judgment, four days of trial, and through post-trial briefing. My detailed time records are provided herewith as Exhibit A.

6. In addition to serving as lead counsel in this case, I supervised the work of ALDF's litigation fellow Jeffrey Pierce, who served as my principal assistant for the discovery, summary judgment, and district court trial phases. Mr. Pierce graduated from Stanford Law School in 2013. Mr. Pierce's chief interest at ALDF, and his main area of expertise, has been the ESA, and in particular its application to animals in captivity. Mr. Pierce's experience and background is more specifically detailed in his Declaration submitted herewith, but I selected Jeff to work with me on this case because of his background in biology. Indeed, Jeff worked with

3

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

1  Dr. Klopfer while attending Duke University and had some experience in lemur psychology and

2  husbandry.

3    7.    This case required the assistance of several attorneys, paralegals and law clerks,

4  and expert witnesses.  I selected these attorneys for their experience and strengths.  In my

5  opinion, this case was appropriately and efficiently staffed, where each individual did work

6  appropriate for his or her level of expertise.  Due to the public importance of this case, and

7  ALDF's history of working on public interest issues, I was able to obtain significant *pro bono*

8  resources for this case through experts, attorneys, and law firm costs.  Without the generous

9  assistance of these individuals, ALDF never would have been able to pursue the case through

10  trial, and the Plaintiffs' rights would not have been enforced.

11    8.    In order adequately to staff this case through summary judgment and trial, I

12  engaged and supervised outside counsel.  Prior to filing, I engaged Daniel Anderson of Wertz &

13  Dake of Cedar Rapids, Iowa as local counsel and Mr. Anderson provided support throughout the

14  case.  During discovery, I engaged the Chicago-based law firm of Katten Muchin Rosenman

15  LLP and their attorneys David Stagman and Hannah O. Koesterer to provide pro bono technical

16  assistance to help us manage discovery.  For summary judgment and trial, I also engaged outside

17  counsel Elisabeth Holmes with the Blue River Law firm.  Ms. Holmes has experience litigating

18  public interest cases.  I selected Ms. Holmes specifically because of her experience in

19  successfully litigating complex environmental matters on summary judgment. Indeed, during this

20  litigation, Ms. Holmes was co-counsel on an environmental lawsuit that won on summary

21  judgment against an industrialized dairy farm in Washington. *CARE et al. v. Cow Palace et al.*,

22  80 F.Supp. 3d 1180 (E.D. Wash. 2015).  Ms. Holmes' experience is more particularly described

23  in her Declaration filed herewith.  Moreover, throughout the 18 months of litigation, I engaged

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

and supervised several different law clerks and one paralegal.  Each of these individuals brought

different skills and experience to the legal team, all of which were necessary to successfully

litigate this case through trial on behalf of the Plaintiffs.  We would not have been able to

achieve the results we did for the Plaintiffs without the skills and professionalism of the legal

team.

9.      The Plaintiffs' legal team conducted regular conference calls to efficiently

manage and strategize the case, and to allocate responsibilities.  I would delegate work to the

legal team members based on their skill and experience, and in a manner that would avoid

duplication.  This communication and team cohesion was absolutely necessary to work together

to prepare Plaintiffs' summary judgment filings, and to prepare for four days of trial on this issue

of first impression.

10.      When Plaintiffs sent their Notice of Intent to Sue letter to Defendants on March 4,

2014, Plaintiffs included with that letter a Declaration from Peter Klopfer, Ph.D. regarding the

conditions of the lemurs, four USDA APHIS inspection reports, one IDALS inspection report,

and a USDA Citation and Notification of Penalty.  Over the next 20 months, Plaintiffs initiated

litigation, engaged in extensive written discovery, nine depositions, comprehensive summary

judgment briefing and oral argument, and a four-day trial.  At all stages of the litigation, the

evidence continued to point to the Defendants' inability to provide for their listed species' basic

animal husbandry needs.  In fact, during the litigation, the Defendants *continued* to accrue more

APHIS inspections and more APHIS citations and violations.  At no point did Defendants seek to

stem the litigation, or the accrual of attorneys fees for either side.  Most egregiously, as Plaintiffs

showed at trial, since the filing of the lawsuit, *more* endangered species in Defendants'

possession have died.  Defendants failed to be forthcoming about these animal deaths during the

5

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

litigation, nor did they use these unfortunate deaths to institute any changes in animal husbandry practices at their facility, nor did that change their approach to the litigation. At trial, Plaintiffs prevailed, and relied again – as they did in their notice letter 20 months earlier – on similar information, being USDA APHIS inspection reports, and expert opinion (including Dr. Klopfer, again). Despite the plethora of information available to Defendants, they continued to cause Plaintiffs to incur attorneys fees and costs.

11. ALDF dedicated resources to this case, which took away from other activities and case its counsel could have dedicated its time and efforts to. ALDF also declined other work, and delayed other work, due to its engagement on this case.

12. Due to the number of *pro bono* hours Plaintiffs received, Plaintiffs have elected *not* to include a request for fees and costs on behalf of the work of law clerks, paralegals, or local counsel in this fees motion. Moreover, as a matter of billing discretion, ALDF is not requesting fees for time spent investigating and developing this case, which includes the drafting and filing of the Complaint. While this time is fully compensable under applicable law, in this case, Plaintiffs prefer to focus their request solely on the work of the three attorneys who brought the case through summary judgment and four days of trial: myself, Jeffrey Pierce, and Elisabeth Holmes.

13. All of the attorneys who worked on this case maintained time records throughout the litigation. A summary of the attorney time records is provided as Exhibit B, including *pro bono* time provided by Mr. Anderson, ALDF litigation fellow Danny Lutz, ALDF Litigation paralegals, and Katten Law firm. In addition, Plaintiffs were able to take advantage of ALDF's networks, and rely on *pro bono* law clerks for responsibilities such as research, distilling facts, and cite-checking. In sum, Plaintiffs counsel billed 1,267.90 hours and are requesting 72% of

6

1  this amount, or 914.60 hours, in their Motion.  *See* Exhibit B.  Because of ALDF's attorneys'

2  expertise in ESA litigation, I believe that the hours expended on this litigation are well below

3  what lawyers with less experience would expend on comparable litigation.

4      14.    Plaintiffs' counsel's records show that for this litigation, I billed 413.90 hours,

5  and voluntarily reduced my time by nearly 17% to request 345.70 hours.  Attorney Pierce billed

6  357.90 hours, and voluntarily reduced his time by 19% to request 288.90 hours.  Attorney

7  Holmes billed 335 hours, and voluntarily reduced her time by 16% to request 280 hours.

8      15.    The amount of time spent on this case is very reasonable given it being a case of

9  first impression, its application of Congress's intentions for the ESA, and the results Plaintiffs

10  achieved especially after years of recalcitrance by the Defendants to change their practices.  *See*

11  Declaration of Patrick Parenteau filed herewith.  With Plaintiffs' results in this case, the

12  Defendants' listed animals – some of the world's most treasured creatures – will be protected;

13  and this Court's decision will reverberate throughout the nearly 2,400 USDA licensed zoos in the

14  United States, providing better *minimum* conditions for protected species.

15      16.    The rates Plaintiffs seek are consistent with the lodestar principles, as followed by

16  the Northern District of Iowa.  Plaintiffs' counsels' request is based on a reasonable number of

17  hours worked, at reasonable hourly rates for the Northern District of Iowa area. Plaintiffs'

18  counsel reviewed caselaw and consulted with local attorneys to identify the rates requested in the

19  Motion.  Plaintiffs' counsel request the following hourly rates:  $275 for Attorney Holmes, $250

20  for Attorney Blome, and $200 for Attorney Pierce.

21      17.    The Local Rule 54.1 Summary reports divisions of time from the attorneys' fees

22  statements across six designated categories. This time for Plaintiffs' counsel is presented in

23  Exhibit C, and on each attorney's timesheets attached to his or her Declaration.  The work spent

7

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

on: Category (1) *drafting of pleadings, motions, and briefs* includes work related to the drafting, revision, cite-checking and preparation for filing of all motions and briefs, and their accompanying exhibits, including motions in limine, summary judgment briefs, the pre-trial order, and pre and post-trial briefs. It also, in this case, was used to allocate time for summary judgment oral argument which stemmed from that briefing; Category (2) *legal research* includes time spent researching the various issues that arose throughout the litigation during briefing and in preparation for trial, and correspondence regarding such research, especially issues on the meaning of the Endangered Species Act and its implementation through regulation, the meaning of the Animal Welfare Act and its implementation through regulation, and standing of individual plaintiffs in lawsuits brought pursuant to citizen suit provisions; Category (3) *investigation* includes work undertaken mainly pursuant to discovery, such as promulgating interrogatories and requests for production, the review of discovered materials, and preparing for and taking depositions, as well as communication with experts; Category (4) *interviewing* includes interviews with individual Plaintiffs as fact witnesses and with experts as expert witnesses, but does not include hours otherwise reported under *investigation* or pursuant to *drafting*; Category (5) *trial preparation* includes trial strategy meetings and issues in anticipation of trial, the designation of and issues related to exhibit and witness lists, designating deposition transcripts for trial, creating trial preparation documents such as examination and cross-examination outlines in furtherance of trial strategy, and the preparation of fact and expert witnesses for trial testimony; and Category (6) *trial* includes time spent traveling to and from the jurisdiction (but does not include hours reported elsewhere, for example work undertaken in *trial preparation* while in transit to the jurisdiction) and the actual conduct of trial.

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

18.     Plaintiffs' case required expert testimony, and I oversaw and authorized the

engagement of reknown lemur expert Peter Klopfer, big cat specialist veterinarian Jennifer

Conrad, and zoo administration expert David Allen.  All of these individuals agreed to provide

their services to Plaintiffs on a *pro bono* basis.  Plaintiff ALDF paid experts' out-of-pocket

expenses related to their work on the case, and is seeking payment of these costs in the Motion,

but the experts' time was provided to the case without compensation.  This resulted in a

significant savings for the Plaintiffs.  Dr. Klopfer billed approximately 58 hours of time,

including 25 hours for travel.  His rate is $100 per hour, but increases to $1,000 per 24 hour

period or a portion thereof when travel is involved.  Jennifer Conrad billed approximately 60

hours of preparation time, plus 1.5 days of travel time.  Her rate is usually $125 - $150 per hour.

David Allen billed 57 hours, plus 3 days of time involving some travel.  His *pro bono* rate is $50

per hour.  Without the knowledge, expertise, and generosity of these individuals, Plaintiffs'

ability to bring their case to a successful judgment would have been compromised.

19.     ALDF's current compilation of billing records further show that ALDF spent

$18,774.25 in out-of-pocket costs, court reporters, deposition costs, travel to and from Iowa,

court filing costs, public records costs, expert witness fees, photocopies and exhibit book

preparation costs.  Plaintiffs' costs are summarized on the first page of Exhibit D, and Exhibit D

includes the supporting documentation currently available to Plaintiffs (which Plaintiffs will

supplement as additional materials become available).  Plaintiffs' counsel made efforts to secure

cost savings during the course of the litigation.  For example, Plaintiffs took Dr. Pusillo's

deposition by telephone, and all three of Plaintiffs' counsel were able to stay at a friend's home

during the week of trial in lieu of a hotel.  As noted in Exhibit D, due to the short turn-around

time between Judgment and filing the Motion for Attorneys Fees, Plaintiffs' costs documentation

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

1   will need supplementation as Plaintiffs' bookkeeper was not able to compile all of the needed

2   materials in time for filing.

3       20.     Plaintiffs presently seek $221,205 in attorneys fees (see Exhibit B) and costs

4   (including expert travel costs) in the amount of $18,774.25, through February 11, 2016.

5   Supplemental fees and costs may be sought as the fee petition process continues.

6       Pursuant to 28 U.S.C. § 1746, I swear under penalty of perjury that the foregoing is true

7   and correct to the best of my knowledge.

8       Dated this 25th day of February, 2016.

9                                                       */s Jessica L. Blome*
10                                                      Jessica L. Blome
11                                                      Senior Staff Attorney, ALDF
12                                                      *Counsel for Plaintiffs*
13

DECLARATION OF JESSICA L. BLOME IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS

Exhibit A

Animal Legal Defense Fund
Attorney Jessica Blome
Client: Kuehl et al
Matter: Kuehl v. Pam Sellner, et al. (Cricket Hollow Zoo)
June 12, 2014 - February 11, 2016

**ATTORNEY FEES STATEMENT**

| Date | L.R. 54.1 Code | Description | Billable Time | Courtesy Omission | Hourly Rate Requested | Total Requested |
|------|------|------|------|------|------|------|
| 10/23/14 | 3 | Review discovery requests from Defendants | 2.00 | 0.00 | $250.00 | $500.00 |
| 11/1/14 | 3 | Prepare responsive documents to Defendants' discovery requests | 4.50 | 0.00 | $250.00 | $1,125.00 |
| 12/8/14 | 3 | Produce Plaintiffs' discovery responses and supplement initial disclosures | 3.00 | 0.00 | $250.00 | $750.00 |
| 12/9/14 | 3 | Draft Plaintiffs' discovery requests to Defendants (RFAs, Interrogatories, RFPs) | 7.50 | 0.00 | $250.00 | $1,875.00 |
| 1/4/15 | 3 | Send Plaintiffs' discovery requests to Defendants | 0.50 | (0.50) | $250.00 | $0.00 |
| 2/25/15 | 3 | Receive and review discovery responses from Defendants | 1.00 | 0.00 | $250.00 | $250.00 |
| 2/25/15 | 3 | Evaluate Defendants' discovery responses in light of case legal strategy; weigh facts in context of complaint & answer; consider filing supplemental discovery requests. | 1.00 | 0.00 | $250.00 | $250.00 |
| 2/25/15 | 3 | Research on discovery issues. | 3.00 | 0.00 | $250.00 | $750.00 |
| 2/1/15 | 3 | Coordinate with Defendants for Deposition Dates | 0.50 | 0.00 | $250.00 | $125.00 |
| 3/1/15 | 3 | Prepare for Deposition of Pam Sellner (review complaint, answer, discovery responses, further legal research on elements of complaint, draft deposition outline, fact research and investigation on issues for deposition questions, continue drafting deposition outline) | 6.00 | 0.00 | $250.00 | $1,500.00 |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 42 of 146

| 3/2/15 | 3 | Continue preparing for Deposition of Pam Sellner (review complaint, answer, discovery responses, further legal research on elements of complaint, draft deposition outline, fact research and investigation on issues for deposition questions, continue drafting deposition outline) | 3.20 | 0.00 | $250.00 | $800.00 |
|---|---|---|---|---|---|---|
| 3/9/15 | 3 | Assist co-counsel in preparing for Depositions of Tom Sellner and John Pries | 1.00 | (1.00) | $250.00 | $0.00 |
| 3/16/15 | 3 | Travel to Iowa City for Depositions | 10.00 | (10.00) | $250.00 | $0.00 |
| 3/17/16 | 3 | Deposition preparation with all Plaintiffs' meeting in Cedar Rapids | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 3/18/15 | 3 | Defend Defendants' depositions of Plaintiffs (Tracey, Lisa, Nancy, Kris) | 6.00 | 0.00 | $250.00 | $1,500.00 |
| 3/18/15 | 3 | Final preparations for Deposition of Pam Sellner & John Pries | 3.00 | 0.00 | $250.00 | $750.00 |
| 3/19/15 | 3 | Attend deposition of Plaintiff John Braumann | 4.70 | (4.70) | $250.00 | $0.00 |
| 3/19/15 | 3 | Travel to and from Elkader for Pries Deposition | 5.00 | (5.00) | $250.00 | $0.00 |
| 3/19/15 | 3 | Attend deposition of John Pries | 4.50 | (4.50) | $250.00 | $0.00 |
| 3/20/15 | 3 | Attend deposition of Tom Sellner in Manchester | 3.00 | (3.00) | $250.00 | $0.00 |
| 3/20/15 | 3 | Take deposition of Pam Sellner in Manchester | 6.50 | 0.00 | $250.00 | $1,625.00 |
| 3/20/15 | 3 | Travel to and from Manchester for Sellner Depositions | 5.00 | (5.00) | $250.00 | $0.00 |
| 3/22/15 | 3 | Travel to Cotati from Iowa | 12.00 | (12.00) | $250.00 | $0.00 |
| 4/27/15 | 3 | Prepare for deposition of Dr. Gary Pusillo by doing background research and searching complaint for allegations related to nutrition. | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 4/28/14 | 3 | Prepare for deposition of Dr. Gary Pusillo by drafting deposition outline. | 8.00 | 0.00 | $250.00 | $2,000.00 |
| 4/30/14 | 3 | Take deposition of Dr. Gary Pusillo by telephone | 3.50 | 0.00 | $250.00 | $875.00 |
| 5/5/15 | 2 | Discuss MSJ with Eli Holmes | 2.00 | (2.00) | $250.00 | $0.00 |
| 5/11/15 | 2 | Research standing and harassment for aesthetically injured plaintiffs | 8.00 | 0.00 | $250.00 | $2,000.00 |
| 5/13/15 | 4 | Plaintiffs Update Call | 1.50 | 0.00 | $250.00 | $375.00 |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 43 of 146

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/14/15 | 4 | Phone calls with Plaintiffs to discuss standing claims (5 plaintiffs, 1-2 hours each), | 10.00 | 0.00 | $250.00 | $2,500.00 |
| 5/15/15 | 1 | Work on Tracey Kuehl standing declaration | 3.00 | 0.00 | $250.00 | $750.00 |
| 5/18/15 | 1 | Finish working on Tracey Kuehl and begin working on Lisa Kuehl standing declaration | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 5/20/15 | 1 | Finish Lisa Kuehl and begin John Braumann standing declaration | 3.50 | 0.00 | $250.00 | $875.00 |
| 5/27/15 | 1 | Finish working on John Braumann declaration; work on Nancy Harvey standing declaration | 2.50 | 0.00 | $250.00 | $625.00 |
| 5/28/15 | 1 | Work on Kris Bell Standing declaration | 1.50 | 0.00 | $250.00 | $375.00 |
| 5/28/15 | 2 | Research ESA take case law | 7.00 | 0.00 | $250.00 | $1,750.00 |
| 5/29/15 | 1 | Draft MSJ brief and motion for brief overlength | 3.00 | 0.00 | $250.00 | $750.00 |
| 5/30/15 | 1 | Draft MSJ Brief, review expert declarations, review statement of facts | 4.50 | 0.00 | $250.00 | $1,125.00 |
| 5/31/15 | 1 | Draft MSJ briefing materials | 3.00 | 0.00 | $250.00 | $750.00 |
| 6/1/15 | 1 | Finalize MSJ briefing materials & file | 6.00 | 0.00 | $250.00 | $1,500.00 |
| 6/2/15 | 1 | Fix document names and ref-file per court's instructions | 1.00 | (1.00) | $250.00 | $0.00 |
| 6/17/15 | 1 | Negotiate with Defendants' counsel and draft and file motion to seal certain financial records | 5.80 | 0.00 | $250.00 | $1,450.00 |
| 6/22/15 | 1 | Receive and review Defendants' resistance to Plaintiffs' MSJ | 3.00 | 0.00 | $250.00 | $750.00 |
| 6/23/15 | 1 | Call Eli Holmes about MSJ Opposition & Draft reply brief | 1.00 | 0.00 | $250.00 | $250.00 |
| 6/23/15 | 1 | Analyze, outline and research for MSJ Opposition & Draft reply brief | 7.00 | 0.00 | $250.00 | $1,750.00 |
| 6/24/15 | 4 | Client Update Call | 1.50 | 0.00 | $250.00 | $375.00 |
| 6/24/15 | 1 | Research issues and draft reply brief | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 6/25/15 | 1 | Draft reply brief | 2.00 | 0.00 | $250.00 | $500.00 |
| 6/27/15 | 1 | Draft reply brief | 2.00 | 0.00 | $250.00 | $500.00 |
| 6/28/15 | 1 | Draft reply brief & motion to strike | 3.00 | 0.00 | $250.00 | $750.00 |
| 6/29/15 | 1 | Finalize and file reply brief and motion to strike | 5.00 | 0.00 | $250.00 | $1,250.00 |
| 7/1/15 | 1 | Draft and file motion for newly discovered evidence | 6.50 | 0.00 | $250.00 | $1,625.00 |
| 7/6/15 | 1 | Receive and review resistance to motion to strike | 1.00 | 0.00 | $250.00 | $250.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7/15/15 | 1 | Receive and review Defendants' resistance to Plainitffs' motion for newly discovered evidence | 1.00 | 0.00 | $250.00 | $250.00 |
| 7/31/15 | 1 | Receive and review Judge's order setting MSJ argument | 0.50 | 0.00 | $250.00 | $125.00 |
| 7/31/15 | 1 | Discuss hearing with Eli Holmes | 1.00 | 0.00 | $250.00 | $250.00 |
| 8/3/15 | 1 | Prepare for MSJ Hearing with Jeff Pierce by overseeing his hearing outline, conversing over the phone, and participating in 1 2-hour moot | 6.00 | 0.00 | $250.00 | $1,500.00 |
| 8/4/15 | 1 | 2 moots for Jeff that lasted 2 hours each | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 8/6/15 | 1 | Call with Eli and Jeff about MSJ hearing, review order denying MSJ | 1.00 | 0.00 | $250.00 | $250.00 |
| 8/17/15 | 5 | Prepare and coordinate Plaintiffs' exhibit and witness lists. Discussed the utility of each witness and exhibit with EH and JP via email and phone calls. | 7.00 | 0.00 | $250.00 | $1,750.00 |
| 8/18/15 | 5 | Prepare and coordinate Plaintiffs' exhibit and witness lists. Discussed expert witnessed availability in phone calls and emails with three expert witnesses. | 2.00 | 0.00 | $250.00 | $500.00 |
| 8/20/15 | 5 | Finalize and file Plaintiffs' exhibit and witness lists | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 8/25/15 | 4 | Client update call | 1.00 | 0.00 | $250.00 | $250.00 |
| 8/31/15 | 5 | Review trial brief materials drafted by Jeff, prepare and file settlement status update with court, prepare Final Pre-Trial Order | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 9/1/15 | 5 | Research and draft MIL for USDA records | 3.00 | 0.00 | $250.00 | $750.00 |
| 9/2/15 | 5 | Research and draft MIL for expert testimony exclusion | 5.00 | 0.00 | $250.00 | $1,250.00 |
| 9/3/15 | 5 | Draft first draft of final pre-trial order, review and finalize JP's final draft of pre-trial brief | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 9/4/15 | 5 | Draft and research MIL on order of proof, file pre-trial order and pre-trial brief | 2.00 | 0.00 | $250.00 | $500.00 |
| 9/8/15 | 5 | Trial prep for David Allen direct examination | 4.00 | 0.00 | $250.00 | $1,000.00 |
| | 5 | Fix Exhibits and resend to Defendants | 4.00 | (4.00) | $250.00 | $0.00 |
| 9/9/15 | 5 | Draft David Allen witness examination outline for trial | 5.00 | 0.00 | $250.00 | $1,250.00 |
| 9/10/15 | 5 | Receive and review resistance to MIL on order of proof | 0.50 | 0.00 | $250.00 | $125.00 |

