## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

TRACEY K. KUEHL, an individual;
LISA K. KUEHL, an individual; KRIS
A. BELL, an individual; NANCY A.
HARVEY, an individual; JOHN T.
BRAUMANN, an individual, and;
ANIMAL LEGAL DEFENSE FUND, a
non-profit corporation,

        **Plaintiffs,**

vs.

PAMELA SELLNER, an individual;
TOM SELLNER, an individual; and
CRICKET HOLLOW ZOO, a non-
profit corporation,

        **Defendants.**

No. C14-2034

**RULING REGARDING
PLACEMENT AND
TRANSPORTATION OF
ENDANGERED ANIMALS**

 

On the 25th day of May 2016, this matter came on for hearing for the purpose of determining where the endangered lemurs and tigers will be placed, and how they will be transported. Some Plaintiffs appeared and were represented by their attorneys, Jessica Blome and Jeffrey Pierce. Defendant Pamela Sellner appeared and was represented by her attorney, Larry J. Thorson.

## I. PROCEDURAL HISTORY

On June 11, 2014, Plaintiffs filed a complaint seeking declaratory and injunctive relief against Defendant Cricket Hollow Zoo and its owners, Pamela Sellner and Tom Sellner. Plaintiffs claimed Defendants were violating the Endangered Species Act, and asked the Court to enjoin Defendants from acquiring or possessing lemurs, tigers, wolves, lions, and serval. Following a trial, the Court granted the relief requested regarding the

lemurs and tigers housed at Cricket Hollow Zoo.[1]  Specifically, the Court ordered Defendants, within 90 days following the ruling, to transfer the lemurs and tigers in their possession "to an appropriate facility which is licensed by the USDA and is capable of meeting the needs of the endangered species."

Defendants propose transporting the lemurs to Special Memories Zoo in Hortonville, Wisconsin, and transporting the tigers to the Exotic Feline Rescue Center in Centerpoint, Indiana.  Plaintiffs claim the proposed placements do not comply with the Court's Order.  Instead, Plaintiffs propose the lemurs be placed with the Prosimian Sanctuary in Jacksonville, Florida, and the tigers be transported to the Wild Animal Sanctuary in Keenesburg, Colorado.

## II. LEMURS

### A. *Special Memories Zoo*

Defendants suggest the lemurs be placed at Special Memories Zoo, a small zoo near Greenville, Wisconsin. Gretchen Crowe, "head keeper" at Special Memories, testified the zoo has 300 to 400 animals, including birds.  Special Memories Zoo opened for the public in 2000, but according to Crowe had existed for four or five years before that.  Special Memories is not accredited by the AZA, but is licensed by the USDA.  According to Crowe, Special Memories has "lots" of primates, probably more than any zoo in Wisconsin.  It has six full-time keepers, including herself, and additional college interns. Crowe has worked at the zoo for more than 20 years.

Currently, Special Memories has five ring-tailed lemurs and a red ruffed lemur, with plans to acquire an additional red ruffed lemur.  The lemurs are housed in buildings which allow the animals to go outdoors or inside to get out of the weather.  During the winter, the lemurs are placed in another facility where they are housed indoors for the

---

[1] Prior to trial, Plaintiffs dismissed their claims regarding the lions and serval. Following the trial, the Court found the Endangered Species Act did not protect the hybrid wolves being housed at Cricket Hollow Zoo.

winter. According to Crowe, Special Memories provides the lemurs with daily enrichment while they are being housed in their winter facility. The building has windows which allow the lemurs to see the sky. The ruffed lemur lives separately from the ring-tailed lemurs, although he is in the same area and can "talk" and interact with the ring-tailed lemurs.

According to Crowe, Special Memories has trucks and equipment which would enable it to deliver the lemurs from Cricket Hollow. Crowe described a plan for integrating the Cricket Hollow lemurs into the population of lemurs at Special Memories, and testified that they have been successful in integrating a number of nonhuman primates. When a new animal arrives at the zoo, a veterinarian examines it. Special Memories has two veterinarians who treat their primates. The veterinarians visit at least three or four times a year to look at all of the animals, but also come "as needed." According to Crowe, the veterinarians are "available at all times of the day or night." Crowe agreed with the need for preventative care. The veterinarians are not primate specialists, but according to Crowe have "special training" in handling and treating primates.