| 9/11/15 | 5 | Final pre-trial conference by telephone | 2.00 | 0.00 | $250.00 | $500.00 |
|---------|---|----------------------------------------|------|------|---------|---------|
| 9/14/15 | 5 | Receive and review final pre-trial order | 0.50 | 0.00 | $250.00 | $125.00 |
| 9/16/15 | 5 | Prepare Nancy Harvey for trial by telephone conference | 1.00 | 0.00 | $250.00 | $250.00 |
| 9/16/16 | 5 | Draft Nancy Harvey Trial Outline | 2.00 | 0.00 | $250.00 | $500.00 |
| 9/21/15 | 5 | Prepare Lisa Kuehl for trial by telephone conference | 3.00 | 0.00 | $250.00 | $750.00 |
| 9/21/15 | 5 | Finalize Nancy, Lisa, and David's trial outlines. Begin drafting cross examination outline for Pam Sellner by researching FCF and other tiger husbandry authorities. | 3.00 | 0.00 | $250.00 | $750.00 |
| 9/21/15 | 5 | Continue drafting Pam Sellner cross examination outline for trial, prepare for court hearing on MILs by reviewing motions, creating oral argument outline, and re-reading caselaw | 7.00 | 0.00 | $250.00 | $1,750.00 |
| 9/28/15 | 5 | Telephonic hearing on MILs with court | 2.50 | 0.00 | $250.00 | $625.00 |
| 9/30/15 | 4 | Nancy Harvey Trial Prep Call | 1.50 | 0.00 | $250.00 | $375.00 |
| 9/30/15 | 5 | General trial prep, including gathering case materials, trial binders, and drafting witness outlines | 10.50 | (5.00) | $250.00 | $1,375.00 |
| 10/1/15 | 5 | Receive and review judge's order on MILs, research caselaw to support motion to reconsider MIL on order of proof. Draft motion to reconsider. | 5.00 | (5.00) | $250.00 | $0.00 |
| 10/1/15 | 5 | David Allen trial preperation by telephone conference | 5.00 | 0.00 | $250.00 | $1,250.00 |
| 10/2/15 | 5 | File motion to reconsider on order of proof, client call before trial | 2.50 | (2.50) | $250.00 | $0.00 |
| 10/4/15 | 6 | Meet with EH and JP in Iowa City to discuss trial strategy. Review EH and JP's witness examination outlines for trial, finalize my own trial outline for Pam Sellner cross examination, go over practice tips and strategies for direct examination of experts with JP and EH (as their supervising attorney) | 12.00 | 0.00 | $250.00 | $3,000.00 |
| 10/5/15 | 6 | Trial + Trial prep in evenings | 10.00 | 0.00 | $250.00 | $2,500.00 |
| 10/6/15 | 6 | Trial + Trial prep in evenings | 10.00 | 0.00 | $250.00 | $2,500.00 |
| 10/7/15 | 6 | Trial + Trial prep in evenings | 10.00 | 0.00 | $250.00 | $2,500.00 |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 46 of 146

| 10/8/15 | 6 | Trial | 9.50 | 0.00 | $250.00 | $2,375.00 |
|---------|---|-------|------|------|---------|-----------|
| 11/8/15 | 6 | Discuss post-trial brief with Jeff | 0.50 | 0.00 | $250.00 | $125.00 |
| 11/10/15 | 6 | Review first draft of post-trial brief & draft sections on remedy and inability to comply | 8.00 | 0.00 | $250.00 | $2,000.00 |
| 11/13/15 | 6 | Assist with finalizing and filing of post-trial brief | 1.00 | (1.00) | $250.00 | $0.00 |
| 12/4/15 | 6 | Receive and review Defendants' post-trial brief | 1.50 | 0.00 | $250.00 | $375.00 |
| 12/8/15 | 6 | Draft reply brief (As lead attorney, I was solely responsible for drafting reply brief) | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 12/10/15 | 6 | Draft reply brief | 4.00 | 0.00 | $250.00 | $1,000.00 |
| 12/14/15 | 6 | Draft reply brief | 2.00 | 0.00 | $250.00 | $500.00 |
| 12/15/15 | 6 | Draft reply brief | 3.00 | 0.00 | $250.00 | $750.00 |
| 12/16/15 | 6 | Draft reply brief (incorporating comments and sending drafts around, discussing with co-counsel, etc) | 6.00 | 0.00 | $250.00 | $1,500.00 |
| 12/17/15 | 6 | Receive evidence of two pre-trial inspections of CHZ facility by USDA that Defendants' failed to disclose. Research and daft motion for newly discovered evidence to file with court. | 8.00 | 0.00 | $250.00 | $2,000.00 |
| 12/18/15 | 6 | File reply brief and motion for newly discovered evidence, receive and review Defendants' resistance | 2.00 | 0.00 | $250.00 | $500.00 |
| 12/30/15 | 6 | Receive and review judge's order regarding filing of newly discovered evidence | 0.20 | 0.00 | $250.00 | $50.00 |
| 1/6/16 | 6 | Receive second APHIS inspection report from Defendant's counsel, draft motion to file with court in response to judg'es 12/30 order | 1.00 | 0.00 | $250.00 | $250.00 |
| 2/11/16 | 6 | Receive and review judgment and order after trial | 2.00 | (2.00) | $250.00 | $0.00 |

|  | **Total Hours** | **Omitted** | **Total Fees Requested** |
|---|---|---|---|
|  | 413.90 | (68.20) | $86,425.00 |

Hours requested = 413.90 - 68.20 (a 16% discount) = 345.70

| L.R. 54.1 Category Totals | Summary |
|---|---|
| 1 | 84.10 (after 1.0 voluntary reduction) |
| 2 | 15.7 hours (after 2.0 voluntary reduction) |
| 3 | 66.70 (afer 45.70 voluntary reduction) |
| 4 | 15.5 (no voluntary reduction taken) |
| 5 | 72 (after 16.50 voluntary reduction) |
| 6 | 91.70 (after 3.0 voluntary reduction) |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 48 of 146

Tracey Kuehl et al. v. Pamela Sellner et al.
6:14-cv02034-JSS
U.S. District Court N.D. Iowa (Eastern Waterloo)
**SUMMARY OF PLAINTIFFS' ATTORNEY TIME AND FEES REQUESTED**
June 11, 2014 - February 11, 2016

## I. Summary of Attorney Time

| Attorney | Hours Billed | Hours Requested | Hourly Rate Requested | Fees Requested |
|---|---|---|---|---|
| Jessica Blome, Senior Staff Attorney, ALDF | 413.90 | 345.70 | $250.00 | $86,425.00 |
| Jeffrey Pierce, Litigation Fellow, ALDF | 357.90 | 288.90 | $200.00 | $57,780.00 |
| Elisabeth Holmes, Attorney, Blue River Law, P.C. | 335.00 | 280.00 | $275.00 | $77,000.00 |
| Katten Law Firm | 81.10 | 0.00 | $0.00 | $0.00 |
| ALDF Litigation Fellow Danny Lutz (legal research and preparation of ESA Notice of Intent to Sue Letter) | 18.00 | 0.00 | $0.00 | $0.00 |
| ALDF Litigation Paralegals (2015) | 62.00 | 0.00 | $0.00 | $0.00 |
| Daniel J. Anderson, Local Counsel, Wertz & Dake | All Pro Bono | 0.00 | $0.00 | $0.00 |
| | **1,267.90** **Total Hours Billed** | **914.60** **Hours Requested (72% of total billed)** | | **$221,205.00** **Total Fees Requested** |

EXHIBIT C

Tracey Kuehl et al. v. Pamela Sellner et al.
6:14-cv02034-JSS
U.S. District Court N.D. Iowa (Eastern Waterloo)

**SEPARATE SUMMARY OF PLAINTIFFS' ATTORNEY TIME REQUESTED BY L.R. 54.1(a) CATEGORY**
June 11, 2014 - February 11, 2016

**II. Summary of Attorney Time By Local Rule 54.1(a) Categories**

| CATEGORY | Hours Requested | Attorney Blome | Attorney Pierce | Attorney Holmes |
|---|---|---|---|---|
| 1 (Drafting pleadings, motions, and briefs) | 291.20 | 84.10 | 72.30 | 134.80 |
| 2 (Legal research) | 49.40 | 15.70 | 9.80 | 23.90 |
| 3 (Investigation) | 121.40 | 66.70 | 54.70 | 0.00 |
| 4 (Interviewing) | 40.70 | 15.50 | 13.70 | 11.50 |
| 5 (Trial preparation) | 147.60 | 72.00 | 39.90 | 35.70 |
| 6 (Trial) | 264.30 | 91.70 | 98.50 | 74.10 |
| | 914.60 | 345.70 | 288.90 | 280.00 |

\*

EXHIBIT D

Tracey Kuehl et al. v. Pamela Sellner et al.
6:14-cv02034-JSS
U.S. District Court N.D. Iowa (Eastern Waterloo)
**SUMMARY OF PLAINTIFFS' COSTS REQUESTED**
June 11, 2014 - February 11, 2016

## III.  Summary of Plaintiffs' Costs[1]

| Plaintiffs' Reference Number | Description | Amount |
|---|---|---|
| 0001 | Contract Attorney | $169.25 |
| 0002 | Shipping Costs | $99.40 |
| 0003 | Litigation Costs | $13,219.80 |
| 0004 | Attorney Meal Costs | $413.43 |
| 0005 | Attorney Travel Costs | $1,998.39 |
| 0006 | Plaintiffs' Experts Travel Costs | $2,873.98 |
| | **TOTAL COSTS** | **$18,774.25** |

1 Due to the short turn-around time
between the Judgment and the
Plaintiffs' request for fees, Plaintiff
submit herewith the costs information
available to them at this time.
Plaintiffs will supplement the
documentation supporting their costs
as it becomes available.

# Animal Legal Defense Fund
## Transaction Detail By Account
### All Transactions

| | Type | Date | Num | Source Name | Amount |
|---|---|---|---|---|---|
| **Operating Expenses** | | | | | |
| **Legal - Contract Attorneys** | | | | | |
| | Bill | 07/16/2015 | 071615 | Wertz & Dake, PC | 169.25 |



Animal Legal
Defense Fund

# Invoice Approval Form

Vendor: Wertz & Dake PC

Date of Invoice: 7/16/2015

Invoice Number: 17374, 17443, 17731, 17856

ALDF Project Manager Name: J Blome

| DATE | PROJECT OR CASE NAME | DESCRIPTION | AMOUNT | | DEPT | EX. CODE |
|------|---------------------|-------------|--------|---|------|----------|
| 8/24/15 | #220 Kuehl v CHZ | Contract Attorney Costs & Expenses | 169.25 | | 05-Litigation | ntract Attorneys |
| | | | | | | |
| | | | | | | |

OFFICE USE ONLY:

TOTAL $ 169.25

_____ 8/24/15
Project Manager's Signature                    Date

_____ 8/24/15
Supervisor's Approval Signature                 Date

*Please attached this form to the top of the invoice and submit both to Finance.*

| Handling | (Please Check one) |
|----------|--------------------|

_____ **Please mail to address listed above (no other attachments are needed)**

_____ **Please mail to address above with attachment indicated on the line below**

_____ **Please return to:**

# Statement

Wertz & Dake, P.C.

1500 Center Street NE
Cedar Rapids, IA 52402

| DATE |
| --- |
| 7/16/2015 |

| TO: |
| --- |
| Animal Legal Defense Fund<br>Jessica Blome<br>Cotati, CA 94931 |

| AMOUNT DUE | AMOUNT ENC. |
| --- | --- |
| $169.25 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
| --- | --- | --- | --- |
| 03/31/2015 | Balance forward | | 3.90 |
| 04/02/2015 | INV #17374. 3/5 MAM Serving served Dr Pries | 70.00 | 73.90 |
| 04/03/2015 | INV #17443. copies | 19.20 | 93.10 |
| 05/19/2015 | INV #17731. 4/23 MAM Serving  Dr Pusillo served | 75.00 | 168.10 |
| 06/30/2015 | INV #17856. copies, phone | 1.15 | 169.25 |

Please make checks payable to Wertz & Dake, P.C.

| AMOUNT DUE |
| --- |
| $169.25 |

**Animal Legal Defense Fund**
**Transaction Detail By Account**
All Transactions

| | Type | Date | Num | Source Name | Memo | Amount |
|---|---|---|---|---|---|---|
| **Operating Expenses** | | | | | | |
| **Postage/Delivery** | | | | | | |
| | Credit Card Charge | 09/25/2015 | WC | USPS | WC - binder for judge | 99.40 |
| Total Postage/Delivery | | | | | | 99.40 |
| Total Operating Expenses | | | | | | 99.40 |
| **TOTAL** | | | | | | **99.40** |

Due to the short timeframe for submitting a fee request, Plaintiffs do not have all the supporting materials for all of their Litigation Costs listed below readily available. Plaintiffs are continuing to gather the supporting materials to supplement their request. Additionally, the bookkeeper has not yet indexed all litigation costs on the spreadsheet below and those supporting materials are produced as pages 28-34 of this attachment. The total amount for these invoices is $3,265.19 (Ex. D p. 032-039), bringing Plaintiffs' Litigation Costs to $13,219.80. Expert travel costs ($2,873.98) are addressed separately (Ex. D pages 042-046).

| | | | Type | Date | Num | Source Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses** | | | | | | | | | |
| | **Litigation Costs (0003-__)** | | | | | | | | |
| | | 1 | Credit Card Charge | 10/19/2015 | | USPS | Cert mail for records request | 6.11 | 6.11 |
| | | 2 | Credit Card Charge | 10/22/2015 | | USPS | Certified Mail | 6.11 | 12.22 |
| | | 3 | Bill | 11/05/2013 | 11.04.13 | Iowa Dept. of Agriculture | Public Records Request | 172.94 | 185.16 |
| | | 4 | Check | 03/30/2015 | | Fedex Ship - Cotati 1146-6848 | WC Litigation Costs | 71.15 | 256.31 |
| | | 5 | Bill | 06/13/2014 | 061214 | Wertz, Thomas | Contract atty | 400.00 | 656.31 |
| | | 6 | Credit Card Charge | 06/19/2015 | WC | | | 26.00 | 682.31 |
| | | 7 | Bill | 07/08/2014 | 070714 | Missouri State Bar Association | WSBA-Certificates of Good Standing | 15.00 | 697.31 |
| | | 8 | Bill | 10/23/2015 | 16589 | Wertz, Thomas | Contract atty | 192.40 | 889.71 |
| | | 9 | Bill | 02/11/2015 | 021015 | Pries, Dr. John | Subpoena fees | 41.53 | 931.24 |
| | | 10 | Credit Card Charge | 03/24/2015 | | Courts/USDC | PHV fees | 75.00 | 1,006.24 |
| | | 11 | Credit Card Charge | 03/24/2015 | JB-no rcpt | Days Inn | JB - conference room for expert deposition | 85.60 | 1,091.84 |
| | | 12 | Bill | 04/10/2015 | 22146 | Van Wyngarden & Abrahamson In | Court reporter | 3,257.55 | 4,349.39 |
| | | 13 | Bill | 05/12/2015 | 1022662 | Sweeney Court Reporting Service | Court reporter | 770.85 | 5,120.24 |
| | | 14 | Bill | 07/28/2015 | 072615 | Blue River Law PC | Copies | 13.00 | 5,133.24 |
| | | 15 | Credit Card Charge | 09/09/2015 | WC-no rcpt | One Legal | Filing service | 210.99 | 5,344.23 |
| | | 16 | Credit Card Charge | 09/20/2015 | CB | Fedex via Credit Card | CB - trial exhibits | 627.45 | 5,971.68 |
| | | 17 | Credit Card Charge | 09/22/2015 | CB | Fedex via Credit Card | CB - ship trial exhibits to Eli | 20.64 | 5,992.32 |
| | | 18 | Credit Card Charge | 09/22/2015 | JB | Office Depot | JB - trial binders for judge Cricket Hollow Zoo | 54.85 | 6,047.17 |
| | | 19 | Credit Card Charge | 09/24/2015 | WC | One Legal | Filing service | 169.95 | 6,217.12 |
| | | 20 | Credit Card Charge | 10/07/2015 | JB | Copyworks | JB - cricket hollow zoo [Printing materials for trial] | 38.49 | 6,255.61 |
| | | 21 | Bill | 11/04/2015 | KC15-261JB | Carr, Kay C. | Court reporter (trial) -- cost of trial transcripts | 3,533.20 | 9,788.81 |
| | | 22 | Bill | 11/25/2015 | 18311, 18521 | Wertz & Dake, PC | Contract atty | 151.10 | 9,939.91 |
| | | 23 | Bill | 01/15/2016 | 18831 | Wertz & Dake, PC | copies | 14.70 | 9,954.61 |
| | Total Litigation Costs | | | | | | | 9,954.61 | 9,954.61 |
| | Total Operating Expenses | | | | | | | 9,954.61 | 9,954.61 |
| **TOTAL** | | | | | | | | **9,954.61** | **9,954.61** |

ALDF Check Request Form – 05 Litigation



**Animal Legal Defense Fund**

TODAY'S DATE: November 4, 2013     DUE DATE: Next Check Dates

NAME: Wendy

MAKE CHECK PAYABLE TO:

Iowa Dept of Agriculture

502 E. 9th Street, 2nd Floor

Des Moines, IA 50319

**Return check to Wendy – I'll be adding a cover letter

| EXPENSE CODE | ITEM DESCRIPTION | CASE NAME | AMOUNT |
|---|---|---|---|
| 9 | Public Records Request | #220 Cricket Hollow (Iowa Zoo) | 172.94 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | 172.94 |

170 East Cotati Avenue
Cotati, California 94931

T 707.795.2533
F 707.795.7280

info@aldf.org
aldf.org

Expense Codes:
1.   Consultants/Experts  ☐
2.   Dues/Training  ☐
3.   Hotels  ☐
4.   Insurance  ☐
5.   Legal-Contract Atty  ☐
6.   Legal – Interns  ☐
7.   Lexis  ☐
8.   Litigation Costs  ☐
9.   Investigations  ☒
10.  Meals  ☐
11.  Travel/transport  ☐
12.  ALI  ☐

Approved ___approved via email___
Carter Dillard

Winning the case against cruelty

Printed on Recycled Paper



# Iowa Dept of Agriculture and Land Stewardship

**Invoice No. 13KH308001**

Wallace State Office Building
Des Moines, IA 50319

## *INVOICE* =

| Customer | | | |
|---|---|---|---|
| Name | Animal Legal Defense Fund | | |
| Address | 170 East Cotati Ave | | |
| City | Cotati | State CA | ZIP 94931 |
| Attn: | | | |

| | |
|---|---|
| Date | 11/4/2013 |
| Order No. | |
| Rep | Katie Hyde |
| FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | Copies,Complaints, Investigative Reports<br><br>263 copies @.25/per copy - 65.75<br>1 hr@22.58 - 22.58<br>3 hrs@24.33 - 72.99<br>$11.62 postage<br><br>**Return to Iowa Department of Agriculture and Land Stewardship**<br>**Attn. Katie Hyde**<br>**502 E. 9th St, 2nd Floor**<br>**Des Moines, IA 50319**<br><div align="center">**Thank you.**</div> | $172.94 | $172.94 |
| | | SubTotal | $172.94 |
| | | Shipping & Handling | $0.00 |
| | | Taxes    State | |
| | | **TOTAL** | $172.94 |

**Payment Details**

- ⦿ Cash
- ◯ Check
- ◯ State of Iowa Internal Voucher

Name _____
CC # _____
        Expires _____

Office Use Only

EXHIBIT D PAGE 008



# Iowa Dept of Agriculture and Land Stewardship

**Invoice No. 13KH308001**

Wallace State Office Building
Des Moines, IA 50319

## = INVOICE =

| Customer | |
|---|---|
| Name | Animal Legal Defense Fund |
| Address | 170 East Cotati Ave |
| City | Cotati          State CA      ZIP 94931 |
| Attn: | |

| | |
|---|---|
| Date | 11/4/2013 |
| Order No. | |
| Rep | Katie Hyde |
| FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | Copies,Complaints, Investigative Reports | $172.94 | $172.94 |
| | 263 copies @.25/per copy - 65.75 | | |
| | 1 hr@22.58 - 22.58 | | |
| | 3 hrs@24.33 - 72.99 | | |
| | $11.62 postage | | |
| | **Return to Iowa Department of Agriculture and Land Stewardship Attn. Katie Hyde 502 E. 9th St, 2nd Floor Des Moines, IA 50319** | | |
| | **Thank you.** | | |

| | | |
|---|---|---|
| | SubTotal | $172.94 |
| | Shipping & Handling | $0.00 |
| | Taxes        State | |
| | **TOTAL** | $172.94 |

### Payment Details

- ⦿ Cash
- ○ Check
- ○ State of Iowa Internal Voucher

Name _____
CC # _____
        Expires _____

Office Use Only

EXHIBIT D PAGE 009

ALDF Check Request Form – 05 Litigation



**Animal Legal Defense Fund**

TODAY'S DATE: 06-12-14          DUE DATE: On Receipt

NAME: Wendy

MAKE CHECK PAYABLE TO:

Thomas Wertz

POB 849

Cedar Rapids, IA 52406-0849

| EXPENSE CODE | ITEM DESCRIPTION | CASE NAME | AMOUNT |
|---|---|---|---|
| 8 | Filing Fee | #220 - Iowa Zoo | $400.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | Total | $400.00 |

170 East Cotati Avenue
Cotati, California 94931

T 707.795.2533
F 707.795.7280

info@aldf.org
aldf.org

Expense Codes:
1.   Consultants/Experts ☐
2.   Dues/Training ☐
3.   Hotels ☐
4.   Insurance ☐
5.   Legal-Contract Atty ☐
6.   Legal – Interns ☐
7.   Lexis ☐
8.   Litigation Costs ☑
9.   Investigations ☐
10.  Meals ☐
11.  Travel/transport ☐
12.  ALI ☐

Approved _____
Carter Dillard

Winning the case against cruelty

Printed on Recycled Paper

EXHIBIT D PAGE 010

**Wendy Cromwell**

| | |
|---|---|
| **From:** | Jessica Blome |
| **Sent:** | Wednesday, June 11, 2014 2:53 PM |
| **To:** | Wendy Cromwell |
| **Cc:** | Carter Dillard; Danny Lutz |
| **Subject:** | FW: Pay.gov Payment Confirmation: IAND CM ECF |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Wendy, can we send Dan a check for $400 to reimburse him for the filing costs on CHZ?

Jessica Blome | Staff Attorney
Animal Legal Defense Fund | aldf.org
a 707.795.2533, ext. 1043 | F 707.795.7280
  jblome@aldf.org

Connect with ALDF on:
Facebook | Twitter | YouTube | Causes

-----Original Message-----
From: Daniel Anderson [mailto:DAnderson@wertzlaw.com]
Sent: Wednesday, June 11, 2014 12:54 PM
To: Jessica Blome
Subject: FW: Pay.gov Payment Confirmation: IAND CM ECF

-----Original Message-----
From: paygovadmin@mail.doc.twai.gov [mailto:paygovadmin@mail.doc.twai.gov]
Sent: Wednesday, June 11, 2014 2:12 PM
To: Daniel Anderson
Subject: Pay.gov Payment Confirmation: IAND CM ECF

Your payment has been submitted to Pay.gov and the details are below. If you have any questions or you wish to cancel this payment, please contact Renea Solmonson at (319) 286-2321.

Application Name: IAND CM ECF
Pay.gov Tracking ID: 25G557EO
Agency Tracking ID: 0862-1814635
Transaction Type: Sale
Transaction Date: Jun 11, 2014 3:12:20 PM

Account Holder Name: Thomas Wertz
Transaction Amount: $400.00
Billing Address: PO Box 849
City: Cedar Rapids
State/Province: IA

Zip/Postal Code: 52406-0849
Country: USA
Card Type: Visa
Card Number: ************0118


THIS IS AN AUTOMATED MESSAGE.  PLEASE DO NOT REPLY.