On May 4, 2015, Jessica A. Rivera, an animal care inspector with USDA-APHIS, conducted a routine inspection at Special Memories. According to the Inspection Report (Exhibit 66), rodent droppings were found on and around the feed sacks for the non-human primates. During the inspection, two mice were seen running out of the area where the feed is stored. The non-human primates housed indoors were observed to have empty water bottles. According to the report, "[a]fter the water bottles were filled, we observed that each affected animal immediately went to the water bottles and were drinking non-stop for more than a minute each." Some of the monkeys continued to drink after the bottle was filled a second time. Crowe explained that the inspector came in the morning and "we hadn't done chores yet." Crowe also asserted that the zoo was "set up by a disgruntled employee." During the same inspection, the enclosure housing two snow macaques had about six inches of soiled material underneath it. In her testimony, Crowe noted that the

3

"primates in question were up off of the floor, they were not actually touching the feces that were on the floor."

In 2008, the Outagamie Sheriff's Office received information from three "confidential informants" that between August 2008 and December 2008, about 60% of the animals at Special Memories had died and were buried in a wildlife preserve. The informants claimed that some of the monkeys were killing and eating other monkeys because they were starving to death.[2] Crowe denied the allegations. Crowe claimed that one of the informants was "going to federal prison for tax fraud" and he made the report to receive lenient treatment.

## B. Prosimian Sanctuary

Plaintiffs suggest the lemurs be relocated to the Prosimian Sanctuary operated by the Endangered Primate Foundation in Jacksonville, Florida. The Board of Directors of the Endangered Primate Foundation consists of Tracy Fenn, her father, and two other persons. Fenn is a supervisor of mammals at the Jacksonville Zoo and Gardens and runs the sanctuary "on the side." The sanctuary has no employees, and is run entirely by volunteers. Fenn estimated she personally works about 20 hours a week at the sanctuary, in addition to her full-time job at the Jacksonville Zoo, and volunteers provide an additional 40 hours of assistance per week. The Prosimian Sanctuary, which was started in 2010, is the only sanctuary in the United States working exclusively with lemurs. Currently, the sanctuary has nine lemurs.

Fenn has worked at the Jacksonville Zoo for 12-1/2 years, and has worked at an American Zoological Association ("AZA") accredited zoo for 23 years. She has worked with lemurs during the entire time. According to Fenn, there is a "tremendous demand for sanctuary space for lemurs in this country." Fenn testified that AZA institutions are "under a lot of pressure" to accept lemurs from private sources, including roadside zoos,

_____

[2] Defendants' Exhibit 81.

the pet trade, and the entertainment industry. According to Fenn, however, AZA institutions "cannot do so for many reasons." AZA accredited zoos are encouraged not to take lemurs from such sources because generally there is not good "genetic information" on those animals and it may interfere with a "species survival plan" ("SSP"). In addition, the animals typically have behavioral or psychological issues that "may not make them easy or possible to integrate into natural groups." Fenn testified that when AZA institutions receive calls looking for placements for lemurs, "they forward those to me."

The Prosimian Sanctuary operated by the Endangered Primate Foundation has an octagon-shaped enclosure — referred to as "the lemur lodge" — and another smaller enclosure. According to Fenn, there are two new larger enclosures under construction. The sanctuary has plans to continue to progressively build larger and larger enclosures to "step up the animals" to a larger environment. Fenn testified the animals receive adequate veterinary care, but occasionally there is a "budget shortfall." In those instances, Fenn and her husband "put every penny that we can into the organization to keep it afloat as needed."

The sanctuary does not currently have a red ruffed lemur (like Lucy from Cricket Hollow), but Fenn testified she has been very successful in "forming mixed species lemur groups." Fenn also testified that it's possible Lucy could be integrated into an SSP population if Fenn could acquire "enough information about her history and her origins and genetics and have her assessed at the Prosimian Sanctuary to be behaviorally fit to be integrated with others."