EXHIBIT D PAGE 012

ALDF Check Request Form -- 05 Litigation


**Animal Legal
Defense Fund**

TODAY'S DATE: July 7 2014     DUE DATE: Next checks

NAME: Wendy

MAKE CHECK PAYABLE TO:

Missouri State Bar Association -----

***return check to wendy, please****

| EXPENSE CODE | ITEM DESCRIPTION | CASE NAME | AMOUNT | |
|---|---|---|---|---|
| 8 | Certificate of Standing | #220 Cricket Hollow | $15.00 | |
| | | | | |
| | | | | 170 East Cotati Avenue<br>Cotati, California 94931 |
| | | | | T 707.795.2533<br>F 707.795.7280 |
| | | | | info@aldf.org<br>aldf.org |
| | | | | |
| | | Total | $15.00 | |

Expense Codes:

1. Consultants/Experts ☐
2. Dues/Training ☐
3. Hotels ☐
4. Insurance ☐
5. Legal-Contract Atty ☐
6. Legal – Interns ☐
7. Lexis ☐
8. Litigation Costs ☑
9. Investigations ☐
10. Meals ☐
11. Travel/transport ☐
12. ALI ☐

Approved _____

Carter Dillard

Winning the case against cruelty

Printed on Recycled Paper

ALDF Check Request Form -- 05 Litigation


Animal Legal
Defense Fund

TODAY'S DATE: November 12, 201_   DUE DATE:_____

NAME: Wendy

MAKE CHECK PAYABLE TO:

Wertz & Dake

POB 849

Cedar Rapids, IA 52406-0849

| EXPENSE CODE | ITEM DESCRIPTION | CASE NAME | AMOUNT |
|---|---|---|---|
| 8 | Service & Filing Fees | #220 Cricket Hollow | $192.40 |
| | invoice & receipts attached | | |
| | | | 170 East Cotati Avenue Cotati, California 94931 |
| | | | T 707.795.2533 F 707.795.7280 |
| | | | info@aldf.org aldf.org |
| | | | |
| | | Total | $192.40 |

Expense Codes:
1. Consultants/Experts ☐
2. Dues/Training ☐
3. Hotels ☐
4. Insurance ☐
5. Legal-Contract Atty ☐
6. Legal – Interns ☐
7. Lexis ☐
8. Litigation Costs ☑
9. Investigations ☐
10. Meals ☐
11. Travel/transport ☐
12. ALI ☐

Approved_____
Carter Dillard

Winning the case against cruelty
Printed on Recycled Paper

# Statement

Wertz & Dake, P.C.
1500 Center Street NE
Cedar Rapids, IA 52402

| DATE |
|------|
| 10/15/2014 |

| TO: |
|-----|
| Animal Legal Defense Fund<br>Jessica Blome<br>Cotati, CA  94931 |

| AMOUNT DUE | AMOUNT ENC. |
|------------|-------------|
| $192.40 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 06/30/2014 | Balance forward | | -400.00 |
| 07/01/2014 | INV #16174. copy | 0.10 | -399.90 |
| 07/07/2014 | INV #16381. 7/3 MAM Serving invoice for service | 40.00 | -359.90 |
| 07/16/2014 | INV #16396. 6/11 USDC Courts filing fee | 400.00 | 40.10 |
| 07/25/2014 | INV #16425. 7/24 USDC fling fee | 75.00 | 115.10 |
| 08/14/2014 | INV #16455. 7/29 USDC NDIA pro hac vice | 75.00 | 190.10 |
| 10/01/2014 | INV #16589. copies | 2.30 | 192.40 |

Please make checks payable to Wertz & Dake, P.C.

| AMOUNT DUE |
|------------|
| $192.40 |

# *MAM Serving*
## *5009 E Ave NW*
## *Cedar Rapids, IA 52405*

Served 6/27/2014 12:54:00 PM

TO:     Wertz & Dake
         Attn: Daniel J. Anderson
         P.O. Box 849
         Cedar Rapids, IA  52406-0849

*Animal Legal Defense*

Invoice for Service:

Case #:  C14-2034-LRR
County:
Defendant: Pamela Sellner, Tom Sellner and Cricket Hollow Zoo
Outcome:  Served
Comment:

Total Due:   $40.00



EXHIBIT D PAGE 016

### *MAM Serving*
### *5009 E Ave NW*
### *Cedar Rapids, IA 52405*

Served 6/27/2014 12:54:00 PM

TO:    Wertz & Dake
        Attn: Daniel J. Anderson
        P.O. Box 849
        Cedar Rapids, IA 52406-0849

*Animal Legal Defense*

Invoice for Service:

Case #: C14-2034-LRR
County:
Defendant: Pamela Sellner, Tom Sellner and Cricket Hollow Zoo
Outcome: Served
Comment:

Total Due:  $40.00


PAID

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

TRACEY K. KUEHL, an individual;
LISA K. KURHL, an individual; KRIS
A, BELL, an individual; NANCY A.
HARVEY, an individual; JOHN T.
BRAUMANN, an individual, and;
NIMAL LEGAL DEFENSE FUND, a
non-profit corporation,

      Plaintiffs,

vs.

PAMELA SELLNER, an individual;
TOM SELLNER, an individual; and
CRICKET HOLLOW ZOO, a non-
profit corporation,

      Defendants.

No. C14-2034

ORDER FOR ADMISSION
*PRO HAC VICE*

---

This matter comes before the Court on the Motion for Admission Pro Ha

(docket number 8) filed by attorneys Jessica Lynn Blome and Daniel Harold Lutz

24, 2014. The Court finds the motion should be granted.

## ORDER

**IT IS THEREFORE ORDERED** that the Motion for Admission Pro Ha

(docket number 8) is hereby **GRANTED.** Attorneys Jessica Lynn Blome and

Harold Lutz are authorized to appear on behalf of Plaintiffs in this case.

DATED this 24th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE

| 07/24/2014 | 8 | MOTION for Leave to Appear Pro Hac Vice for Attorney Jessica Blome and Daniel Lutz ( Pro Hac Vice Fee $ 75 receipt number 0862-1840188) by Plaintiffs Animal Legal Defense Fund, Kris A Bell, John T Braumann, Nancy A Harvey, Lisa K Kuehl, Tracey K Kuehl (Anderson, Daniel) (Entered: 07/24/2014) |
|---|---|---|
| 07/24/2014 | 9 | ORDER granting 8 Motion for Leave to Appear Pro Hac Vice for Jessica Lynn Blome and Daniel Harold Lutz on behalf of all Plaintiffs. Signed by Magistrate Judge Jon S Scoles on 7/24/14. (ksy) (Conflicts reviewed, none found) (Entered: 07/24/2014) |
| 07/24/2014 | | Set Deadline: Check Status Deadline for 2nd Pro Hac fee due by 7/31/2014 re 8 . (ksy) (Entered: 07/24/2014) |
| 07/29/2014 | | FEE Receipt: $75.00, receipt number IAN110013641 for Pro Hac Vice Filing Fee for attorney Daniel Lutz by Animal Legal Defense Fund, Kris A Bell, John T Braumann, Nancy A Harvey, Lisa K Kuehl, Tracey K Kuehl (original receipt to payee from atty Anderson's office at counter). (skm) (Entered: 07/29/2014) |

EXHIBIT D PAGE 019

Animal Legal Defense Fund
Check Request Form

Date: 2/10/2015

Payee: Dr. John Pries

Mailing Address:

| Amount: | Description: (please attach receipts) | Expense Coding (Per Budget) | Event name or Case # |
|---|---|---|---|
| 40.00 | Witness Fees | 1841 | #220. Cricket Hollow |
| 1.53 | Mileage fees 2.66 miles @57.5 cents per mile | 1841 | #220. Cricket Hollow |
| | | | |
| | | | |
| | **No receipts - this is a federal requirement to pay a witness per a subpoena we | | |
| | will be issuing | | |

Total Amount: $41.53 (This is the actual amount check will be cut for)

Requested by: Wendy

Approved by:

Handling (Please check one)

___ Please mail to address listed above (no other attachments are needed)

___ Please mail to address above with attachment indicated on the line below
_____

x Please return to Wendy _____

___ Special Handling Please note below
_____
_____

1841/05/1220

EXHIBIT D PAGE 020



**ALDF Standard Payment Request Form**

Animal Legal Defense Fund

Date: 4/1/15

Pay to: Van Wyngarden & Abrahamson, INC

Mailing Address: 2307 Falls Avenue Suite 3
Waterloo, IA 50701

Manager Name: Carter Dillard

OFFICE USE ONLY:

| DATE | PROJECT OR | DESCRIPTION | AMOUNT | | DEPT | EX. CODE |
|------|------------|-------------|--------|---|------|----------|
| 4/9/15 | #220 Cricket Hollow | Depositions | $ 3,257.55 | | 05-Litigation | Litigation Costs |
| | | | TOTAL $ **3,257.55** | | | |

**Don't forget to attach receipts!**

/s/ Wendy Cromwell      4/13/2015

**Requested By: Signature**      Date

**Approved By: Signature**      Date 4/13/15

JB approved

EXHIBIT D PAGE 021

# VAN WYNGARDEN & ABRAHAMSON, INC.
## CERTIFIED SHORTHAND REPORTERS
### 2307 FALLS AVE., SUITE 3
### WATERLOO, IOWA 50701
#### TEL. (319) 236-3661    FAX (319) 236-3690

**FEDERAL TAX ID:  42-1227925**

Animal Legal Defense Fund
170 East Cotati Avenue

Cotati               CA  94931

Attorney Jeffery Pierce & Jessica Blome

*Kuehl, et al vs. Sellner, et al*
*Case No. C14-2034-LRR*

| Invoice No. | 22146 |
|---|---|
| Invoice Date | 4/09/2015 |
| Reporter's Name | |
| VICKI | NEWGARD |
| ID# | 1235 |

| Date | Description | Amount |
|---|---|---|
| 4/09/2015 | For depositions scheduled on | |
| | March 18, 2015, in Elkader, Iowa, | |
| | and there were no depositions held. | |
| | Travel time | $90.00 |
| | Mileage | $72.00 |
| | | |
| | Deposition of John H. Pries, DVM, | |
| | taken on March 19, 2015. | |
| | Reporting fee | $168.00 |
| | Transcript fee for original and one | $734.70 |
| |    copy to be sent to the witness | |
| | Travel time | $90.00 |
| | Mileage | $72.00 |
| | Copy of color exhibits | $12.80 |
| | Postage to Attorney | $13.10 |
| | Postage to Pries | $20.10 |
| | | |
| | Depositions of Pam Sellner and Tom | |
| | Sellner, taken on March 20, 2015. | |
| | Reporting fee | $294.00 |
| | Transcript fee for original and | $1,562.40 |
| |    copy to be sent to the witnesses | |
| | Travel time | $60.00 |
| | Mileage | $45.00 |
| | Copy of color exhibits | $0.80 |
| | Postage to the Sellners | $22.65 |

| | | |
|---|---|---|
| **Sub Total** | | 3,257.55 |
| **Paid** | | 0.00 |
| **Balance Due** | | 3,257.55 |

PLEASE RETURN ONE COPY WITH REMITTANCE - THANK YOU

# VAN WYNGARDEN & ABRAHAMSON, INC.
## CERTIFIED SHORTHAND REPORTERS
### 2307 FALLS AVE., SUITE 3
### WATERLOO, IOWA 50701
#### TEL. (319) 236-3661    FAX (319) 236-3690

### FEDERAL TAX ID:  42-1227925

Animal Legal Defense Fund
170 East Cotati Avenue

Cotati          CA  94931

Attorney Jeffery Pierce & Jessica Blome

| | |
|---|---|
| Invoice No. | **22146** |
| Invoice Date | **4/09/2015** |
| **Reporter's Name** | |
| VICKI | NEWGARD |
| ID#  *1235* | |

*Kuehl, et al vs. Sellner, et al*
*Case No. C14-2034-LRR*

| Date | Description | Amount |
|---|---|---|
| 4/09/2015 | For depositions scheduled on | |
| | March 18, 2015, in Elkader, Iowa, | |
| | and there were no depositions held. | |
| | Travel time | $90.00 |
| | Mileage | $72.00 |
| | | |
| | Deposition of John H. Pries, DVM, | |
| | taken on March 19, 2015. | |
| | Reporting fee | $168.00 |
| | Transcript fee for original and one | $734.70 |
| | copy to be sent to the witness | |
| | Travel time | $90.00 |
| | Mileage | $72.00 |
| | Copy of color exhibits | $12.80 |
| | Postage to Attorney | $13.10 |
| | Postage to Pries | $20.10 |
| | | |
| | Depositions of Pam Sellner and Tom | |
| | Sellner, taken on March 20, 2015. | |
| | Reporting fee | $294.00 |
| | Transcript fee for original and | $1,562.40 |
| | copy to be sent to the witnesses | |
| | Travel time | $60.00 |
| | Mileage | $45.00 |
| | Copy of color exhibits | $0.80 |
| | Postage to the Sellners | $22.65 |

| | |
|---|---|
| **Sub Total** | 3,257.55 |
| **Paid** | 0.00 |
| **Balance Due** | 3,257.55 |

PLEASE RETURN ONE COPY WITH REMITTANCE - THANK YOU

EXHIBIT D PAGE 023



**ALDF Standard Payment Request Form**

Date: 5/13/15

Pay to: Sweeney Court Reporting

505 5th Ave Suite 320 Insurance Bldg Exchange
Des Moines, IA 50309

Carter Dillard (J Blome)

| DATE | CASE NAME | DESCRIPTION | | | |
|------|-----------|-------------|---|---|---|
| 5/13/15 | #220 Cricket Hollow | Deposition | $770.85 | 05-Litigation | Investigations |
| | | | $770.85 | | |

**Don't forget to attach receipts!**

/s/ Wendy Cromwell     5/13/2014

**Requested By: Signature**     Date

5/18/14

**Approved By: Signature**     Date

# SWEENEY COURT REPORTING SERVICES
## Certified Shorthand Reporters
### 505 5ᴛʜ Ave, Suite 320 Insurance Exchange Bldg.
### Des Moines, Iowa 50309
### Phone (515)244-6373 Fax (515)288-1638
### www.Sweeneyreport.com

BLOME, JESSICA
ATTORNEY AT LAW
170 EAST COTATI AVENUE
COTATI, IA 94931

**INVOICE NO. :**  1022662
**INVOICE DATE:**  5/11/2015

**REPORTER:**
Roxann Zuniga

**ID#**  48-0925767

TRACY K. KUEHL V.
PAMELA SELLNER
C14-2035-LRR

| Date | Description | Amount |
|------|-------------|--------|
| 4/30/2015 | DEPOSITION OF GARY PUSILLO | |
| | 115 telephonic pages | 537.05 |
| | 3.5 hrs | 227.50 |
| | POSTAGE | 6.30 |
| | Sub Total | 770.85 |
| | Paid | 0.00 |
| | Balance Due | 770.85 |

**Please include a copy of this invoice with payment or invoice number on your check.**
**Now accepting Visa, MasterCard, and Discover. Please call (515) 244-6373**
**Tax ID 42-1414704**



# Invoice Approval Form

**Animal Legal Defense Fund**

Vendor: | Kay Carr
11/3/2015

Date of Invoice: | 11/3/2015

Invoice Number: | KC15-261JB

ALDF Project Manager Name: | Jblome

OFFICE USE ONLY

| DATE | PROJECT OR CASE NAME | DESCRIPTION | AMOUNT | DEPT | EX. CODE |
|------|----------------------|-------------|--------|------|----------|
| 11/3/15 | #220 | Court Transcripts | 3,533.20 | 05-Litigation | Litigation Costs |
| | | | | | |
| | | | | | |

TOTAL $ 3,533.20

## Approved via email attached

**Project Manager's Signature**     Date

**Supervisor's Approval Signature**     Date   11/9/15

*Please attached this form to the top of the invoice and submit both to Finance.*

| Handling | (Please Check one) |
|----------|--------------------|

_____ Please mail to address listed above (no other attachments are needed)

_____ Please mail to address above with attachment indicated on the line below

Please return to:

# KAY C. CARR, CSR, RPR

2312 26th Street Drive SE
Cedar Rapids, IA 52403
(319) 362-1543

# Invoice

Number:  **KC15-261JB**

Date:  **November 03, 2015**

**Ship To:**

:a Blome
. Legal Defense Fund
  Cotati Avenue
., CA 94931

Tracey K. Kuehl, et al. vs. Pamela
Sellner, et al.
No. CV 14-2034

| PO Number |
|-----------|
|           |

| n | Amount |
|---|--------|
| pts of the bench trial, taken in the above-entitled October 5-8, 2015, in Cedar Rapids, Iowa, before the Stuart Scoles, and filed with the Clerk of Court. | |
| pts (Orig) 968 pages @ $3.65 | 3,533.20 |

EXHIBIT D PAGE 027

| Total | $3,533.20 |

## Wendy Cromwell

| | |
|---|---|
| **From:** | Jessica Blome |
| **Sent:** | Wednesday, November 04, 2015 5:41 AM |
| **To:** | Wendy Cromwell; Carter Dillard; Jeff Pierce |
| **Subject:** | Fwd: Kuehl invoice |
| **Attachments:** | Kuehl trial plaintiffs invoice.JPG |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Here's the invoice for the CHZ trial transcript.

Jessica L. Blome
(641) 431-0478

Begin forwarded message:

> **From:** CenturyLink Customer <kaycarr@q.com>
> **Date:** November 3, 2015 at 11:38:41 PM EST
> **To:** <jblome@aldf.org>
> **Subject: Kuehl invoice**
>
> I finally got around to getting the invoice prepared for the trial transcripts. Here it is. If you
> need anything else, please let me know. Thanks, Jessica.
>
> Kay
>
> 

EXHIBIT D PAGE 028



# Invoice Approval Form

Animal Legal
Defense Fund

| | |
|---|---|
| Vendor: | Wertz & Dake |
| Date of Invoice: | 10-1-15 and 11-02-15  (statement only - no invoices included) |
| Invoice Number: | 18311 and 18521 |
| ALDF Project Manager Name: | Jessica Blome |

OFFICE USE ONLY

| DATE | PROJECT OR CASE NAME | DESCRIPTION | AMOUNT | | DEPT | EX. CODE | |
|---|---|---|---|---|---|---|---|
| 11/30/15 | #220 Cricket Hollow | Contract Atty  Lit Costs | 151.10 | | 05-Litigation | Contract Attorneys | 1841 |
| | | | | | | | |
| | | | | | | | |

TOTAL **$    151.10**

Project Manager's Signature                                          11/30/2015
                                                                                            Date

Supervisor's Approval Signature                                    12/3/15
                                                                                            Date

*Please attached this form to the top of the invoice and submit both to Finance.*

| Handling | (Please Check one) |
|---|---|

_____  **Please mail to address listed above (no other attachments are needed)**

_____  **Please mail to address above with attachment indicated on the line below**

_____

_____  **Please return to:**

_____

# Statement

Wertz & Dake, P.C.

1500 Center Street NE
Cedar Rapids, IA 52402

| DATE |
|------|
| 11/24/2015 |

| TO: |
|-----|
| Animal Legal Defense Fund<br>Jessica Blome<br>Cotati, CA  94931 |

| AMOUNT DUE | AMOUNT ENC. |
|------------|-------------|
| $151.10 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 06/30/2015 | Balance forward | | 169.25 |
| 08/31/2015 | PMT #20341. pymt from client | -169.25 | 0.00 |
| 10/01/2015 | INV #18311. copies | 43.00 | 43.00 |
| 11/02/2015 | INV #18521. 10/11 PACER records | 108.10 | 151.10 |

Please make checks payable to Wertz & Dake, P.C.

| AMOUNT DUE |
|------------|
| $151.10 |



Animal Legal
Defense Fund

# Invoice Approval Form

Vendor: | Wertz & Dake

Date of Invoice: | 1/14/2016

Invoice Number: | 18831

ALDF Project Manager Name: | J Blome

OFFICE USE ONLY

| DATE | PROJECT OR CASE NAME | DESCRIPTION | AMOUNT | | DEPT | EX. CODE |
|------|----------------------|-------------|--------|--|------|----------|
| 2/9/16 | #220 CHZ | Copies | 14.70 | | 05-Litigation | Litigation Costs |
| | | | | | | |

TOTAL  $   14.70

_____ Project Manager's Signature

2/9/16
Date

_____ Supervisor's Approval Signature

2/9/16
Date

*Please attached this form to the top of the invoice and submit both to Finance.*

| Handling | (Please Check one) |
|----------|---------------------|

_____ Please mail to address listed above (no other attachments are needed)

_____ Please mail to address above with attachment indicated on the line below

_____ Please return to:

_____ Special handling please note below

Lisa: Double check that-
this has it already
been paid, since this is
a statement —
No invoice

# Statement

Wertz & Dake, P.C.
1500 Center Street NE
Cedar Rapids, IA 52402

| DATE |
| --- |
| 1/14/2016 |

**TO:**

Animal Legal Defense Fund
Jessica Blome
Cotati, CA  94931

| | AMOUNT DUE | AMOUNT ENC. |
| --- | --- | --- |
| | $14.70 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
| --- | --- | --- | --- |
| 09/30/2015 | Balance forward | | 0.00 |
| 10/01/2015 | INV #18311. copies | 43.00 | 43.00 |
| 11/02/2015 | INV #18521. 10/11 PACER records | 108.10 | 151.10 |
| 12/15/2015 | PMT #20771. pymt from client | -151.10 | 0.00 |
| 01/04/2016 | INV #18831. copies | 14.70 | 14.70 |

Please make checks payable to Wertz & Dake, P.C.

| AMOUNT DUE |
| --- |
| $14.70 |



Animal Legal Defense Fund

ALDF Standard Payment Request Form

Date: 4/29/15

Pay to: Dr. Gary Pusillo

Mailing Address: 2017 203th Street
Marshalltown IA 50158

Manager Name: Carter Dillard

OFFICE USE ONLY:

| DATE | PROJECT OR CASE | DESCRIPTION | AMOUNT | DEPT | EX. CODE |
|------|-----------------|-------------|--------|------|----------|
| 4/29/15 | #220 Cricket Hollow Zoo | Expert fees for Deposition | $ 1,600.00 | 05-Litigation | Consultants/Experts |
| | | | | | |
| | | | | | |
| | | | | | |

TOTAL  $  1,600.00

**Don't forget to attach receipts!**

/s/ Wendy Cromwell
_____
**Requested By: Signature**                          Date

See email
_____
**Approved By: Signature**                          Date



# Invoice Approval Form

**Animal Legal Defense Fund**

Vendor: | Kay C. Carr, SCR, RPR

Date of Invoice: | 9/7/2015

Invoice Number: | KC15-189 JP

ALDF Project Manager Name: | J Pierce or J Blome

OFFICE USE ONLY

| DATE | PROJECT OR CASE NAME | DESCRIPTION | AMOUNT | DEPT | EX. CODE |
|------|---------------------|-------------|--------|------|----------|
| 9/8/15 | #220 Cricket Hollow Zoo | Court Reporter | 175.20 | 05-Litigation | Litigation Costs |
| | | | | | |

TOTAL $ 175.20

Project Manager's Signature          09/08/15
                                     Date

Supervisor's Approval Signature      9/8/15
                                     Date

*Please attached this form to the top of the invoice and submit both to Finance.*

| Handling | (Please Check one) |
|----------|-------------------|

_____ **Please mail to address listed above (no other attachments are needed)**

_____ **Please mail to address above with attachment indicated on the line below**

_____ **Please return to:**



## KAY C. CARR, CSR, RPR

2312 26th Street Drive SE
Cedar Rapids, IA 52403
(319) 362-1543

# Invoice

Number: **KC15-189JP**

Date: **September 07, 2015**

**Bill To:**

Jeffrey Pierce
Animal Legal Defense Fund
170 E. Cotati Avenue
Cotati, CA 94931

**Ship To:**

Tracey K. Kuehl, et al. vs. Pamela
Sellner, et al.
No. CV 14-2034

| PO Number |
| --- |
| |

| Description | Amount |
| --- | --- |
| Transcript of the hearing on motion for summary judgment, taken in the above-entitled case on August 6, 2015, in Cedar Rapids, Iowa, before the Hon. Jon Stuart Scoles, and filed with the Clerk of Court. | |
| Transcript (Orig) 48 pages @ $3.65 | 175.20 |
| **Total** | **$175.20** |