The Prosimian Sanctuary is not licensed by the USDA and, therefore, is not subject to USDA inspections. Fenn predicted, however, that USDA licensure would be coming soon. The sanctuary is subject to inspection by Florida's Fish and Wildlife Commission, but no inspection has been conducted. Fenn explained that "we are a relatively young facility."

## C. Discussion

As noted above, the Court ordered Cricket Hollow to transfer the lemurs "to an appropriate facility which is licensed by the USDA and is capable of meeting the needs of the endangered species." It is undisputed that Special Memories Zoo is licensed and inspected by the USDA. The issue is whether it is "capable" of meeting the lemurs' needs. Conversely, the Prosimian Sanctuary — proposed by Plaintiffs — appears to be capable of meeting the lemurs' needs, but it is not licensed by the USDA.

Despite beginning operations in 2010, the Prosimian Sanctuary is not licensed by the USDA and has not been subject to the rigorous inspections imposed on Cricket Hollow and Special Memories. While Tracy Fenn testified she anticipates USDA approval in the near future, that can not be guaranteed. The Prosimian Sanctuary is subject to inspections by Florida's Fish and Wildlife Commission, but no inspection has been conducted. Fenn conceded that "we are a relatively young facility."

On the other hand, Special Memories is licensed by the USDA and subject to regular inspections. While inspectors have found violations from time-to-time, the Court nonetheless concludes that Special Memories is capable of meeting the animals' needs. Even *if* the Court found Special Memories incapable of meeting the lemurs' needs, because the Prosimian Sanctuary is not licensed by the USDA, Plaintiffs have not suggested a qualified alternative. Therefore, the Court approves Defendants' proposal that the endangered lemurs be transferred to the Special Memories Zoo.

## III.  TIGERS

### A.  Exotic Feline Rescue Center

Defendants suggest the tigers be placed at the Exotic Feline Rescue Center ("EFRC") near Centerpoint, Indiana. The information provided at the hearing regarding the EFRC was limited. No representative of the EFRC testified at the hearing. Defendant Pamela Sellner described the EFRC, but admitted she has not visited the facility. According to Sellner, she is a member of the Feline Conservation Foundation and the

6

EFRC comes "highly recommended" by that group. The EFRC is identified by "Tigers in America" as one of the best tiger sanctuaries in the country. (The Plaintiffs' preferred location — the Wild Animal Sanctuary — appears on the same list.)

Based on photographs, and after speaking with the EFRC's president, Sellner testified the EFRC provides a natural, shaded area for the animals, and appears to have "nice facilities." According to an attachment to a USDA report dated August 26, 2014, EFRC had 240 leopards, lions, pumas, and tigers on June 25, 2014.[3] There are approximately 90 primary enclosures for the animals. Tigers at the EFRC are placed in their own cages, which Sellner opined is more consistent with their "solitary nature."

Centerpoint, Indiana, where the EFRC is located, is approximately 400 miles from Cricket Hollow. Sellner testified she prefers to keep the tigers in the Midwest. According to Sellner, the EFRC is experienced in transporting big cats. Sellner also has equipment for transporting big cats and has done so in the past.

Sellner approves of the EFRC's policy to leave male tigers "intact" and permit them to breed. Sellner did not know whether the EFRC has a full-time veterinarian on staff, and was unable to testify regarding the mortality rate for tigers at the EFRC. Sellner opined that because the EFRC has a lot of geriatric cats, their numbers vary more than some other locations.

In a USDA report dated June 24, 2013, it was noted that there are four employees responsible for the cleaning, feeding/watering, and daily monitoring of 230 large cats in the facility.[4] There's an additional employee occasionally available. During days with tours, the four regular employees are frequently called to assist and conduct tours, leaving only one or two employees to care for the animals. Following an incident on June 21, 2013, when an employee was attacked by a tiger after failing to secure a guillotine door,

---

[3] Defendants' Exhibit B-1 at 2.

[4] Plaintiffs' Exhibit 38.

the staff was allegedly told to go back to work and continue the tours "as that income was needed to feed the animals."