EXHIBIT D PAGE 035



# ALDF Standard Payment Request Form

Date: 4/1/15

Pay to: | Jeanne Strand, SCR, RPR

Mailing Address: | 4308 Golf St. NE
Cedar Rapids, IA 52402

Manager Name: | Carter Dillard

OFFICE USE ONLY:

| DATE | PROJECT OR | DESCRIPTION | AMOUNT | DEPT | EX. CODE |
|------|------------|-------------|--------|------|----------|
| 4/1/15 | 220 Kuehl v Sellner | Depositions - Copies of same | 331.7- | 05-Litigation | Litigation Costs |
| | | Invoice #J6115 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

TOTAL $ -

**Don't forget to attach receipts!**

/s/ Wendy Cromwell

**Requested By: Signature**        Date

**Approved By: Signature**        Date

EXHIBIT D PAGE 036

EXHIBIT D PAGE 037

# Irish Reporting, Inc

Jeanne Strand
4308 Golf St NE
Cedar Rapids, IA 52402

# Invoice

Number: **J-6115**

Date: **April 01, 2015**

**Bill To:**

Jessica Blome
Animal Legal Defense Fund
170 East Cotati Avenue
Cotati, CA 94931

**Ship To:**

Kuehl, et al. v Sellner, et al.
No. C14-2034-LRR
US District/Northern District of Iowa

| Date | Description | Pages | Price | Amount |
|---|---|---|---|---|
| 03-18-15 | Nancy Harvey, Kristine Bell, Lisa Kuehl & Tracey Kuehl | | | |
| 03-19-15 | John Braumann | | | |
| | Copy of Transcripts | 197.00 | 1.65 | 325.05 |
| | Postage | | | 6.65 |
| | | | **Total** | **$331.70** |

PLEASE MAKE PAYABLE TO:
Jeanne Strand, CSR, RPR
4308 Golf St NE
Cedar Rapids, IA 52402
Tax ID: 478943996

**Blue River Law, P.C.**
**Attorney Elisabeth Holmes**
**Client:  ALDF / Cricket Hollow Zoo / MSJ Hearing & Trial**
**July 16, 2015 - December 31, 2015**

**COSTS STATEMENT**

| Date | Description | Amount |
|---|---|---|
| | | |
| | **Travel** | |
| 7/31/15 | MSJ Hearing Flight | $261.60 |
| 8/31/15 | Trial Flight | $478.20 |
| 10/3/15 | Taxi to airport | $23.80 |
| 10/5/15 | Parking for court | $5.75 |
| | | |
| | **Food** | |
| 8/5/15 | MSJ Hearing | $17.90 |
| 8/6/15 | MSJ Hearing | $26.11 |
| 10/4/15 | Trial (in transit & in Iowa) | $83.47 |
| | | |
| | **Rental Car** | |
| 10/3/15 | Trial | $62.97 |
| | | |
| | **Miscellaneous** | |
| 9/24/15 | Trial supplies | $114.54 |
| 10/4/15 | Photocopies for trial (in Oregon & in Iowa) | $83.95 |
| | | |
| | **Total Costs** | **$1,158.29** |

EXHIBIT D PAGE 039

**Animal Legal Defense Fund**
**Transaction Detail By Account**
All Transactions

| | Type | Date | Num | Source Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Operating Expenses** | | | | | | | |
| **Meals** | | | | | | | |
| | Credit Card Charge | 03/17/2015 | JP | Restrant Kelly's | JP | 10.57 | 10.57 |
| | Credit Card Charge | 03/18/2015 | JB-no rcpt | Atlas World Grill | JB - dinner with J. Pierce | 24.00 | 34.57 |
| | Credit Card Charge | 03/18/2015 | JP | Sports Bar | JP | 24.84 | 59.41 |
| | Credit Card Charge | 03/18/2015 | JP | Atlas World Grill | JP | 33.65 | 93.06 |
| | Credit Card Charge | 03/19/2015 | JB | New Pioneer Cooperative | JB - lunch w/J. Pierce | 52.42 | 145.48 |
| | Credit Card Charge | 03/20/2015 | JB | Sanctuary Pub | JB - dinner w/J. Pierce | 47.97 | 193.45 |
| | Credit Card Charge | 03/20/2015 | JP | New Pioneer Cooperative | JP | 24.57 | 218.02 |
| | Credit Card Charge | 03/23/2015 | JB | Casey's General Store | JB - breakfast w/J. Pierce | 3.76 | 221.78 |
| | Credit Card Charge | 03/23/2015 | JB | Cool Basil | JB - Dinner w/J. Pierce | 32.46 | 254.24 |
| | Credit Card Charge | 03/23/2015 | JB | New Pioneer Cooperative | JB - lunch w/J. Pierce | 25.17 | 279.41 |
| | Credit Card Charge | 03/23/2015 | JP | Steves Snappin Dogs Denver | JP | 15.00 | 294.41 |
| | Credit Card Charge | 03/23/2015 | JP | Fireside Pub | JP | 20.01 | 314.42 |
| | Credit Card Charge | 03/23/2015 | JP | Friedrichs Coffee | JP | 4.23 | 318.65 |
| | Credit Card Charge | 03/23/2015 | JP | Caribou Coffee | JP | 14.37 | 333.02 |
| | Credit Card Charge | 03/24/2015 | JB | Bandit Burrito | JB - lunch | 8.79 | 341.81 |
| | Credit Card Charge | 03/25/2015 | JB | Steves Snappin Dogs Denver | JB - lunch | 17.80 | 359.61 |
| | Credit Card Charge | 10/06/2015 | JB | The Airliner Bar | JB - Cricket Hollow Zoo Dinner | 53.82 | 413.43 |
| Total Meals | | | | | | 413.43 | 413.43 |
| Total Operating Expenses | | | | | | 413.43 | 413.43 |
| **TOTAL** | | | | | | **413.43** | **413.43** |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 90 of 146
EXHIBIT D PAGE 040

**Animal Legal Defense Fund**
**Transaction Detail By Account**
All Transactions

| | Type | Date | Num | Source Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Operating Expenses** | | | | | | | |
| **Travel/Transport** | | | | | | | |
| | Credit Card Charge | 02/20/2015 | JB | United Airlines | JB - to Iowa | 375.20 | 375.20 |
| | Credit Card Charge | 02/20/2015 | JB | United Airlines | JB - Jeff Pierce ticket to Iowa | 375.20 | 750.40 |
| | Credit Card Charge | 03/18/2015 | JB-no rcpt | United Airlines | JB - baggage fee | 25.00 | 775.40 |
| | Credit Card Charge | 03/23/2015 | JB | Hawkeye Convenience | JB - gas for rental car | 23.26 | 798.66 |
| | Credit Card Charge | 03/23/2015 | JB-no rcpt | Kum & Go | JB - gas for rental car | 23.78 | 822.44 |
| | Credit Card Charge | 03/23/2015 | JP | SMF Parking | JP | 58.00 | 880.44 |
| | Credit Card Charge | 03/24/2015 | JB-no rcpt | United Airlines | JB - baggage fee | 25.00 | 905.44 |
| | Credit Card Charge | 03/24/2015 | JB | Hertz Rent A Car | JB - for depositions all across Iowa | 328.18 | 1,233.62 |
| | Credit Card Charge | 03/24/2015 | JB | QT | JB - gas for rental car | 10.50 | 1,244.12 |
| | Credit Card Charge | 08/28/2015 | JB-no rcpt | United Airlines | JB - To Iowa Cricket Hollow Zoo trial | 381.20 | 1,625.32 |
| | Credit Card Charge | 10/03/2015 | JB | United Airlines | JB - bag fee Cricket Hollow Zoo trial | 60.00 | 1,685.32 |
| | Credit Card Charge | 10/10/2015 | JB-no rcpt | National Car Rental | JB - Cricket Hollow Zoo | 269.64 | 1,954.96 |
| | Credit Card Charge | 10/10/2015 | JB | Casey's General Store | JB - gas Cricket Hollow Zoo | 18.43 | 1,973.39 |
| | Credit Card Charge | 10/12/2015 | JB | United Airlines | JB - check bag fee Cricket Hollow Zoo | 25.00 | 1,998.39 |
| Total Travel/Transport | | | | | | 1,998.39 | 1,998.39 |
| Total Operating Expenses | | | | | | 1,998.39 | 1,998.39 |
| **TOTAL** | | | | | | **1,998.39** | **1,998.39** |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 91 of 146
EXHIBIT D PAGE 041

Tracey Kuehl et al. v. Pamela Sellner et al.
6:14-cv02034-JSS
U.S. District Court N.D. Iowa (Eastern Waterloo)

**<u>Plaintiffs' Experts' Travel Costs</u>**

<u>Peter Klopfer, Ph.D.</u>

| | | |
|---|---|---|
| Airfare | $1,715.68 | |
| Parking | $45.00 | |
| Transportation | <u>$12.10</u> | |
| | | $1,772.78 |

<u>Jennifer Conrad, DVM</u>

| | | |
|---|---|---|
| Airfare | $924.20 | |
| Hotel | $147.00 | |
| Taxi | <u>$30.00</u> | |
| | | $1,101.20 |

<u>David Allen</u>

| | | |
|---|---|---|
| Gas | $29.06 | |
| Meals | <u>$32.53</u> | |
| | | Pro bono |

**TOTAL EXPERT COSTS**          **$2,873.98**

EXHIBIT D PAGE 042

# Lisa McCortney

| | |
|---|---|
| **From:** | Jeff Pierce |
| **Sent:** | Thursday, October 01, 2015 10:38 AM |
| **To:** | Lisa McCortney |
| **Cc:** | Wendy Cromwell; Carter Dillard |
| **Subject:** | FW: expenses et al |

Thank you Lisa! Can we issue a check just for the itemized expenses below, and we'll cover the other (Iowa cab fare and meals) after we receive receipts on those?

I have his invoice for the airfare, and will forward as soon as I receive a second invoice for the change in flights (incurred because of defense counsel recalcitrance).

**From:** Peter Klopfer, Ph.D. [mailto:phk@duke.edu]
**Sent:** Thursday, October 01, 2015 10:01 AM
**To:** Jeff Pierce
**Subject:** expenses et al

here is a account of my expected expenses, in case you are able to have a check for me when we meet. the outrageously high airfare is is the result of my having locked into a low fare initially, which was then overridden when i had to make a change in schedule:

Airfare, $1190.82 + $200. change fee= $1390.82   #1715.68 (see attached receipt)
home to RDU transport, 21 miles x2 @ $0.55= $12.10
parking, 3 days @ $15 = $45
Cedar Rapids cab --- ?? you will know what this will be
meals ???

Total = #1772.78 — Approval email attached

EXHIBIT D PAGE 043



Animal Legal
Defense Fund

# Invoice Approval Form

Vendor: Jennifer Conrad; PQB 445, Santa Monica CA 90406-0445

Date of Invoice: 12/10/2015

Invoice Number: NA - Reimbursement

ALDF Project Manager Name: J Blome/J Pierce

OFFICE USE ONLY

| DATE | PROJECT OR CASE NAME | DESCRIPTION | AMOUNT | DEPT | EX. CODE |
|---|---|---|---|---|---|
| 12/21/15 | #220 CHZ | Travel for Expert | 30.00 | 05-Litigation | sultants/Experts |
| | | | 147.00 | | |
| | | | 924.20 | | |
| | | TOTAL $ | 1,101.20 | | |

Project Manager's Signature     Date 12/21/15

Supervisor's Approval Signature     Date 12/21/15

*Please attached this form to the top of the invoice and submit both to Finance.*

| Handling | (Please Check one) |
|---|---|

✓ Please mail to address listed above (no other attachments are needed)

___ Please mail to address above with attachment indicated on the line below

___ Please return to:

___ Special handling please note below

EXHIBIT D PAGE 045

| | |
|---|---|
| **From:** | Jeff Pierce |
| **Sent:** | Monday, December 21, 2015 11:54 AM |
| **To:** | Wendy Cromwell |
| **Subject:** | FW: Costs to me +$30 cash for taxi |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Hi Wendy, did I forward this to you already? I think maybe not. We need to have Jennifer Conrad's expenses for CHZ reimbursed, to the address and in the amounts below.

-----Original Message-----
From: Jennifer Conrad, DVM [mailto:JenConrad@aol.com]
Sent: Thursday, December 10, 2015 2:11 PM
To: Jeff Pierce
Subject: Re: Costs to me +$30 cash for taxi

Jennifer Conrad DVM
PO Box 445
Santa Monica 90406-0445

$30 taxi
$147 hotel room
$924.20 flight


>> -----Original Message-----
>> From: Jennifer Conrad, DVM [mailto:JenConrad@aol.com]
>> Sent: Thursday, December 10, 2015 12:46 PM
>> To: Jeff Pierce
>> Subject: Costs to me +$30 cash for taxi
>>
>> Hi Jeff,
>> Just wanted to get you this before the end of the year. I hope you're well.
>> Jenny
>>
>> 04 OCT 15 - SUNDAY
>> UNITED 1567 UNITED ECON EQUIP-738
>> LV: LOS ANGELES 348P NONSTOP MILES- 848 CONFIRMED
>> AR: DENVER 710P ELAPSED TIME- 2:22
>> MEAL AT COST SEAT-23F
>> UA -EBYT8J
>>
>> UNITED 3696 UNITED ECON EQUIP-CR7
>> LV: DENVER 754P NONSTOP MILES- 704 CONFIRMED

>> AR: CEDRAP/IOWACY 1047P ELAPSED TIME- 1:53 OPERATED BY-GOJET AIRLINES
DBA SEAT-12B UA -EBYT8J
>>
>> DOUBLETREE HOTELS 01 NT/S - OUT 05OCT CONFIRMED DBLTREE CEDAR RAPID 1
ROOM/S GUARANTEE-CREDIT CARD
>> 350 FIRST AVENUE NE RATE- 147.00 GUARANTEED CEDAR RAPIDS IA 52401 PHONE-
1-319-731-4444
>> FAX-1-319-731-4455
>> NAME-CONRAD JENNIFER
>> CORP ID-0001635000
>> CONFIRMATION-83454363
>>
>> 05 OCT 15 - MONDAY
>> UNITED 6355 UNITED ECON EQUIP-CR7
>> LV: CEDRAP/IOWACY 819P NONSTOP MILES- 704 CONFIRMED
>> AR: DENVER 925P ELAPSED TIME- 2:06
>> OPERATED BY-SKYWEST DBA UNITED
>> SEAT-11A
>> UA -EBYT8J
>>
>>
>> 05 OCT 15 - MONDAY
>> UNITED 1888 UNITED ECON EQUIP-739
>> LV: DENVER 1018P NONSTOP MILES- 848 CONFIRMED
>> AR: LOS ANGELES 1144P ELAPSED TIME- 2:26 MEAL AT COST SEAT-35D UA -EBYT8J
>>
>> TOUR LOS ANGELES
>> COMPLETELY UNUSED TICKET MAY HAVE NO VALUE SERVICE CHARGES FOR
CHANGES MAY APPLY
>>
>> E TICKET NUMBER 016/7648 796 307
>>
>> AIR TRANSPORTATION 789.77 TAX 104.43 TTL 894.20 SERVICE FEE 30.00 SUB TOTAL
924.20 CREDIT CARD PAYMENT 924.20 - AMOUNT DUE 0.00
>>
>>
>> Sent from my iPhone,
>> which has a mind of its own....
> <Post-Trial Brief_final.pdf>
> <Defendant's Post-Trial Brief.pdf>

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

**EXHIBIT 2**

**DECLARATION OF ELISABETH HOLMES**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

_____

TRACEY K. KUEHL, et al.     )     Case No. C14-02034-JSS
                            )
          Plaintiffs,     )     **DECLARATION OF**
                            )     **ELISABETH A. HOLMES**
                            )     **IN SUPPORT OF**
v.                        )     **PLAINTIFFS' MOTION FOR AN**
                            )     **AWARD OF ATTORNEYS FEES**
PAMELA SELLNER, et al.,     )     **AND COSTS**
                            )
          Defendants     )     **Judge:  Hon. Jon Stuart Scoles**
_____ )

I, Elisabeth A. Holmes, hereby declare:

1.     I am an attorney with Blue River Law, P.C., a private public interest law firm based in Eugene, Oregon, and I make this declaration in support of Plaintiffs' Motion for an Award of Attorneys Fees and Costs, filed herewith.  I have served as co-counsel to Plaintiffs Tracey Kuehl et al. in the above-captioned case from May 5, 2015 to the present.

## QUALIFICATIONS AND RATES REQUESTED

2.     I graduated from Boston University School of Law in May 2001.  I was admitted to the Massachusetts Bar on June 18, 2002.  I served as a law clerk with the Massachusetts Trial Court, Probate and Family Court Department from 2002 to 2003.  From 2003 to 2010, I worked predominantly on civil litigation matters in private practice, and from 2008-2010 my practice focused on litigation in complex cases with private assets valued between $10M and $250M.  In 2010, my billable rate in Boston, Massachusetts was $305 per hour.  I was selected as a "Rising Star" in the Boston legal community three times.

3.     Seeking greater challenges in my legal career, in 2010-2011, I attended the
       University of Oregon School of Law's LLM Program in Environmental Law.
       During the LLM Program I interned with the Law Offices of Charlie M.
       Tebbutt, P.C., and the Vice Chair of the United Nations' Economic
       Commission for Europe, Committee on the Aarhus Convention, Svitlana
       Kravchenko.  I graduated from the LLM Program in 2011.

4.     From 2011 to 2013, I worked as a Staff Attorney for the Center for Food
       Safety, a national nonprofit organization.  I worked primarily on litigation and
       regulatory matters involving large-scale animal operations, addressing public
       health, animal welfare, and environmental concerns.  In 2013, I became "Of
       Counsel" to the Center for Food Safety.

5.     I am CFS's primary attorney on *CARE and CFS v. Cow Palace et al.*, No. 13-
       cv-3016-TOR (E.D. Wash.) (Resource Conservation and Recovery Act action
       successfully obtaining a ruling that excess manure is a solid waste
       contributing to an imminent and substantial endangerment to human health
       and the environment).  In the *Cow Palace* case, under RCRA's fee-shifting
       provisions, Judge Rice awarded my fees in the lodestar amount of $275 per
       hour and reduced my requested hours by approximately 1%.  *See Cow Palace
       Docket*, ECF No. 453 at 24, 26-27, 45 (Jan. 12, 2016) (no Westlaw cite
       available).

6.     In 2013, I opened Blue River Law, P.C., based in Eugene, Oregon.  I am a
       sole practitioner and I do not have associates, paralegals, or support staff.
       Blue River Law works predominantly on public interest litigation matters.
       My firm's clients are predominantly individuals, communities, and small
       nonprofit organizations who have been unable to obtain legal representation
       through other channels, and who generally lack the financial means to pay for

1    attorneys to assist them in asserting their rights.  My caseload focuses

2    primarily on environmental pollution, public health, animal welfare, and right-

3    to-know, and freedom of information / public records matters.  Most of these

4    laws have fee-shifting provisions, and my firm depends heavily on fee awards

5    from successful lawsuits to continue this public interest work.  Without fee-

6    shifting awards, these important interests' rights would go unrepresented.

7    7.    Since 2011, I have worked exclusively on matters involving environmental,

8    public health, animal welfare, administrative, and tort laws in federal and state

9    courts.  In particular, since 2011 my work has focused heavily on the impacts

10    of concentrated animal feeding operations.  *See, e.g., Bernadette Blackwood et*

11    *al v. Mary De Vries et al.,* No. 5:14-cv-00396-JGB (C.D. Cal. 2014); and *Cow*

12    *Palace et al.* supra.  Prior matters I was counsel on include *Ctr. for Food*

13    *Safety v. Lakey,* Civ. No. 03-13-00094 (Tex. App. 2014) (mandamus action

14    against Texas for public health threats caused by lack of CAFO enforcement);

15    *Blackwood et al. v. N&M Dairy,* Civ. No. 14-00395 (C.D. Cal. 2014) (citizen

16    suit against large dairy for RCRA violations); *Citizen Petition to Prohibit or*

17    *Enjoin the Use of Antibiotics in the Production of Distillers Grains Sold as*

18    *Animal Feed for Food Producing Animals* (March 2013) (FDA Docket No.

19    FDA-2013-P-0351); *Citizen Petition Seeking Agency Review of Codex*

20    *Standards on Ractopamine* (December 2012) (FDA Docket No. 2012-P-

21    1252).

22    8.    Plaintiffs in this matter retained my firm in May 2015, after the close of

23    discovery, primarily to assist in preparing the case for summary judgment due

24    in early June 2015, and trial in October 2015.  I was admitted *pro hac vice* in

25    the Cricket Hollow Zoo matter.  ECF No. 43.

1     9.     Due to the very short timeframe between my being retained, summary

2               judgment, and trial in this case, and the intensive nature of these parts of civil

3               litigation, I had to give up the opportunity to work on other matters in order to

4               represent the Plaintiffs in this case.

5     10.     I have reviewed caselaw for the Northern District of Iowa and the Eighth

6               Circuit, and consulted with attorneys practicing in federal court in Iowa, to

7               estimate a reasonable hourly rates for attorneys of my skill and experience.  I

8               am requesting that I be compensated at the rate of $275 per hour for my work

9               in this matter.

10                         **SUMMARY OF HOURS**

11    11.     I have reviewed my records to determine the number of hours spent on these

12               cases.

13    12.     As is my practice in the ordinary course of business, during these case I

14               recorded all of my time contemporaneously as I worked on specific tasks.

15               When performing tasks away from my computer, I record my time

16               contemporaneously on paper and transferred it to my computer the next time I

17               accessed a computer.  I recorded my time in tenths of each hour.  For smaller

18               increments of time, I round down to the lesser tenth of an hour.  To avoid

19               block billing, I tracked my time by recording each task separately.  I have also

20               coded my enclosed timesheet to reflect the Local Rule 54.1 categories.

21    13.     I have billed a total of 335 hours in this case from May 2015 through February

22               11, 2016.  I have voluntarily reduced or omitted, in my billing discretion, 55

23               hours of time, or 16% of my time billed, from my request for attorneys fees.

24               My present application is for 280 hours.  Based on 280 hours and an hourly

25               rate of $275 per hour, $77,000 is the amount I have billed for work on this

1    case. A detailed breakdown of my time spent on these cases is attached hereto

2    as Exhibit A.

3    14.    In this case because of its special demands, I worked extensively to reduce the

4          expense of my attorneys fees. I recognized that if successful, Plaintiffs'

5          counsel's fees and costs would impose a significant financial burden on

6          Defendants and I limited my billing for time that might have been less than

7          fully productive or efficient.

8    15.    My goal in billing was to only bill for amounts that I believed to be fair and

9          reasonable at the time of billing.

10   16.    The time that I reduced or omitted were for certain tasks that had limited

11         overall value to Plaintiffs' case. For example, my initial review of the case,

12         review of deposition transcripts, certain editing functions, filing logistical

13         issues, matters related to preparing exhibits for the summary judgment brief

14         and for trial, travel that did not involve work time, and some post-trial briefing

15         time where I played a small role in the Plaintiffs' litigation team.

16                              **DIRECTION AND ROLE**

17   17.    Ms. Blome was lead counsel for the Plaintiffs throughout this case. I have

18         served as Ms. Blome's co-counsel from May 2015, after the close of

19         discovery, to the present.

20   18.    Plaintiffs engaged me in this case to assist primarily on the summary

21         judgment briefing and trial work. All work I completed in this matter was

22         under consultation with and authorization of Plaintiffs' lead counsel and

23         Plaintiff ALDF Senior Staff Attorney, Jessica Blome. I did not commence

24         any task without her instruction, and she reviewed all of my work in these

25         matters. The work I performed was delegated through regular

communications with Ms. Blome to ensure efficient and effective litigation and to avoid duplication of efforts.

19. I played an active role in Plaintiffs' litigation team. Ms. Blome and I worked together to identify and develop tasks to move the Plaintiffs' case towards a successful resolution, including determining how, when, and whom should perform those tasks. Generally, the nature of my work on this case included the following categories, which is detailed in greater specificity in my attached time records. I have allocated a Rule 54.1 category number to each entry so there is no overlap in how my time is numerically counted.

  a. *Case Evaluation and Review of Discovery*. I joined the Plaintiffs' legal team in May 2015. I immediately reviewed the Court docket and all the discovery materials, including deposition transcripts. I have omitted or reduced my time in this category.

  b. *Rule 54.1 Category 1 "Drafting"* – I took a leading role in preparing all of the Plaintiffs' summary judgment filings. This included making strategy decisions, and primary drafting of the Motion, the Memorandum, Statement of Material Facts, and the Proposed Order. I was closely involved in overseeing Attorney Pierce and his work with the experts as they drafted their Affidavits. I was also involved in overseeing the drafting of standing declarations conducted with Attorney Blome. I outlined and drafted responses to Defendants' Reply, and contested Defendants' statement of facts. As the summary judgment hearing related to the briefing, I included my time in preparing for the hearing and attending the hearing in Category 1. I was already in the Midwest at the time the hearing was schedule for, so I traveled to Iowa for the hearing to assist Attorney Pierce in preparing for oral argument. My time for

1    Category 1 is approximately 167.20 hours, which I voluntarily reduced by

2    32.40 hours for a total requested of 134.80 hours.  I considered my time

3    after the summary judgment hearing "trial preparation", and any work

4    related to drafting trial briefs or motions is included in Category 5.

5        c.  *Rule 54.1 Category 2 "Legal Research"*- I conducted ESA, Animal

6    Welfare Act, procedural, evidentiary research in connection with

7    Plaintiffs' motion for summary judgment, their reply, their motions in

8    limine, and for trial. I shared copies of all the relevant cases, statutes,

9    regulations, and guidances so research would be readily available to the

10   legal team to consult.  As this case was a matter of first impression,

11   extensive legal research was necessary to provide the Court with the

12   framework and scope of the law, and how Plaintiffs' case fit squarely

13   within the language and intent of the ESA.  I incurred approximately 23.90

14   hours of legal research time in this case.

15       d.  *Rule 54.1 Category 3 "Investigation"* – Plaintiffs retained me after the

16   close of discovery; I have no time billed to Category 3.

17       e.  *Rule 54.1 Category 4 " Interviewing"* – I conducted interviews with

18   individual Plaintiffs and with Plaintiffs' expert Jennifer Conrad, DVM, in

19   preparation for their testimony at trial.  In our allocation of trial

20   responsibilities, I was responsible for conducting the direct examination of

21   Dr. Conrad and Plaintiff Tracey Kuehl.  I incurred 11.50 hours of time for

22   Category 4.

23       f.  *Rule 54.1 Category 5 "Trial Preparation"* – I incurred 37.60 hours of

24   time for trial preparation matters, which in my billing discretion I have

25   reduced by 1.90 hours and I am requesting 35.70 of time in Plaintiffs'

26   Motion.  This time included working on Plaintiffs' motions in limine

1     (strategy discussions, research, drafting, editing), Plaintiffs' trial brief

2     (factual culling, strategy, drafting), exhibit preparations (most of my time

3     in this subcatgory has been omitted or reduced), and trial planning

4     logistics (including strategy, how to implement Plaintiffs' legal theory

5     through the evidence at trial, and consolidating and narrowing the facts for

6     presentation to the court).

7     g.   *Rule 54.1 Category 6 "Trial"* – I incurred approximately 94.80 hours for

8     trial, and I have in my billing discretion reduced or omitted that time by

9     20.70 hours, so I am seeking 74.10 hours as part of Plaintiffs' Motion for

10     Attorneys' Fees. This time includes all of my time from October 3, 2016

11     through post-trial briefing. I traveled to and from Iowa, and adjusted my

12     travel time to distinguish between "working" travel time and "non-

13     working" travel time; I omitted the latter from my request for fees. This

14     time includes the four days of trial, and the significant preparations needed

15     before each day's testimony. I conducted the direct examination of

16     Plaintiffs' expert witness Dr. Conrad, Plaintiff Tracey Kuehl, and the

17     cross-examination of Defendants' expert Dr. John Pries. During the week

18     of trial, I also conferred extensively with co-counsel Attorneys Blome and

19     Pierce regarding their examinations, our evidence, and collectively we

20     vetted strategies and approaches. With respect to Plaintiffs' post-trial

21     briefing, I was minimally involved due other commitments of my law

22     firm, and I have adjusted my time in this subcategory accordingly.

23   20.   I reserve the right to supplement or amend my Declaration as it relates to

24     Plaintiffs' Motion for Attorneys' Fees, and any additional time that I incur

25     relating to Plaintiffs' request for attorneys fees and costs, or implementation

26     of the Order and Judgment.

1     21.    I believe that my total hours are conservative given the complexity and
2            novelty of this ground-breaking legal case.

3     22.    I believe Attorney Blome divided work in this case in an efficient manner.
4            Each attorney or law clerk had specific tasks, deadlines, and structure to his or
5            her work.

6     23.    This was a very important legal case for the individual and organizational
7            Plaintiffs to pursue.  Individual Plaintiffs had tried for many years to
8            effectuate some change in the Defendants' practices through advocacy, but it
9            was only through litigation that they were able to achieve any headway.
10           Plaintiffs' counsel litigated this case on a contingent basis, knowing that they
11           would only receive a statutory fees and costs award if the case were
12           successful.

13    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is
14    true and correct.

15
16            Signed this 25th day of February, 2016, in Eugene, Oregon.
17
18
19                         *s/ Elisabeth A. Holmes*
20                         Elisabeth A. Holmes (OSB No. 120254)
21                         Blue River Law, P.C.
22                         P.O. Box 293
23                         Eugene, Oregon 97440
24                         Tel. (541) 870-7722
25                         Email:  eli.blueriverlaw@gmail.com
26
27                         *Counsel for Plaintiffs*
28                         *Admitted Pro Hac Vice*

Exhibit A

**Blue River Law, P.C.**
**Attorney Elisabeth Holmes**
**Clients: Tracey Kuehl et al., and ALDF**
**Matter:  Cricket Hollow Zoo**
**May 1, 2015 - February 11, 2016**

| Date | L.R. 54.1 Code | Description | Billable Time | Courtesy Omission | Hourly Rate Requested | Total Requested |
|---|---|---|---|---|---|---|
| 5/5/15 | 1 | Read and review ("RW") pleadings & Endangered Species Act ("ESA"); callw Jessica Blome ("JB") re: motion for summary judgment ("MSJ") work | 1.50 | (1.50) | $275.00 | $0.00 |
| 5/5/15 | 1 | RW complaint; call w/ JB re MSJ | 1.50 | (1.50) | $275.00 | $0.00 |
| 5/7/15 | 1 | RW Complaint, outline legal standards and RW ESA, regulations for Fish & Wildlife Service ("FWS") and Animal Welfare Act ("AWA"); RW Defendants' Answer for MSJ facts | 3.00 | 0.00 | $275.00 | $825.00 |
| 5/10/15 | 1 | RW Defendants' discovery records; notes on same for MSJ. | 6.00 | 0.00 | $275.00 | $1,650.00 |
| 5/10/15 | 1 | Initial RW of all discovery (Requests for Production, Interrogatories, Requests for Admission, and responses) for MSJ facts | 2.00 | 0.00 | $275.00 | $550.00 |
| 5/11/15 | 1 | RW veterinarian deposition transcript; notes on same for MSJ | 4.00 | 0.00 | $275.00 | $1,100.00 |
| 5/12/15 | 1 | Comm to JB re checking in | 0.20 | (0.20) | $275.00 | $0.00 |
| 5/12/15 | 1 | RW private investigator report, standee photos. | 0.50 | 0.00 | $275.00 | $137.50 |
| 5/13/15 | 1 | RW and note USDA insp. reports for MSJ | 3.00 | 0.00 | $275.00 | $825.00 |
| 5/14/15 | 1 | Continue RW of USDA inspex reports & notes on same for MSJ facts | 3.00 | 0.00 | $275.00 | $825.00 |
| 5/16/15 | 1 | RW Pusillo deposition & notes on same for MSJ | 3.00 | 0.00 | $275.00 | $825.00 |
| 5/18/15 | 1 | RW David Allen draft declaration & discuss same w/ JB & Jeffrey Pierce ("JP") for MSJ | 1.00 | 0.00 | $275.00 | $275.00 |
| 5/19/15 | 1 | RW Jennifer Conrad (veterinarian) declaration and propose organizational reformatting same; comm. to ALDF re same. | 4.00 | 0.00 | $275.00 | $1,100.00 |
| 5/20/15 | 2 | RW experts rules, FRCP 26 & local rules; call w/ JB re same. | 0.50 | 0.00 | $275.00 | $137.50 |

| 5/21/15 | 2 | Emails w/ team re standing; RW initial research; emails w/ JP; call w/ JP re standing declarations & approach. | 0.50 | 0.00 | $275.00 | $137.50 |
|---|---|---|---|---|---|---|
| 5/21/15 | 1 | RW draft lemur expert decl. for MSJ | 0.30 | 0.00 | $275.00 | $82.50 |
| 5/21/15 | 1 | RW photographs for MSJ Appendix | 0.50 | (0.50) | $275.00 | $0.00 |
| 5/21/15 | 1 | RW local rules & judge's requirements for MSJ; outline MSJ, SOMF, Appendix; outline themes to highlight in briefing; draft legal framework section of brief. | 3.50 | 0.00 | $275.00 | $962.50 |
| 5/22/15 | 1 | RW draft lemur expert deposition; comm to JP | 0.30 | 0.00 | $275.00 | $82.50 |
| 5/22/15 | 1 | RW & outline Pam Sellner deposition for MSJ | 7.00 | (3.00) | $275.00 | $1,100.00 |
| 5/23/15 | 1 | RW Tom Sellner deposition for MSJ | 2.50 | (1.50) | $275.00 | $275.00 |
| 5/23/15 | 1 | RW & outline plaintiffs' depositions for MSJ | 4.00 | (2.00) | $275.00 | $550.00 |
| 5/23/15 | 2 | RW of MSJ standard & moving for MSJ on wolf, serval | 0.50 | 0.00 | $275.00 | $137.50 |
| 5/23/15 | 1 | Work on draft expert decls.; RW regulations to identify relevant facts (tiger, lion, serval & lemur). | 1.00 | 0.00 | $275.00 | $275.00 |
| 5/23/15 | 5 | Comm to JB re Defendants' possible motion to dismiss. | 0.20 | (0.20) | $275.00 | $0.00 |
| 5/23/15 | 1 | RW USDA & IDALS Complaints & discovery file & follow-up for MSJ | 2.50 | 0.00 | $275.00 | $687.50 |
| 5/24/15 | 1 | Draft MSJ brief; emails to JB & JP; comm to JB w/ draft brief. | 7.00 | 0.00 | $275.00 | $1,925.00 |
| 5/25/15 | 1 | Review draft brief; comm from JB re "captive" regulations; continue drafting brief. | 2.30 | 0.00 | $275.00 | $632.50 |
| 5/25/15 | 1 | Prepare for ("PF") call w/ JB; call w/ JB re facts, law, strategy for MSJ & trial, briefing, filing logistics. | 1.50 | 0.00 | $275.00 | $412.50 |
| 5/25/15 | 2 | Research parameters and applications of "harass" vs. "harm" | 2.50 | 0.00 | $275.00 | $687.50 |
| 5/25/15 | 2 | Continue researching "harm" and applications for briefing | 1.50 | 0.00 | $275.00 | $412.50 |
| 5/26/15 | 1 | Draft MSJ brief | 1.00 | 0.00 | $275.00 | $275.00 |
| 5/26/15 | 1 | Draft brief ("possess", acts/omissions sections, cage section); outline current status of animals; emails w/ JP re supporting materials | 1.50 | 0.00 | $275.00 | $412.50 |
| 5/26/15 | 1 | Edit Big Cats section of brief; add facts for "harm" for Big Cats. Draft section re financial resources & harassment. | 6.00 | (2.00) | $275.00 | $1,100.00 |
| 5/27/15 | 2 | Call w/ JB & JP re brief; RW Fed. Rules Evidence re authentication | 1.00 | 0.00 | $275.00 | $275.00 |

| 5/27/15 | 2 | RW Woodland Park case. | 1.00 | 0.00 | $275.00 | $275.00 |
|---------|---|------------------------|------|------|---------|---------|
| 5/27/15 | 1 | Draft commerce, general harass, edit cage size sections of brief. Update "harm" legal framework section. | 3.50 | 0.00 | $275.00 | $962.50 |
| 5/27/15 | 2 | Follow-up research to "harm" cases | 1.00 | 0.00 | $275.00 | $275.00 |
| 5/27/15 | 1 | Edit & proof MSJ brief intro & legal framework | 1.20 | 0.00 | $275.00 | $330.00 |
| 5/28/15 | 1 | Draft appendix; emails w/ JB re appendix | 1.00 | (0.50) | $275.00 | $137.50 |
| 5/28/15 | 1 | Edit, revise brief. Consult w/ JB re USDA record, filing logistics. | 4.20 | 0.00 | $275.00 | $1,155.00 |
| 5/28/15 | 1 | Edit draft brief | 1.00 | 0.00 | $275.00 | $275.00 |
| 5/28/15 | 1 | Outline SOMF; RW rules for SOMF re MSJ; draft SOMF. | 1.50 | 0.00 | $275.00 | $412.50 |
| 5/28/15 | 1 | Continue drafting SOMF. | 4.50 | 0.00 | $275.00 | $1,237.50 |
| 5/28/15 | 2 | Research standing cases for brief | 1.50 | 0.00 | $275.00 | $412.50 |
|         | 1 | Draft standing section of brief; RW standing declarations & incorporate into standing section of brief. | 2.00 | 0.00 | $275.00 | $550.00 |
| 5/29/15 | 1 | Edit brief | 2.70 | 0.00 | $275.00 | $742.50 |
| 5/29/15 | 1 | Address excess pages logistics; initial draft of stipulated motion; address finalizing expert decs; address proposed order and purview of all filings for Monday; numerous emails w/ JB and JP; call w/ Wendy (ALDF Paralegal) re Bates stamping appendices | 4.00 | (2.00) | $275.00 | $550.00 |
| 5/29/15 | 1 | Address logistics of appendix; draft appendix, consolidate all exhibits from declarations and brief | 3.00 | (3.00) | $275.00 | $0.00 |
| 5/30/15 | 1 | RW declarations (standee & expert) for Plaintiffs' discovery dox needed for appendix; email re standing (indiv & ALDF) | 2.50 | 0.00 | $275.00 | $687.50 |
| 5/30/15 | 1 | Prepare exhibits for bates stamping; calls w/ JP & Wendy | 2.50 | (2.50) | $275.00 | $0.00 |
| 5/30/15 | 1 | Emails re logistics of exhibits; address exhibit issues | 2.00 | (2.00) | $275.00 | $0.00 |
| 5/31/15 | 1 | Address exhibits, exhibit list. | 2.00 | (2.00) | $275.00 | $0.00 |
| 5/31/15 | 1 | RW draft motion excess pages; emails w/ ALDF law clerk re same; edit draft | 0.50 | (0.50) | $275.00 | $0.00 |
| 5/31/15 | 1 | Near final edits to brief w/ JB and JP comments | 2.00 | 0.00 | $275.00 | $550.00 |
| 5/31/15 | 1 | Call w/ JB & JP re briefing & SOMF; calls w/ Wendy re logistics | 1.00 | 0.00 | $275.00 | $275.00 |
| 5/31/15 | 1 | Final edit of MSJ Brief | 2.50 | 0.00 | $275.00 | $687.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/31/15 | 1 | Continue drafting SOMF based on final MSJ | 4.00 | 0.00 | $275.00 | $1,100.00 |
| 5/31/15 | 1 | Finalize exhibit appendix | 0.20 | (0.20) | $275.00 | $0.00 |
| 5/31/15 | 1 | Edit and finalize SOMF | 2.50 | 0.00 | $275.00 | $687.50 |
| 5/31/15 | 1 | Fact & cite check brief; calls & emails w/ JB re logistics of filings. | 3.50 | 0.00 | $275.00 | $962.50 |
| 6/1/15 | 1 | (All day). Address filings and logistics; fact & cite check brief; edit SOMF; further cite checking; RW counsel affidavit; edit brief & SOMF | 10.70 | (5.00) | $275.00 | $1,567.50 |
| 6/1/15 | 1 | RW and edit SOMF | 1.50 | 0.00 | $275.00 | $412.50 |
| 6/22/15 | 2 | RW D's memo & SOMF & outline points to respond to same; emails w/ JB re legal research & facts to highlight on reply. Emails re D's characterizations of facts. | 1.20 | 0.00 | $275.00 | $330.00 |
| 6/22/15 | 2 | RW MSJ and hearsay rules | 0.30 | 0.00 | $275.00 | $82.50 |
| 6/23/15 | 1 | Call w/ JB re substance & logistics of reply | 0.70 | 0.00 | $275.00 | $192.50 |
| 6/23/15 | 1 | Draft reply to Defendants' SOMF | 3.00 | 0.00 | $275.00 | $825.00 |
| 6/24/15 | 1 | Continue drafting reply to D's SOMF | 1.00 | 0.00 | $275.00 | $275.00 |
| 6/24/15 | 2 | RW legal strategy; call w/ JB; research MSJ requirements and strategy on reply; prepare supp. appx records. | 2.00 | 0.00 | $275.00 | $550.00 |
| 6/24/15 | 2 | RW FREs | 0.30 | 0.00 | $275.00 | $82.50 |
| 6/24/15 | 2 | RW draft motion to strike; research 8th Cir. law on "pleadings" for 12(f) and FREs and caselaw re: striking decs and exhibits on MSJ. Revise motion. | 3.00 | 0.00 | $275.00 | $825.00 |
| 6/25/15 | 1 | RW brief and edit same. | 2.80 | 0.00 | $275.00 | $770.00 |
| 6/26/15 | 1 | RW filings; call w/ co-counsel re preparing for filing Monday | 0.80 | (0.80) | $275.00 | $0.00 |
| 6/26/15 | 1 | Edit Motion to exclude & draft proposed order on Motion to exclude | 0.50 | 0.00 | $275.00 | $137.50 |
| 6/26/15 | 1 | RW clerk summaries of Ds' resistance to P's SOMF; outline and highlight main points. Cross-check w/ Ps' SOMF. | 2.10 | 0.00 | $275.00 | $577.50 |
| 6/26/15 | 1 | Finalize edits to motion to exclude | 0.40 | 0.00 | $275.00 | $110.00 |
| 6/26/15 | 1 | Edit and review SOMF reply; cross-reference arguments / supporting facts w/ other pleadings; finalize SOMF and cites & comm to and from ALDF. | 3.00 | 0.00 | $275.00 | $825.00 |

| Date | | Description | | | | |
|------|---|-------------|---|---|---|---|
| 6/26/15 | 1 | Prepare and finalize Supp. Appendix and accompanying exhibits | 1.00 | (1.00) | $275.00 | $0.00 |
| 6/27/15 | 1 | RW & edit Reply brief; add record citations and check same; comm w/ ALDF w/ revised draft. | 1.50 | 0.00 | $275.00 | $412.50 |
| 6/29/15 | 1 | Comm w/ JB; finalize Supp. Appendix & comm w/ ALDF re same | 0.30 | (0.30) | $275.00 | $0.00 |
| 7/13/15 | 1 | Comm w/ JB re status of oral argument request & judge likely to rule on papers. | 0.20 | (0.20) | $275.00 | $0.00 |
| 7/15/15 | 2 | RW Defendants' reply re new evidence; comm w/ JB re same. | 0.30 | 0.00 | $275.00 | $82.50 |
| 7/15/15 | 1 | Emails w/ JB re FOIA materials to support MSJ | 0.10 | 0.00 | $275.00 | $27.50 |
| 7/31/14 | 1 | Notice of MSJ oral argument; call w/ JB re same | 0.20 | (0.20) | $275.00 | $0.00 |
| 8/4/15 | 1 | MSJ oral argument prepartation calls w/ JB and JP | 2.00 | 0.00 | $275.00 | $550.00 |
| 8/6/15 | 1 | MSJ hearing prep and attend MJS hearing; debrief w/ JB and JP | 8.00 | 0.00 | $275.00 | $2,200.00 |
| 8/31/15 | 5 | RW draft joint Pre-trial order; edit same; RW pleadings & filings for draft Pre-trial order | 1.00 | 0.00 | $275.00 | $275.00 |
| 8/31/15 | 5 | RW motion in limine needs | 0.10 | 0.00 | $275.00 | $27.50 |
| 9/1/15 | 5 | RW letter from L. Thorson; RW correspondence from JB re trial exhibits. | 0.10 | 0.00 | $275.00 | $27.50 |
| 9/1/15 | 5 | Emails w/ legal team re certified APHIS records for trial; draft expedited processing request | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/1/15 | 2 | RW research needed on brief; conduct additional research | 1.50 | 0.00 | $275.00 | $412.50 |
| 9/1/15 | 5 | Edit trial brief | 1.50 | 0.00 | $275.00 | $412.50 |
| 9/1/15 | 5 | Outline motion in limine to exclude expert trial testimony; | 0.70 | 0.00 | $275.00 | $192.50 |
| 9/1/15 | 2 | Research caselaw & Fed. R. Evid. 702. | 1.00 | 0.00 | $275.00 | $275.00 |
| 9/2/15 | 2 | Research motion in limine legal framework for 8th Cir / Iowa | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/2/15 | 5 | Call w/ legal team re trial prep | 1.00 | 0.00 | $275.00 | $275.00 |
| 9/2/15 | 2 | Research motion in limine re expert testimony | 1.50 | 0.00 | $275.00 | $412.50 |
| 9/2/15 | 5 | Draft motion in limine re expert testimony | 1.00 | 0.00 | $275.00 | $275.00 |
| 9/2/15 | 2 | RW Fed.R.Civ.P. 41 motion & suggest stipulation re admissibility of lions / servals for other purposes | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/2/15 | 4 | Prepare for call w/ J. Conrad; call w/ her testimony | 1.00 | 0.00 | $275.00 | $275.00 |

| Date | No. | Description | Hours | Adj. | Rate | Amount |
|---|---|---|---|---|---|---|
| 9/2/15 | 5 | RW & edit motion in limine #3 (order of proof) | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/2/15 | 5 | RW & edit motion in limine re USDA records | 0.60 | 0.00 | $275.00 | $165.00 |
| 9/3/15 | 4 | Call w/ Tracey Kuehl ("TK") to prepare for trial testimony | 1.30 | 0.00 | $275.00 | $357.50 |
| 9/3/15 | 5 | Edit trial brief | 2.00 | 0.00 | $275.00 | $550.00 |
| 9/3/15 | 5 | RW attachments to trial brief; call w/ JB re same | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/3/15 | 5 | Draft affidavit for trial brief chalks / summaries for JB | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/3/15 | 5 | RW & edit trial brief; draft factual statement section of brief | 1.50 | 0.00 | $275.00 | $412.50 |
| 9/3/15 | 5 | Continue editing trial brief | 0.60 | 0.00 | $275.00 | $165.00 |
| 9/3/15 | 5 | RW & edit Final Trial Order (proposed) | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/3/15 | 5 | RW trial exhibits; add trial exhibit references to brief | 1.00 | (0.50) | $275.00 | $137.50 |
| 9/4/15 | 5 | Call w/ JP re brief; edit brief sections re hybrids and summary attachments | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/14/15 | 5 | Prepare for call w/ legal team; call w/ team re trial prep; corresp. to witnesses re testimony prep | 1.00 | 0.00 | $275.00 | $275.00 |
| 9/14/15 | 5 | Share exhibit files with trial witnesses for trial testimony prep | 0.20 | (0.20) | $275.00 | $0.00 |
| 9/14/15 | 5 | RW plaintiffs' trial exhibits for judge's binder; emails w/ JB re exhibits | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/16/15 | 5 | Corresp. w/ JB re order of witnesses & communications w/ Larry Thorson | 0.10 | 0.00 | $275.00 | $27.50 |
| 9/17/15 | 4 | Prepare for call w/ TK and initial outline of direct exam; call w/ TK | 2.00 | 0.00 | $275.00 | $550.00 |
| 9/17/15 | 2 | Research & corresp. w/ legal team re aesthetic injury line of questioning | 2.00 | 0.00 | $275.00 | $550.00 |
| 9/23/15 | 4 | Prepare for call w/ TK; call w/ TK; email w/ J. Conrad | 1.50 | 0.00 | $275.00 | $412.50 |
| 9/24/15 | 5 | Emails and calls re exhibit issues & resending to court; RW exhibit binders | 1.00 | (1.00) | $275.00 | $0.00 |
| 9/24/15 | 5 | Emails re direct examination topics re standing | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/25/15 | 5 | RW Defendants' trial subpoenas & discussions w/ co-counsel re same | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/25/15 | 5 | Corresp. re fact-checking Defendants' claims | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/26/15 | 4 | Corresp. w/ clients re testimony dates / times | 0.20 | 0.00 | $275.00 | $55.00 |
| 9/26/15 | 4 | Call w/ J. Conrad re trial testimony | 1.50 | 0.00 | $275.00 | $412.50 |
| 9/26/15 | 5 | RW Motions in Limine | 1.50 | 0.00 | $275.00 | $412.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/28/15 | 5 | RW Fed. R. Evidence, hearsay, public records exceptions | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/28/15 | 5 | Attend telephonic conf w/ Judge re motions in limine | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/29/15 | 5 | Corresp. re: scope of cross examination for Pam Sellner | 0.40 | 0.00 | $275.00 | $110.00 |
| 9/29/15 | 4 | Corresp. w/ clients re trial prep | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/30/15 | 5 | Corresp. Re: scheduling of witness order; changing same in light of court scheduling order | 0.50 | 0.00 | $275.00 | $137.50 |
| 9/30/15 | 5 | RW FOIA records re enforcement proceedings & consider re trial evidence | 0.30 | 0.00 | $275.00 | $82.50 |
| 9/30/15 | 5 | RW MSJ; outline trial prep approach for direct examinations | 6.00 | 0.00 | $275.00 | $1,650.00 |
| 10/1/15 | 5 | Corresp. re direct / cross topics, exhibits re same, evaluate facts for direct exams | 1.00 | 0.00 | $275.00 | $275.00 |
| 10/1/15 | 5 | RW order of proof letter brief | 0.30 | 0.00 | $275.00 | $82.50 |
| 10/1/15 | 4 | Emails re Peter Klopfer expert testimony and focus of same | 0.20 | 0.00 | $275.00 | $55.00 |
| 10/1/15 | 5 | Emails re motions in limine | 0.40 | 0.00 | $275.00 | $110.00 |
| 10/1/15 | 5 | Emails re various substantive issues related to trial prep (wolves, Animal Welfare Act standards, lemurs, diet plans) | 0.50 | 0.00 | $275.00 | $137.50 |
| 10/1/15 | 5 | Motion for reconsideration issues re David Allen's expert testimony | 0.50 | 0.00 | $275.00 | $137.50 |
| 10/1/15 | 5 | Prepare direct examination w/ J. Conrad | 1.50 | 0.00 | $275.00 | $412.50 |
| 10/1/15 | 5 | Prepare checklist of APHIS inspection reports and endangered animals as summary for court | 0.50 | 0.00 | $275.00 | $137.50 |
| 10/1/15 | 4 | Call w/ J. Conrad re trial testimony prep | 1.50 | 0.00 | $275.00 | $412.50 |
| 10/1/15 | 5 | Draft J.Conrad direct examination; consult exhibits and plan for admission of same & anticipate objections | 2.00 | 0.00 | $275.00 | $550.00 |
| 10/2/15 | 5 | Outline TK direct examination; consult exhibits & plan for admission of same & anticipate objections | 1.50 | 0.00 | $275.00 | $412.50 |
| 10/2/15 | 4 | Call w/ TK re trial prep | 1.00 | 0.00 | $275.00 | $275.00 |
| 10/2/15 | 5 | Address standing issues in direct examinations | 0.40 | 0.00 | $275.00 | $110.00 |
| 10/2/15 | 5 | Emails re substantive testimony issues (e.g. veterinary care & regs) | 0.30 | 0.00 | $275.00 | $82.50 |
| 10/2/15 | 5 | Emails re USDA APHIS refusing to produce witness | 0.30 | 0.00 | $275.00 | $82.50 |
| 10/2/15 | 5 | Emails re reconsideration for D. Allen expert testimony | 0.20 | 0.00 | $275.00 | $55.00 |
| 10/2/15 | 5 | Trial prep call | 1.00 | 0.00 | $275.00 | $275.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/3/15 | 5 | Corresp. w/ legal team re inspection & animal death pattern | 0.30 | 0.00 | $275.00 | $82.50 |
| 10/3/15 | 6 | Travel to Iowa (approx 12 hours w/ preparation time en route for Pries cross-exam, and J. Conrad & T. Kuehl exams for approx 9 hours work during travel) | 12.00 | (3.00) | $275.00 | $2,475.00 |
| 10/3/15 | 6 | Draft and edit J. Conrad direct examination outline (in Iowa) | 2.00 | 0.00 | $275.00 | $550.00 |
| 10/3/15 | 6 | Trial prep for J. Conrad & T. Kuehl examinations (in Iowa) | 3.00 | 0.00 | $275.00 | $825.00 |
| 10/4/15 | 6 | Continue trial prep (research Fed. R. Evidence); RW Dr. Priess cross examination outline | 2.00 | 0.00 | $275.00 | $550.00 |
| 10/4/15 | 6 | Outline potential objections to direct exam questions; outline alternate questions; reorganize direct examination outlines | 3.00 | 0.00 | $275.00 | $825.00 |
| 10/4/15 | 6 | RW records re veterinary care for specific care aspects; integrate into Dr. Pries cross-exam outline | 2.00 | 0.00 | $275.00 | $550.00 |
| 10/4/15 | 6 | RW Fed. R. Evid. 2015 redlines to public records exception | 1.00 | 0.00 | $275.00 | $275.00 |
| 10/5/15 | 6 | RW Ds' resistance to reconsideration order | 0.30 | 0.00 | $275.00 | $82.50 |
| 10/5/15 | 6 | Continue trial prep (trip to printer) & RW outlines | 5.00 | (3.50) | $275.00 | $412.50 |
| 10/5/15 | 4 | Conference w/ J. Conrad re trial testimony prep | 1.00 | 0.00 | $275.00 | $275.00 |
| 10/5/15 | 6 | Travel to courthouse w/ legal team; commence Day 1 of trial; debrief with J. Conrad | 5.00 | 0.00 | $275.00 | $1,375.00 |
| 10/5/15 | 6 | Continue preparing TK direct examination | 4.00 | 0.00 | $275.00 | $1,100.00 |
| 10/5/15 | 6 | Continue preparing Dr. Pries cross examination | 1.50 | 0.00 | $275.00 | $412.50 |
| 10/6/15 | 6 | Prepare for TK direct examination | 2.00 | 0.00 | $275.00 | $550.00 |
| 10/6/15 | 6 | Emails from J. Conrad re vaccinations evidence | 0.20 | (0.20) | $275.00 | $0.00 |
| 10/6/15 | 6 | Travel to courthouse w/ legal team; Day 2 of trial & TK direct examination; assist in support of Plaintiffs' case at trial. | 10.00 | 0.00 | $275.00 | $2,750.00 |
| 10/6/15 | 6 | Prepare for Priess cross examination | 4.00 | 0.00 | $275.00 | $1,100.00 |
| 10/7/15 | 6 | Travel to courthouse w/ legal team; commence Day 3 of trial; take Dr. Priess cross examination; assist in support of Plaintiffs' case at trial. | 10.00 | 0.00 | $275.00 | $2,750.00 |
| 10/8/15 | 6 | Travel to courthouse w/ legal team; commence Day 4 of trial | 9.00 | 0.00 | $275.00 | $2,475.00 |
| 10/10/15 | 6 | Travel home to Oregon | 9.00 | (9.00) | $275.00 | $0.00 |
| 10/21/15 | 6 | Trial transcript communications from court reporter | 0.10 | (0.10) | $275.00 | $0.00 |
| 10/30/15 | 6 | Address trial transcript issues | 0.10 | (0.10) | $275.00 | $0.00 |
| 11/6/15 | 6 | Corresp. w/ legal team re trial brief | 0.20 | 0.00 | $275.00 | $55.00 |

| 11/10/15 | 6 | RW standing section of brief; corresp. w/ legal team w/ comments | 2.00 | 0.00 | $275.00 | $550.00 |
|----------|---|---|------|--------|---------|---------|
| 11/12/15 | 6 | Corresp. re trial brief status | 0.20 | (0.20) | $275.00 | $0.00 |
| 11/12/15 | 6 | Cursory RW of trial brief | 2.00 | 0.00 | $275.00 | $550.00 |
| 11/12/15 | 6 | RW post-trial brief | 2.00 | (2.00) | $275.00 | $0.00 |
| 12/4/15 | 6 | RW defendants' post-trial brief; corresp. w/ legal team | 0.60 | 0.00 | $275.00 | $165.00 |
| 12/15/15 | 6 | RW draft brief | 0.60 | (0.60) | $275.00 | $0.00 |
| 12/16/15 | 6 | Edit plaintiffs' reply brief; corresp. w/ legal team. | 1.00 | (1.00) | $275.00 | $0.00 |
| 2/11/16 | 6 | Receive & RW Order and Judgment; call w/ counsel re same | 1.00 | (1.00) | $275.00 | $0.00 |

| **Total Time** | **335.00** |
|---|---|

| **Time Voluntarily Omitted (16%)** | **(55.00)** |
|---|---|

| **Total Attorneys Fees Requested on 280 hours at $275 per hour** | **$77,000.00** |
|---|---|

| L.R. 54.1 Category Totals | Summary |
|---|---|
| 1 | 134.80 hours (after a 32.40 hour voluntary reduction) |
| 2 | 23.90 hours (no voluntary reduction taken) |
| 3 | 0 hours (I initiated work on case after close of discovery) |
| 4 | 11.50 hours (no voluntary reduction taken) |
| 5 | 35.70 hours (after a 1.90 hour voluntary reduction) |
| 6 | 74.10 hours (after a 20.70 hour voluntary reduction) |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 115 of 146

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

**EXHIBIT 3**

**DECLARATION OF JEFFREY PIERCE**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

|  |  |
|---|---|
| TRACEY K. KUEHL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | Case No. C14-02034-JSS |
| PAMELA SELLNER, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF JEFFREY PIERCE IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY FEES AND COSTS

I, Jeffrey Pierce, hereby declare:

1. My name is Jeffrey Pierce. I am licensed to practice law and am in good standing in the State of California, where I practice under Bar Number 293085. I now serve as Legislative Counsel for the national nonprofit Animal Legal Defense Fund (ALDF), headquartered in Cotati, California. During the time that I worked on the above-captioned matter my title was Litigation Fellow, in which capacity I served for more than two years. In the above-captioned case, I served an associate attorney role under the supervision of lead attorney Jessica Blome, ALDF Senior Staff Attorney, for individual Plaintiffs Tracy Kuehl, Lisa Kuehl, John Braumann, Nancy Harvey, and Kristine Bell and organizational Plaintiff ALDF, in this case pursuant to the Endangered Species Act (ESA). I submit this declaration in support of ALDF's application for an award of attorneys' fees and costs pursuant to the ESA, 16 U.S.C. § 1540(g)(4) and Federal Rule of Civil Procedure 54(d)(1)—(2).

-1-

**QUALIFICATIONS AND RATES REQUESTED**

2.    I received my Juris Doctor in 2013 from Stanford Law School. I joined ALDF's litigation team immediately out of law school, where I have worked for the past two and a half years. In addition to my litigation, regulatory, and legislative work at ALDF, I likewise deliver public presentations on various aspects of my practice and on various issues and efforts related to my organization, including issues arising under the Endangered Species Act, before lay person and law student audiences.

3.    In addition to the above-caption matter, I am attorney of record in two other lawsuits pursuant to the Endangered Species Act on behalf of endangered animals maintained in captivity. These include *Graham et al. v. San Antonio Zoological Soc'y*, Civ. No. 5:15-CV-1054-XR (W.D. Tex.), for which I am lead attorney, and *People for the Ethical Treatment of Animals, Inc. et al. v. Miami Seaquarium et al.*, Civ. No. 15-cv-22692-Ungaro/Otazo-Reyes (S.D. Fla.), in which I have aided in motions practice and discovery. I am attorney of record on several federal environmental and Freedom of Information Act cases, including *American Wild Horse Preservation Campaign et al. v. Vilsack et al.*, Civ. No. 1:14-cv-485 (ABJ) (D.D.C.) (Administrative Procedure Act litigation premised on violations of the National Environmental Policy Act, Wild Free-Roaming Horse and Burro Act, and National Forest Management Act) and *Animal Legal Defense Fund et al. v. Food and Drug Admin.*, Civ. No. 13-4622 YGR (N.D. Cal.). While at ALDF, I have also served as lead or associate attorney in several cases in state court pursuant to state law, including challenges under state sunshine laws and writs of mandamus.

4.    I was admitted *pro hac vice* before the Northern District of Iowa in the above-caption matter.

-2-

5.      I request that I be compensated at a rate of $200, which is consistent with local market rates in Cedar Rapids, Iowa area for an attorney of my skill and experience.  This rate is below what my rate would be for cases in my home market of the San Francisco Bay Area. The rate of $200 an hour is also below what the Laffey Matrix reported in 2014-2015 for attorneys with one to three years of experience.

<div align="center">

**SUMMARY OF HOURS**

</div>

6.      I have reviewed my records to ensure that I accurately reported the number of hours I spent on the above-captioned matter.

7.      I recorded all of my time as I worked on specific tasks. As is industry practice, I recorded my time in tenths of an hour.  In instances where my time might be tracked in 15-minute increments, namely where it might be rounded down thereto (instead of up therefrom), I recorded my time in factors of quarter hour increments.

8.      I have billed a total of 357.90 hours in this case for my work beginning in December 2014 continuing through February 11, 2016. I voluntarily reduced my hours by 19%, and seek through Plaintiffs' Motion for Attorneys Fees and Costs an award on 288.90 hours. Based on these hours, and an hourly rate of $200 per hour, I am requesting $57,780 for my attorneys fees on this case. This amount does not include a substantial number of tasks like writing and reviewing minor correspondence, phone calls, and other tasks for which I might have billed to a client in the normal course of legal work, but here elected not to. A detailed breakdown of the time for which I am billing is attached hereto as Exhibit A.

9.      Exhibit A shows a chronological list of my time incurred in this matter from December 9, 2014, when I first became involved in this case, to when I worked on our very last filing, and through Judgment on February 11, 2016. Each time entry in Exhibit A includes the

date and a description of the task I completed. The only abbreviations I have used refer to people (e.g. Jessica Blome is abbreviated "JB") and to legal terms (e.g. Motion for Summary Judgment is abbreviated "MSJ" and Statement of Material Facts is abbreviated "SOMF").

**DIRECTION AND ROLE**

10.     All work I completed in this matter was under the supervision and direction of lead attorney Jessica Blome. I undertook no task or project without her direct instruction. I did so in order to avoid duplication of attorney efforts as well as to avoid undertaking tasks that may have been inappropriate for an attorney of my experience and skill-level. Throughout my work, she reviewed and oversaw my efforts.

11.     I played an especially active role during the discovery, summary judgment, and trial stages.  I coordinated with Plaintiffs' experts Jennifer Conrad, DVM, and Peter Klopfer, PhD., and with Plaintiff John Braumann in preparation of their testimony in support of Plaintiffs' motion for summary judgment and at trial. In particular, I undertook work in the following areas:

a.  *Rule 54.1 Category 1 "Drafting"* – In this category, I have included working on drafts of declarations (expert and standees), drafting pleadings, motions, and briefs, and appearing and arguing Plaintiffs' case at summary judgment hearing. In total, for this category I am billing for approximately 72.30 hours of time.

i.  *Drafting declarations, affidavits, and expert reports.* I reviewed evidence and worked with Plaintiffs' experts Jennifer Conrad, D.V.M., and Peter Klopfer, Ph.D. to help prepare their expert affidavits that accompanied Plaintiffs' Motion for Summary Judgment. This work included organizing and consolidating discovery materials and USDA inspection records for their review,

1        responding to their questions and leads they posed by telephone

2        and correspondence, and communicating with experts regarding

3        numerous factual issues and legal standards. This work entailed

4        significant conversation by telephone, occasional correspondence,

5        and considerable drafting on the experts' behalf due to their

6        schedules and abilities.

7        ii. *Drafting pleadings, motions, and briefs*. I wrote sections related to

8        standing and to the statutory and regulatory framework at issue in

9        this case in Plaintiffs' Motion for Summary Judgment, as well as

10       assisted in drafting the facts and analysis regarding violations of

11       the Endangered Species Act as to the tigers (and lions, before

12       Plaintiffs voluntarily dismissed their claims as to lions after

13       discovery). I likewise reviewed and edited all other portions of

14       Plaintiffs' Motion as well as Plaintiffs' Statement of Material

15       Facts. In addition, I assisted in the preparation of the several

16       Motions in Limine Plaintiffs filed with the court. I was the primary

17       author of Plaintiffs' opening Trial Brief, as well as the primary

18       author of Plaintiffs' opening Post-Trial Brief. I likewise provided

19       research and editing on Plaintiffs' trial and post-trial reply briefs.

20       iii. *"Drafting" Appearing at hearings*. Because the hearings related to

21       pre-trial motions and briefing, I have elected to include court

22       appearances in Category 1.  I argued the Plaintiffs' Motion for

23       Summary Judgment before the Court in August 2015. In

preparation for that hearing, I reviewed the Defendants' opposition
materials, reviewed the Plaintiffs' filings, and conducted additional
legal research related to the Endangered Species Act and standing
for plaintiffs in lawsuits brought pursuant to citizen suit provisions.
I drafted outlines related to Plaintiffs' representation, and
underwent several moot courts to prepare for questions the Court
might pose. I traveled to Iowa from California to represent
Plaintiffs before the Court.

b. *Rule 54.1 Category 2 "Legal research"* - I conducted significant legal research
into the applicability of the Endangered Species Act to captive wildlife and the
history and intent of the exemptions in the Fish and Wildlife Service's definition
of "harassment" in 50 C.F.R. § 17.3. I likewise researched instances in which
courts found "harm" and "harassment" in prior civil ESA lawsuits, and research
into aesthetic standing, especially in lawsuits brought pursuant to citizen suit
provisions. I have not billed for the majority of the hours I spent conducting legal
research, limiting my request to the approximately 9.8 hours.

c. *Rule 54.1 Category 3 "Investigation"* - *Discovery Requests and Responses, and
Depositions.* Approximately 99.20 hours of my time is for "Investigation"-related
work, but where Attorney Blome took the lead, or where the time billed involved
travel, I have voluntarily reduced my time to 54.70 hours.

    i. I drafted a portion of the Plaintiffs' Interrogatories and Plaintiffs'
Requests for Production, coordinating my request with additional
requests drafted by attorneys at Katten Law. I reviewed drafting

1   from their office and edited their requests to conform to ours and to

2   the needs of the case. Although I spent considerable hours

3   reviewing discovery responses from Defendants, in my billing

4   discretion I have not billed for those hours except in connection

5   with specific work undertaken relative to other strategic tasks as

6   outlined below. I likewise spent considerable hours preparing

7   Plaintiffs' responses to Defendants' discovery requests,

8   particularly by organizing responses from Plaintiffs Tracey Kuehl,

9   Lisa Kuehl, and John Braumann, but in my billing discretion I

10  have not billed for those hours either.

11  ii. I traveled to Iowa with lead attorney Jessica Blome to take and

12  defend depositions. In preparation for the depositions, I reviewed

13  discovery materials, statutes, and regulations, and prepared

14  outlines of questions. Attorney Blome and I cross-checked each

15  other's deposition outlines of questioning to ensure the depositions

16  would be thorough and efficient.  While in Iowa I attended the

17  deposition of all five individual Plaintiffs to assist Attorney Blome,

18  and I personally defended the deposition of Plaintiff John

19  Braumann. I took the deposition of Defendant Tom Sellner, and

20  the deposition of defense witness John Pries, DVM. I also attended

21  the telephonic deposition of Mr. Pusillo. I afterward reviewed the

22  deposition transcripts of all deponents, but in my billing discretion

23  I have not billed for those hours except any hours undertaken in

-7-

1    connection to other tasks, like preparing Plaintiffs' Motion for

2    Summary Judgment or preparing for trial examination or cross-

3    examination.

4    d. *Rule 54.1 Category 4 "Interviewing"* - I spent approximately 13.70 hours

5    interviewing Plaintiff John Braumann and Plaintiffs' experts Jennifer Conrad,

6    D.V.M., and Peter Klopfer, Ph.D. I voluntarily reduced my hours by 2.00 hours

7    to reach this number. I conducted these interviews to help Mr. Braumann prepare

8    his standing declaration for Summary Judgment and again in preparation for his

9    trial testimony, and to elicit Dr. Conrad and Dr. Klopfer's expert opinions at

10   Summary Judgment. Any of the hours I devoted to such interviewing I have

11   primarily labeled in Category 4 on my timesheet, especially regarding drafting

12   declarations, affidavits, and expert reports, but there is some identified

13   interviewing activity with trial preparation time.

14   e. *Rule 54.1 Category 5 "Trial preparation"* - I spent 42.60 hours preparing

15   Plaintiff John Braumann and expert Peter Klopfer, Ph.D. for their testimony at

16   trial. I reduced my time by 2.70 hours in this category to request 39.90 hours. In

17   the case of Mr. Braumann, this included reviewing photographs he took during his

18   two visits, reviewing how he experienced his visits through the Zoo, discussing

19   these experiences with him to identify how best to elicit his testimony for the

20   court, and discussing the efforts he made to secure protection for the animals at

21   the Zoo. In the case of Dr. Klopfer, this included reviewing his declaration from

22   Summary Judgment, eliciting his opinion on various evidence including

23   photographs, USDA inspection findings, and Defendants' admissions and

-8-

1   disclosures, as well as eliciting his background as an expert in the behavior and

2   care of lemurs both in the wild and in captivity. I prepared outlines for my

3   examination of each of these. My trial preparation likewise included preparing to

4   cross-examine Defendant Mr. Tom Sellner, reviewing his deposition transcript

5   and preparing an outline of questions for his cross-examination. I also reviewed

6   Defendants' opposition papers. I undertook as well some work related to the

7   pretrial order, to scheduling, and to meet and confer obligations to assist Attorney

8   Blome. The hours reported in this category also include those hours I spent

9   preparing, organizing, printing, and filing Plaintiffs' trial exhibits, but in my

10  billing discretion I have elected to omit these hours. In all I spent approximately

11  37.90 hours preparing for trial.

12      f.   *Rule 54.1 Category 6 "Trial"* - At trial I conducted direct examinations of

13          Plaintiff John Braumann and expert Peter Klopfer, Ph.D. I likewise conducted

14          cross-examination of Defendant Tom Sellner. I was present at counsel's table

15          during every examination and cross-examination, taking notes and regularly

16          conferring with lead and co-counsel on our representation, strategy, and facts. I

17          have billed approximately 110.10 hours for trial, including travel to and from

18          Cedar Rapids from California. I reduced my time by 11.60 hours to request 98.50

19          hours.

20      12.   I believe that my total hours are conservative given the complexity and novelty of

21  this ground-breaking legal case. Duplication was carefully avoided.

22

23      Pursuant to 28 U.S.C. § 1746, I swear under penalty of perjury that the foregoing is true

24  and correct to the best of my knowledge.

-9-

Signed this 25th day of February, 2016.

/s/ Jeffrey D. Pierce
Jeffrey D. Pierce
CA State Bar No. 293085
Legislative Counsel
Animal Legal Defense Fund

*Counsel for Plaintiffs Tracey Kuehl et al.*

-10-

Exhibit A

Animal Legal Defense Fund
Attorney Jeffrey Pierce
Client: Kuehl et al
Matter:  Cricket Hollow Zoo
December 1, 2014 - February 11, 2016

**ATTORNEY FEES STATEMENT**

| Date | L.R. 54.1 Code | Description | Billable Time | Courtesy Omission | Hourly Rate Requested | Total Requested |
|---|---|---|---|---|---|---|
| 12/9/14 | 3 | Draft plaintiffs' discovery requests; coordinate with Katten Law to combine interrogatories and requests for production | 8.00 | (2.00) | $200.00 | $1,200.00 |
| 12/23/15 | 3 | Review first draft discovery requests from Katten Law | 1.30 | 0.00 | $200.00 | $260.00 |
| 12/24/15 | 3 | Finalize first draft plaintiffs' discovery requests | 5.50 | 0.00 | $200.00 | $1,100.00 |
| 1/14/15 | 3 | Second draft plaintiffs' discovery requests; incorporate and edit portions from Katten Law | 3.50 | 0.00 | $200.00 | $700.00 |
| 3/3/15 | 3 | Call w/ legal team re: deposition of attending veterinarian | 1.50 | 0.00 | $200.00 | $300.00 |
| 3/15/15 | 3 | Review first draft P. Sellner deposition outline & comments to JB | 1.20 | 0.00 | $200.00 | $240.00 |
| 3/15/16 | 3 | Draft deposition outline for J. Pries | 4.50 | 0.00 | $200.00 | $900.00 |
| 3/16/15 | 3 | Travel from CA to Iowa to conduct depositions | 10.00 | (10.00) | $200.00 | $0.00 |
| 3/17/15 | 4 | Prepare for depositions, including interviews & meeting with clients | 7.00 | (2.00) | $200.00 | $1,000.00 |
| 3/17/15 | 3 | Revise depositions outlines | 3.00 | 0.00 | $200.00 | $600.00 |
| 3/18/15 | 3 | Defend depositions of plaintiffs Nancy Harvey, Kris Bell, Lisa Kuehl, and Tracey Kuehl | 6.00 | (6.00) | $200.00 | $0.00 |
| 3/18/15 | 3 | Prepare for depositions of J. Pries, T. Sellner | 3.00 | 0.00 | $200.00 | $600.00 |
| 3/19/15 | 3 | Defend deposition of J. Brauman | 2.00 | 0.00 | $200.00 | $400.00 |
| 3/19/15 | 3 | Prepare for deposition of J. Pries | 2.50 | 0.00 | $200.00 | $500.00 |
| 3/19/15 | 3 | Take deposition of J. Pries | 4.50 | 0.00 | $200.00 | $900.00 |
| 3/19/15 | 3 | Travel between Iowa City, Cedar Rapids, and Elkader for depositions of J. Braumann and J. Pries | 5.00 | (5.00) | $200.00 | $0.00 |
| 3/20/15 | 3 | Finalize outline of T. Sellner deposition | 1.50 | 0.00 | $200.00 | $300.00 |
| 3/20/15 | 3 | Attend deposition of P. Sellner as co-counsel | 6.50 | (6.50) | $200.00 | $0.00 |
| 3/20/15 | 3 | Depose T. Sellner | 3.00 | 0.00 | $200.00 | $600.00 |
| 3/20/15 | 3 | Travel between Iowa City and Manchester for Sellner depositions | 5.00 | (5.00) | $200.00 | $0.00 |
| 3/21/15 | 3 | Travel from Iowa to CA | 10.00 | (10.00) | $200.00 | $0.00 |
| 4/7/15 | 2 | Call w/Litigation Team re:filing for summary judgment | 1.50 | 0.00 | $200.00 | $300.00 |
| 4/8/15 | 2 | Review email from Jessica Blome (JB) re: allocation of MSJ assignments | 0.20 | (0.20) | $200.00 | $0.00 |
| 4/27/15 | 4 | Call w/ Peter Klopfer re: lemur conditions at zoo | 0.20 | 0.00 | $200.00 | $40.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/28/15 | 3 | Review USDA inspection reports; compile observations about impact on endangered animals for summary judgment | 3.70 | 0.00 | $200.00 | $740.00 |
| 4/29/15 | 4 | Review email from Peter H. Klopfer (Klopfer) re: his expert affidavit for summary judgment | 0.50 | 0.00 | $200.00 | $100.00 |
| 5/4/15 | 4 | Work w/Klopfer on his expert affidavit | 3.50 | 0.00 | $200.00 | $700.00 |
| 5/6/15 | 4 | Call w/Conrad re: veterinary care, conditions of endangered animals, discovery materials, etc. | 1.00 | 0.00 | $200.00 | $200.00 |
| 5/13/15 | 3 | Review USDA inspection reports and defendants' disclosures; prepare questions for call w/Conrad re: expert affidavit for summary judgment | 5.50 | 0.00 | $200.00 | $1,100.00 |
| 5/13/15 | 4 | Call w/Conrad to discuss her expert affidavit | 2.30 | 0.00 | $200.00 | $460.00 |
| 5/13/15 | 1 | Begin working on Conrad affidavit | 1.50 | 0.00 | $200.00 | $300.00 |
| 5/14/15 | 1 | Finish working on Klopfer's draft affidavit | 2.00 | 0.00 | $200.00 | $400.00 |
| 5/14/15 | 1 | Review and incorporate JB edits to Klopfer affidavit | 1.50 | 0.00 | $200.00 | $300.00 |
| 5/15/15 | 1 | Continue working on Conrad affidavit | 3.00 | 0.00 | $200.00 | $600.00 |
| 5/15/15 | 3 | Review animal care requirements of AWA and regulations | 2.50 | 0.00 | $200.00 | $500.00 |
| 5/18/15 | 1 | Finish working on Conrad's draft affidavit | 3.80 | 0.00 | $200.00 | $760.00 |
| 5/19/15 | 1 | Work on Klopfer's revisions to his affidavit | 1.30 | 0.00 | $200.00 | $260.00 |
| 5/19/15 | 1 | Review suggestions and edits to Klopfer affidavit; incorporate changes | 1.50 | 0.00 | $200.00 | $300.00 |
| 5/20/15 | 2 | Email legal team re: findings re: legal research on standing | 0.70 | 0.00 | $200.00 | $140.00 |

Case 6:14-cv-02034-JSS   Document 85-1   Filed 02/25/16   Page 128 of 146

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/20/15 | 2 | Ongoing correspondence w/legal team on standing legal research and applying facts to same | 1.20 | 0.00 | $200.00 | $240.00 |
| 5/21/15 | 2 | Review correspondence from legal team re: standing | 0.70 | 0.00 | $200.00 | $140.00 |
| 5/21/15 | 2 | Discuss standing declarations & approach on call w/EH | 0.50 | 0.00 | $200.00 | $100.00 |
| 5/21/15 | 1 | Review Conrad affidavit edits; incorporate changes | 3.30 | 0.00 | $200.00 | $660.00 |
| 5/22/15 | 1 | Review Klopfer affidavit edits; incorporate changes | 1.50 | 0.00 | $200.00 | $300.00 |
| 5/26/15 | 1 | Finalize second draft Conrad affidavit | 2.50 | 0.00 | $200.00 | $500.00 |
| 5/27/15 | 2 | Call w/ JB & EH re brief; RW FRE re authentication | 1.00 | 0.00 | $200.00 | $200.00 |
| 5/29/15 | 4 | Call w/Conrad re: veterinary care, conditions of endangered animals, discovery materials, etc. | 1.20 | 0.00 | $200.00 | $240.00 |
| 5/31/15 | 1 | Work on portions of MSJ brief | 4.80 | 0.00 | $200.00 | $960.00 |
| 5/31/15 | 1 | Edit MSJ brief | 5.50 | 0.00 | $200.00 | $1,100.00 |
| 5/31/15 | 1 | Call w/ JB & EH re: brief and SOMF | 1.00 | 0.00 | $200.00 | $200.00 |
| 6/1/15 | 1 | Incorporate SOMF references into MSJ brief | 3.50 | 0.00 | $200.00 | $700.00 |
| 6/1/15 | 1 | Fact check and cite check MSJ brief | 2.20 | 0.00 | $200.00 | $440.00 |
| 6/1/15 | 1 | File MSJ and all accompanying materials with ECF | 1.50 | 0.00 | $200.00 | $300.00 |
| 6/22/15 | 1 | Review Defendant's opposition to MSJ and SOMF | 2.50 | 0.00 | $200.00 | $500.00 |
| 8/2/15 | 1 | Call w/ EH re MSJ hearing | 0.20 | 0.00 | $200.00 | $40.00 |
| 8/2/15 | 1 | Prepare list of questions likely to arise during MSJ hearing | 0.70 | 0.00 | $200.00 | $140.00 |
| 8/2/15 | 2 | Compile and review case law on ESA, standing | 3.50 | 0.00 | $200.00 | $700.00 |
| 8/3/15 | 1 | Review arguments, factual record; prepare outline for MSJ hearing | 4.00 | 0.00 | $200.00 | $800.00 |
| 8/3/15 | 1 | MSJ brainstorming call w/ALDF Litigation Team, EH | 1.00 | 0.00 | $200.00 | $200.00 |
| 8/3/15 | 1 | Revise outline for MSJ hearing | 1.70 | 0.00 | $200.00 | $340.00 |
| 8/4/15 | 1 | Continue preparing for MSJ moot | 3.00 | 0.00 | $200.00 | $600.00 |
| 8/4/15 | 1 | Moot court for MSJ hearing | 1.30 | 0.00 | $200.00 | $260.00 |
| 8/4/15 | 1 | Second moot court for MSJ | 1.00 | 0.00 | $200.00 | $200.00 |
| 8/5/15 | 1 | Travel from CA to Iowa for MSJ hearing; preparation for hearing en route | 8.00 | 0.00 | $200.00 | $1,600.00 |
| 8/5/15 | 1 | Ongoing preparation for MSJ; revise hearing outline; review case law; moot | 4.50 | 0.00 | $200.00 | $900.00 |
| 8/5/15 | 2 | Review correspondence from legal team re: standing | 0.70 | 0.00 | $200.00 | $140.00 |
| 8/6/15 | 1 | Revise outline for MSJ hearing; moot arguments; review case law | 2.50 | 0.00 | $200.00 | $500.00 |
| 8/6/15 | 1 | Attend and present oral argument to court at MSJ hearing | 1.50 | 0.00 | $200.00 | $300.00 |
| 8/7/15 | 1 | Travel from Iowa to SF after MSJ hearing | 8.00 | (8.00) | $200.00 | $0.00 |
| 8/13/15 | 5 | Call w/JB and EH re: pretrial order and trial preparation | 1.00 | 0.00 | $200.00 | $200.00 |
| 8/24/15 | 5 | Call w/ JB & EH re: various aspect of trial preparation, including meet & confer preparations, trial brief, exhibits / witness objex, Proposed Findings of Fact, Conclusions of Law, Fed. R. Civ. P. 41 and Touhy for USDA trial testimony | 1.50 | 0.00 | $200.00 | $300.00 |
| 8/25/15 | 5 | Call w/ legal team and plaintiffs re: trial prep | 1.00 | 0.00 | $200.00 | $200.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/26/15 | 5 | Review correspondence between legal team & opposing counsel re: meet & confer | 0.50 | 0.00 | $200.00 | $100.00 |
| 8/26/15 | 5 | Follow-up call w/JB & EH re trial prep | 0.50 | 0.00 | $200.00 | $100.00 |
| 8/27/15 | 5 | Review and edit plaintiffs' settlement offer | 0.50 | 0.00 | $200.00 | $100.00 |
| 8/27/15 | 5 | Review memo from intern re: applicable ESA case law; review and edit ESA case chart | 2.20 | 0.00 | $200.00 | $440.00 |
| 8/30/15 | 5 | Draft pre-trial brief | 7.50 | 0.00 | $200.00 | $1,500.00 |
| 8/31/15 | 5 | Review and edit plaintiffs' Pre-trial order re: statement of facts, witness list, | 1.50 | 0.00 | $200.00 | $300.00 |
| 9/2/15 | 5 | Call w/ legal team re trial prep | 1.00 | 0.00 | $200.00 | $200.00 |
| 9/2/15 | 5 | Review and edit motion in limine #3 (order of proof) | 0.30 | 0.00 | $200.00 | $60.00 |
| 9/2/15 | 5 | Review and edit second draft ESA case chart | 0.80 | 0.00 | $200.00 | $160.00 |
| 9/2//15 | 5 | Review and edit motion in limine #2 (USDA records) | 0.50 | 0.00 | $200.00 | $100.00 |
| 9/3/15 | 5 | Review, edit, and format animal death chart | 1.20 | 0.00 | $200.00 | $240.00 |
| 9/4/15 | 5 | Call w/ EH re: trial brief | 0.20 | 0.00 | $200.00 | $40.00 |
| 9/14/15 | 5 | Call w/ legal team re: trial prep; review corrspondence to plaintiffs re: testimony prep | 1.00 | 0.00 | $200.00 | $200.00 |
| 9/15/15 | 5 | Prepare for initial call w/P. Klopfer re: trial testimony; create outline for his direct examination | 2.00 | 0.00 | $200.00 | $400.00 |
| 9/16/15 | 5 | Call w/Klopfer re: trial testimony preparation | 1.70 | 0.00 | $200.00 | $340.00 |
| 9/21/15 | 5 | Prepare for first call w/J. Braumann re: trial testimony, create outline of commentary and questions | 2.20 | 0.00 | $200.00 | $440.00 |
| 9/21/15 | 5 | Call w/Braumann re: trial testimony | 1.50 | 0.00 | $200.00 | $300.00 |
| 9/22/15 | 5 | Prepare for second call w/Klopfer re: trial testimony; review materials on federal expert witness testimony; prepare trial question outline | 3.70 | 0.00 | $200.00 | $740.00 |

| Date | | Description | Hours Billed | Omitted | Rate | Amount |
|------|---|-------------|------|------|------|--------|
| 9/23/15 | 5 | Call w/Klopfer re: trial testimony | 0.90 | 0.00 | $200.00 | $180.00 |
| 9/23/15 | 5 | Print plaintiffs' exhibits and prepare exhibit binders | 2.70 | (2.70) | $200.00 | $0.00 |
| 9/23/15 | 5 | Review materials on Fed. Rules re: impeachment; | 1.20 | 0.00 | $200.00 | $240.00 |
| 9/23/15 | 5 | Review T. Sellner deposition transcript; prepare cross-examination outline for T. Sellner | 2.00 | 0.00 | $200.00 | $400.00 |
| 9/25/15 | 5 | Call w/Braumann re: trial testimony | 3.20 | 0.00 | $200.00 | $640.00 |
| 9/28/15 | 5 | Hearing w/J. Scoles and legal team re: MILs | 0.30 | 0.00 | $200.00 | $60.00 |
| 10/3/15 | 6 | Travel from CA to Iowa (preparation time en route) | 12.50 | 0.00 | $200.00 | $2,500.00 |
| 10/4/15 | 6 | Finalize J. Braumann trial outline | 2.20 | 0.00 | $200.00 | $440.00 |
| 10/5/15 | 6 | Travel to courthouse w/ legal team for first day of trial and related follow-up re 1st day of trial | 5.00 | 0.00 | $200.00 | $1,000.00 |
| 10/5/15 | 6 | Finalize P. Klopfer trial outline | 1.70 | 0.00 | $200.00 | $340.00 |
| 10/6/15 | 6 | Travel to courthouse w/ legal team for second day of trial; direct examination of P. Klopfer; follow-up with P. Klopfer; assist in representation of Plaintiffs' case | 10.00 | 0.00 | $200.00 | $2,000.00 |
| 10/7/15 | 6 | Travel to courthouse w/ legal team for third day of trial; direct examination of J. Braumann; assist in representation of Plaintiffs' case. | 10.00 | 0.00 | $200.00 | $2,000.00 |
| 10/7/15 | 6 | Revise T. Sellner cross-examination outline | 2.50 | 0.00 | $200.00 | $500.00 |
| 10/8/15 | 6 | Finalize T. Sellner cross-examination outline | 1.50 | 0.00 | $200.00 | $300.00 |
| 10/8/15 | 6 | Travel to courthouse w/ legal team for fourth day of of trial; cross-examination of T. Sellner | 9.00 | 0.00 | $200.00 | $1,800.00 |
| 10/10/15 | 6 | Travel from Iowa to CA | 10.00 | (10.00) | $200.00 | $0.00 |
| 11/6/15 | 6 | Correspondence w/JB & EH re: post-trial brief | 0.10 | (0.10) | $200.00 | $0.00 |
| 11/8/15 | 6 | Begin drafting post-trial brief | 5.50 | 0.00 | $200.00 | $1,100.00 |
| 11/9/15 | 6 | Continue drafting post-trial brief | 10.00 | 0.00 | $200.00 | $2,000.00 |
| 11/10/15 | 6 | Finish first draft post-trial brief | 7.50 | 0.00 | $200.00 | $1,500.00 |
| 11/11/15 | 6 | Review JB's comments on post-trial brief draft | 1.50 | 0.00 | $200.00 | $300.00 |
| 11/12/15 | 6 | Incorporate JB edits; revise post-trial brief | 8.00 | 0.00 | $200.00 | $1,600.00 |
| 11/13/15 | 6 | Finalize post-trial brief; file brief and supporting materials | 4.50 | 0.00 | $200.00 | $900.00 |
| 12/5/15 | 6 | Review defendants' post-trial response brief | 1.50 | 0.00 | $200.00 | $300.00 |
| 12/15/15 | 6 | Review and edit Plaintiffs' post-trial reply brief; research 8th Cir. Case law on expert testimony; rewrite sections; correspond w/legal team | 3.20 | 0.00 | $200.00 | $640.00 |
| 12/17/15 | 6 | Review and edit draft of post-trial reply brief | 2.40 | 0.00 | $200.00 | $480.00 |
| 2/11/16 | 6 | Review order and judgment from trial; debrief w/ legal team re same | 1.50 | (1.50) | $200.00 | $0.00 |
| | | **TOTAL** | **357.90 Hours Billed** | **(69.00) Omitted** | | **$57,780.00 Attorney Fees Requested** |

Hours Requested (357.90-69.00 = 288.90)

*Voluntary reduction of 19%*

| **L.R. 54.1 Category Totals** | **Summary** |
|---|---|
| 1 | 72.3 hours (after a 8.00 voluntary reduction) |
| 2 | 9.8 hours (after a 0.20 voluntary reduction) |
| 3 | 54.7 hours (after a 46.50 voluntary reduction) |
| 4 | 13.70 hours (after a 2.00 voluntary reduction) |
| 5 | 39.9 hours (after a 2.70 voluntary reduction) |
| 6 | 98.5 hours (after a 11.60 voluntary reduction) |

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**

**EXHIBIT 4**

**DECLARATION OF PATRICK PARENTEAU**

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| TRACEY K. KUEHL, et al. | ) | Case No. C14-02034-JSS |
| | ) | |
| Plaintiffs, | ) | **DECLARATION OF** |
| | ) | **PATRICK PARENTEAU** |
| | ) | **IN SUPPPORT OF** |
| v. | ) | **PLAINTIFFS' MOTION FOR AN** |
| | ) | **AWARD OF ATTORNEYS FEES** |
| PAMELA SELLNER, et al., | ) | **AND COSTS** |
| | ) | |
| Defendants | ) | **Judge: Hon. Jon Stuart Scoles** |
| | ) | |

I, Patrick A. Parenteau, declare as follows:

1. I have been licensed to practice law since 1972 and am admitted to practice in a number of jurisdictions and federal courts including the Supreme Court of the United States.

2. I am currently Professor of Law and Senior Counsel, Environmental and Natural Resources Law Clinic at Vermont Law School ("VLS"). I have been on the VLS faculty for twenty two years.

3. As indicated on the attached CV (Attachment 1), I have considerable experience with the Endangered Species Act ("ESA"). I have litigated many cases; published scholarly and popular articles; testified before Congress on numerous occasions; drafted portions of the 1978, 1979 and 1982 amendments; lectured and spoken on the Act countless times; and appeared

1    before the Endangered Species Exemption Committee in all four of the cases

2    it has considered.

3    4. As the Supreme Court said in *TVA v Hill*, 437 U.S. 153, 184 (1978)

4       preservation of endangered species is of "paramount importance." For the

5       past several decades, citizen suits under ESA have played a central role in

6       the realization of this goal. Congress has viewed the filing of legitimate

7       citizen suits as a public service and has attempted to encourage citizens to

8       perform this service through passing statutes that allow fee shifting for

9       successful plaintiffs. See H.R. REP. No. 95-294, at 337 (1977), reprinted in

10      U.S.C.C.A.N. 1077, 1416 (regarding the reasons for enacting the citizen suit

11      provision of the Clean Air Act ("CAA")); S. REP. No. 91-1196, at 38 (1970)

12      (discussing the social value of citizen suit provisions).

13   5. Congress was concerned that administrative agencies would not always

14      enforce environmental laws vigorously and consistently; and therefore

15      wanted to encourage citizen suits to act as both a check on agency power

16      and as a deterrent to keep agencies from shirking their duties to uphold

17      protection of environmental interests. See Adam Babich, "Citizen Suits: The

18      Teeth in Public Participation," 25 Envtl. L. Rep. (Envtl. L. Inst.) 10,141,

19      10,141 (Mar. 1995).

20   6. The courts have recognized the public interest purpose of the fee shifting

21      provision of the ESA. In *Loggerhead Turtle v County Council*, 307 F.3d.

22      1318, 1327 (11th Cir. 2002) the court said: "The Courts should recognize that

23      in bringing legitimate actions under this section citizens would be

24      performing a public service and in such instances the courts should award

25      costs of litigation to such party."

26   7. Section 11(g) of the ESA authorizes the courts to award costs and fees

27      "whenever the court determines such award is appropriate." 16 USC § 1540

(g)(4). The D.C. Circuit has stated that a court may award attorneys' fees "whenever such an award [is] deemed to be 'in the public interest,'" reasoning that an award of attorneys' fees to a citizen plaintiff is "considered ...consonant with the public interest whenever the underlying suit was a prudent and desirable effort." *Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 639 F.2d 802, 804 (D.C. Cir. 1981).

8. The "whenever appropriate" language affords the court considerable discretion to consider a number of factors, including the financial condition of the defendant, in deciding whether to award costs and fees; and if so how much.

9. Plaintiffs here, having incurred substantial costs to vindicate the conservation goals of the ESA, having prevailed on the merits, and having served the public interest have done exactly as Congress envisioned and are clearly eligible to recover their costs and attorney fees.

10. In my view this court has an obligation to fully consider plaintiffs' application for attorney fees and weigh all of the factors bearing on the reasonableness of such an award. Denial of fees without such consideration could constitute an abuse of discretion. See *Conservation Force v Salazar*, 699 F.3d 538 (D.C. Cir. 2012).

11. This has been a complicated, hard fought case requiring the expenditure of substantial time to research novel issues, conduct extensive discovery, and engage in extensive briefing on summary judgment as well as pre-trial and post-trial briefs. The trial itself lasted four days; eleven witnesses were called. These factors should weigh heavily in the court's consideration of what constitutes a reasonable number of hours billed. As an example in one ESA case the court found that 809 hours was a reasonable amount of time expended given the "complex and novel" issues presented. *Palila v. Hawai'i*

*Department of Land and Natural Resources (VI),* 118 F.R.D. 125 (D. Haw. 1987)

I declare under penalty of perjury under the laws of the State of Vermont that the foregoing is a true and correct and that this Declaration was entered into on February 24 2016 in South Royalton, Vermont.

Patrick A. Parenteau

## PATRICK A. PARENTEAU, J.D., L.L.M.

Vermont Law School                                              Residence
Chelsea Street                                                  1318 Gove Hill Road
South Royalton, VT 05075                                        Thetford Center, VT 05075
802 763-8303                                                    802 785-4131
pparenteau@vermontlaw.edu                                       patrick.parenteau@valley.net

## CURRENT POSITION

Professor of Law and Senior Counsel, Environmental and Natural Resources Law Clinic, Vermont Law School

## EDUCATION

1975    George Washington University, Washington, DC (L.L.M. in Environmental Law)

1972    Creighton University, Omaha, NE (J.D.)

1969    Regis University, Denver, CO (B.S.)

## TEACHING EXPERIENCE

| | |
|---|---|
| 1993- present | Professor of Law, Vermont Law School, South Royalton, VT. Currently teaching: Climate Change and the Law; Water Quality; Extinction and Climate Change; Law of Climate Adaptation (online course). Faculty Advisor, National Environmental Moot Court Team. |
| 1998-2004 | Adjunct Professor of Environmental Studies, Dartmouth College, Hanover, NH. . |
| 1999 | Visiting Professor, Washington University, St Louis, MO. Ecosystem Approaches to Natural Resource Conservation. |
| 1979-1989 | Summer Faculty, Vermont Law School. Wildlife and Forestry. |
| 1986 | Lecturer, Boston College Law School, Chestnut Hill, MA. Regulation of Air and Water Quality. |
| 1982 | Lecturer, Lewis & Clark Law School. Portland, OR. Wildlife Law. |
| 1977-1978 | Lecturer, George Washington University, Washington, DC. Natural Resources Law. |
| 1975-1976 | Natural Resources Law Institute Fellow, Northwestern School of Law, Lewis and Clark College, Portland, OR. |

## TEACHING INTERESTS

Subjects taught: The Administrative Procedure Act; Climate Change and the Law; The National Environmental Policy Act; Regulation of Air and Water Pollution; Hazardous Waste Management and Remediation; The Marine Mammal Protection Act; The Sustainable Fisheries Act; The Endangered Species Act; Water Resources Law; Wetlands Conservation; The National Forest Management Act; The Wilderness Act; The Federal Lands Policy and Management Act; Biodiversity Conservation; Environmental Policy and Management; Environmental Litigation

Teaching methodologies: Socratic dialogue; simulations and role-playing; mock hearings and negotiations; problem-solving exercises; interdisciplinary case studies; field trips; stakeholder interviews; distance learning; web-based courses; power-point presentations.

Educational philosophy: Mastery of environmental law and policy requires literacy in a number of related fields: ecology, economics, ethics, law, and political science. To be a good environmental lawyer, one must first be a good lawyer, a creative problem solver; someone who can bring people together in constructive ways that lead to durable agreements to resolve complex problems. To be a good environmentalist, one must have a strong ethical foundation, a sincere respect for nature, and a commitment to leaving the world a better place, for all its inhabitants.

## PROFESSIONAL EXPERIENCE

2003-Present: Professor of Law and Senior Counsel Environmental and Natural Resources Law Clinic, Vermont Law School

2004-2008: Founding Director, Environmental and Natural Resources Law Clinic. ENRLC provides clinical training in environmental litigation, negotiation, and policy advocacy, and represents nonprofit conservation organizations and community groups in federal and state courts, administrative bodies, and legislatures.

1993-1999: Director, Environmental Law Center, Vermont Law School. Responsibilities included curriculum development, recruitment and admissions to masters' programs, faculty hiring and development, fund-raising, marketing and budgeting, career counseling, and outreach/public service. Started several new programs including First Nations Environmental Law Fellowship, Indian Country Environmental Justice Clinic, Environmental Semester in Washington Externship Program, Masters of Environmental Law (LLM) Degree Program, and a dual degree master's program with the Tuck School of Business at Dartmouth College.

1991-1992: Special Counsel to U.S. Fish and Wildlife Service. Received special congressional appointment to represent USFWS in the Endangered Species Act exemption process involving the northern spotted owl controversy in the old growth forests of the Pacific Northwest.

1989-1993: Of Counsel, Perkins Coie, Portland, OR. Counseled and represented clients on wide range of environmental matters before regulatory agencies and state and federal courts. Drafted nation's first environmental audit privilege statute. Chaired Water Quality Advisory Committee for Oregon Department of Environmental Quality; negotiated cleanup of numerous hazardous waste sites.

1987-1989: Commissioner, Vermont Department of Environmental Conservation. Appointed by Governor Madeleine Kunin. Oversaw department that implemented all of the environmental programs in the state of Vermont. Implemented new programs for solid waste management, groundwater protection, wetlands conservation and enforcement. Secured passage of law creating nation's first Environmental Court. Won regional award for outstanding contributions to air quality improvement.

1984-1987 Regional Counsel, U.S. Environmental Protection Agency, Region I, Boston, MA. Senior Executive Service appointment. Responsible for managing legal staff and enforcement program for large regional office of federal regulatory agency. Oversaw development of Boston Harbor cleanup case. Developed cases that set national precedents for criminal enforcement, multi-party hazardous waste cleanups, and wetlands protection.

1980-1984: Vice President for Conservation, National Wildlife Federation, Washington, DC. Responsible for implementing advocacy programs of the nation's largest conservation organization. Directed lobbying and grassroots program that was instrumental in passage of major national environmental laws including Alaska Lands Bill, Coastal Barriers Resources Conservation Act, Superfund, and major amendments to Clean Air Act, Clean Water Act and Endangered Species Act. Supervised active litigation program handling cases of national importance. Oversaw research program that produced influential public policy studies.

1978-1980: Director of Resources Defense Division, National Wildlife Federation. Created innovative approach to conservation by hiring and organizing staff into interdisciplinary teams of lawyers, scientists, economists, and lobbyists assigned to subject matter areas (e.g., energy, public lands, wildlife). Enhanced NWF's reputation for responsible advocacy and policy research. Started an international program that has become a very influential NGO on global issues.

1976-1978: Counsel, National Wildlife Federation. Litigated precedent-setting cases under the Endangered Species Act, National Environmental Policy Act, Clean Water Act, and other laws. Established the Platte River Whooping Crane Trust as part of a settlement of major lawsuit; case is now used by the Kennedy School of Government as a case study for resolving natural resources disputes.

1972-1974: Staff Attorney, Legal Aid Society of Omaha, Nebraska. Handled cases for indigent clients. Litigated major federal cases involving civil rights, welfare, housing, segregation, consumer protection and prisoner's rights.

## INTERNATIONAL EXPERIENCE

2010        Brazil. Created and taught environmental compliance seminar for senior attorneys with Petrobras (state-owned oil company)

2006        Guatemala. Advised Pro Peten, an indigenous Mayan organization helping build sustainable communities in the Peten Region of Guatemala.

2004        Russia-Finland. Participated in International Environmental Law School. Faculty and students from Russia, the U.S., Finland, and Italy. Topic: Comparative Law of Protected Areas.

2004        China. Visit to Sun Yat-sen University in Guangzho for presentations, meetings and faculty colloquia. Led to creation of the VLS-China Partnership, which is now in its seventh year operating on a $1.5 million annual budget

2002        Republic of Karelia. Participated in third annual International Environmental Law Summer School, which included students from Vermont Law School and the U. of Trento, Italy. Also organized and presented papers at a conference for Russian lawyers on citizen enforcement of environmental laws and protection of individual rights to a healthy environment.

2000        Petrozavodsk, Karelia. Helped develop and teach first annual International Environmental Law Summer School, hosted by PSU, which drew students from Republics in Northwest Russia and Scandinavian countries (Barents Sea Region). Advised PSU faculty and administrators on creation of environmental law center, which was launched the next year.

1999        Moscow, Russia and Petrozavodsk, Karelia. Participated in ABA-CEELI Conference on clinical legal education in Russia. Presented paper on environmental litigation. Met with faculty and administration of Petrozavodsk State University to discuss development of environmental curriculum including potential development of environmental clinic.

1997        Havana, Cuba. Member of multi-country delegation to promote inter-American dialogue on environmental issues. Presented paper at national conference; participated in workshops with government officials on development of Cuban environmental laws; met with Cuban Bar Association and judges.

1995        Visiting Lecturer, Petrozavodsk State University (PSU), Republic of Karelia, Russia. Lectured in several classes of the law faculty. Met with University officials to plan cooperative educational programs between PSU and VLS.

1994        Prague, Czech Republic. Developed and participated in one-week training program for

government officials and NGO's on environmental enforcement sponsored by the Institute for Sustainable Communities with funding from USEPA.

## PUBLICATIONS

**Book Chapters**

*Cities on Stilts: The Myth of Large Scale Climate Adaptation* in **Rethinking Sustainability in and Age of Climate Change** Environmental Law Institute (in press 2015)

*Legal Authorities for Ecosystem-Based Management in U.S. Coastal and Ocean Areas* (with several co-authors); *Climate Change and the Marine Environment* (with several co-authors), in **Ocean and Coastal Law and Policy 2d Ed**. (ABA (in press 2015)

*Species and Ecosystem Impacts*, in **The Law of Adaptation to Climate Change** ABA 2012

*Go Back it's a Trap: On the Perils of Geologic Sequestration of Carbon Dioxide*, in **The Climate Reader** Carolina Press 2010

*Overview of Wildlife Law in the United States* (with Don Baur) in **Wildlife law: A Global Perspective** (ABA 2008)

*The Endangered Species Exemption Process and the God Squad*, in **The Endangered Species Act: Law, Policy and Perspectives**, American Bar Association (2002)

*Vermont Environmental Law,* in **Environmental Law Practice Guide: State and Federal Law**, Michael Gerrard (general editor) (Matthew Bender & Co. 2001)

*Overview of Federal Wildlife Law* (with Don Baur), in **Natural Resources Law Handbook** (Gov't. Institutes Inc. 1994)

*Wetlands Regulation under the 404 Program*, in **Federal Wetlands Regulation** (Gov't. Institutes Inc. 1991)

**Law Review Articles**

*The Clean Power Plan: The Most Important Rule EPA Will Ever Issue* (working draft)

*A Bridge Too Far: Building Off-ramps on the Shale Gas Superhighway* (with Abigail Barnes), 49 Idaho Law Rev.325 (2013)

*The Other Dam: Grayrocks vs the Whooping Crane*, 80 Tenn. L. Rev. 543 (2012)

*Come Hell <u>and</u> High Water: Coping with the Unavoidable Consequences of Climate Disruption*, 34 Vermont Law Rev. 957 (2010)

*Lead Follow or Get Out of the Way: The States Tackle Climate Change with little Help from Washington*, 40 Connecticut L Rev. 1453 (2008)

*Whatever Industry Wants, Environmental Policy under Bush II,* 14 Duke Envt'l Law & Policy Forum 363 (2004)

*Citizen Suits under the Endangered Species Act: Survival of the Fittest,* 10 Widener Law Rev. 321 (2004)

*Unreasonable Expectations: Why Palazzolo Is Not Entitled to Turn Silk Purse into A Sow's Ear*, 30 Boston College Environmental Affairs Law Review, 101 (2002)

*Rearranging the Deck Chairs: Endangered Species Act Reforms In An Era of Mass Extinction*, 22

William & Mary Law & Policy Review 2227 (1999)

*Fashioning A Comprehensive Environmental Review Code for Tribal Governments: Institutions and Processes* (with Dean Suagee), 21 American Indian Law Review 297 (1997)

*Who's Taking What? Property Rights, Endangered Species, and the Constitution*, 6 Fordham Environmental Law Review No. 3 (1996)

*All You Needed To Know About Environmental Law You Learned In Kindergarten*, 23 Environmental Law 223 (1993)

*The Big Chill: The Impact of Fleet Factors on Lenders* (with Craig Johnston), 20 Chemical Waste Litigation Reporter 380 (1990)

*Small Handles, Big Impacts: When Do Corps Permits Federalize Private Development*? 20 Environmental Law 747 (1990)

*The Effluent Limitations Controversy: Will Careless Draftsmanship Foil the Objectives of the Clean Water Act*? (with Nancy Tauman), 6 Ecology Law Quarterly 1 (1977)

*Regulation of Nuclear Powerplants: A Constitutional Dilemma for the States*, 6 Environmental Law 675 (1976)

*Public Assessment of Biological Technologies: Can NEPA Answer the Challenge*? (with Robert Catz), 64 Georgetown Law Journal 679 (1976)

**Journal Articles**

*Between a Pebble and a Hard Place: Using §404(c) to Protect a National Treasure,* National Wetlands Newsletter Vol. 37, No 2 March-April (2015)

*The Carbon Bubble*, Fletcher Forum on World Affairs February 2014

*Wetlands Conservation and Climate Resilience*, National Wetlands Newsletter, Vol. 34 No. 4 (2012)

*Reinvigorating the Public Trust Doctrine: Expert Opinion on the Potential of a Public Trust Mandate in U.S. and International Environmental Law*(with several authors), Environment: Science and Policy for Sustainable Development, Volume 52, Issue 5, 2010

*Last One Standing: The Roberts Court and Article III*, ABA Trends (November/December, 2009)

*Wetlands and Climate Change*, National Wetlands Newsletter, March 2009

*The First One Hundred Days: What President Obama should do to Confront the Climate Challenge*, Environmental Law Quarterly Currents, January 2009

*Conservation Science, Biodiversity, and the 2005 U.S. Forest Service Regulations (*with Barry Noon and Steve Trombulak*)* Conservation Biology, Vol. 19 No. (5 October 2005)

*Preemptive Surrender: How Corps Districts Are Giving Away Clean Water Act Jurisdiction*, National Wetlands Newsletter (May-June 2005)

*Bushwhacked: The Impact of the President's Polices on Vermont*, Vermont Environmental Reporter (May/June 2004)

*A Biodiversity Plan for Vermont?* Vermont Environment Reporter (Summer 2001)

*She Runs With Wolves: In Memory of Mollie Beattie*, 14 Trumpeter 4 (1997)

*A Bum Rap for Vermont's Endangered Species Act*, The Vermont Bar Journal and Law Digest (October, 1995)

*Babbitt v Sweet Home: The Court Protects Endangered Species Habitat*, 5 Rivers 216 (1996)

*NEPA at Twenty*, 6 Environmental Forum 14 (1989)

*NEPA at Twenty: Disappointment or Success?* Audubon, p. 14 (March, 1990)

**Opinion Pieces**

*Setting the Record Straight on the FTC Decision*, VtDigger February 11, 2015

*Don't Gut Environmental Review*, Rutland Herald and VtDigger May 13, 2013

*In Praise of Public Interest Journalism* Huffington Post (October 2011)

*Environmental Clinic Works for People* Burlington Free Press (November 2004)

*Trashing Vermont*, The Rutland Herald (November 13, 2003)

*Playing Games with Critical Habitat,* Northern Woodlands (Sept/Oct 2003)

*Leahy's Careful Scrutiny Is Necessary*, Valley News (VT) (May 23, 2002)

*Don't Squander Best Chance To Clean Up Elizabeth Mine*, Valley News (VT)( March 23, 2002)

*Opponents Threaten To Unravel Champion Plan*, Burlington Free Press (VT)(Jan. 15, 2002)

*Court Should Nix Takings Argument*, Boston Globe (MA) (Jan. 7, 2002)

*Our Wetland Dominoes*, National Law Journal (Feb. 26, 2001)

*Coming EPA Policy Ruling Gives Court Opportunity to Clear the Air*, The Philadelphia Inquirer (PA) (Nov. 3, 2000)

*Let Regulation Evolve, Naturally*, Legal Times (May 13, 1996)

*Twenty Five Years of Environmental Progress Comes to a Screeching Halt*, Valley News (VT) (April 23, 1995)

*Another Broken Promise?* The Oregonian (OR) (Aug. 30, 1994)

*Lessons from the Spotted Owl for Vermont*, Burlington Free Press (VT) (April 3, 1994)

*Court Finds New Basis for Liability* (with Craig Johnston and Mary Wood), National Law Journal (May 13, 1991)

*Exporting Extinction–Or Building a Future?* Legal Times (Mar 4, 1991)

*Work to Protect People and Owl*, The Oregonian (April 24, 1990)

**SELECTED PRESENTATIONS**

*The Twenty Ninth Day: Confronting Climate Disruption and Winning the Future*, Framingham State U, Framingham MA, April 2 2015

*Prairie Dogs, The Endangered Species Act, and the Limits of the Commerce Clause*, Tulane Environmental Law Summit, New Orleans, February 2015

*Dead Zones and the Clean Water Act,* Society of Environmental Journalists 24th Annual Meeting, New Orleans, September 2014

*Running Out of Atmosphere: How Millennials Will Save Civilization from Runaway Climate Change*, Thirtieth Annual Public Interest Environmental Law Conference, U of Oregon February 2014

*A Law like No Other: Celebrating the Fortieth Anniversary of the Endangered Species Act*, Public Interest Environmental Conference, U of Florida February 2103

*Species Conservation in the Anthropocene*, ALI/ABA Course of Study Species Protection: Critical Legal Issues, May 2012

*Reinvigorating the Public Trust Doctrine*, American Assn. for Advancement of Science Annual Meeting, May 2011

*Wetlands and Climate Change*, Association of State Wetlands Managers Annual Meeting, Portland Oregon September 16, 2008

*Is It Just Me or Is It Getting Hot in Here*? ABA Mid-Year Meeting, Clean Air Panel, Phoenix, Az. September 19, 2008

*The Role of State and Local Planning in Climate Change Mitigation and Adaptation*, Windham County Regional Planning Commission, Brattleboro, VT. September 30, 2008.

*Ecosystem Effects of Climate Change*, Massachusetts School of Law, Andover MA October 11, 2008

*Meltdown: Can Law Save the Arctic*? Yale School of Forestry and Environmental Studies, October 21, 2008

*Defining Waters of the United States after SWANCC,* The Association of State Wetlands Managers, Albuquerque, NM (October 2005)

*What's in a Name? The Bush Administration's Environmental Record,* The Society for Environmental

Journalists 15th Annual Conference, Austin, TX (September 2005)

*Litigating the ESA Take Prohibition*, ALI/ABA Conference on the Law of Protected Species, Washington DC, (April 2004)

*Implications of Miccosukee,* ABA National Telecast (June 13, 2004)

*Clean Water Act Jurisdiction after SWANCC*, The Federalist Society, Nat'l Press Club Washington DC February, 2004

*The Public Trust Doctrine as a Background Principle of Property Law*, Symposium on the Palazzolo Case, Boston College Law School (March, 2002)

*Forestry and Biodiversity*, International Environmental Law School, Petrozavodsk State University, Karelia, Russia (June, 2001)

*Citizen Enforcement of Environmental Laws in the United States,* ABA-CEELI Conference, Moscow, Russia (May 1999)

## SUPREME COURT *AMICUS* BRIEFS

*Massachusetts v EPA, 549 U.S. 497 (2007). Submitted on behalf of climate scientists in landmark climate change case.*

*Rapanos v United* State, 547 U.S. 715 (2006). Submitted on behalf of Association of State Wetlands Managers major Clean Water Act case.

*South.Fla. Water Mgt. Dist. v Miccosukee Tribe of Indians*, 541 U.S. 95 (2004). Submitted on behalf of Association of State Wetland Managers in major Clean Water Act case.

*Borden Ranch Partnerships v U.S. Army Corps of Engineers*, 537 U.S. 995 (2002). Submitted on behalf of Association of State Wetland Managers in major wetlands case.

*Palazzolo v. State of Rhode Island*, 121 S.Ct. 2448 (2001). Submitted on behalf of Dr. John Teal and group of distinguished scientists in a case involving constitutional challenge to state coastal wetlands protection program.

*Babbitt v. Sweet Home Chapter of Communities for Greater Oregon*, 115 S. Ct. 2407 (1995). Submitted on behalf of Professor E. O. Wilson and group of distinguished scientists in case involving interpretation of the Endangered Species Act.

## SELECTED CASES

*Center for Biological Diversity v EPA*, No. 13-cv-1866 (W.D. Wash. Feb. 19, 2015): (amicus brief on behalf of climate scientists and marine biologists in case challenging EPA failure to designate coastal waters impaired by ocean acidification)

*Catskills Mtn. Chapter of Trout Unlimited v City of New York*, No 14-1823 (2d Cir 2015) (amicus brief on behalf of Leon G Billings et al in case challenging EPA water transfers rule)

*Residents Concerned About Omya v Omya, Inc,* (Represented residents living next to mining operation that has contaminated groundwater) (2009)

*In re Vermont Yankee NPDES Permit Appeal*, Vermont Environmental Court (2008)(Represented Connecticut River watershed Council in appeal of permit to discharge heated effluent to Connecticut River).

*Nulankeyutmonen Nkihtaqmikon v BIA*, 503 F.3d 18 (1st Cir. 2007)(Represented indigenous people

opposed to LNG terminal on tribal sacred site)

*National Wildlife Federation v Norton,* 386 F.Supp.2d 553 (D. Vt. 2005*).* Represented national conservation organizations in case challenging reclassification of the gray wolf under the Endangered Species Act.

*Kootenai Tribe v. Veneman*, 313 F.3d 1094 (9th Cir. 2003). Represented conservation interests in defense of the "Roadless Rule" for National Forests..

*National Audubon Society v. Hoffman*, 132 F.3d 7 (2d Cir. 1997). Represented conservation group in case involving management of roadless areas of National Forests.

*Northwest Environmental Advocates v. City of Portland*, 11 F.3d 900 (9th Cir. 1993). Represented community groups in case involving cleanup of the Willamette River under the Clean Water Act.

*In Re Bureau of Land Management Application for Exemption from the Endangered Species Act Endangered Species Committee* (1992). Represented U.S. Fish and Wildlife Service in opposition to an exemption for timber sales in critical habitat of northern spotted owl.

*National Wildlife Federation v Gorsuch*, 639 F.2d 156 (DC Cir. 1982). Represented NWF in case seeking regulation of dams as point sources under the Clean Water Act.

*The Pittston Co. v. The Endangered Species Committee*, 14 ERC 1257 (D.DC 1980). Represented NWF in case challenging right of oil refinery to seek exemption from the Endangered Species Act for impacts to the bald eagle and right whale.

*North Slope Borough v. Andrus*, 642 F.2d 589 (DC Cir. 1980). Represented conservation organizations in challenge to oil and gas development in habitat of the endangered bowhead whale.

*Environmental Defense Fund v. Andrus*, 596 F.2d 848 (9th Cir. 1979). Represented conservation organizations as *amici curiae* in case applying Fish and Wildlife Coordination Act to federal water marketing program.

*State of Nebraska v. Rural Electrification Administration*, 12 ERC 1156 (D.Neb. 1978). Represented national conservation organizations in case challenging water diversions destroying critical habitat of the endangered whooping crane on the Platte River.

*National Wildlife Federation v Andrus*, 440 F.Supp. 1245 (D. DC 1977). Represented NWF in case challenging legality of hydro-power project on the San Juan River in New Mexico.

**AWARDS**

National Wildlife Federation, National Conservation Achievement Award (2006)
Connecticut River Conservation Council, River Champion (2009)

**PROFESSIONAL ASSOCIATIONS**
Admitted to practice in Nebraska, Oregon, District of Columbia, Second Circuit and US Supreme Court.
Member, American Bar Association, Society of Conservation Biologists
Board Member, Climate Law Institute