In the USDA reports, inspectors expressed concern that the trees were too close to the fence and could provide an opportunity for an animal to escape. Sellner testified, however, that the tigers are too heavy to climb trees and an escape is unlikely.

## B. The Wild Animal Sanctuary

Plaintiffs ask that the tigers be placed at the Wild Animal Sanctuary in Keenesburg, Colorado. Patrick Craig, Executive Director of the Wild Animal Sanctuary ("WAS"), appeared at the hearing and provided extensive testimony regarding the facility. According to Craig, WAS is a 720-acre facility housing over 420 animals. WAS houses primarily large carnivores, such as lions, tigers, bears, wolves, leopards, mountain lions, lynx, and bobcats. It has 52 employees and 160 volunteers, with an annual budget of approximately $13 million.

According to Craig, 10 to 15% of their tigers are geriatric, with approximately 7 tigers being at least 23 years old (which Craig likened to 100 in human years). Craig testified that WAS generally "loses a couple each year." Necropsies are performed on all animals following death. WAS employs one full-time veterinarian, one part-time veterinarian, and two vet techs. Its facilities include a "hospital," where it is able to perform surgery.

Craig testified that WAS is a "true sanctuary," meaning that there is no breeding, commercialization, or handling of the animals. According to Craig, WAS is the only sanctuary in the country that "offers large acreage habitats for the animals rather than keep them in small cages." Craig acknowledged, however, that it is necessary to implement a "rehabilitation" program to adapt the animals to large habitats and social groups. According to Craig, "you can't just take animals and throw them out into 20 acres and expect them to live that way, so we do a rehabilitation program, but all the animals

eventually move into large natural acreage habitats where they can roam freely in social groups."

WAS is open to visitors seven days per week and last year had approximately 200,000 visitors. Adults pay $30 and children pay $15 to walk on an elevated walkway where they are able to observe the animals. The tiger enclosures are generally 15 to 25 acres and house 7-10 tigers, although some enclosures may have as few as 3 tigers. All of the male animals, except African lions, are neutered upon their arrival. Female animals receive a chemical implant.

Craig testified that WAS has air conditioned trucks which are used to transport animals across the country. The trip from Cricket Hollow to WAS would take approximately 12 hours and, according to Craig, would not cause any particular difficulty to the animals. Craig testified he provides instruction for the AZA and the USDA on subjects like large carnivore transportation.

Craig testified he had visited the Exotic Feline Rescue Center — proposed by Defendants as an appropriate placement for the tigers — and does not believe it is a "sanctuary." Craig is critical of the fact that the EFRC allows animals to breed and reproduce "without any kind of controls to it or without a plan to it." Craig opined that "there's no purpose in letting these animals breed; they're already overpopulated." He also objected to the "very, very small cages" in which the animals are kept.

## C. Discussion

Both the EFRC and the WAS are licensed by the USDA and subject to periodic inspections. Both the EFRC and the WAS have been called on in the past to provide transportation and sanctuary to rescued tigers (sometimes at the same rescue). However, the two facilities operate differently. The EFRC has just over 200 large cats housed generally alone in approximately 90 shaded enclosures. The WAS has more than 400 large carnivores housed together in large treeless enclosures.

The WAS is a much larger operation with 52 employees, including a full-time veterinarian. It charges $30 for adults and had approximately 200,000 visitors last year. The EFRC also apparently provides tours, and has a $10 "minimal donation." It has only five or six employees caring for the animals.

Would the EFRC be my first choice for placement of Cricket Hollow's tigers? Maybe not. But that is not the question which the Court is required to answer. Instead, the Court must determine whether the EFRC — which is Defendants' choice — is "capable of meeting the needs" of the tigers. The Court finds that the answer to that question is yes. Accordingly, the Court approves Defendants' proposal that the endangered tigers be transferred to the Exotic Feline Rescue Center.

### IV. ORDER

IT IS THEREFORE ORDERED that Defendants' proposed placement of the lemurs and tigers now in their possession is **APPROVED**. Not later than **30 days following the filing of this Order**, Defendants shall cause the animals to be safely transported to the facilities described above, at Defendants' expense.

DATED this _17th_ day of June, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA